**V.  FACTUAL ALLEGATIONS: CLASSIFICATION AND RETROACTIVE APPLICATION OF SORA 2001, 2009, 2011**

144.  SORA 2001, 2009, 2011 classifies registrants based upon whether their offense was an "aggravated offense," and determines the length of time that a person must register and the frequency of reporting.

145.  SORA 2001, 2009, 2011 classifications are based solely on the offense of conviction.

146.  SORA 2001, 2009, 2011classifications are not based on, and do not correspond to, a registrant's actual risk of re-offending or the danger any registrant poses to the public.

147.  Prior to SORA 2011, most Idaho registrants were required to register for 10 years.  The amendment of SORA 2011 required that registrants that were required to register for 10 years were extended to life.  There was no individualized determination about the risk or whether lifetime registration was warranted.

148.  Although the plaintiffs have clinically been determined to be low risk, under SORA 2001, 2009, 2011 they were retroactively classified as "aggravated offenders" and must register and comply with SORA 2011 until they die.

149.  Even upon the clearest proof that the plaintiffs are not dangerous, there is no mechanism in the statute that would allow the plaintiffs to have their registration obligations eliminated or reduced.

150.  SORA 2001, 2009, 2011 are not limited to individuals who committed sex offenses, but some cases require registration and reporting by individuals convicted of other offenses that do not have a sexual component, at least as far as out-of-state registrants are concerned.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -          40

## VI.  FACTUAL ALLEGATIONS: IMPACT OF SORA 2001, 2009 AND 2011 ON

## THE PLAINTIFFS

151.  SORA 2001, 2009, 2011 imposes obligations, disabilities, and restraints that are so extensive that they cannot be set out in full here, but by way of summary, are as follows:

By way of summary, SORA 2001, 2009, 2011 subjects the plaintiffs to continuous reporting, surveillance, and supervision. In addition, SORA 2001, 2009, 2011 severely limits their ability to direct the upbringing of their children, find housing and employment, get an education, travel, engage in free speech activities (including use of the Internet), be free from harassment and stigma, and understand what is required of them under the statute.

152.  Finally, registration under SORA 2001, 2009, 2011 triggers a vast array of additional obligations, disabilities, and restraints under other federal, state, and local laws, as well as private policies barring or limiting registrants from access to goods or services available to the public.

### A. Reporting, Surveillance, and Supervision

153.  The plaintiffs must report in person regularly and must provide:

• all names and nicknames, Social Security number, and date of birth;

• residential address, including any address where the individual expects to spend more than seven days, as well as the dates of any such temporary stays;

• employer names and addresses, including information on any person who agrees to hire a registrant for a temporary job, as well as the routes of travel for non-stationary

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        41

employment;

> • schools attending or schools to which accepted;

> • telephone numbers registered to the individual or routinely used;

> • e-mail and instant message addresses, log-in names or other identifiers assigned to the individual or routinely used, if, in fact, the registrant is granted internet usage;

> • all other designations used in Internet communications or postings;

> • license plate and registration information for any vehicle owned or regularly operated by the individual, and the location where that vehicle is kept;

> • driver's license or personal ID card;

> • passport and immigration documents;

> • occupational license information; and

> • a complete physical description.

154. SORA 2001, 2009, 2011 also requires the plaintiffs to provide a photograph, fingerprints, and palm prints. If a plaintiff's appearance changes, he or she must update the photograph.

155. In addition to reporting in person at regular intervals, the plaintiffs must report in person within two working days whenever certain information changes. The immediate, in-person reporting requirement is triggered whenever the plaintiffs:

> • change their residence;

> • begin, change, or discontinue employment;

> • enroll or dis-enroll as a student;

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        42

• change their name;

• intend to travel for more than seven days;

 • establish an e-mail address, instant message address, or other Internet designation; and

• buy or begin using a vehicle, or cease owning or using a vehicle.

156.  There are no good-cause exceptions to the reporting requirements or to the "immediate" notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, the plaintiffs must report in person within two days or face criminal charges.

