LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
CLAY R. SMITH, ISB #6385
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:      (208) 334-2400
Facsimile:      (208) 854-8073
steven.olsen@ag.idaho.gov
clay.smith@ag.idaho.gov

      Attorneys for All Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN and JANE DOES 1-134,<br><br>      Plaintiffs,<br><br>vs.<br><br>LAWRENCE WASDEN, Attorney General<br>of the State of Idaho, *et al.*,<br><br>      Defendants. | Case No. 1:16-cv-429-DCN<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

THE COMPLAINT'S ALLEGATIONS ........................................................................... 1

RELEVANT FED. R. CIV. P. 12(b) STANDARDS ....................................................... 4

ARGUMENT ..................................................................................................................... 5

I.   THE PLAINTIFFS' FACIAL CHALLENGE TO SORA FAILS AS A MATTER OF
     LAW ......................................................................................................................... 5

     A.   The Challenged SORA Provisions Do Not Punish Sex Offenders ......................... 6

          1.   Relevant United States Supreme Court, Ninth Circuit and Idaho
               Decisions ................................................................................................ 6

               a.   The Seminal United States Supreme Court Decision ..................... 6

               b.   Ninth Circuit Post-*Smith* Decisions ................................................. 8

               c.   Idaho Post-*Smith* SORA Decisions................................................. 10

          2.   Application of the Foundational Decisions to Plaintiffs' Punishment-
               Based Claims ......................................................................................... 12

               a.   Expansion of Aggravated Offenses ................................................ 12

               b.   Access and Proximity Restrictions ................................................. 13

     B.   The Challenged SORA Provisions Do Not Deny Due Process ............................. 16

          1.   Vagueness ................................................................................................ 16

          2.   Procedural and Substantive Due Process................................................ 19

          3.   Contracts Clause ..................................................................................... 20

     C.   The Challenged SORA Provisions Do Not Violate The Equal Protection
          Clause.................................................................................................................... 22

     D.   SORA Cannot Violate The Free Exercise Clause As A Matter Of State Law ......24

E.    The Complaint's SORA Takings Claim Allegations Do Not Establish A Ripe Controversy ..................................................................................................25

II.   THE COMPLAINT'S AS-APPLIED CHALLEGES FAIL TO STATE A CLAIM BECAUSE THEY DO NOT IDENTIFY WITH RESPECT TO EACH CAUSE OF ACTION WHICH OF THE 134 PLAINTIFFS HAVE SUFFERED THE ALLEGED CONSTITUTIONAL INJURY ..........................................................................................27

CONCLUSION ....................................................................................................... 28

ADDENDUM

# TABLE OF CASES AND AUTHORITIES

## Cases

*ACLU of Nevada v. Masto*, 670 F.3d 1046 (9th Cir. 2012) ............................................ 9

*Allen v. Wright*, 468 U.S. 737 (1984) ..................................................................... 5

*Allied Structural Steel Co. V. Spannaus*, 438 U.S. 234 (1978) .............................. 21, 22

*Angov v. Lynch*, 788 F.3d 893 (9th Cir. 2013) ...................................................... 25

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ........................................................ 1

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ............................................. 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 4-5, 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 5

*Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000) ................................ 17

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*. 462 F.3d 219 (2d Cir. 2006), *abrogated on other grounds, Bond v. United States*, 564 U.S. 211 (2011) ...................................... 6

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) .................................. 24

*Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141 (9th Cir. 2001) ................... 17

*CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 299 P.3d 186 (2013) ........ 21

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ................................................. 17, 18

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) ................................................. 17

*Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948 (9th Cir. 2011) ........... 25

*Commonwealth v. Baker*, 295 S.W.3d 437 (Ky. 2009) .......................................... 15-16

*Cook v. Brewer*, 637 F.3d 1002 (9th Cir. 2011) ..................................................... 4

*Covington v. Jefferson County*, 137 Idaho 777, 53 P.3d 826 (2002) ......................... 26

*Doe v. Harris*, 640 F.3d 972 (9th Cir. 2011) ........................................................ 20

*Doe v. Harris*, 302 P.3d 598 (Cal. 2013) ............................................................. 21

*Doe v. Miami-Dade County*, 845 F.3d 1180 (5th Cir. 2017) ........................................ 16

*Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005) ............................................................... 15

*Energy Reserves Group, Inc. v. Kan. Power and Light Co.*, 459 U.S. 400 (1983) ..................... 21

*Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008) ........................................ 22

*Gospel Missions of Cal. v. City of Los Angeles*, 419 F.3d 1042 (9th Cir. 2005) ......................... 17

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................... 17

*Groves v. State*, 156 Idaho 552, 328 P.3d 532 (Ct. App. 2014)........................................ 11, 12, 13

*Hatton v. Bonner*, 356 F.3d 955 (9th Cir. 2004).......................................................... 9

*Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934) ...................................... 21

*Horner v. Ponderosa Pine Logging*, 107 Idaho 1111, 695 P.2d 1250 (1985)............................. 25

*Kansas v. Hendricks*, 521 U.S. 346 (1997)........................................................... 7, 8

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)............................................... 8, 15

*Kimel v. Bd. of Regents*, 528 U.S. 62 (2000) ............................................. 23

*Knox v. State*, No. 44807, 2017 WL 4321282 (Idaho Ct. App. Sept. 29, 2017)........................ 12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)............................................. 24

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084 (9th Cir. 2010)............................ 6

*Litmon v. Harris*, 768 F.3d 1237 (9th Cir. 2014)............................................... 8, 16, 20

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)................................... 26

*Mann v. Georgia Dep't of Corr.*, 653 S.E.3d 740 (Ga. 2007) ..................................... 26

*Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd of Psychology*, 228 F.3d 1043 (9th Cir. 2000) ................................................................. 19

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ....................................................... 22

*People v. Howard*, 2017 IL 120443............................................................. 19

*People v. Morales*, 52 N.Y.S.3d 612 (App. Div. 2017) (*per curiam*) ......................... 19

*People v. Mosley*, 344 P.3d 788 (Cal. 2015)..........................................................................15

*People v. Tucker*, 879 N.W.2d 906 (Mich. Ct. App. 2015) (*per curiam*)....................................15

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993)...................2

*Ray v. State*, 133 Idaho 96, 982 P.2d 931 (1999)..........................................................10

*Rea v. Matteucci*, 121 F.3d 483 (9th Cir. 1997) .........................................................19

*Roper v. Simmons*, 543 U.S. 551 (2005).......................................................................23

*Shaw v. Patton*, 832 F.3d 556 (10th Cir. 2016) ...........................................................14

*Sherbert v. Verner*, 374 U.S. 398 (1963) .....................................................................2

*State v. Cordingley*, 154 Idaho 762, 302 P.3d 730 (2013)............................................24

*Smith v. Doe*, 538 U.S. 84 (2002) .....................................................................*passim*

*Sorrentino v. Godinez*, 777 F.3d 410 (7th Cir. 2015) ...................................................26

*State v. Gragg*, 146 Idaho 74, 137 P.3d 461 (Ct. App. 2005)...............................10, 11

*State v. Johnson*, 152 Idaho 41, 266 P.3d 1146 (2011) ..................................11, 13, 21

*State v. Longest*, 149 Idaho 782, 241 P.3d 955 (2010) ..............................................21

*State v. Pollard*, 908 N.E.2d 1145 (Ind. 2009) ...........................................................15

*State v. Smith*, 146 Idaho 822, 293 P.3d 1221 (2009).................................................2

*United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012) ..............................................10

*United States v. Juvenile Male*, 670 F.3d 999 (2012).................................................20

*United States v. Salerno*, 481 U.S. 739 (1987) ............................................................5

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................16, 17

*United States Trust Co. v. New Jersey*, 431 U.S. 1 (1977)............................................22

*Vasquez v. Foxx*, No. 15-cv-8854, 2016 WL 7178465 (N.D. Ill. Dec. 9, 2016) ...................26

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .....................................................17

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008) ................................ 5

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) .................................................... 2, 17

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*,
47d U.S. 172 (1985) ........................................................................................................... 25, 26

# TABLE OF AUTHORITIES

## Statutes

Idaho Code § 18-101.5 ....................................................................................................... 18

Idaho Code §§ 18-1801 to -8331 ........................................................................................ 1

Idaho Code § 18-8302 ....................................................................................................... 10

Idaho Code § 18-8305 ....................................................................................................... 17

Idaho Code § 18-8305(1)(g) .............................................................................................. 17

Idaho Code § 18-8305(1)(k) .............................................................................................. 17

Idaho Code § 18-8310(1) ............................................................................................. 11, 12

Idaho Code § 18-8327 ....................................................................................................... 12

Idaho Code § 18-8329 .................................................................................................. 12, 24

Idaho Code § 18-8329(1)(a) ............................................................................. 13, 14, 16, 24

Idaho Code § 18-8329(1)(b) ........................................................................................ *passim*

Idaho Code § 18-8329(1)(d) ......................................................................................... 13, 14

Idaho Code § 18-8329(2) ................................................................................................... 15

Idaho Code § 18-8329(2)(f) ............................................................................................... 13

Idaho Code § 18-8329(3) ................................................................................................... 14

Idaho Code § 18-8331 ....................................................................................................... 12

Idaho Code §§ 18-8401 to -8414 ......................................................................................... 3

Idaho Code § 18-8403 ........................................................................................... 23

Idaho Code § 18-8411 ........................................................................................... 23

Idaho Code §§ 20-501 to -549 .............................................................................. 23

Idaho Code § 20-508 ............................................................................................. 23

Idaho Code §§ 73-401 to -404 .............................................................................. 24

Idaho Code § 73-403(2) ........................................................................................ 24

Mich. Comp. Laws §§ 28.733(f) and 28.734 ....................................................... 15

28 U.S.C. § 1342 ..................................................................................................... 1

28 U.S.C. § 1367(a) ................................................................................................. 1

28 U.S.C. § 1988 ..................................................................................................... 4

42 U.S.C. § 1983 ............................................................................................... 2, 27

42 U.S.C. §§ 2000bb to 2000bb-4 ....................................................................... 24

## Rules

Fed. R. Civ. P. 8(a)(2) .................................................................................. 1, 4, 27

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 16, 24

Fed. R. Evid. 201(b)(2) ........................................................................................ 24

## Constitutional Provisions

Idaho Const. Art. I, § 16 .................................................................................. 3, 21

Idaho Const. Art. II, § 1 ....................................................................................... 16

Idaho Const. Art. III ............................................................................................... 1

Idaho Const. Art. XI, § 1 ........................................................................................ 4

Idaho Const. Art. XI, § 8 ............................................................................... 1, 4, 16

Idaho Const. Art. XI § 16.................................................................................... 27

U.S. Const. Art. I, §. 9, cl. 3 ................................................................................ 3

U.S. Const. Art. I, § 10, cl. 1 .............................................................................. 3

**Other Authorities**

1998 Idaho Sess. Laws 1276................................................................................ 11

5 Charles Alan Wright *et al.*, *Federal Practice and Procedure* (3D ED. Apr. 2017
  Westlaw Update)................................................................................................ 27

Idaho—the Official Website of the State of Idaho—K-12 Schools,
https://www.idaho.gov/education/k-12 .............................................................. 24

*Merriam-Webster's Collegiate Dictionary* (10th ed. 1998) ....................................... 18

Spencer Klein, *The New Unconstitutionality of Juvenile Sex Offender Registration:
  Suspending the Presumption of Constitutionality for Laws That Burden Juvenile Offenders*,
  111 Mich. L. Rev. 1365 (2017)........................................................................... 23

## INTRODUCTION

Despite its length (145 pages without exhibits), the Amended Complaint for Injunctive and Declaratory Relief (Complaint) is substantively and procedurally deficient.  Substantively, it raises facial and several as-applied challenges to the Idaho Sexual Offender Registration Notification and Community Right-to-Know Act (SORA), Idaho Code §§ 18-1801 to -8331, that fail as a matter of law and warrant dismissal under Fed. R. Civ. P. 12(b)(6).  Procedurally, it raises as-applied challenges on behalf of 134 "John and Jane Does" but eschews any attempt to tie the myriad alleged untoward consequences of SORA to any particular Doe—with exception of the last cause of action alleging violation of Article XI, Section 8 of the Idaho Constitution.  It is thus impossible to know whether a particular plaintiff has suffered injury from, for example, the statute's residence or school-proximity restrictions.  The Complaint, in other words, names a very large group of persons as plaintiffs and identifies an extensive menu of potential draconian impacts from SORA's application but does not correlate any particular Doe with any particular draconian impact.  This pleading approach not only ignores Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" requirement but also fails to establish Article III standing other than for the small group alleging violation of Article XI, Section 8.  To the extent not dismissed on substantive grounds, the Complaint should be dismissed with leave to file another that complies with Rule 8(a)(2).

## THE COMPLAINT'S ALLEGATIONS

The Complaint has ten substantive parts.

- The first alleges jurisdiction under 28 U.S.C. § 1342 with respect to United States Constitution-based claims brought pursuant to 42 U.S.C. § 1983 and under 28 U.S.C. § 1367(a) with respect to Idaho Constitution-based claims.  ECF No. 4 ¶ 1.