157. SORA 2001, 2009, 2011's reporting, surveillance, and supervision requirements are similar to, but more restrictive and onerous than, the reporting, surveillance, and supervision that the plaintiffs experienced while serving their sentences on probation or parole.

158. Under SORA 2001, 2009, 2011, the plaintiffs must report significantly more information than what they were required to report while they were serving their sentences on probation or parole.

159. SORA 2001, 2009, 2011's requirement that minor changes be reported in person within two business days is a level of reporting that far exceeds what the plaintiffs experienced while they were serving their sentences on probation or parole.

160.  As a result of SORA 2001, 2009, 2011's immediate reporting requirements, coupled with the reporting requirements, the plaintiffs must – for the rest of their lives –

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        43

report in person to law enforcement with a frequency that is similar to, and often greater than, their reporting obligations when they were on probation or parole.

161.    For the plaintiffs, the lifetime surveillance imposed by these reporting requirements is not only intrusive, but burdensome. The time required to register or update information varies depending on where and when the plaintiffs report.  Each registration can take up to an hour-and-a-half, not including travel time.

### B. Family and Parenting

162.    SORA 2001, 2009, 2011 has severely impaired the plaintiffs' family relationships and parenting, in large part because the statute bars the plaintiffs from "residing" or "loitering" within 500 feet of school property.  "To loiter" means "to remain for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors." This provision contains no exception for the plaintiff-parents, who are observing or contacting their own children.

163.  For example, permission has to be obtained for parents to attend their children's school and extra-curricular events, whereupon many have to be accompanied by an approved supervisor.

### C. Housing

164.  SORA 2001, 2009, 2011 also severely limits the plaintiffs' access to housing.

165.  SORA 2001, 2009, 2011 bars the plaintiffs from "residing" within 500 feet of school property, making a substantial amount of housing unavailable as a matter of law. The plaintiffs are also prohibited from living with family members if those family members live

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        44

within 500 feet of school property.

166.  Because sex offender registry address information is public, many landlords outside geographic exclusion zones refuse to rent to registrants, since their properties can then be easily identified on the registry.

167.  In some cases, Plaintiffs have been denied subsidized housing for reasons that under Federal Law, individuals subject to lifetime sex offender registrations are barred from subsidized housing.

### D. Employment

168.  SORA 2001, 2009, 2011 bars the plaintiffs from working within 500 feet of school property, making a substantial number of jobs unavailable to the plaintiffs as a matter of law.

169.  Moreover the possible public posting of employment by employers who hire the plaintiffs can create a significant disincentive for employers to hire the plaintiffs, and regularly lose employment opportunities because of their status of registered sex offenders.

170.  It is a virtual impossibility for registrants to obtain employment dealing with the public.

### E. Education

171.  SORA 2001, 2009, 2011 has also made it more difficult for the plaintiffs to get an education.

172.  Many plaintiffs have been denied opportunities for education, such as medical assistant, nursing, teaching, and several GED programs, as many of those programs

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -          45

automatically reject registered sex offenders.

**F. Travel**

173.  The plaintiffs' status as registrants has severely restricted their ability to travel.

174.  The plaintiffs must provide advance notice when they intend to travel anywhere for more than seven days. They must tell the police where they are going, where they will stay, how long they will be there, and when they will return.

175. The plaintiffs must provide advance notice if they travel outside the U.S. for more than seven days.

176.  If the plaintiffs travel, they must comply with any applicable sex offender registration laws in other jurisdictions and must register there if they intend to stay over a prescribed period of time. Because sex offender laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

**G. Speech & Internet**

177.  SORA 2001, 2009, 2011 severely restricts the plaintiffs' ability to speak freely on the Internet. The plaintiffs not only must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by them, but must also immediately report whenever they establish any electronic mail address, instant message address, or other designation used in Internet communications or postings.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        46

178.  The plaintiffs are concerned about using the Internet because SORA 2001, 2009, 2011 is unclear about whether, for example, they must report immediately and in person if they set up an on-line account to pay their taxes, register with Netflix, purchase or review products on Amazon, or use a college on-line bulletin board.