- The second and third describe the 134 plaintiffs in a largely formulaic manner (*id.* ¶¶ 2-136) and identify 41 defendants.  The latter include four state officials, the Sexual Offender

Management Board and its 11 members, and 25 county sheriffs.  *Id.* ¶¶ 138-143.[1]

- The fourth alleges that plaintiffs have standing because they "are directly affected by the Sexual Offender Registry and accompanying statutes/laws and their unconstitutional enforcement."  *Id.* § 144.

- The fifth describes SORA's amendments since its 1998 repeal of the original 1993 statute and reenactment.  *Id.* ¶¶ 145-179.

- The sixth alleges, without reference to particular plaintiffs, negative impacts from SORA in ten areas: reporting, surveillance and supervision; family and parenting; housing; employment; education; travel; speech and Internet; false information and public stigmatization; vagueness and requirement inflexibility; and exposure to registration "by the federal government, other states or tribal governments, and local municipalities."  *Id.* ¶¶ 181-199.

- The seventh and eighth allege that SORA is not rationally related to the goal of public safety or to the community risk posed by individual registrants.  *Id.* ¶¶ 200-225.

- The ninth alleges that the Idaho Legislature's response to *State v. Smith*, 146 Idaho 822, 293 P.3d 1221 (2009), violated due process insofar the 2009 amendments "require[e] all sexual offenders, whether violent or not, to be classified as aggravated offenders, and to be treated exactly the same as VSPs (i.e., to remain on the Registry for life)."  *Id.* ¶¶ 226-232.

- The tenth alleges twelve causes of action:

  o Due process violations under the Fourteenth Amendment because of SORA's vagueness and its subjecting sexual offenders "to new restrictions and requirements, regardless of any actual risk to society and without the possibility of any hearing and without any requirement by the State of Idaho provide offenders

---

[1] The Sexual Offender Management Board is not a "person" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).  It therefore must be dismissed under Fed. R. Civ. P. 12(b)(1) as to all causes of action on the basis of its immunity from unconsented suit in federal court.  *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145–46 (1993).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 2

with any notice of their classification or any new prohibitions or requirements" and "fails to further any legitimate governmental purpose." *Id.* ¶¶ 236, 237.

o      Free exercise of religion violations under the First Amendment "[b]ecause churches and other places of worship fall within the places certain sex offenders may not 'knowingly be' within five hundred (500) feet of under [SORA], regardless of the actual known risk posed by these offenders[.]" *Id.* ¶ 241.

o      Substantive due process violations under the Fourteenth Amendment[2] because SORA "impinges on their fundamental rights to free association, travel, and to raise their children without undue governmental interference." *Id.* ¶ 245.

o      Equal protection violations under the Fourteenth Amendment[3] because "the Idaho legislature has created two (2) separate but similarly situated groups, one (1) between fourteen (14) and eighteen (18) years of age [subject to the Juvenile Sex Offender Registration Notification and Community Right-to-Know Act (JSORA), Idaho Code §§ 18-8401 to -8414], and one (1) eighteen (18) years of age and older, members of each group having committed and been found guilty of one (1) or more of a group of included criminal offenses." *Id.* ¶ 252.

o      Cruel and unusual punishment violations under the Eighth Amendment because "anyone convicted of a crime with any "sexual element" or any crime that is considered an "aggravated" offense, no matter when they were convicted, is considered a sex offender under [SORA] and is subject to community notification and registration requirements." *Id.* ¶ 259.

o      Ex Post Facto Clause violations under Article I, Section 9, Clause 3 because "[t]he effect and intent of [SORA] are punitive and impose new punishments, including but not limited to the affirmative disability of having to register in person every twelve (12) months, banishment from their families and communities, on offenders convicted before their enactment." *Id.* ¶ 263.

o      Double Jeopardy Clause violations under the Fifth Amendment because SORA "impose[s] new punishments on persons previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism." *Id.* ¶ 267.

o      Contracts Clause violations under Article I, Section 10, Clause 1 of the United States Constitution and Article I, Section 16 of the Idaho Constitution because SORA "operates as a substantial impairment to the preexisting contractual

---

[2] Plaintiffs caption this cause of action as arising under the First Amendment but presumably maintain it under the Due Process Clause of the Fourteenth Amendment.
[3] Plaintiffs caption this cause of action as arising under the First Amendment but presumably maintain it under the Equal Protection Clause of the Fourteenth Amendment.

relationship between the state and Plaintiffs Guilty Plea Agreements by imposing new terms not negotiated which drastically increase, and, or require lifetime supervision, registration and community notification." *Id.* ¶ 271.

o     Takings Clause violations under the Fifth Amendment because SORA places "residential and movement restrictions on Plaintiffs, unconstitutionally restricts Plaintiffs' property rights to the point that constitutes a regulatory taking requiring just compensation." *Id.* ¶ 279.

o     Separation-of-powers violations under Article XI, Section 1 of the Idaho Constitution because SORA "limits the judicial power of sentence finality as the law vacates existing court judgments regarding sex offenders' classifications, and community notification and reverses final court judgments setting the length of time that sex offenders must register." *Id.* ¶ 283.

o     Police power violations under Article XI, Section 8 of the Idaho Constitution because John Does 4, 7, 18, 53, 62, 80, 85, 100, 105 and 132 "had been unconditionally released from custody, probation/parole and any sex offender registration requirements prior to the enactment of Idaho SORNA 2001, 2009, 2011" and "were, therefore, not in any special relationship with the government of the state of Idaho at the time of the enactment of SNORA 2001, 2009, 2011." *Id.* ¶ 287.

The Complaint, finally, requests a declaration that "SORNA 2001, 2009, 2011" both facially and as applied to them violates the United States and Idaho Constitutions and a permanent injunction prohibiting defendants from enforcing it. ECF No. 4 at 142-44.[4] Attorney's fees and costs under 28 U.S.C. § 1988 also are requested. ECF No. 4 at 142.

## RELEVANT FED. R. CIV. P. 12(b) STANDARDS

Fed. R. Civ. P. 8(a)(2) deems adequate "a short and plain statement of the claim showing that the pleader is entitled to relief." "'[T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Ashcroft*

---

[4] The precise significance of the term "SORNA 2001, 2009, 2011" as used through the Complaint is unclear. For present purposes, defendants will assume that it refers to those SORA provisions giving rise to the constitutional infirmities alleged in the twelve causes of action.

*v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As *Iqbal* further explained, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Where multiple individuals join in a challenge to various provisions of a statute, the complaint must satisfy the plausibility standard as to each plaintiff and claim.  *Cf. Allen v. Wright*, 468 U.S. 737, 752 (1984) ("Typically, however, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.").

## ARGUMENT

## I.   THE PLAINTIFFS' FACIAL CHALLENGE TO SORA FAILS AS A MATTER OF LAW

Facial constitutional challenges to a statute must clear a high hurdle:

> Under *United States v. Salerno*, 481 U.S. 739 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," *i.e.,* that the law is unconstitutional in all of its applications. . . . While some Members of the Court have criticized the *Salerno* formulation, all agree that a facial challenge must fail where the statute has a "'plainly legitimate sweep.'"

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citation omitted).  Consequently, "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."  *Id.* at 449-50.  This stringent standard derives from a concern over "premature interpretation of statutes on the basis of factually barebones records[,]" compromising judicial constraint values by formulating constitutional rules "broader than is required by the precise facts to which [they are]

to be applied[,]" and "short circuit[ing] the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 450 (internal quotations marks omitted).  In sum, "[f]acial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010) (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 228 (2d Cir. 2006), *abrogated on other grounds*, *Bond v. United States*, 564 U.S. 211, 216 (2011)).

Plaintiffs' shotgun medley of claims falls into five groups: unconstitutional retroactive imposition of punishment (the ex post facto, cruel and unusual punishment, double jeopardy claims, state separation-of-powers, and state police power claims); denial of due process (the vagueness, lack of rational basis and Contracts Clause claims); discriminatory treatment of adults and juveniles (the equal protection claim); denial of access to places of worship (the free exercise of religion claim); and property-use impairment (the taking claim).  The ex post facto claim serves as the anchor for large punishment cluster; *i.e.*, its outcome determines the fate of the entire group. The remaining groups have distinct analytical requirements and easily pass muster under facial challenge standards.  The latter three, as currently pled, also fail to state an as-applied claim.

### A. The Challenged SORA Provisions Do Not Punish Sex Offenders

#### 1. Relevant United States Supreme Court, Ninth Circuit and Idaho Decisions

##### a. The Seminal United States Supreme Court Decision

In *Smith v. Doe*, 538 U.S. 84 (2002), the Supreme Court rejected a facial Ex Post Facto Clause-based challenge to the registration and notification provisions of the Alaska Sex Offender

Registration Act.[5]   Quoting from *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997), the Court

described its task in assessing the offenders' claim:

> We must "ascertain whether the legislature meant the statute to establish 'civil'
> proceedings." . . . If the intention of the legislature was to impose punishment, that
> ends the inquiry. If, however, the intention was to enact a regulatory scheme that is
> civil and nonpunitive, we must further examine whether the statutory scheme is
> "'so punitive either in purpose or effect as to negate [the State's] intention' to deem
> it 'civil.'"

538 U.S. at 92 (citation omitted).   The first inquiry—"[w]hether a statutory scheme is civil or

criminal"—presented "'a question of statutory construction'" answered by considering "the

statute's text and its structure to determine the legislative objective." *Id.* at 93.  As in *Hendricks*

which dealt with sex-offender postincarceration confinement, the Court found "'[n]othing on the

face of the statute'" suggesting an intent "'to create anything other than a civil . . . scheme designed

to protect the public from harm.'"   *Id.*   That facial construction was not negated by the

registration's codification in the state criminal code, a conclusion "strengthened" by law's

"vest[ing] the authority to promulgate implementing regulations with the Alaska Department of

---

[5] The Court summarized the registration requirements as follows:

> The sex offender must provide his name, aliases, identifying features, address, place
> of employment, date of birth, conviction information, driver's license number,
> information about vehicles to which he has access, and postconviction treatment
> history. . . . He must permit the authorities to photograph and fingerprint him.

538 U.S. at 90.  The registration requirements continued for 15 years "[i]f the offender was
convicted of a single, nonaggravated sex crime" and for life if the offender "was convicted of an
aggravated sex offense or two or more sex offenses." *Id.*  Criminal sanctions attached for failure
to comply with the registration requirements.  Alaska made the following information available to
the public *via* the Internet:

> "the sex offender's or child kidnapper's name, aliases, address, photograph,
> physical description, description[,] license [and] identification numbers of motor
> vehicles, place of employment, date of birth, crime for which convicted, date of
> conviction, place and court of conviction, length and conditions of sentence, and a
> statement as to whether the offender or kidnapper is in compliance with [the update]
> requirements . . . . or cannot be located."

*Id.*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT - 7

Public Safety" which is "an agency charged with enforcement of both criminal and civil regulatory laws." *Id.* at 96.

The Court drew from the seven factors used in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), in examining the effects element of the *Hendricks* formulation.  It deemed five to be the "most relevant" for purposes of analyzing the Alaska law: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  538 U.S. at 97. The Court resolved each against the statute's challengers.  In so doing, it held that "[t]he rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive" and found a legitimate nonpunitive purpose in the law's "'alerting the public to the risk of sex offenders in their communit[y].'"  *Id.* at 102-03.  The Court further counseled that "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."  *Id.* at 103.  It added that "[t]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences" and that "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause."  *Id.* at 103-04.  In sum, the challengers failed to present "'the clearest proof'" that the Alaska "statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'"  *Id.* at 92 (some internal quotation marks omitted).

### b.      Ninth Circuit Post-*Smith* Decisions

*Litmon v. Harris*, 768 F.3d 1237 (9th Cir. 2014), contains the most recent application of

the *Smith* analysis by the Court of Appeals.  It rejected an Ex Post Facto Clause challenge to the California registration statute that required lifetime in-person reporting by sexually violent predators.  Responding to the offender's claim that "'the cumulative burden of the [registration] requirement'" rendered the requirement punishment and that *Smith* was distinguishable because the Alaska law did not impose an in-person reporting duty, the Court observed that "there is no reason to believe that the addition of such a requirement would have changed the outcome" and noted that a comparable requirement had been upheld in *ACLU of Nevada v. Masto*, 670 F.3d 1046 (9th Cir. 2012).  A decade earlier in *Hatton v. Bonner*, 356 F.3d 955 (9th Cir. 2004), the Court denied a habeas corpus petition arising from a state court conviction for violation of the California registration requirement.  In so doing, it applied the *Smith* analysis and, as to the "'most significant factor'" of a rational connection to a purpose other than punishment, viewed it as "clear" that the requirement bore "a rational connection to the nonpunitive purpose of public safety."  *Id.* at 966. It further found the requirement non-excessive, noting *Smith*'s disclaimer of the need for "'a close or perfect fit'" with the public safety goal and concluding that the challenged provision bore a reasonable relationship to that objective.  *Id.*

Finally, *United States v. Elk Shoulder*, 738 F.3d 948 (9th Cir. 2013), exemplifies another unsuccessful attempt to confine *Smith* to its particular facts and time.  There, the Court of Appeals was unmoved by the registrant's argument that

> today SORA's registration requirement imposes significant hardships on offenders, who are "held to public ridicule by community members," and face difficulty finding and maintaining both employment and housing.  He notes that local newspapers frequently maintain interactive maps of the registered residences of sex offenders, and cites "reports of incidents of citizens standing on street corners bearing signs with the names and addresses of offenders blaz[o]ned across the front."