**H. False Information and Public Stigmatization**

179.  The public registry website labels registrants which stigmatizes them, and publicly and falsely identifies them as among the most dangerous sex offenders on the registry.

180.  The public registry website posts extensive personal information about each registrant, including residential address, date of birth, physical description (weight, height, etc.), and a photograph.

181.  Because they are stigmatized as sex offenders on the public registry website, the plaintiffs and their families are subjected to harassment, social ostracism, and even threats of violence.

**I. Vagueness, Strict Liability, and Impossibility of Compliance**

182.  The plaintiffs have been further harmed because the restrictions and obligations of SORA 2001, 2009, 2011 are so vague that the plaintiffs are unable to know whether or not they are in violation of the law, or are so extensive and pervasive that the plaintiffs are literally unable to comply with the law. Moreover, different law enforcement agencies in different places apply the requirements of SORA 2011 differently.

183.  SORA 2001, 2009, 2011's requirements for reporting personal information are

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -          47

so vague that the plaintiffs do not understand what information must be reported, or what changes in information subject them to the in-person immediate reporting requirement, which some jurisdictions impose.  That because some of the restrictions and obligations are so vague and confusing, plaintiffs are concerned that they will inadvertently violate requirements because they did not understand what they are.

184.   Finally, SORA 2001, 2009, 2011 imposes criminal liability despite the impossibility of compliance. SORA 2001, 2009, 2011 imposes liability regardless of whether illness, injury, or practical difficulties make compliance impossible.

185.  SORA 2001, 2009, 2011 imposes penalties of up to 10 years imprisonment for violations of the Act.

**J. Consequences Beyond SORA 2001, 2009, 2011**

186.  Because the plaintiffs are required to register as sex offenders under SORA 2001, 2009, 2011, they are also subject to a vast and complex array of laws and ordinances imposed on registered sex offenders by the federal government, other states or tribal governments, and local municipalities.

187.  Because registration in one state generally triggers registration in another state, the fact that the plaintiffs are subject to SORA 2001, 2009, 2011 means they are also subject to the sex offender laws of other jurisdictions if they travel or move.

188.  In addition, because the plaintiffs are required to register as sex offenders under SORA 2001, 2009, 2011, they are subject to policies by private  entities that refuse to provide goods or services to registered sex offenders. But for the fact that the plaintiffs are

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        48

labeled by the state as registered sex offenders, the goods and services provided by those private entities would generally be available to them.

## VII.  FACTUAL ALLEGATIONS: SORA 2001, 2009, 2011 IS NOT RATIONALLY RELATED TO THE GOAL OF PUBLIC SAFETY

189.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

190.  Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

191.  The avowed purpose of Idaho's sex offender registry is to "assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public..."  I.C. Section 18-8302.

192.  The idea that SORA 2001, 2009, 2011 will promote public safety is based on the assumption that sex offender registration will reduce recidivism by convicted offenders and thereby reduce the risk to the public.

193.  That assumption is false.

194.  In fact, the research shows that public registries are likely to *increase, rather than decrease, recidivism,* and are therefore counterproductive to their avowed purpose of public protection.

195. As outlined in more detail in the declaration of James J. Prescott (Exh. A) large-scale empirical research on the impact of sex offender registries has found that *public* sex

offender registries have likely increased, and almost certainly not reduced, the frequency of sex offenders.  (By contrast, the research has also found that *private law enforcement* registries have reduced recidivism against family members, neighbors, etc., though not against strangers).

196.  Specifically, this research shows that the more people a state subjects to public sex offender registration, the higher the relative frequency of sex offenses in that state. Public registries (based on the offense of conviction) correlate with an *increase* in frequency of sex offenses against all types of victims (family members, neighbors, acquaintances, and strangers).  Prescott Decl., at 3-4 (Exh. A).

197.  Although it may seem counter-intuitive that public registration increases rather than decreases recidivism, these results reflect the fact that sex offender registration and the attendant consequences exacerbate risk factors for recidivism, such as lack of employment and housing, and prevent healthy reintegration into the community.  Prescott Decl., at 7-8 (Exh. A).