*Id.* at 954.  The panel reasoned that *Smith* "contemplated that information from the Alaska sex

registration statute would be available on the internet, but determined that such internet notification was nonpunitive because its principal effect was to 'inform the public for its own safety, not to humiliate'" and that the Court found "no evidence that the Alaska act had 'led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords.'"  *Id.*; *see also United States v. Elkins*, 683 F.3d 1039, 1045 (9th Cir. 2012) ("We . . . join our sister circuits in holding that requiring a person to register under [the federal] SORA based on a conviction entered prior to SORA's enactment does not violate the Ex Post Facto Clause.").

### c.   Idaho Post-*Smith* SORA Decisions

The Idaho Court of Appeals applied the *Smith* analysis in *State v. Gragg*, 146 Idaho 74, 137 P.3 461 (Ct. App. 2005), in rejecting an ex post facto defense to a SORA-based conviction brought by an individual convicted in 1989 for sexual abuse of a child who failed to register when he moved from one county to another.  Relying on Idaho Code § 18-8302 and its construction by the Idaho Supreme Court in *Ray v. State*, 133 Idaho 96, 982 P.2d 931 (1999), the court first held nothing offered by the registrant or discovered independently "alter[ed] the conclusion that a civil scheme was intended."  *Gragg, id.* at 77, 137 P.3d at 464.  It then rejected the defendant's shunning[6] and adverse employment impact[7] arguments as foreclosed by *Smith* in concluding that he had failed to show "that the effects of sex offender registration under the Act are so punitive as to override the legislative intent to create a civil, regulatory scheme."  *Id.* at 78, 137 P.3d at 465.

---

[6] "Gragg argues that registering as a sex offender is humiliating and dissemination of that information over the Internet acts as a state mandated scarlet letter encouraging public shunning of individuals required to register."  *Id.* at 77, 137 P.3d at 464.

[7] "Gragg also argues that the effects of the Act are punitive because the public dissemination of sex offender registration information through the Act has rendered him unable to get a job."  *Id.* at 78, 137 P.3d at 465.

The court additionally deemed SORA's in-person registration requirement as not "the equivalent of an affirmative disability to such a level as to constitute punishment." *Id.*

More recently in *Groves v. State*, 156 Idaho 552, 328 P.3d 532 (Ct. App. 2014), the Court of Appeals upheld the 2009 amendment expanding the scope of "aggravated offenses" carrying a lifetime registration obligation.  Groves was convicted in 2000 of lewd conduct with a minor under the age of 16, an offense which became aggravated under the amendment.  *Id.* at 553-54, 328 P.3d at 533-34.  It adopted the analysis in *State v. Johnson*, 152 Idaho 41, 266 P.3d 1146 (2011), where the Supreme Court discussed not only ex post facto but also Contracts Clause and due process challenges to the amendment. As to the first, it stated:

> SORA has changed little since this Court considered it in *Ray* and since the Court of Appeals considered it in *Gragg*.  The presently codified SORA findings in I.C. § 18–8302 are nearly identical to the version we evaluated in *Ray*. *Compare* 1998 Idaho Sess. Laws 1276 *with* I.C. § 18–8302 (Supp.2011).  This Court has thus already concluded that SORA is regulatory in purpose.  Furthermore, the Court of Appeals' analysis in *Gragg* aptly demonstrated that SORA, generally, is nonpunitive in effect.  The only real issue, therefore, is whether the Legislature's classification of Johnson's offense as an "aggravated offense," subsequent to his guilty plea, is an exception to the general understanding that SORA is nonpunitive. [¶] Johnson highlights the fact that the 2009 amendments would forever preclude him from petitioning for exemption despite the apparent likelihood that he will not reoffend.  The test that we must apply, however, focuses on whether the challenged statute is, "by the clearest proof," so punitive as to override the Legislature's regulatory purpose. . . . The fact that a sexual offender, convicted of a certain class of crime, may be required to register for life is not so punitive that it overrides SORA's regulatory purpose.  This is particularly so because the Legislature need not make particularized findings in the regulatory context.

*Id.* at 45-46, 266 P.3d at 1150-51.  The *Johnson* analysis, however, was technically *dicta* because the court remanded the case with instructions to dismiss the petition on the ground that it was filed in the challenger's criminal proceeding rather than, as required by Idaho Code § 18-8310(1), in a new civil proceeding.  *Id.* at 48, 266 P.3d at 1153 ("It is rather obvious [from § 18-8310(1)] that a person convicted out of state could not petition for relief in the criminal proceeding that resulted

in the conviction.  That, plus the fact that registration is regulatory, rather than criminal, in nature indicates it to be a civil proceeding.").  Groves, in contrast, filed an appropriate petition under § 18-8310(1), and the court of appeals' decision was thus on the merits.  *Accord Knox v. State*, No. 44807, 2017 WL 4321282, at *3 (Idaho Ct. App. Sept. 29, 2017).

### 2.     Application of the Foundational Decisions to Plaintiffs' Punishment-Based Claims

Plaintiffs' ex post facto claims focus principally on two components of SORA: (1) amendments creating the "aggravated offense" lifetime registration requirement or expanding the scope of such offenses (§ 18-8310(1)) and (2) the access and proximity restrictions with respect to schools or certain other facilities (§ 18-8329).  They also raise generalized complaints about the burden imposed by the registration and notification requirements on their time, ability to travel and public stigmatization.[8]  *Smith* and subsequent decisions plainly resolve the latter complaints, and they will not be discussed further for present purposes.  The first two claims warrant only brief discussion in the context of a facial challenge.

### a.     Expansion of Aggravated Offenses

The common denominator among virtually all plaintiffs is their lifetime registration requirement arising by virtue of having been convicted of an aggravated offense.  None has been classified as a violent sexual offender, and only six (Does 51, 54, 55, 56, 71, 91) are recidivists.  But, just as *Smith* expressly foreclosed many registration and notification-based claims, it effectively foreclosed this challenge on a facial basis in holding that the Alaska legislature could impose "particular regulatory consequences" on entire classes of sex offenders without the need to make individualized assessments of dangerousness.  538 U.S. at 103-04.  One of those

---

[8] It does not appear from the complaint that plaintiffs challenge on ex post facto or other grounds the employment prohibition in § 18-8327 or the group dwelling restrictions in § 18-8331.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 12

"consequences" under the Alaska statute was a lifetime registration duty for all persons "convicted of an aggravated sex offense or of two or more sex offenses." *Id.* at 90.  Consistent with *Smith*, therefore, *Johnson* reasoned, and *Groves* held, that the expansion of offenses subject to the aggravated offense classification under the 2009 SORA amendments did not violate the Ex Post Facto Clause.

### b.      Access and Proximity Restrictions

Section 18-8329(1)(a) prohibits sex offenders from being

> upon or to remain on the premises of any school building or school grounds in this state, or upon other properties posted with a notice that they are used by a school, when the person has reason to believe children under the age of eighteen (18) years are present and are involved in a school activity or when children are present within thirty (30) minutes before or after a scheduled school activity.

Section 18-8329(1)(b) further prohibits knowingly loitering

> on a public way within five hundred (500) feet from the property line of school grounds in this state, including properties posted with a notice that they are used by a school, when children under the age of eighteen (18) years are present and are involved in a school activity or when children are present within thirty (30) minutes before or after a scheduled school activity.

Section 18-8329(2) contains a detailed set of exceptions to both restrictions for, *inter alia*, sexual offenders exercising their right to vote or engaging in certain activities on school property after receiving permission from the school district.[9]  Section 18-8329(1)(d) prohibits residing "within

---

[9] Section 18-8329(2)(f) provides:
> (2) The provisions of subsections (1)(a) and (1)(b) of this section shall not apply when the person:
>> (f) Contacts the school district office annually and prior to his first visit of a school year and has obtained written permission from the district to be on the school grounds or upon other property posted with a notice that the property is used by a school. For the purposes of this section, "contacts the school district office" shall include mail, facsimile machine, or by computer using the internet. The provisions of this subsection are required for an individual who:
>>> (i) Is dropping off or picking up a child or children and the person is the child or children's parent or legal guardian; or

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 13

five hundred (500) feet of the property on which a school is located, measured from the nearest point of the exterior wall of the offender's dwelling unit to the school's property line" but excludes residences established by the offender prior to July 1, 2006.

As a threshold matter, the various exceptions without any further analysis preclude a successful facial challenge to these restrictions.  At least some, and perhaps many, sex offenders will be granted access to school property for purposes such as transporting their children back and forth from home, participating in parent-teacher conferences or attending a play in which a child performs.  The grandfathering of pre-July 1, 2006 residencies also may allow some offenders to live within the 500-foot safety zone.  But these exceptions also serve to buttress the conclusion that safety zone provisions like those in § 18-8329(1)(a), (b) and (d) easily survive Ex Post Facto Clause scrutiny.   Two recent cases have direct relevance on this score.

In *Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016), the court rejected an ex post facto challenge to an Oklahoma statute's prohibition of sex offenders "living within 2,000 feet of a school, playground, park, or child care center."  *Id.* at 559.  It applied the *Smith* analysis and resolved each effect consideration against categorizing the restriction as punitive.   With respect to the "[m]ost significant" factor—a rational relationship to a nonpunitive purpose—the court

---

(ii) Is attending an academic conference or other scheduled extracurricular school event with school officials present when the offender is a parent or legal guardian of a child who is participating in the conference or extracurricular event. "Extracurricular" means any school-sponsored activity that is outside the regular curriculum, occurring during or outside regular school hours including, but not limited to, academic, artistic, athletic or recreational activities; or

(iii) Is temporarily on school grounds, during school hours, for the purpose of making a mail, food or other delivery.

Section 18-8329(3) authorizes school districts to impose "more stringent safety and security requirements for employees and nonemployees while they are in district facilities and/or on district properties[,]" with notice of those requirements given "to any individual listed in subsection (2)(f)."  The Complaint does not allege the existence of any such requirements.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 14

stated that "the residency restrictions need not facilitate sex-crime investigations in order to be tied to a non-punitive purpose." *Id.* at 574.  It was enough that "the residency restrictions are rationally designed to reduce sex offenders' temptations and opportunities to re-offend." *Id.* (citing *Doe v. Miller*, 405 F.3d 700, 716 (8th Cir. 2005), and *State v. Pollard*, 908 N.E.2d 1145, 1152 (Ind. 2009)).  "At least arguably," the court reasoned, "'a 2000–foot restriction reduces opportunity, diminishes temptation, and thereby decreases the risk that a proven child sex offender will reoffend.'" *Id.*

The California Supreme Court upheld a similar 2000-foot safety zone in *People v. Mosley*, 344 P.3d 788 (Cal. 2015), against a claim that, as an alleged punishment increasing the penalty for a crime beyond its statutory maximum, *Apprendi v. New Jersey*, 530 U.S. 466 (2000), required a jury determination to impose the restriction on a sex offender.  In finding the restriction nonpunitive and thus outside the *Apprendi* rule, the court followed the ex post facto path blazed by *Smith*.  344 P.3d at 1062-69.  As to the rational connection consideration, it agreed with California Court of Appeal "that '[t]he residency restriction[s] [of Jessica's Law are] rationally connected to the nonpunitive purpose of protecting children in and around schools and parks.'" *Id.* at 1068.  However, it disagreed with the lower court's holding that the restriction was overbroad, relying on *Smith* for the conclusion that the involved regulation need not be "the most efficacious and least disruptive approach to affording . . . protection." *Id.* at 1069; *see also People v. Tucker*, 879 N.W.2d 906, 925-26 (Mich. Ct. App. 2015) (*per curiam*) (discussing school safety zone decisions from other jurisdictions, and concluding that while "the *Mendoza–Martinez* factors point us in both directions when it comes to student safety zones[,]" the sex offender failed to meet the "'clearest proof'" standard in challenging the 1000-foot zone in Mich. Comp. Laws §§ 28.733(f) and 28.734); *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky. 2009) (1000-foot

residency restriction invalidated); *cf. Doe v. Miami-Dade County*, 846 F.3d 1180, 1185-86 (5th Cir. 2017) (complaint challenging 2500-foot safety zone stated a claim for relief under the Ex Post Facto Clause).

The 500-foot safety zone under § 18-8329(1)(a) and (b) is significantly less than those in Oklahoma, California and Michigan.  It is also significantly less than the Kentucky residency restriction or the county ordinance zone at issue in *Miami-Dade County*.   This modest distance, together with the exceptions, reflect the legislature's attempt to balance in a nonpunitive manner the safety interests of children with the ability of sex offenders to carry on ordinary, lawful activities.  Plaintiffs' facial challenge fails to state a claim.[10]

### B.    The Challenged SORA Provisions Do Not Deny Due Process

Plaintiffs appear to raise four species of Due Process claims: vagueness, procedural due process, substantive due process, and plea agreement (or contract) impairment.  None succeeds as a facial challenge.