198.  These results are mirrored by other evidence-based research on the impact of sex offender registration.  Most studies reveal no significant reduction in sex crime rates that can be attributed to sex offender laws and policies.  Rather, there is a significant body of empirical work that overwhelmingly shows that, at best, public registration makes no difference to recidivism rates, and that it may well be counter-productive.  *See* Levenson Decl., at 3 (Exh. B); Prescott Decl., at 12 (Exh. A).

199.  The two studies that detected reductions in sex crime recidivism after the

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -      50

passage of registration laws were both in states that have risk-based, rather than offense-based, classification, and that limit public notification to those offenders who have been individually determined to pose the greatest threat to community safety. *See* Levenson Decl., at 3 (Exh. B).

200.   Moreover, there is no research to support the hypothesis that registrants who live closer to child-oriented settings are more likely to reoffend. Rather, the research shows that where registrants live is not a significant contributing factor to recidivism. *See* Levinson Decl., at 4 (Exh. B).

201.   Residency restrictions reduce housing options for registrants, leading to housing instability. Housing instability is consistently correlated with higher criminal recidivism, and may help account for the increases in recidivism triggered by registration. *See* Prescott Decl., at 7-8 (Exh. A); Levenson Decl., at 5-6 (Exh. B). Thus, residency restrictions are likely to increase rather than decrease sexual offending.

202.   Similarly, requirements that interfere with employment, social support, and engagement in pro-social activities undermine the avowed public safety goals of sex offender registration laws. Social policies that ostracize and disrupt the stability of sex offenders are counterproductive to increasing public safety. *See* Levenson Decl., at 7, 10 (Exh. B).

203.   Failure to comply with registration requirements does not predict sexual recidivism. Levenson Decl., at 11-12 (Exh. B).

204.   There is no empirical evidence to support the notion that more frequent registration check-ins lower recidivism, nor is there evidence that reporting additional

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        51

information (*e.g.,* email addresses, employment information) reduces recidivism.  Levenson Decl., at 10 (Exh. B).

205.  In sum, SORA 2001, 2009, 2011 is not rationally related to the public safety goal it purports to serve.

## VIII.  FACTUAL ALLEGATIONS: THE REQUIREMENTS OF SORA 2001, 2009, 2011 BEAR NO REASONABLE RELATIONSHIP TO THE RISK THAT INDIVIDUAL REGISTRANTS POSE TO THE COMMUNITY

206.  SORA 2001, 2009, 2011 is also premised on the assumption that all individuals convicted of sex offenses pose a great risk in public safety, which justifies continuous and lengthy supervision and restrictions.

207.  In fact, while some individuals convicted of sex offenses will reoffend, the vast majority of new sex offenses are committed not by registered offenders, but by individuals without prior sex offenses.  For example, a study in New York found that 95% of all arrests for sexual offenses were for individuals who did not have a prior sexual offense conviction and who were not on a sex offender registry.  *See* Levenson Decl., at 8 (Exh. B).

208.  Among those with prior sex offenses, recidivism rates vary with the presence of certain risk factors.  *See* Levenson Decl., at 8 (Exh. B).  While some individuals convicted of sex offenses pose a significant risk to public safety, most do not.

209.  Most sex offenders do not re-offend sexually.  First-time sexual offenders are significantly less likely to re-offend than those with multiple sexual convictions, and offenders over the age of 50 are less likely to re-offend than younger offenders.  Moreover,

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        52

recidivism rates differ significantly depending on the nature of the offense (*e.g.,* rape, incest, child victim, *etc.*).

210.  Research indicates that the risk for sexual re-offending is reduced by half when a person has spent 5-10 years offense-free in the community.  The risk continues to decline the more time the person spends offense-free in the community.  Risk for sexual recidivism also declines with age.  *See* Levenson Decl., at 10 (Exh. B).

211.  SORA 2001, 2009. 2011 is not based on risk.  The tier to which an individual is assigned, whether the individual is listed on the public registry, and how long an individual must register, are all based solely on the offense of conviction, not on the individual's level of risk.