### 1.    Vagueness

The "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  *United States v. Williams*, 553 U.S. 285, 304 (2008).

---

[10] As for the remaining "punishment" claims, the Ninth Circuit has recognized that "the inquiry into whether a law constitutes retroactive punishment in violation of the Double Jeopardy Clause is identical to that with respect to the Ex Post Facto Clause." *Litmon*, 768 F.3d at 1242.  Rejection of the ex post facto claim also would resolve the separation-of-powers cause of action under Article II, Section 1.  *See State v. Cardona*, 102 Idaho 668 n.3, 670, 637 P.2d 1164, 1167 n.3 (1981) (statute making certain crimes committed with a fireman subject to additional, consecutive sentence did not violate Article II, Section 1 by infringing upon trial court's sentencing discretion). The Article XI, Section 8-based claim in the Twelfth Cause of Action misconstrues the provision's scope.  It simply prohibits use of the "police powers of the state . . . to permit *corporations* to conduct their business in such a manner as to infringe the equal rights of individuals, or the general well being of the state."  [Emphasis added.]  The provision has no relevance to this case generally or to the specific plaintiffs identified in that cause of action.  The claim therefore should be dismissed in its entirety under Rule 12(b)(6).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 16

Impermissible vagueness exists "if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages *seriously* discriminatory enforcement." *Id.* (emphasis added); *see City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (same). "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). As the Supreme Court observed in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110; *accord Gospel Missions of Cal. v. City of Los Angeles*, 419 F.3d 1042, 1047 (9th Cir. 2005); *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149-50 (9th Cir. 2001). Impermissible vagueness thus exists when the predicate law is "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Morales*, 527 U.S. at 60 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). The vagueness doctrine, in short, asks the question in a facial challenge whether the particular statute or regulation imposes no "normative standard" that can be identified by those subject to its requirements and those charged with its enforcement. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000).

Here, plaintiffs chiefly focus on the SORA reporting requirements in § 18-8305 the term "loiter" in § 18-8329(1)(b). ECF No. 4 ¶¶ 193-195. Section 18-8305(1)(g) requires the registrant to provide "[t]he name and address of any place where the offender is a student or will be a student unless the offender is only participating in courses remotely through the mail or the internet[,]" while § 18-8305(1)(k) requires the registrant to provide "[t]he name and address of any place where the offender is employed or will be employed and the name and address of any place where

the offender works as a volunteer or otherwise works without remuneration or if the offender does not have a fixed place of employment, a description of normal travel routes or the general areas in which the offender works." These reporting obligations are quite specific on their face and do not implicate due process vagueness concerns.

SORA does not define the term "loiter," but the common dictionary meaning gives it substance: "to remain in an area with no obvious reason." *Merriam-Webster's Collegiate Dictionary* at 686 (10th ed. 1998). Section 18-8329(1)(b) expressly defines the relevant "area" through the "public way" requirement and the 500-foot safety zone. Although a law enforcement officer must make a determination concerning whether the person is remaining for no discernable reason, "loiter" itself provides a comprehensible standard particularly when joined with the "knowingly" mental element. *See* Idaho Code § 18-101.5 ("The word 'knowingly,' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission."). *Morales*, in this regard, is not to the contrary. There, the Supreme Court invalidated on vagueness grounds an ordinance prohibiting "criminal gang members" for "loitering" in public places with one another or others—with the term "loitering" defined as "to remain in any one place with no apparent purpose." 527 U.S. at 47. What "doom[ed]" the provision, in the plurality's view, was "not the product of uncertainty about the normal meaning of 'loitering,' but rather about what loitering is covered by the ordinance and what is not"—*i.e.*, some forms of loitering were unlawful but others were not without an adequate standard for distinguishing between the permissible and impermissible. *Id.* at 57; *see id.* at 56-57 ("[i]t is difficult to imagine how any citizen of the city of Chicago standing in a public place with a group of people would know if he or she had an

'apparent purpose'").[11]  Here, the statute prohibits *any* loitering within the safety zone by a sex

offender.  *See People v. Morales*, 52 N.Y.S.3d 612, 613 (App. Div. 2017) (*per curiam*) ("[T]he

loitering statutes that the Court of Appeals has upheld against attacks on the ground of vagueness

were sustained precisely because they prohibited loitering for a specific purpose or loitering in a

specific place of restricted public access.").  The facial challenge to use of the term "loiter" fails

because its ordinary meaning does have a reasonably discernable normative standard for

compliance and enforcement purposes.

### 2.    Procedural and Substantive Due Process

While hardly clear, the procedural due process violation appears premised on the Idaho

legislature's 2009 amendment addressing the 2009 *Smith* decision.  ECF No. 4 ¶¶ 226-232.

However, settled precedent forecloses procedural due process challenges to legislative actions.

*E.g.*, *Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997) ("When a state alters a state-conferred

property right through the legislative process, 'the legislative determination provides all the

process that is due[.]'").

As for substantive due process, the challenged SORA provisions' rational relationship to a

legitimate governmental object discussed above with respect to ex post facto claim forecloses

plaintiffs' claims in the absence of a fundamental right being denied.  *See, e.g.*, *Nat'l Ass'n for*

*Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir.

2000) ("To withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational

relationship to a legitimate state interest, unless it makes a suspect classification or implicates a

fundamental right.").  If a fundamental right exists, "the statute will be subject to strict scrutiny

---

[11] Defendants thus disagree with the suggestion in *People v. Howard*, 2017 IL 120443, to the extent
that it construes *Morales* as turning simply on the "no apparent purpose" component of the Chicago
ordinance.  *Id.* ¶ 29.

and is invalidated unless it is 'narrowly tailored to serve a compelling state interest.'"  *United States v. Juvenile Male*, 670 F.3d 999, 1012 (2012).  "Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment."  *Id.*  Plaintiffs refer to rights that they apparently consider rising to the level demanding strict scrutiny—free association, travel, and to raise their children without undue governmental interference (ECF No. 4 ¶ 245)—but no question exists that, *inter alia*, the lifetime registration, school access and school proximity provisions can be applied without having any impact on those alleged interests.  *See Litmon*, 768 F.3d at 1241 ("Litmon cannot cite any authorities suggesting that the registration requirement implicates the fundamental right to be free from restraint"); *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (observing that "Defendants fail to identify the fundamental right implicated by SORNA's registration requirement" and that "[s]everal other circuits have similarly rejected substantive due process challenges to sex offender registration, holding that sex offenders do not have a fundamental right to avoid publicity").  Their facial substantive due process claim accordingly fails.

### 3.   Contracts Clause

"Under the Due Process Clause, criminal defendants have a right to enforce the terms of their plea bargains enforced" as "'construed in accordance with state law.'"  *Doe v. Harris*, 640 F.3d 972, 975 (9th Cir. 2011).  In California, for example,

> the general rule . . . is that a plea agreement is "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy[.]' . . . It follows, also as a general rule, that requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her

> conviction.  To that extent, then, the terms of the plea agreement can be affected by changes in the law.

*Doe v. Harris*, 302 P.3d 598, 605 (Cal. 2013) (citation omitted).  In Idaho as well, "[a] plea agreement is similar to a contract and is often analyzed according to contract principles."  *State v. Longest*, 149 Idaho 782, 785, 241 P.3d 955, 958 (2010).  Plea agreements with persons pleading guilty or *nolo contendere* to offenses subject to SORA do not differ in this regard.  *See Johnson*, 152 Idaho at 46, 266 P.3d at 1151 ("Johnson agreed to 'comply with *any* legal requirements concerning registration as a sex offender' in Idaho 'or any other states where [he] resides.'  The language is obviously forward-looking in nature, including both his then-present residence and any future residence, indicating an intent that he must register pursuant to any future requirements.  It is unclear, then, how the 2009 SORA amendments could impair Johnson's plea agreement.").

The Idaho Supreme Court also adheres to the United States Supreme Court's construction of the federal Contracts Clause, U.S. Const. Art. I, § 10, cl. 1, in applying Article I, Section 16 of the state constitution.  *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 387, 299 P.3d 186, 194 (2013) ("challenges based upon article I, § 16 should be evaluated under the federal framework and rules").  The latter Court, in turn, has counseled that "[a]lthough the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people. '"  *Energy Reserves Group, Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 410 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934); *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978) ("it is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States").  Nevertheless, "[i]f the Contract Clause is to retain any meaning at all, . . . it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police

power." *Id.* at 242.  To resolve the "*some* limits" issue, the Supreme Court has settled most recently upon a three-step inquiry into (1) whether the challenged statute impaired a contractual relationship, (2) whether the impairment was substantial and, if so, (3) whether an adequate justification exists for the impairment.  *E.g., id.* at 243-44; *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17, 21 (1977).  There is, consequently, ample basis to imply into *any* plea agreement the implicit right of the legislature to impose retroactively nonpunitive duties such as those in SORA to further public safety.  However, that issue need not be resolved for purposes of resolving the facial validity of the SORA provisions challenged by plaintiffs.  It is enough to recognize the obvious:  Neither the federal nor the state Contracts Clause precludes retroactive application of SORA to *all* sex offenders whose convictions were accompanied by a plea agreement.  Those constitutional provisions also have *no* application at all to sex offenders whose convictions were not the product of a plea deal.

### C.     The Challenged SORA Provisions Do Not Violate The Equal Protection Clause

The Equal Protection Clause polices statutory or regulatory classifications.  *E.g.*, *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008) ("[o]ur equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others'").  The Supreme Court has often made clear where the "subject matter is local, economic, social, and commercial" and "does not involve a fundamental right or suspect classification[,]" it will uphold the law "if 'there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational.'"  *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)).

Because age is not a suspect classification, "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." *Kimel v. Bd. of Regents*, 528 U.S. 62, 83 (2000).

Plaintiffs complain at length here about the differing treatment accorded juveniles under JSORA. ECF No. ¶¶ 249-255. This claim fails both facially and as-applied for the straightforward reason that juveniles and adults are not similarly situated classes. The Supreme Court explained why in *Roper v. Simmons*, 543 U.S. 551 (2005):

> Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. First, as any parent knows and as the scientific and sociological studies respondent and his amici cite tend to confirm, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. . . . [¶] The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. . . . [¶] The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.

*Id.* at 569-70; *see generally* Spencer Klein, *The New Unconstitutionality of Juvenile Sex Offender Registration: Suspending the Presumption of Constitutionality for Laws That Burden Juvenile Offenders*, 115 Mich. L. Rev. 1365, 1382 (2017) ("Recent Supreme Court decisions have created a special constitutional space for children. The underlying ethos of this jurisprudential shift is that 'children are different.' Each case in this line recognizes certain distinguishing characteristics that make all children different for constitutional purposes.") (footnote omitted).

Plaintiffs also ignore another critical difference between minors subject to JSORA and individuals subject to SORA. The latter have been sentenced under the Juvenile Corrections Act, Idaho Code §§ 20-501 to -549, not under Title 18. Idaho Code § 18-8403 (definition of "juvenile sex offender"). If a juvenile has been prosecuted under Title 18, SORA applies. *Id.* § 18-8411; *see also id.* § 20-508 (waiver of jurisdiction and transfer of juvenile to be held for adult criminal

proceedings).  So, even without reference to age, sex offenders subject to SORA and JSORA are not similarly situated.

### D.       SORA Cannot Violate The Free Exercise Clause As A Matter Of State Law

Plaintiffs allege that "[b]ecause churches and places of worship" exist with a 500-foot safety zone established by § 18-8329(1)(a) (ECF No. 4 ¶ 241), SORA abridges their free exercise of religion.  In the context of a facial challenge, this claim fails because a high percentage of primary and secondary schools in Idaho are publicly operated.[12]  Section 18-8329, moreover, must be applied consistently with the Free Exercise of Religion Protected Act (FERPA), Idaho Code §§ 73-401 to -404, absent a codified or uncodified exclusion from FERPA.  *See id.* § 73-403(2) ("State laws that are enacted or adopted on or after the effective date of this chapter are subject to this chapter unless the law explicitly excludes application by reference to this chapter.").  FERPA was largely derived from the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, and "RFRA did more than merely restore the balancing test used in the *Sherbert* [*v. Verner*, 374 U.S. 398 (1963)] line of cases; it provided even broader protection for religious liberty than was available under those decisions."  *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761 n. 3 (2014); *see also State v. Cordingley*, 154 Idaho 762, 765, 302 P.3d 730, 733 (2013) ("The legislative history of the FERPA makes it clear that in adopting the statute, the Idaho legislature intended to adopt the 'compelling interest test' contained in its federal counterpart, the Religious Freedom Restoration Act").  Plaintiffs thus seek to invalidate § 18-8329(1)(a) as to applications that FERPA, not SORA, controls.  It must be presumed that defendants will act in

---

[12]    *See* Idaho—The Official Website of the State of Idaho—K-12 Schools, https://www.idaho.gov/education/k-12 (last visited Nov. 14, 2017).  Defendants request judicial notice of the facts appearing on this site pursuant to Fed. R. Evid. 201(b)(2).  *See, e.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (judicially noticeable matters may be considered in resolving Rule 12(b)(6) motions).

accordance with FERPA's requirements.  *See, e.g.*, *Angov v. Lynch*, 788 F.3d 893, 905 (9th Cir. 2013) ("The presumption of regularity has been applied far and wide to many functions performed by government officials."); *Horner v. Ponderosa Pine Logging*, 107 Idaho 1111, 1114, 695 P.2d 1250, 1253 (1985) ("In Idaho, as in most states, there is a presumption of regularity in the performance of official duties by public officers.").