212.  Because recidivism risk declines significantly with advancing age and with time spent offense-free in the community, requiring registration for 25 years to life is both inefficient and unnecessary.  *See* Levenson Decl. (Exh. B) at 10.

213.  In addition, SORA 2001, 2009, 2011, by focusing on the danger posed by strangers (who can be identified through the registry), misidentifies the source of risk.  In 93% of cases of child sexual abuse, the offender was a family member or acquaintance, not a stranger listed on the registry.

214.  Public sex offender registration and residency restrictions, which focus on "stranger danger," give parents a false sense of security by implying that knowing where sex offenders live or banishing them from the community in fact reduces the risk of sex offenses being committed, when such measures do not have this effect.  *See* Levenson Decl., at 9

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -      53

(Exh. B).

215.   In sum, the requirements of SORA 2001, 2009, 2011 bear no rational relationship to the risks that individual registrants pose to the community.

## IX.  THE ACTIONS OF THE LEGISLATURE IN AMENDING THE SEX OFFENDER REGISTRY IN 2009 REPRESENT A VIOLATION OF ALL REGISTRANTS' RIGHTS TO DUE PROCESS

216.  In February 2009, the Idaho Supreme Court in _Smith vs. State of Idaho_, 146 Idaho 822, ruled that "Idaho's statutory scheme for VSP designation minimizes, at every turn, the possibility that an offender has the required notice and opportunity to be heard." The Court further stated that "due process requires that the State bears the burden of proving, in some meaningful time, that the Defendant deserves the classification assigned."

217.  At the time of the _Smith_ decision, a sex offender had a right to a due process hearing to determine whether he or she should be put in a class requiring VSPs to update their information every ninety (90) days and to remain on the Registry for life.  In other words, classification as a VSP was based upon a factual determination of probable future conduct, i.e., that the offender posed a high risk of committing another offense or engage in predatory sexual conduct.

The Supreme Court in its determination that the defendant had been denied his rights to due process stated:

> "The legislature created the Board to 'assess the risk of reoffense of any offender convicted and incarcerated for commission of a crime as set forth in section 18-8314, Idaho Code, to determine whether the offender should be designated a violent sexual predator.'  I.C. § 18-8312(1).  The legislature

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        54

imposed the duty upon the Board to establish objective guidelines to be used in the determination of whether an offender should be designated a VSP.

The board shall establish guidelines to determine whether an offender who meets the criteria of this section is a violent sexual predator presenting a high risk of reoffense.  The guidelines shall be established with the assistance of sexual offender treatment and law enforcement professionals who have, by education, experience or training, expertise in the assessment and treatment of sexual offenders.

> (a) Factors to be used in establishment of the guidelines must be supported in the sexual offender  assessment field as criteria reasonably related to the risk of reoffense and be objective criteria that can be gathered in a consistent and reliable manner.

> (b) The guidelines shall include, but are not limited to, the following general categories for risk assessment: seriousness of the offense, offense history, whether the offense was predatory, characteristics of the offender, characteristics of the victim, relationship of the offender to the victim, the number of victims and the number of violations of each victim."

I.C.  §  18-8314(5).    Further,  the  legislature  authorized  the  Board  to promulgate rules to carry out the provisions of the Act.  I.C. § 18-8314(8).

The Court further stated:

"This Court has previously stated that judicial review is turned into a superfluous exercise of rubberstamping when the decision of a state board sitting in a disciplinary or quasi-judicial position relies on the "expertise," "experience," and "collective knowledge" of its members on an "ad hoc basis" rather than declaring and applying clearly articulated standards to the cases before it. *H & V Eng'g, Inc. v. Idaho State Bd. of Prof. Eng'rs & Land Surveyors,* 113 Idaho 646, 650, 747 P.2d 55, 59 (1988); *Tuma v. Bd. of Nursing,* 100 Idaho 74, 81, 593 P.2d 711, 718 (1979). In *Tuma,* we rejected the Board of Nursing's argument that it need not further define "unprofessional conduct" when disciplining a registered nurse. 100 Idaho at 79, 593 P.2d at 716. The Board of Nursing unsuccessfully argued that providing a definition was unnecessary since that board was composed of experts who were fit and capable in their own right to determine the standards of their profession from their personnel knowledge and experience. *Id.* at 81,