### E.    The Complaint's SORA Takings Claim Allegations Do Not Establish A Ripe Controversy

Plaintiffs' conclusory allegations of a takings in violation of the Fifth Amendment (ECF No. 4 ¶ 279) presumably relates to the proximity restriction in § 18-8329(1)(b).  They leave to the reader's imagination exactly how such a takings has occurred.  Nevertheless, what is clear is that the Complaint's allegations do not establish a ripe controversy under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).

As a usual matter, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Williamson*, 471 U.S. at 195.  The Ninth Circuit has further explained:

> "[T]here is no constitutional injury until the plaintiff has availed himself of the state's procedures for obtaining compensation for the injury, and been denied compensation." . . . An as applied takings claim must satisfy both prongs of the test set out in *Williamson*. . . . First, a plaintiff must demonstrate that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." . . . Second, the plaintiff must have sought, and been denied, "compensation through the procedures the State has provided for doing so."

*Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 958 (9th Cir. 2011) (citations omitted).  Here, no legitimate dispute exists that the 500-foot safety zone can be applied without affecting a sex offender's ownership interest.  Obvious illustrations come to mind: grandfathered

residences, renters, and offenders who, but for the restriction, would have purchased a residence located within the zone.  Only an as-applied challenge, therefore, can be lodged.

Plaintiffs' as-applied theory presumably is that one or more of them have been (1) prohibited from continuing to reside in a non-grandfathered home that the offender acquired before becoming subject to SORA or that became situated with the 500-foot zone because of a newly-constructed or established school and (2) deprived of the home's *entire* value.  *Cf. Mann v. Georgia Dep't of Corr.*, 653 S.E.3d 740, 744 (Ga. 2007).  Under that theory, the offender would have access to an inverse condemnation action under Idaho law.  *See Covington v. Jefferson County*, 137 Idaho 777, 781, 53 P.3d 826, 832 (2002) (holding that under the United States Constitution, "[t]he proper analysis applicable to a regulatory taking has been set forth in *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992), requiring compensation when the regulation in question permanently deprives the owner of 'all economically beneficial uses' of his land.").  That plaintiffs seek only prospective, non-monetary relief does not eliminate the lack of a ripe takings claim under *Williamson*.  *See Sorrentino v. Godinez*, 777 F.3d 410, 414 (7th Cir. 2015) (request solely for equitable relief subject to the *Williamson* ripeness rule where no basis existed to conclude that property had been taken for a non-public use and no facial challenge to the state legislative action was possible).  The governmental defendant, of course, has the opportunity to oppose the action on the ground that no regulatory taking occurred.  *See Vasquez v. Foxx*, No. 16-cv-8854, 2016 WL 7178465, at *7-*8 (N.D. Ill. Dec. 9, 2016).  And, even if plaintiffs have some other takings theory in mind, the Complaint fails to allege that no unexhausted state court remedy exists to obtain just compensation.  This claim is accordingly insufficient under *Williamson* either because it is not ripe or because plaintiffs do not allege the lack of a state court compensation remedy.

//

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 26

II. **THE COMPLAINT'S AS-APPLIED CHALLENGES FAIL TO STATE A CLAIM BECAUSE THEY DO NOT IDENTIFY WITH RESPECT TO EACH CAUSE OF ACTION WHICH OF THE 134 PLAINTIFFS HAVE SUFFERED THE ALLEGED CONSTITUTIONAL INJURY**

Several causes of action fail not only on their face but also in an as-applied context for specific substantive reasons; *i.e.*, the equal protection, free exercise of religion, and takings claims. All but one of the as-applied challenges, however, fail for a consistent pleading omission: They do not identify which plaintiffs have suffered the alleged constitutional injury and thus do not satisfy the quite lenient demand of Rule 8(a)(2). The exception to this general pleading omission is the Twelfth Cause of Action alleging violation of Article XI, Section 16 of the Idaho Constitution.

As Professor Wright and his colleagues explain, "[w]hat constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1217 (3d ed. Apr. 2017 Westlaw Update). The Complaint is neither short nor plain. It devotes 93 pages to describing the plaintiffs, 14 pages to tracing SORA amendments, 16 pages to cataloging the statute's claimed shortcomings, and 11 pages to alleging 12 causes of action that, as discussed above, are specious in a facial context. Throughout this prolixity, the Complaint refers collectively to the "Plaintiffs." To illustrate: ¶ 144 alleges standing for "[a]ll Doe Plaintiffs" because SORA has "directly caused violations of Doe Plaintiffs rights under the U.S. and Idaho Constitution[;]" ¶¶ 180 through 199 contain the factual allegations of SORA's impact on the "plaintiffs[;]" and ¶¶ 238, 246, 257, 260, 264, 268, 272, 276, 280, 284 and 288 aver that "*Each* of the Plaintiffs" (emphasis added) has suffered the particular claim's constitutional injury. The Complaint also includes in each cause of action the boilerplate allegation that "[p]ursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants." ECF No. 4 ¶¶ 234, 240,

244, 248, 258, 262, 266, 270, 274, 278, 282, 286.

The Complaint therefore asserts, at least on its face, that every plaintiff has suffered, and is suffering, the various species of unconstitutionality (including the Twelfth Cause of Action nominally brought only on behalf of ten Does).  But that cannot be true.  It is not plausible to suggest that all 134 plaintiffs have children of school age; been denied the ability to exercise their religion freely; would have established a residence within 500 feet of a school but for safety zone or have been deprived of the value of a non-grandfathered home; have had property taken without just compensation; or have entered into plea agreements *in lieu* of going to trial.  The Complaint, in sum, does not measure up to *Iqbal*'s plausibility standard.  It should be dismissed with leave to file a second amended complaint that explicitly identifies which Doe alleges the particular constitutional injury.  Plaintiffs so pled with respect to the Twelfth Cause of Action; they must do it with respect to the prior eleven.

## **CONCLUSION**

Defendants' motion to dismiss the amended complaint should be granted.

DATED: November 17, 2017

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By____/s/ *Clay R. Smith*_____
        Clay R. Smith
        Deputy Attorney General

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT - 28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 17, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Greg J. Fuller
fullerlaw@cableone.net
*Attorney for Plaintiffs*

 /s/ *Clay R. Smith*
Clay R. Smith
Deputy Attorney General

# ADDENDUM

**Sexual Offender Registration Notification
and Community Right-to-Know Act
Idaho Code §§ 18-8301 to -8331**

## § 18-8301. Short title

This chapter shall be known and may be cited as the "Sexual Offender Registration Notification and Community Right-to-Know Act."

## § 18-8302. Findings

The legislature finds that sexual offenders present a danger and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those served by the organizations. Finally, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sexual crimes. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

## § 18-8303. Definitions

As used in this chapter:

(1) "Aggravated offense" means any of the following crimes: 18-1506A (ritualized abuse of a child); 18-1508 (lewd conduct); 18-4003(d) (murder committed in the perpetration of rape); 18-4502 (first-degree kidnapping committed for the purpose of rape, committing an infamous crime against nature, committing any lewd and lascivious act upon any child under the age of sixteen years or for purposes of sexual gratification or arousal); 18-4503 (second-degree kidnapping where the victim is an unrelated minor child and the kidnapping is committed for the purpose of rape, committing an infamous crime against nature, committing any lewd and lascivious act upon any child under the age of sixteen years or for purposes of sexual gratification or arousal); 18-6101 (rape, but excluding section 18-6101(1) where the victim is at least twelve years of age or the defendant is eighteen years of age); 18-6608 (forcible sexual penetration by use of a foreign object); 18-6602(1) (sex trafficking); and any other offense set forth in section 18-8304, Idaho Code, if at the time of the commission of the offense the victim was below the age of thirteen (13) years or an offense that is substantially similar to any of the foregoing offenses under the laws of another jurisdiction or military court or the court of another country.

(2) "Board" means the sexual offender management board described in section 18-8312, Idaho Code.

(3) "Central registry" means the registry of convicted sexual offenders maintained by the Idaho state police pursuant to this chapter.

(4) "Certified evaluator" means either a psychiatrist licensed by this state pursuant to chapter 18, title 54, Idaho Code, or a master's or doctoral level mental health professional licensed by this state pursuant to chapter 23, chapter 32, or chapter 34, title 54, Idaho Code. Such person shall have by education, experience and training, expertise in the assessment and treatment of sexual offenders,

1

and such person shall meet the qualifications and shall be approved by the board to perform psychosexual evaluations in this state, as described in section 18-8314, Idaho Code.

(5) "Department" means the Idaho state police.

(6) "Employed" means full-time or part-time employment exceeding ten (10) consecutive working days or for an aggregate period exceeding thirty (30) days in any calendar year, or any employment that involves counseling, coaching, teaching, supervising or working with minors in any way regardless of the period of employment, whether such employment is financially compensated, volunteered or performed for the purpose of any government or education benefit.

(7) "Foreign conviction" means a conviction under the laws of Canada, Great Britain, Australia or New Zealand, or a conviction under the laws of any foreign country deemed by the U.S. department of state, in its country reports on human rights practices, to have been obtained with sufficient safeguards for fundamental fairness and due process.

(8) "Incarceration" means committed to the custody of the Idaho department of correction or department of juvenile corrections, but excluding cases where the court has retained jurisdiction.

(9) "Jurisdiction" means any of the following: a state, the District of Columbia, the commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the United States Virgin Islands, the federal government or a federally recognized Indian tribe.

(10) "Minor" means an individual who has not attained the age of eighteen (18) years.

(11) "Offender" means an individual convicted of an offense listed and described in section 18-8304, Idaho Code, or a substantially similar offense under the laws of another jurisdiction or military court or the court of another country deemed by the U.S. department of state, in its country reports on human rights practices, to have sufficient safeguards for fundamental fairness and due process.

(12) "Offense" means a sexual offense listed in section 18-8304, Idaho Code.

(13) "Psychosexual evaluation" means an evaluation that specifically addresses sexual development, sexual deviancy, sexual history and risk of reoffense as part of a comprehensive evaluation of an offender.

(14) "Recidivist" means an individual convicted two (2) or more times of any offense requiring registration under this chapter.

(15) "Residence" means the offender's present place of abode.

(16) "Student" means a person who is enrolled on a full-time or part-time basis, in any public or private educational institution, including any secondary school, trade or professional institution or institution of higher education.

(17) "Violent sexual predator" means a person who was designated as a violent sexual predator by the sex offender classification board where such designation has not been removed by judicial action or otherwise.

## § 18-8304. Application of chapter--Rulemaking authority

(1) The provisions of this chapter shall apply to any person who:

(a) On or after July 1, 1993, is convicted of the crime, or an attempt, a solicitation, or a conspiracy to commit a crime provided for in section 18-909 (assault with intent to commit rape, infamous crime against nature, or lewd and lascivious conduct with a minor, but excluding mayhem, murder or robbery), 18-911 (battery with intent to commit rape, infamous crime against nature, or lewd and lascivious conduct with a minor, but excluding mayhem, murder or robbery), 18-919 (sexual exploitation by a medical care provider), 18-1505B (sexual abuse and exploitation of a vulnerable

adult), 18-1506 (sexual abuse of a child under sixteen years of age), 18-1506A (ritualized abuse of a child), felony violations of 18-1507 (sexual exploitation of a child), 18-1508 (lewd conduct with a minor child), 18-1508A (sexual battery of a minor child sixteen or seventeen years of age), 18-1509A (enticing a child over the internet), 18-4003(d) (murder committed in perpetration of rape), 18-4116 (indecent exposure, but excluding a misdemeanor conviction), 18-4502 (first degree kidnapping committed for the purpose of rape, committing the infamous crime against nature or for committing any lewd and lascivious act upon any child under the age of sixteen, or for purposes of sexual gratification or arousal), 18-4503 (second degree kidnapping where the victim is an unrelated minor child), 18-5605 (detention for prostitution), 18-5609 (inducing person under eighteen years of age into prostitution), 18-5610 (utilizing a person under eighteen years of age for prostitution), 18-5611 (inducing person under eighteen years of age to patronize a prostitute), 18-6101 (rape, but excluding 18-6101(1) where the defendant is eighteen years of age), 18-6110 (sexual contact with a prisoner), 18-6602 (incest), 18-6605 (crime against nature), 18-6608 (forcible sexual penetration by use of a foreign object), 18-6609 (video voyeurism where the victim is a minor or upon a second or subsequent conviction), 18-7804 (if the racketeering act involves kidnapping of a minor) or 18-8602(1), Idaho Code, (sex trafficking).