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -         55

593 P.2d at 718. In *H & V*, we similarly rejected the Board of Engineers' reliance on the knowledge and expertise of its members in rendering a disciplinary decision on what constituted professional "misconduct" in the absence of a clearly defined standards. 113 Idaho at 650, 747 P.2d at 59. Both of these cases noted the due process ramifications implicit in a board's failure to avail itself of the opportunity to expand upon the legislative grounds under which its determinations are based. *H & V*, 113 Idaho at 651, 747 P.2d at 60; *Tuma*, 100 Idaho at 79, 593 P.2d at 716. This is because reliance on "the phantom of unknown standards" robs the opportunity for notice. *H & V*, 113 Idaho at 651, 747 P.2d at 60. We find the instant case to be analogous to *Tuma* and *H & V* and conclude that, in the absence of objective 12 and clearly defined guidelines and standards upon which Smith's VSP designation may be evaluated, his due process rights could not be protected by the process of judicial review."

218.  The legislature's response to the decision in <u>*Smith vs. State of Idaho*</u>, within approximately four (4) months, was to simply amend SORA by changing the name of the Sexual Offender Classification Board to the Sexual Offender Management Board, and requiring all sexual offenders, whether violent or not, to be classified as *aggravated* offenders, and to be treated exactly as VSPs, i.e., to remain on the Registry for life.

219.  The original Board was required to establish guidelines to determine whether an offender was a violent sexual predator depending on a high risk to reoffend.  The Guidelines were to be established with the assistance of sexual offender treatment and law enforcement professionals who had, by education, experience or training, expertise in the assessment and treatment of sexual offenders.

220.  By eliminating the Sexual Offender Classification Board and replacing it with the Sexual Offender Management Board, with no further classification powers, the legislature very cleverly side-stepped the Supreme Court's requirements espoused under <u>*Smith vs. State of Idaho*</u>, and effectively removed any provisions regarding classification by

putting all sex offenders in the same boat, i.e., to be treated as violent sex offenders for life.

221.   Essentially, prior to the 2009 amendment to SORA, designation as a VSP resulted in consequences beyond requiring the designee to register as a sex offender.   Non-VSP Sex offenders needed only to update their information and photographs on the registry annually, while VSPs had to do it every ninety (90) days.   And, non-VSP offenders could petition the court for relief from duty to register after a period of ten (10) years, while a VSP had to remain on the registry for life.   Thus, for an offender at that time, only designation as a VSP resulted in the *indelible* scarlet letters.

222.   What the legislature did in response to *Smith vs. State of Idaho*, and as a result of the 2009 amendment to SORA, was to simply create a situation where the scarlet letters became indelible to all sex offenders, rather than provide the due process required by the Supreme Court.

## X. FIRST CAUSE OF ACTION

## Violation of the Fourteenth Amendment to the United States Constitution under 42 U.S.C. § 1983 (Due Process)

223.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

224.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

225. SORA 2001, 2009, 2011 is vague and ambiguous and fails to sufficiently define

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        57

who is subject to the laws, what their effects are, and what the penalties for failure to comply with them are, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

226.   SORA 2001, 2009, 2011 also violates the Due Process Clause because it reassesses offenders and subjects them to new restrictions and requirements, regardless of any actual risk to society and without the possibility of any hearing and without any requirement by the State of Idaho to provide offenders with any notice of their classification or any new prohibitions or requirements.

227.   Further, SORA 2001, 2009, 2011 violates the Due Process Clause of the U.S. Constitution because it fails to further any legitimate governmental purpose.

228.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XI. SECOND CAUSE OF ACTION

**Violations of the First Amendment to the United States Constitution under <u>42 U.S.C. § 1983</u> (Free Exercise of Religion)**

229.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

230.   Pursuant to <u>42 U.S.C. Section 1983</u>, this claim is brought by all Plaintiffs against all State Defendants.

231.   Because churches and other places of worship fall within the places certain sex offenders may not "knowingly be" within 500 feet of under SORA 2001, 2009, 2011,

regardless of the actual known risk offenders, SORA 2001, 2009, 2011 improperly interferes with offenders' right to practice religion without undue governmental interference.