(b) On or after July 1, 1993, has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another jurisdiction or who has a foreign conviction that is substantially equivalent to the offenses listed in paragraph (a) of this subsection and enters this state to establish residence or for employment purposes or to attend, on a full-time or part-time basis, any public or private educational institution including any secondary school, trade or professional institution or institution of higher education.

(c) Has been convicted of any crime, an attempt, a solicitation or a conspiracy to commit a crime in another jurisdiction, including military courts, that is substantially equivalent to the offenses listed in paragraph (a) of this subsection and was required to register as a sex offender in any other state or jurisdiction when he established residency in Idaho.

(d) Pleads guilty to or has been found guilty of a crime covered in this chapter prior to July 1, 1993, and the person, as a result of the offense, is incarcerated in a county jail facility or a penal facility or is under probation or parole supervision, on or after July 1, 1993.

(e) Is a nonresident regularly employed or working in Idaho or is a student in the state of Idaho and was convicted, found guilty or pleaded guilty to a crime covered by this chapter and, as a result of such conviction, finding or plea, is required to register in his state of residence.

(2) An offender shall not be required to comply with the registration provisions of this chapter while incarcerated in a correctional institution of the department of correction, a county jail facility, committed to the department of juvenile corrections or committed to a mental health institution of the department of health and welfare.

(3) A conviction for purposes of this chapter means that the person has pled guilty or has been found guilty, notwithstanding the form of the judgment or withheld judgment.

(4) The department shall have authority to promulgate rules to implement the provisions of this chapter.

## § 18-8305. Central registry--Notice to agencies

(1) The department shall establish and maintain a central sexual offender registry separate from other records maintained by the department. The information contained in the registry shall be in digital form or include links or identification numbers that provide access to the information in

other databases in which it is included in digital form. The registry shall include, but is not limited to, the following information:

(a) Name and all aliases that the offender has used or under which the offender has been known including the offender's primary or given name, nicknames and pseudonyms generally, regardless of the context in which they are used, any designations or monikers used for self-identification in internet communications or postings and traditional names given by family or clan pursuant to ethnic or tribal tradition;

(b) A complete physical description of the person including any identifying marks, such as scars or tattoos, the offender's date of birth including any date the offender uses as his or her purported date of birth and the offender's social security number including any number the offender uses as his or her purported social security number;

(c) The criminal history of the offender including the jurisdiction of all arrests and convictions, the name under which the offender was convicted of each offense, the status of parole, probation or supervised release; registration status; and the existence of any outstanding arrest warrants for the offender;

(d) The text of the provision of law defining the criminal offense for which the sexual offender is registered as formulated at the time the offender was convicted;

(e) The name and location of each hospital, jail or penal institution to which the offender was committed for each offense covered under this chapter;

(f) The address or physical description of each residence at which the offender resides;

(g) The name and address of any place where the offender is a student or will be a student unless the offender is only participating in courses remotely through the mail or the internet;

(h) The license plate number and a description of any vehicle owned or regularly operated by the sexual offender including any vehicle the offender drives, either for personal use or in the course of employment, regardless of to whom the vehicle is registered. The term "vehicle" includes watercraft and aircraft. To the extent the vehicle does not have a license plate, a registration number or other identifying information shall be provided;

(i) Any e-mail or instant messaging address used by the offender;

(j) The offender's telephone numbers including, but not limited to, fixed location telephone numbers, voice over internet protocol numbers and cell phone numbers;

(k) The name and address of any place where the offender is employed or will be employed and the name and address of any place where the offender works as a volunteer or otherwise works without remuneration or if the offender does not have a fixed place of employment, a description of normal travel routes or the general areas in which the offender works;

(l) Information regarding any professional license maintained by the offender that authorizes the offender to engage in an occupation or carry out a trade or business;

(m) Information about the offender's passport, if any, and if the offender is an alien, information about documents establishing the offender's immigration status including document type and number information for such documents and a digitized copy of the documents;

(n) A set of fingerprints and palm prints of the offender;

(o) A current photograph of the offender; and

(p) A photocopy of a valid driver's license or identification card issued to the offender, if any.

(2) The department shall adopt rules relating to providing notice of address changes to law enforcement agencies, developing forms, operating the central registry, reviewing and correcting records, and expunging records of persons who are deceased, whose convictions have been

reversed or who have been pardoned, and those for whom an order of expungement or relief from registration has been entered pursuant to section 18-8310, Idaho Code.

(3) The department shall develop and distribute to appropriate agencies the standardized forms necessary for the administration of the registry and shall provide appropriate agencies with instructions for completing and submitting the forms. The attorney general shall approve the forms and instructions prior to distribution.

(4) The department shall notify the attorney general of the United States and appropriate law enforcement agencies of any failure by an offender to comply with the requirements of this chapter and shall revise the registry to reflect the nature of that failure.

## § 18-8306. Notice of duty to register and initial registration

(1) When a person is sentenced for an offense identified in section 18-8304, Idaho Code, the prosecuting attorney shall seek and the court shall order a designated law enforcement agency to immediately photograph that person and obtain fingerprints and palm prints unless the person has been photographed and has provided fingerprints and palm prints previously for the same offense. Fingerprints, palm prints and photographs may be taken at the jail or correctional facility to which the person is remanded or sentenced. The fingerprints, palm prints and photographs taken pursuant to this subsection shall be submitted to the department as provided in section 67-3005, Idaho Code.
(2) A person convicted of an offense identified in section 18-8304, Idaho Code, and released on probation without a sentence of incarceration in a county jail or correctional facility, including release pursuant to a withheld judgment or release from any mental institution, shall be notified by the sentencing court of the duty to register pursuant to the provisions of this chapter and the offender shall register in accordance with this chapter no later than two (2) working days after sentence is imposed or judgment is withheld. The written notification shall be a form provided by the department and approved by the attorney general and shall be signed by the defendant. The court shall retain one (1) copy, provide one (1) copy to the offender, and submit one (1) copy to the central registry within three (3) working days of release.
(3) With respect to an offender convicted of a sexual offense identified in section 18-8304, Idaho Code, and sentenced to a period of immediate incarceration in a jail or correctional facility and subsequently released, placed on probation, or paroled, the department of correction or jail shall provide, prior to release from confinement, written notification of the duty to register and the offender shall register prior to his or her release. The written notification shall be a form provided by the department and approved by the attorney general and shall be signed by the offender. The department of correction or jail shall retain one (1) copy, provide one (1) copy to the offender, and submit one (1) copy to the central registry within three (3) working days of release.
(4) The sheriff of each county shall provide written notification, on a form provided by the Idaho transportation department and approved by the attorney general, of the registration requirements of this chapter to any person who enters this state from another jurisdiction and makes an application for an identification card or a license to operate a motor vehicle in this state. The written notice shall be signed by the person and one (1) copy shall be retained by the sheriff's office and one (1) copy shall be provided to the person.
(5) The notification form provided by the department and approved by the attorney general shall:
(a) Explain the duty to register, the procedure for registration and penalty for failure to comply with registration requirements;

(b) Inform the offender of the requirement to provide notice of any change of address within Idaho or to another jurisdiction within two (2) working days of such change and of the immediate notification requirements set forth in subsections (2) and (3) of section 18-8309, Idaho Code;

(c) Inform the offender of the requirement to register in a new jurisdiction within two (2) working days of changing residence to that jurisdiction, becoming employed in that jurisdiction or becoming a student in that jurisdiction; and

(d) Obtain from the offender and agency or court, the information required for initial registration in the central registry as set forth in section 18-8305, Idaho Code, and any other information required by rules promulgated by the department.

(6) The official conducting the notice and initial registration shall ensure that the notification form is complete, that the offender has read and signed the form, and that a copy is forwarded to the central repository within three (3) working days of the registration.

(7) No person subject to registration shall willfully furnish false or misleading information when complying with registration and notification requirements of this chapter.

(8) An offender required to register under this chapter shall initially register in the jurisdiction in which he or she was convicted as well as any other jurisdiction requiring registration under this chapter. If the jurisdiction in which the offender is initially required to register is Idaho, the offender shall register in the county in which he or she primarily intends to reside. The county of initial registration shall then notify the department, which shall notify any other county or jurisdiction in which the offender is required to register.

## § 18-8307. Registration

(1) Registration shall consist of a form provided by the department and approved by the attorney general, which shall be signed by the offender and shall require the information set forth in subsection (1) of section 18-8305, Idaho Code.

(2) At the time of registration, the sheriff shall obtain a photograph and fingerprints, in a manner approved by the department, and require the offender to provide full palm print impressions of each hand. A violent sexual predator shall pay a fee of fifty dollars ($50.00) to the sheriff at the time of the first calendar quarter registration and ten dollars ($10.00) per registration every subsequent quarter in the same calendar year. All other offenders shall pay an annual fee of eighty dollars ($80.00) to the sheriff for registration. The sheriff may waive the registration fee if the violent sexual predator or other offender demonstrates indigency. The fees collected under this section shall be used by the sheriff to defray the costs of violent sexual predator and other sexual offender registration and verification and for electronic notification, law enforcement information sharing and tracking. Irrespective of the classification or designation of the offender or predator, each county shall cause forty dollars ($40.00) per offender per year of the fees collected under this section to be used for development, continuous use and maintenance of a statewide electronic notification, information sharing and tracking system as implemented by the Idaho sheriffs' association.

(3) The sheriff shall forward the completed and signed form, photograph, fingerprints and palm prints to the department within three (3) working days of the registration.

(a) The official conducting the registration shall ensure that the notification form is complete and that the offender has read and signed the form.

(b) No person subject to registration shall furnish false or misleading information when complying with registration and notification requirements of this chapter.

(4)(a) Within two (2) working days of coming into any county to establish residence, an offender shall register with the sheriff of the county. The offender thereafter shall register annually, unless the offender is designated as a violent sexual predator, in which case the offender shall register with the sheriff every three (3) months as provided in this section. If the offender intends to reside in another jurisdiction, the offender shall register in the other jurisdiction within two (2) days of moving to that jurisdiction and will not be removed from the sexual offender registry in Idaho until registration in another jurisdiction is complete.

(b) A nonresident required to register pursuant to section 18-8304(1)(b), Idaho Code, shall register with the sheriff of the county where employed or enrolled as a student within two (2) working days of the commencement of employment or enrollment as a student in an educational institution, provided that nonresidents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register prior to the commencement of such employment.

(5) Registration shall be conducted as follows:

(a) For violent sexual predators the department shall mail a nonforwardable notice of quarterly registration to the offender's last reported address within three (3) months following the last registration;

(b) For all other sex offenders the department shall mail an annual, nonforwardable notice of registration to the offender's last reported address;

(c) Within five (5) days of the mailing date of the notice, the offender shall appear in person at the office of the sheriff in the county in which the offender is required to register for the purpose of completing the registration process;

(d) If the notice is returned to the department as not delivered, the department shall inform the sheriff with whom the offender last registered of the returned notice.

(6) All written notifications of duty to register as provided herein shall include a warning that it is a felony as provided in section 18-8327, Idaho Code, for an offender to accept employment in any day care center, group day care facility or family day care home, as those terms are defined in chapter 11, title 39, Idaho Code, or to be upon or to remain on the premises of a day care center, group day care facility or family day care home while children are present, other than to drop off or pick up the offender's child or children.

(7) An offender shall keep the registration current for the full registration period. The full registration period is for life; however, offenders may petition for release from the full registration period as set forth in section 18-8310, Idaho Code.

## § 18-8308. Verification of address and electronic monitoring of violent sexual predators

(1) The address or physical residence of an offender designated as a violent sexual predator shall be verified by the department between registrations.

(a) The procedure for verification shall be as follows:

(i) The department shall mail a nonforwardable notice of address verification every thirty (30) days between registrations, to each offender designated as a violent sexual predator.

(ii) Each offender designated as a violent sexual predator shall complete, sign and return the notice of address verification form to the department within seven (7) days of the mailing date of the notice. If the notice of address verification is returned to the department as not delivered, or if the signed notice is not returned on time, the department shall, within five (5) days, notify the sheriff with whom the offender designated as a violent sexual predator last registered.

7

(iii) The sheriff shall verify the address of the offender by visiting the offender's residence once every six (6) months or, if the offender fails to comply with the provisions of paragraph (a)(ii) of this subsection, at any reasonable time to verify the address provided at registration.

(2) The address or physical residence of any sex offender not designated as a violent sexual predator shall be verified by the department between registrations. The procedure for verification shall be as follows:

(a) The department shall mail a nonforwardable notice of address verification every four (4) months between annual registrations.

(b) Each offender shall complete, sign and return the notice of address verification form to the department within seven (7) days of the mailing date of the notice. If the notice of address verification is returned as not delivered or if the signed notice is not returned on time, the department shall notify the sheriff within five (5) days and the sheriff shall visit the residence of the registered offender at any reasonable time to verify the address provided at registration.