232.  The Plaintiffs have been, or imminently will be, injured by these constitutional violations, and Plaintiffs are entitled to declaratory and injunctive relief.

## XII. THIRD CAUSE OF ACTION

## Violations of the First Amendment to the United States Constitution under 42

## U.S.C. § 1983 (Substantive Due Process)

233.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

234.  Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

235. SORA 2001, 2009, 2011, impacts the Does' ability to travel throughout Idaho, attend church or other religious services, go to Court or attorney offices, parent their children, and live with their families, SORA 2001, 2009, 2011 impinges on their fundamental rights to free association, travel, and to raise their children without undue governmental interference.

236.  Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XIII. FOURTH CAUSE OF ACTION

## Violations of the First Amendment to the United States Constitution under 42

## U.S.C. § 1983 (Equal Protection)

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        59

237.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

238.  Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

239.  These laws are irrational, and designed only to burden an unpopular group. SORA 2001, 2009, 2011 thus violate the Equal Protection Clause of the U.S. Constitution.

240.  Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

### XIV. FIFTH CAUSE OF ACTION

### Violations of the Eighth Amendment to the United States Constitution under 42 U.S.C. § 1983 (Cruel and Unusual Punishment)

241.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

242.  Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

243.  SORA 2001, 2009, 2011 impose extensive punishments, both on persons previously convicted of sexual offenses and prospectively, that are excessive in relation to the crimes offenders are convicted of.  For example, anyone convicted of any crime with any "sexual element" or any crime that is considered an "aggravated" offense, no matter when they were convicted, is considered a sex offender under SORA 2001, 2009, 2011 and is subject to community notification and registration requirements.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        60

244.   Community notification can subject offenders to violence at the hands of vigilantes.  Human Rights Watch, in a comprehensive 2007 study of sex offender laws (laws that were far less extreme than SORA 2001, 2009, 2011) and their effects and utility, found that public safety was not furthered by expanding notification and restriction provisions, but offenders were subjected to vigilantism:

> Information provided by state online sex offender registries, as well as information provided during community notification by law enforcement, is not just used by private citizens to determine what streets their children can walk on, or whom to avoid.  Neighbors as well as strangers harass, intimidate and physically assault people who have committed sex crimes.  At least four registered sex offenders have been killed.

P. 89, "*No Easy Answers: Sex Offender Laws in the United States,*" Human Rights Watch, available at http://222.hrw.org/reports/2007/us0907/usO907web.pdf.  Each of the Plaintiffs has been, or imminently will be, injured by Eighth Amendment violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XV. SIXTH CAUSE OF ACTION

## Violation of Article 1, §9 of the United States Constitution under 42 U.S.C. § 1983

## (Ex Post Facto)

245.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

246.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

247.   The effect and intent of SORA 2001, 2009, 2011 are punitive and impose new punishments, including but not limited to the affirmative disability of having to register in

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        61

person every twelve (12) months, banishment from their families and communities, on offenders convicted before their enactment.

248.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XVI. SEVENTH CAUSE OF ACTION

## Violations of the Fifth Amendment to the United States Constitution under 42

## U.S.C. § 1983 (Double Jeopardy)

249.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

250.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

251.   SORA 2001, 2009, 2011 impose new punishments on persons previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism, in violation of the Double Jeopardy Clause of the U.S. Constitution.

252.   Each of the above-described Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        62

## XVII. EIGHTH CAUSE OF ACTION

**Violation of Article 1, §10 to the United States Constitution under <u>42 U.S.C. § 1983</u>**

**(Contracts Clause)**

253.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

254.  Pursuant to <u>42 U.S.C. Section 1983</u>, this claim is brought by John Doe 57, John Doe 59, John Does 60 thru John Doe 69, John Does 71 thru John Doe 73, John Doe 75, John Doe 76, John Doe 77, John Does 81 thru John Doe 86, John Doe 90, John Doe 93, John Doe 95 and John Doe 100 against all State Defendants.