(3) Any individual designated as a violent sexual predator shall be monitored with electronic monitoring technology for the duration of the individual's probation or parole period as set forth in section 20-219(2), Idaho Code. Any person who, without authority, intentionally alters, tampers with, damages or destroys any electronic monitoring equipment required to be worn or used by a violent sexual predator shall be guilty of a felony.

(4) A sexual offender who does not provide a physical residence address at the time of registration shall report, in person, once every seven (7) days to the sheriff of the county in which he resides. Each time the offender reports to the sheriff, he shall complete a form provided by the department that includes the offender's name, date of birth, social security number and a detailed description of the location where he is residing. The sheriff shall visit the described location at least once each month to verify the location of the offender.

### § 18-8309. Duty to update registration information

(1) If an offender subject to registration changes his or her name, street address or actual address, employment or student status, the offender shall appear in person within two (2) working days after the change at the office of the sheriff of the county where the offender is required to register and notify the sheriff of all changes in the information required for that offender in the sex offender registry. Provided however, nonresidents employed in this jurisdiction in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, shall register before the commencement of such employment. Within three (3) working days after receipt of the notice, the sheriff shall notify the department of the changed information and the department shall notify all other counties and jurisdictions in which the offender is required to register. An offender satisfies the notification requirements set forth in this subsection if he or she appears in another jurisdiction in which registration is required and notifies that jurisdiction of the changed information.

(2) An offender required to register shall immediately notify the department of any lodging lasting seven (7) days or more, regardless of whether the lodging would be considered a residence as defined in section 18-8303, Idaho Code. The department shall immediately notify the jurisdiction in which the lodging will occur if different than the jurisdiction in which the offender is required to register.

8

(3) An offender required to register shall immediately notify the department of any changes in his or her vehicle information and of any changes in designations used for self-identification or routing in internet communications or postings or telephonic communications.

(4) If this jurisdiction is notified that an offender who is required to register is expected to commence residence, employment or school attendance in this jurisdiction, but the offender fails to appear for registration as required, this jurisdiction shall inform the jurisdiction that provided the notification that the offender failed to appear and shall follow the procedures for cases involving possible violations of registration requirements set forth in the rules of procedures promulgated by the department.

(5) An offender required to register in Idaho shall notify the county in which he or she is registered of his or her intent to commence residence, employment or school attendance outside of the United States. Once notified, the county shall notify the central registry, which shall notify all other counties and jurisdictions in which the offender is required to register and notify the United States marshals service and update the registry accordingly.

(6) Upon receipt of information pursuant to this section, the department shall notify the law enforcement agencies in the counties where the offender resides or will reside, enter information in the central registry and transmit the appropriate information as required pursuant to section 18-8324, Idaho Code. Upon receipt of a notice of an offender changing residence to another jurisdiction or entering another jurisdiction for employment purposes or to attend school, the department shall notify those agencies entitled to notification pursuant to section 18-8324, Idaho Code.

(7) The department shall notify the attorney general of the United States and appropriate law enforcement agencies of any failure by an offender to comply with the requirements of this chapter and revise the registry to reflect the nature of that failure.

### § 18-8310. Release from registration requirements--Expungement

(1) Registration under this act is for life; however, any offender, other than a recidivist, an offender who has been convicted of an aggravated offense, or an offender designated as a violent sexual predator, may, after a period of ten (10) years from the date the offender was released from incarceration or placed on parole, supervised release or probation, whichever is greater, petition the district court for a show cause hearing to determine whether the offender shall be exempted from the duty to register as a sexual offender. If the offender was convicted in Idaho, the offender shall file his or her petition in the county in which he or she was convicted. If the offender was convicted in a jurisdiction other than Idaho, then the offender shall file his or her petition in the county in which he or she resides. In the petition the petitioner shall:

(a) Provide clear and convincing evidence that the petitioner has completed any periods of supervised release, probation or parole without revocation;

(b) Provide an affidavit indicating that the petitioner does not have a criminal charge pending nor is the petitioner knowingly under criminal investigation for any violent crime or crime identified in section 18-8304, Idaho Code;

(c) Provide proof of service of such petition and supporting documents upon the county prosecuting attorney for the county in which the application is made and upon the central registry;

(d) Provide a certified copy of the judgment of conviction which caused the petitioner to report as a sexual offender;

(e) Provide clear and convincing evidence that the petitioner has successfully completed a sexual offender treatment program;

(f) Provide an affidavit demonstrating that the petitioner has no felony convictions during the period for which the petitioner has been registered; and

(g) Provide an affidavit demonstrating that the petitioner has committed no sex offenses during the period for which the petitioner has been registered.

(2) The county prosecuting attorney and the central registry may submit evidence, including by affidavit, rebutting the assertions contained within the offender's petition, affidavits or other documents filed in support of the petition.

(3) The district court may grant a hearing if it finds that the petition is sufficient. The court shall provide at least sixty (60) days' prior notice of the hearing to the petitioner, the county prosecuting attorney and the central registry. The central registry may appear or participate as a party.

(4) The court may exempt the petitioner from the registration requirement only after a hearing on the petition in open court and only upon proof by clear and convincing evidence and upon written findings of fact and conclusions of law by the court that:

(a) The petitioner has complied with the requirements set forth in subsection (1) of this section;

(b) The court has reviewed the petitioner's criminal history and has determined that the petitioner is not a recidivist, has not been convicted of an aggravated offense or has not been designated as a violent sexual predator; and

(c) It is highly probable or reasonably certain the petitioner is not a risk to commit a new violation for any violent crime or crime identified in section 18-8304, Idaho Code.

(5) Concurrent with the entry of any order exempting the petitioner from the registration requirement, the court may further order that any information regarding the petitioner be expunged from the central registry.

### § 18-8310A. District court to release from registration requirements--expungement

Any person who was convicted under section 18-6101 1., Idaho Code, as it existed before July 1, 2010, where such person would not have been convicted under section 18-6101(1) or (2), Idaho Code, may petition the district court for a determination to be exempted from the duty to register as a sexual offender. If the district court finds that such person would not have been convicted under section 18-6101(1) or (2), Idaho Code, then the district court may exempt the petitioner from the duty to register as a sexual offender and may order that any information regarding the petitioner be expunged from the central registry. In the petition, the petitioner shall:

(1) Provide a certified copy of the judgment of conviction which caused the petitioner to report as a sexual offender; and

(2) Provide an affidavit that states the following:

(a) The specific underlying facts of petitioner's conviction and that such facts do not come within the provisions of section 18-6101(1) or (2), Idaho Code;

(b) The petitioner does not have a criminal charge pending nor is the petitioner knowingly under criminal investigation for any crime identified in section 18-8304, Idaho Code; and

(c) The petitioner is not required to register as a sexual offender for any other reason set forth in this chapter.

10

## § 18-8311. Penalties

(1) An offender subject to registration who knowingly fails to register, verify his address, or provide any information or notice as required by this chapter shall be guilty of a felony and shall be punished by imprisonment in the state prison system for a period not to exceed ten (10) years and by a fine not to exceed five thousand dollars ($5,000). If the offender is on probation or other supervised release or suspension from incarceration at the time of the violation, the probation or supervised release or suspension shall be revoked and the penalty for violating this chapter shall be served consecutively to the offender's original sentence.

(2) An offender subject to registration under this chapter, who willfully provides false or misleading information in the registration required, shall be guilty of a felony and shall be punished by imprisonment in a state prison for a period not to exceed ten (10) years and a fine not to exceed five thousand dollars ($5,000).

## § 18-8312. Sexual offender management board--Appointment--Terms--Vacancies--Chairman--Quorum--Qualifications of members--Compensation of members

(1) A sexual offender management board is hereby created within the Idaho department of correction. The board shall consist of ten (10) voting members appointed by the governor by and with the advice and consent of the senate. Present members shall continue to serve for the balance of their initial terms of appointment. Thereafter, any member appointed or reappointed shall serve for a term of three (3) years. Members shall be eligible for reappointment to the board without limitation. The board shall be charged with the advancement and oversight of sexual offender management policies and practices statewide.

(2) Vacancies in the membership of the board shall be filled in the same manner in which the original appointments are made. Members appointed to a vacant position shall serve the remainder of the unexpired term.

(3) Qualifications of members.

(a) One (1) member of the board shall have, by education, experience and training, expertise in the assessment and treatment of adult sexual offenders.

(b) One (1) member of the board shall have, by education, experience and training, expertise in the assessment and treatment of juveniles who have been adjudicated for sexual offenses.

(c) One (1) member of the board shall have, by education, experience and training, expertise in cultural diversity and behavior of sexual offenders as they relate to assessment and treatment.

(d) One (1) member of the board shall be from the Idaho department of correction.

(e) One (1) member of the board shall be from the Idaho department of juvenile corrections.

(f) One (1) member of the board shall be an attorney who has experience in the prosecution of sexual offenders through the criminal justice process.

(g) One (1) member of the board shall be an attorney who has experience in the defense of sexual offenders through the criminal justice process.

(h) One (1) member of the board shall be from the Idaho sheriffs' association.

(i) One (1) member of the board shall be a representative of the public.

(j) One (1) member of the board shall have, by education, experience and training, expertise in postconviction sexual offender polygraph examination.

11

(4) In addition, there shall be advisory to the board, one (1) non-voting member representing the judiciary who shall be appointed by the chief justice of the Idaho supreme court. The term of appointment for the judicial member shall be four (4) years.

(5) The board may create subcommittees to address specific issues. Such subcommittees may include board members as well as invited experts and other stakeholders or participants.

(6) The board shall elect a chairman from its members.

(7) A quorum shall exist when a majority of the board is present.

(8) Members shall be compensated as provided by section 59-509(o), Idaho Code.

### § 18-8313. Removal of board members

The governor may remove members of the board for reasons of inefficiency, neglect of duty, malfeasance in office, commission of a felony or inability to perform the duties of office.

### § 18-8314. Powers and duties of the sexual offender management board

(1) The board shall develop, advance and oversee sound sexual offender management policies and practices statewide as demonstrated by evidence-based best practices.

(2) The board shall carry out the following duties:

(a) Establish standards for psychosexual evaluations performed pursuant to section 18-8316, Idaho Code, and sexual offender treatment programs based on current and evolving best practices.

(b) Establish qualifications, set forth procedures for approval and certification and administer the certification process for:

(i) Professionals conducting psychosexual evaluations pursuant to section 18-8316, Idaho Code, or adjudication proceedings on juvenile sexual offenders;

(ii) Professionals providing treatment to adult or juvenile sexual offenders as ordered or required by the court, Idaho department of correction, Idaho commission of pardons and parole or the Idaho department of juvenile corrections; and

(iii) Professionals conducting postconviction sexual offender polygraphs as ordered or required by the court, Idaho department of correction or Idaho commission of pardons and parole.

(c) Establish a nonrefundable processing fee not to exceed one hundred fifty dollars ($150) for each initial certification and a nonrefundable processing fee not to exceed one hundred fifty dollars ($150) for each annual recertification.

(d) Set forth and administer procedures for quality assurance of the standards and qualifications established in this section.

(e) The board shall have authority to deny, revoke, restrict or suspend a certification if standards or qualifications are not met or to otherwise monitor a provider.

(f) Establish and implement standard protocols for sexual offender management, assessment and classification based on current and evolving best practices.

(3) The board shall have authority to promulgate rules to carry out the provisions of this chapter.

### § 18-8315. Compliance with open meeting law

All meetings of the board shall be held in accordance with the open meeting law as provided in chapter 23, title 67, Idaho Code.

### § 18-8316. Requirement for psychosexual evaluations upon conviction

If ordered by the court, an offender convicted of any offense listed in section 18-8304, Idaho Code, may submit to an evaluation to be completed and submitted to the court in the form of a written report from a certified evaluator as defined in section 18-8303, Idaho Code, for the court's consideration prior to sentencing and incarceration or release on probation. The court shall select the certified evaluator from a central roster of evaluators compiled by the sexual offender management board. A certified evaluator performing such an evaluation shall be disqualified from providing any treatment ordered as a condition of any sentence, unless waived by the court. An evaluation conducted pursuant to this section shall be done in accordance with the standards established by the board pursuant to section 18-8314, Idaho Code.

### § 18-8318. Offender required to pay for psychosexual evaluation

The offender shall be required to pay for the cost of the psychosexual evaluations performed under this chapter, unless the offender demonstrates indigency. In such case, the psychosexual evaluation performed pursuant to section 18-8316, Idaho Code, shall be paid for by the county. As a condition of sentence, indigent offenders for whom the county has paid the cost of evaluation performed pursuant to section 18-8316, Idaho Code, shall be required to repay the county for the cost.