255.  SORA 2001, 2009, 2011 operates as a substantial impairment to the pre-existing contractual relationship between the state and Plaintiffs Guilty Plea Agreements by imposing new terms not negotiated which drastically increase, and, or require lifetime supervision, registration and community notification.

256.  Each of the above-described Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XVIII. NINTH CAUSE OF ACTION

**Violation of Article 1, §16 to the Idaho Constitution (State Contract Clause)**

257.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

258.  This claim is brought by all Plaintiffs against all State Defendants.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        63

259.  For the same reasons that the SORA 2001, 2009, 2011 violate the contracts clause of the United States Constitution, that also violate the contracts clause of the Idaho State Constitution.

## XIX. TENTH CAUSE OF ACTION

**Violation of the Fifth Amendment to the United States Constitution under <u>42 U.S.C. § 1983</u> (Takings Clause)**

260.  Plaintiffs  incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

261.  Pursuant to 42 U.S.C., Section 1983, this claim is brought by all Plaintiffs against all State Defendants.

262. SORA 2001, 2009, 2011, by placing residential and movement restrictions on Plaintiffs, unconstitutionally restricts Plaintiffs' property rights to the point that constitutes a regulatory taking requiring just compensation.

263.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XX.  ELEVENTH CAUSE OF ACTION

**Violation of Article II, Section I of the Idaho Constitution  (Separation of Powers)**

264.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

265.  This claim is brought by all Plaintiffs against all State Defendants.

266. SORA 2001, 2009, 2011 violates the States Separation of Powers doctrine as

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        64

it limits the judicial power of sentence finality as the law vacates existing court judgments regarding sex offenders' classifications, and community notification and reverse final court judgments setting the length of time that sex offenders must register.

267.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XXI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Honorable Court for the following:

1.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the due process clause of the United States Constitution (U.S. CONST., Amend. XIV);

2.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the due process clause of the Idaho Constitution (ID CONST., Article I, § 13 );

3.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the First Amendment to the United States Constitution (U.S. CONST., Amend. I);

4.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the right to practice religion without governmental interference protected by the Idaho Constitution (ID CONST., Article I, § 4 );

5.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the equal protection clause of the United States Constitution (U.S.

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -      65

CONST., Amend. IV);

6.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the right to equal protection guaranteed by the Idaho Constitution (ID CONST., Article I, § 1 );

7.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained in the United States Constitution (U.S. CONST., Amend. VIII).

8.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained in the Idaho Constitution (ID. CONST., Article I, § 6 );

9.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the ex post facto clause of the United States Constitution (U.S. CONST., Art. 1, §9, cl. 10);

10.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the ex post facto clause of the Idaho Constitution (ID CONST., Article I, § 16);

11.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the double jeopardy clause of the United States Constitution (U.S. CONST., Am. V, AM. XIV);

12.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the double jeopardy clause of the Idaho Constitution (ID CONST., Article

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -        66

I, §13);

13.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the contracts clause of the United States Constitution (U.S. CONST., Art. 1, § 10);

14.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the contracts clause of the Idaho Constitution (ID CONST., Article I, §16);

15.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the takings clause of the United States Constitution (U.S. CONST., Amend. V);

16.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the takings clause of the Idaho Constitution (ID CONST., Article I, § 14);

17.  A declaration that SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the separation of powers doctrine of the Idaho Constitution (ID CONST., Article I, § 3);

18.  A permanent injunction prohibiting each Defendant from enforcing SORA 2001, 2009, 2011;

19.  Reasonable costs and attorney's fees, and

- - -

- - -

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -       67

20.  Any further relief the Court deems appropriate.

DATED This 22nd day of September, 2016.

FULLER LAW OFFICES


By_____/s/ Greg J. Fuller_____
          GREG J. FULLER
          161 Main Avenue West
          P.O. Box L
          Twin Falls, ID 83303
          fullerlaw@cableone.net
          (208) 734-1602

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF -          68