### § 18-8323. Public access to sexual offender registry information

Information within the sexual offender registry collected pursuant to this chapter is subject to release only as provided by this section.
(1) The department or sheriff shall provide public access to information contained in the central sexual offender registry by means of the internet.
(2) Information that shall be made available to the public is limited to:
(a) The offender's name including any aliases or prior names;
(b) The offender's date of birth;
(c) The address of each residence at which the offender resides or will reside and, if the offender does not have any present or expected residence address, other information about where the offender has his or her home or habitually lives;
(d) The address of any place where the offender is a student or will be a student;
(e) A physical description of the offender;
(f) The offense for which the offender is registered and any other sex offense for which the offender has been convicted and the place of the convictions;
(g) A current photograph of the offender; and
(h) Temporary lodging information including the place and the period of time the offender is staying at such lodging. "Temporary lodging" means any place in which the offender is staying when away from his or her residence for seven (7) or more days. If current information regarding the offender's residence is not available because the offender is in violation of the requirement to register or cannot be located, then the website shall so note.
(3) The following information shall not be disclosed to the public:
(a) The identity of the victim;
(b) The offender's social security number;

(c) Any reference to arrests of the offender that did not result in conviction;

(d) Any internet identifier associated with and/or provided by the offender;

(e) Any information pertaining to the offender's passports and immigration documents; and

(f) Any information identifying any person related to, living with, working for, employing or otherwise associated with a registered sexual offender.

(4) Where a crime category such as "incest" may serve to identify a victim, that crime will be reported as a violation of section 18-1506, Idaho Code.

(5) The department shall include a cautionary statement relating to completeness, accuracy and use of registry information when releasing information to the public or noncriminal justice agencies as well as a statement concerning the penalties provided in section 18-8326, Idaho Code, for misuse of registry information.

(6) Information released pursuant to this section may be used only for the protection of the public.

(7) Further dissemination of registry information by any person or entity shall include the cautionary statements required in subsection (5) of this section.

## § 18-8324. Dissemination of registry information

(1) The department shall, within three (3) business days, disseminate any registration information collected under this chapter, including any changes in registry information, to:

(a) The attorney general of the United States for inclusion in the national sex offender registry or other appropriate databases;

(b) Each school and public housing agency in each area in which the offender resides, is an employee or is a student;

(c) Each jurisdiction where the sexual offender resides, is an employee or is a student and each jurisdiction from or to which a change of residence, employment or student status occurs;

(d) Criminal justice agencies through the public safety and security information system established in section 19-5202, Idaho Code;

(e) Any agency responsible for conducting employment-related background checks under section 3 of the national child protection act of 1993, 42 U.S.C. section 5119a;

(f) Social service entities responsible for protecting minors in the child welfare system;

(g) Volunteer organizations in which contact with minors or other vulnerable adults might occur; and

(h) Any organization, company or individual who requests notification of changes in registry information.

(2) Registry information provided under this section shall be used only for the administration of criminal justice or for the protection of the public as permitted by this chapter.

(3) The department shall include a cautionary statement relating to completeness, accuracy and use of registry information when releasing information to the public or noncriminal justice agencies as well as a statement concerning the penalties provided in section 18-8326, Idaho Code, for misuse of registry information.

(4) Information released pursuant to this section may be used only for the protection of the public.

(5) Further dissemination of registry information by any person or entity shall include the cautionary statements required in subsection (3) of this section.

## § 18-8325. Exemption from civil liability

(1) No person or governmental entity, other than those specifically charged in this chapter with a duty to collect information under this chapter regarding registered sexual offenders, has a duty to inquire, investigate or disclose any information regarding registered sexual offenders.

(2) No person or governmental entity, other than those specifically charged in this chapter with an affirmative duty to provide public access to information regarding registered sexual offenders, shall be held liable for any failure to disclose any information regarding registered sexual offenders to any other person or entity.

(3) Every person or governmental entity who, acting without malice or criminal intent, obtains or disseminates information under this chapter shall be immune from civil liability for any damages claimed as a result of such disclosures made or received.

## § 18-8326. Penalties for vigilantism or other misuse of information obtained under this chapter

Any person who uses information obtained pursuant to this chapter to commit a crime or to cause physical harm to any person or damage to property shall be guilty of a misdemeanor and, in addition to any other punishment, be subject to imprisonment in the county jail for a period not to exceed one (1) year, or by a fine not to exceed one thousand dollars ($1,000) or both.

## § 18-8327. Adult criminal sex offender--Prohibited employment

(1) Except as provided in section 18-8328, Idaho Code, it is a felony for any person to: apply for or to accept employment at a day care center, group day care facility or family day care home; or to be upon or to remain on the premises of a day care center, group day care facility or family day care home while children are present, other than to drop off or pick up the person's child or children if the person is currently registered or is required to register under the sex offender registration act as provided in chapter 83, title 18, Idaho Code.

(2) The owner or operator of any day care center, group day care facility or family day care home who knowingly employs a person or who knowingly accepts volunteer services from a person, which person is currently registered or is required to register under the sex offender registration act as provided in chapter 83, title 18, Idaho Code, to work in the day care center, group day care facility or family day care home is guilty of a misdemeanor unless judicial relief has been granted pursuant to section 18-8328, Idaho Code.

## § 18-8328. Action for relief by offender or juvenile offender

Any person who is required to register pursuant to chapter 83, title 18, Idaho Code, or chapter 84, title 18, Idaho Code, may file a petition in a district court in the judicial district where the person resides, to have relief from the provisions of section 18-8327 or 18-8414, Idaho Code, pertaining to employment in or being upon or remaining on the premises of a day care center, group day care facility or family day care home while children are present, other than to drop off or pick up the sex offender's or juvenile sex offender's child or children. To be granted relief pursuant to this section, the person shall show by clear and convincing evidence that the person required to register pursuant to chapter 83, title 18, Idaho Code, or chapter 84, title 18, Idaho Code, does not pose a

threat to children in a day care center, group day care facility or family day care home, it has been at least ten (10) years since the person's last conviction, finding of guilt or adjudication that required the person to register pursuant to chapter 83, title 18, Idaho Code, or chapter 84, title 18, Idaho Code, and the petitioner presents testimony from a licensed physician or psychologist about the petitioner's chance of success of not committing an act against children.

## § 18-8329. Adult criminal sex offenders--Prohibited access to school children--Exceptions

(1) If a person is currently registered or is required to register under the sex offender registration act as provided in chapter 83, title 18, Idaho Code, it is a misdemeanor for such person to:

(a) Be upon or to remain on the premises of any school building or school grounds in this state, or upon other properties posted with a notice that they are used by a school, when the person has reason to believe children under the age of eighteen (18) years are present and are involved in a school activity or when children are present within thirty (30) minutes before or after a scheduled school activity.

(b) Knowingly loiter on a public way within five hundred (500) feet from the property line of school grounds in this state, including properties posted with a notice that they are used by a school, when children under the age of eighteen (18) years are present and are involved in a school activity or when children are present within thirty (30) minutes before or after a scheduled school activity.

(c) Be in any conveyance owned or leased by a school to transport students to or from school or a school-related activity when children under the age of eighteen (18) years are present in the conveyance.

(d) Reside within five hundred (500) feet of the property on which a school is located, measured from the nearest point of the exterior wall of the offender's dwelling unit to the school's property line, provided however, that this paragraph (d) shall not apply if such person's residence was established prior to July 1, 2006.

The posted notices required in this subsection (1) shall be at least one hundred (100) square inches, shall make reference to section 18-8329, Idaho Code, shall include the term "registered sex offender" and shall be placed at all public entrances to the property.

(2) The provisions of subsections (1)(a) and (1)(b) of this section shall not apply when the person:

(a) Is a student in attendance at the school; or

(b) Resides at a state licensed or certified facility for incarceration, health or convalescent care; or

(c) Is exercising his right to vote in public elections; or

(d) Is taking delivery of his mail through an official post office located on school grounds; or

(e) Stays at a homeless shelter or resides at a recovery facility if such shelter or facility has been approved for sex offenders by the county sheriff or municipal police chief; or

(f) Contacts the school district office annually and prior to his first visit of a school year and has obtained written permission from the district to be on the school grounds or upon other property posted with a notice that the property is used by a school. For the purposes of this section, "contacts the school district office" shall include mail, facsimile machine, or by computer using the internet. The provisions of this subsection are required for an individual who:

(i) Is dropping off or picking up a child or children and the person is the child or children's parent or legal guardian; or

(ii) Is attending an academic conference or other scheduled extracurricular school event with school officials present when the offender is a parent or legal guardian of a child who is participating in the conference or extracurricular event. "Extracurricular" means any school-

16

sponsored activity that is outside the regular curriculum, occurring during or outside regular school hours including, but not limited to, academic, artistic, athletic or recreational activities; or

(iii) Is temporarily on school grounds, during school hours, for the purpose of making a mail, food or other delivery.

(3) Nothing in this section shall prevent a school district from adopting more stringent safety and security requirements for employees and nonemployees while they are in district facilities and/or on district properties. If adopting more stringent safety and security requirements, the school district shall provide the requirements to any individual listed in subsection (2)(f)(i) through (iii) by mail, facsimile machine or by computer using the internet.

## § 18-8331. Adult criminal sex offenders--Prohibited group dwelling--Exceptions

(1) Except as otherwise provided in this section, when a person is required to register pursuant to this chapter, that person may not reside in any residential dwelling unit with more than one (1) other person who is also required to register pursuant to this chapter. If, on the effective date of this section, any person required to register pursuant to this chapter, is legally residing in a residential dwelling unit with more than one (1) other person required to so register, the person may continue to reside in that residential dwelling unit without violating the provisions of this section, provided that no additional persons so required to register shall move into that residential dwelling unit if the person moving in would be in violation of this section.

(2) For purposes of this section:

(a) "Reside" and "residing" mean occupying the residential dwelling unit as a fixed place of abode or habitation for any period and to which place the person has the intention of returning after a departure or absence therefrom regardless of the duration of absence.

(b) "Residential dwelling unit" includes, but is not limited to, single family dwellings and units in multifamily dwellings including units in duplexes, apartment dwellings, mobile homes, condominiums and townhouses in areas zoned as residential. For the purposes of this section a state or federally licensed health care or convalescent facility is not a residential dwelling unit.

(3)(a) A judge of the district court may, upon petition and after an appropriate hearing, authorize a person required to register pursuant to this chapter, to reside in a residential dwelling unit with more than one (1) other person who is also required to register pursuant to this chapter, if the judge determines that:

(i) Upon clear and convincing evidence that not doing so would deprive the petitioner of a constitutionally guaranteed right; and

(ii) That such right is more compelling under the facts of the case than is the interest of the state and local government in protecting neighboring citizens, including minors, from risk of physical or psychological harm. Such risk of harm shall be presumed absent clear and convincing evidence to the contrary given the applicant's status as a person required to register pursuant to this chapter;

(b) Any exception allowed under this section shall be limited to alleviate only a deprivation of constitutional right which is more compelling than the interest of the state and local government in minimizing the risk of harm to the neighboring citizens.

(c) Any order of exception under this section shall be made a part of the registry maintained pursuant to this chapter.

(4) Any city or county may establish standards for the establishment and operation of residential houses for registered sex offenders which exceed the number of registered sex offenders allowed to reside in a residential dwelling unit under subsection (1) of this section. Applicable standards

17

shall include establishing procedures to allow comment of neighboring residents within a specified distance, and may include, but are not limited to:

(a) Designating permissible zones in which such houses may be located;

(b) Designating permissible distances between such houses;

(c) Designating the maximum number of registered sex offenders allowed to reside in such houses;

(d) Designating qualifications and standards for supervision and care of such houses and the residents;

(e) Designating requirements and procedures to qualify as the operator of such houses, including any requirement that the residents be engaged in treatment or support programs for sex offenders and related addiction treatment or support programs; and

(f) Designating any health and safety requirements which are different than those applicable to other residential dwelling units in the zone.

(5) No person or entity shall operate a residence house for registered sex offenders in violation of the limitations of subsection (1) of this section except as otherwise provided under subsection (4) of this section. If, on the effective date of this section, any individual or entity is operating an existing residence house for persons required to register pursuant to this chapter, and when such individual or entity also requires such persons to be participants in a sex offender treatment or support program such individual or entity shall not be precluded from continuing to operate such residence house, provided that:

(a) The residence house shall not operate at a capacity exceeding eight (8) residents in the dwelling unit and two (2) residents per bedroom, or the existing number of residents, whichever is less;

(b) Once the governing city or county enacts an ordinance pursuant to subsection (4) of this section establishing standards for the operation of a residence house for sex offenders, the operator of the residence house shall, no later than one (1) year after enactment of the ordinance, comply with all standards of the ordinance, except any requirement that is less than the maximum capacity provided for under subsection (5)(a) of this section or which requires a relocation of the residence;

(c) The burden of proving that an existing residence house qualifies for continuing operation under this subsection shall be upon the operator of the residence house;

(d) Any change in the use of an existing residence house shall void the exception for the continuing operation of the house under the provisions of this section.

(6) If any person required to register pursuant to this chapter, is on parole or probation under the supervision of the Idaho department of correction, the department shall be notified by the person or the person's agent of any intent to reside with another person required to register under this chapter. The department must approve the living arrangement in advance as consistent with the terms of the parole or probation, and consistent with the objective of reducing the risk of recidivism. The department shall establish rules governing the application of this subsection.

(7) Any person who knowingly and with intent violates the provisions of this section is guilty of a misdemeanor.

(8) Any city or county is entitled to injunctive relief against any person or entity operating a residence house within its jurisdiction in violation of this section.