# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN and JANE DOES 1-134, | Case No. 1:16-cv-00429-DCN |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| LAWRENCE WASDEN, Attorney General of the State of Idaho, et al., | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is Defendants'[1] Motion to Dismiss. Dkt. 15. Once the parties briefed the Motion, the Court held oral argument and took the matter under advisement. After fully considering the arguments presented by the parties, for the reasons set forth below, the Court finds good cause to GRANT the Motion and dismiss the Complaint. However, the Court will grant Plaintiffs leave to amend their complaint to cure deficiencies outlined in this decision. Simply put, Plaintiffs must identify actual harms suffered by one or more "Does" and present sufficient facts upon which the Court can make a reasoned decision.

---

[1] In this case there are 33 named defendants including various state officials, members of the Sexual Offender Management Board, and 25 of Idaho's 44 county sheriffs. Individually and collectively the Court will refer to this group as simply "Defendants."

# II. BACKGROUND

Plaintiffs, Does 1-134, filed this lawsuit challenging the constitutionality of Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act ("SORA");[2] namely, the 2001, 2009, and 2011 amendments.

Plaintiffs are all individuals required to register under SORA. Specifically, it appears that all Does 1-134 are required to register for life under the Act because of their classification as recidivist, or because their underlying crimes have been classed as "aggravated offenses."

In their Complaint, Plaintiffs do not list particular causes of action as to specific individuals, but merely state that all plaintiffs suffer from a wide variety of constitutional depravations SORA has created, from which they request relief. Plaintiffs' causes of action are:

1. Due process violations under the Fourteenth Amendment because of SORA's vagueness, because it subjects sexual offenders "to new restrictions and requirements, regardless of any actual risk to society and without the possibility of any hearing and without any requirement by the State of Idaho to provide offenders with any notice of their classification or any new prohibitions or requirements," and because it "fails to further any legitimate governmental purpose." Dkt. 4 ¶¶ 236, 237.

2. Free exercise of religion violations under the First Amendment, "[b]ecause churches and other places of worship fall within the places certain sex offenders may not 'knowingly be' within five hundred (500) feet of under

---

[2] The parties utilize SORA, SORNA, "the Act", "the registry", and other similar iterations throughout the briefing to reference Title 18, Chapter 83 of the Idaho Code—Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act. The Court will use "SORA" or "the Act" in reference to this Act.

[SORA], regardless of the actual known risk posed by these offenders[.]" *Id.* ¶ 241.

3. Substantive due process violations under the Fourteenth Amendment, because SORA "impinges on their fundamental rights to free association, [to] travel, and to raise their children without undue governmental interference." *Id.* ¶ 245.

4. Equal protection violations under the Fourteenth Amendment, because "the Idaho legislature has created two (2) separate but similarly situated groups, one (1) between fourteen (14) and eighteen (18) years of age [subject to the Juvenile Sex Offender Registration Notification and Community Right-to-Know Act (JSORA), Idaho Code §§ 18-8401 to -8414], and one (1) eighteen (18) years of age and older, members of each group having committed and been found guilty of one (1) or more of a group of included criminal offenses." *Id.* ¶ 252.

5. Cruel and unusual punishment violations under, the Eighth Amendment, because "anyone convicted of a crime with any 'sexual element' or any crime that is considered an 'aggravated' offense, no matter when they were convicted, is considered a sex offender under [SORA] and is subject to community notification and registration requirements." *Id.* ¶ 259.

6. Ex Post Facto Clause violations under Article I, Section 9, Clause 3, because "[t]he effect and intent of [SORA] are punitive and impose new punishments, including but not limited to the affirmative disability of having to register in person every twelve (12) months, banishment from their families and communities, on offenders convicted before their enactment." *Id.* ¶ 263.

7. Double Jeopardy Clause violations under the Fifth Amendment, because SORA "impose[s] new punishments on persons previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism." *Id.* ¶ 267.

8. Contracts Clause violations under Article I, Section 10, Clause 1 of the United States Constitution and Article I, Section 16 of the Idaho Constitution,[3] because SORA "operates as a substantial impairment to the

---

[3] Plaintiffs list their contracts claims as two separate causes of action (Dkt. 4)—one under federal law and one under state law—for simplicity, the Court will combine them here.

preexisting contractual relationship between the state and Plaintiffs Guilty Plea Agreements by imposing new terms not negotiated which drastically increase, and, or require lifetime supervision, registration and community notification." *Id.* ¶ 271.

9. Takings Clause violations under the Fifth Amendment, because SORA places "residential and movement restrictions on Plaintiffs, [and] unconstitutionally restricts Plaintiffs' property rights to the point that constitutes a regulatory taking requiring just compensation." *Id.* ¶ 279.

10. Separation-of-powers violations under Article XI, Section 1 of the Idaho Constitution, because SORA "limits the judicial power of sentence finality as the law vacates existing court judgments regarding sex offenders' classifications, and community notification and reverses final court judgments setting the length of time that sex offenders must register." *Id.* ¶ 283.

11. Police power violations under Article XI, Section 8 of the Idaho Constitution, because John Does 4, 7, 18, 53, 62, 80, 85, 100, 105 and 132 "had been unconditionally released from custody, probation/parole and any sex offender registration requirements prior to the enactment of Idaho SORNA 2001, 2009, 2011" and "were, therefore, not in any special relationship with the government of the State of Idaho at the time of the enactment of SORNA 2001, 2009, 2011." *Id.* ¶ 287.

Defendants filed the instant Motion to Dismiss seeking outright dismissal of some of Plaintiffs' claims on legal and statutory grounds. As to the remaining claims, Defendants ask the Court to require Plaintiffs to amend their Complaint to list more "as-applied" challenges so that Defendants know which individual plaintiffs actually suffered from which of the alleged constitutional violations.

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar,* 646 F.3d 1240, 1242 (9th Cir. 2011). "A complaint generally must satisfy the notice pleading requirements of

Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion." *Id.* (citing *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir. 2003)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

To sufficiently state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In light of *Twombly* and *Iqbal,* the Ninth Circuit summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the pleading under attack. *Iqbal,* 556 U.S. at 663. A

court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

When ruling on a motion to dismiss, the court must normally convert a Rule 12(b)(6) motion into one for summary judgment under Rule 56 if the court considers evidence outside of the pleadings. *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003). A court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *Id.* at 908.

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir. 2009).

## IV. ANALYSIS

The Court will first address two topics of concern in this case: the distinction between facial and as-applied challenges and the legal doctrine of standing. Next, the Court will analyze the merits of each of Plaintiffs' claims under a facial theory and an as-applied theory. Finally, the Court will outline the claims it is dismissing, as well as the claims the Court will grant Plaintiffs leave to amend.

## A.  FACIAL AND AS-APPLIED CHALLENGES

When a petitioner seeks to challenge a statute as unconstitutional there are two types of challenges: "facial challenges" and "as-applied" challenges.

Facial challenges seek to have a statute declared unconstitutional "on its face." This standard presents an extremely high bar because a plaintiff must show that the statute is unconstitutional *in all* possible applications and situations. *See Diaz v. Paterson,* 547 F.3d 88, 101 (2d Cir. 2008) (finding "a facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court concluded that facial challenges are extremely difficult to prove and ought to be rare. *Id.* The justices, however, were deeply divided on what types of constitutional claims would warrant a facial challenge, when a facial challenge becomes ripe, and the level of scrutiny that should be applied to the challenged statute. *Id.; See also,* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 STAN. L. REV. 235, 236 (1994); Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1322 (2000).

While courts and commentators have developed various opinions on how to approach facial challenges—including what degree of deference is given to *Salerno*—it is clear that in order to succeed on a facial challenge, a plaintiff must show that the law is unconstitutional in not just some, but in all situations:

Under *United States v. Salerno*, 481 U.S. 739 (1987), a plaintiff can only succeed in a facial challenge by "establish[ing] that no set of circumstances exists under which the Act would be valid," i.e., that the law is unconstitutional in all of its applications. . . . While some Members of the Court have criticized the Salerno formulation, all agree that a facial challenge must fail where the statute has a "'plainly legitimate sweep.'"

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citation omitted) (finding that "[i]n determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

As-applied challenges, on the other hand, do not look at the text, or face, of the statute, but rather argue that even if a law is valid on its face, it may nonetheless—as the name suggests—be unconstitutionally applied. The question in an as-applied challenge is whether the statute is unconstitutional when applied in a particular case. *See Tsirelman v. Daines*, 19 F. Supp. 3d 438, 447–48 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015). Specific facts are critical. As-applied challenges, however, are somewhat of a catch 22. One commentator explains why:

Sometimes it is said of a statute which is not void 'on its face' that it nevertheless is invalid as applied. This is a malapropism, however, for a provision which is only invalid as applied in the facts of a particular case is possibly capable of valid application in another fact situation. In reality, it is only the implementing action which purports to apply the legislation and not the provision itself which is invalid in such cases.

1 Sutherland, Statutory Construction (Sands, 4th ed. 1985) § 2.06, pp. 31–32 (footnote omitted).[4] This very dichotomy is what puzzles the Court at the outset of this case.

Here, Plaintiffs cannot establish a facial challenge to SORA generally because the law has a "plainly legitimate sweep" and is applicable to thousands of Idahoans who are required to register for a time, but then in due course are no longer required to register. In other words, there are numerous circumstances under which the Act is valid and constitutional. Plaintiffs in this case make up the limited group of offenders who have underlying "aggravated offenses," or who have been designated recidivists by statute, and thus must register *for life*. It is only as to *these* individuals that Plaintiffs' challenges could apply.[5] Plaintiffs, unfortunately, have not pleaded any specific as-applied challenges.[6] Therefore, amendment is necessary for the Court to make an appropriate determination as to those claims.

---

[4] Furthermore, as many scholars note, the distinction, if any, between a facial and an as-applied challenge is difficult to explain because there is a disconnect between what the Supreme Court has outlined and what happens in actual practice. *See e.g.,* Gillian E. Metzger, *Facial Challenges and Federalism*, 105 COLUM. L. REV. 873, 882 (2005).

[5] Plaintiffs never address whether their claims are facial or as-applied challenges in their Complaint, nor do they even address this argument in their briefing. While some claims appear to be facial challenges, and some are evidently as-applied challenges, there are no persuasive legal arguments to substantiate the facial challenges and there are no specific facts to support the as-applied challenges.

[6] The sole cause of action which lists specific Does is Claim 12 (number 11 in the Court's list above), which relates to a number of Does who had been discharged from probation—and any registration requirement—but were then "brought back" and required to register. Plaintiffs couch this "bringing back" as an abuse of the police power claim under the Idaho Constitution.

## B. STANDING

Fundamentally intertwined with this discussion regarding as-applied challenges is

the legal topic of standing. This too is of great concern to the Court.

Article III, Section 2 of the United States Constitution "confines the judicial power

of federal courts to deciding actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*,

570 U.S. 693, 704 (2013). The United States Supreme Court has long held that

> [t]he irreducible constitutional minimum of standing contains three elements.
> First, the plaintiff must have suffered an injury in fact—an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b)
> actual or imminent, not conjectural or hypothetical. Second, there must be a
> causal connection between the injury and the conduct complained of—the
> injury has to be fairly . . . trace[able] to the challenged action of the
> defendant, and not . . . th[e] result [of] the independent action of some third
> party not before the court. Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992) (internal quotation marks and

citations omitted). Here, Plaintiffs have failed to meet the first requirement of standing.

As currently pleaded, Plaintiffs have not suffered any injury in fact. With the exception of

Plaintiffs' twelfth cause of action, Plaintiffs have not tied any particular Doe to any

particular alleged harm. This is not appropriate. One cannot simply name a large group of

Plaintiffs, allege a dozen causes of actions, and expect the Court to figure out which

plaintiffs have suffered which harms.[7]

---

[7] At oral argument, Plaintiffs' counsel asserted that the Court can be "aware" of the claims
Plaintiffs are asserting because one only need look at a plaintiff and see his conviction to know

Plaintiffs allege that all of them have suffered from certain aspects of SORA generally—such as the reporting requirements, or the negative aspects of public registration—however, these generalizations only give Plaintiffs standing for facial challenges, if even that. As currently pleaded, Plaintiffs' do not have standing for any as-applied challenges.[8]

The broad allegations of Plaintiffs' Complaint fail as a matter of law—most have already been litigated and denied in prior cases—and without any as-applied challenges, the Court can only speculate as to what harms have actually occurred in this case. This is one of the main reasons the Court will dismiss with leave to amend. Plaintiffs have set this case up as a quasi-class action by listing 134 plaintiffs. While possibly done for emphasis, the Court instead needs accuracy.

---

that a constitutional violation had occurred. Counsel asserted that certain claims "speak for [themselves]," that the "factors have been met," and that there was no need to "go into depth" or give details concerning any particular claim. To the contrary, this is what Plaintiffs need to do. It is not the Court's job to parse through the Complaint to determine the relationship of any Doe to any claim. As the Ninth Circuit has observed, this type of approach is not appropriate.

> When reading [plaintiff's] brief, one wonders if [plaintiff], in its own version of the "spaghetti approach," has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim.
>     As the Seventh Circuit observed in its now familiar maxim, "[j]udges are not like pigs, hunting for truffles buried in briefs."

*Indep. Towers of Washington v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) (internal citations omitted).

[8] Because the Court will dismiss all facial challenges, Plaintiffs must therefore establish standing as to each as-applied challenge that they seek to raise.

As outlined below, the Court will dismiss all of Plaintiffs' facial challenges to SORA. Plaintiffs cannot meet their burden of proving that SORA is unconstitutional in all its applications—or that any of the identified provisions or requirements are unconstitutional in all circumstances. Additionally, the Court will dismiss some claims without leave to amend because they fail to state a valid as-applied challenge, or no as-applied challenge is legally cognizable.

Finally, the Court will dismiss the remaining claims in order for Plaintiffs to amend their Complaint and state valid as-applied challenges tying specific Plaintiffs to specific causes of action. After amendment, the Court will be able to concretely determine standing and assess whether the amended complaint can survive a Rule 12(b)(6) motion.

The Court next turns to the merits of Plaintiffs' Complaint.

## C. PLAINTIFFS' CLAIMS

There is no shortage of United States Supreme Court cases, Ninth Circuit Cases, Federal District Cases, and (for the purposes of this case) Idaho State cases that discuss the constitutionally of sex offender registration acts. Although there have been minor deviations for certain fact specific circumstances, the vast majority of these opinions have upheld the various acts as constitutional.

Plaintiffs and Defendants have taken different approaches on how they elected to group the claims in this case. To avoid confusion, the Court will simply address each

claim one by one and discuss its validity as a facial challenge and then as an as-applied challenge.

The outcome of Claim 6 is determinative as to several of the other "punishment" based claims; therefore, the Court will address it first. The Court will then take up the remaining claims in numerical order.

CLAIM 6 – EX POST FACTO

> Ex Post Facto Clause violations under Article I, Section 9, Clause 3, because "[t]he effect and intent of [SORA] are punitive and impose new punishments, including but not limited to the affirmative disability of having to register in person every twelve (12) months, banishment from their families and communities, on offenders convicted before their enactment." Dkt. 4, ¶ 263.

1. Facial Challenge

In this cause of action, Plaintiffs' state that SORA violates the Ex Post Facto Clause of the United States Constitution (Article I, Section 9, Clause 3) because the law is retroactive and punishment based. The United States Supreme Court in *Smith v. Doe*, rejected this exact ex post facto challenge to the Alaska Sex Offender Registration Act and courts have relied on its analysis in virtually all subsequent cases that have dealt with sex offender registration act challenges.

> The framework for our inquiry . . . is well established. We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' "

538 U.S. 84, 92 (2003) (internal citations omitted). Ultimately in *Smith*, the Court found that creating a law that alerts the public to the risk of sex offenders in their community is legitimate and nonpunitive in nature. Neither the purpose, nor the effect, was unconstitutional. *See generally id.*

Like Plaintiffs in this case, the Plaintiff in *Smith* argued that the state cannot group people together to make blanket determinations. *Id.* at 102-03. The Supreme Court disagreed. In response to the argument that specific classes of individuals, such as those convicted of certain offenses, were targeted by Alaska's SORA and subjected to unfair treatment, the Supreme Court reasoned that "the Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103–04. The Court also reiterated that "the State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause." *Id.*

Following *Smith v. Doe,* numerous Circuits have taken up related issues regarding the constitutionality of sex offender registration acts and various tangential arguments put forth by various plaintiffs in an effort to distinguish *Smith* and have their particular state's act deemed unconstitutional as an ex post facto violation. Effectively, all of these arguments have failed. Two of particular note—because plaintiffs raise the same arguments here—are *Litmon v. Harris* and *U.S. v. Elk Shoulder.*

In *Litmon v. Harris*, the Ninth Circuit rejected an ex post facto challenge to a California statute which required lifetime in-person reporting by sexually violent predators. 768 F.3d 1237, 1243 (9th Cir. 2014). The *Litmon* Court explained "[t]here is no reason to believe that the addition of such a requirement would have changed the outcome [of *Smith*]. In fact, we held in *ACLU of Nevada v. Masto*, that an in-person, 90–day, lifetime registration requirement for the highest level sex offenders does not violate the Ex Post Facto Clause." *Id.* at 1243.

In *U.S. v. Elk Shoulder*, the Ninth Circuit rejected an ex post facto argument challenging SORNA (the federal version of a sex offender registration act). 738 F.3d 948, 954 (9th Cir. 2013). In that case, the petitioner sought to distinguish *Smith* arguing that he faced difficulty finding and maintaining housing and employment because his name and address, along with all other offenders', were listed on the internet. The Ninth Circuit concluded that the requirement was nonpunitive because its intent was not to humiliate, but rather to inform the public for its own safety. *Id.* at 954.

Plaintiffs in this case have put forth identical arguments concerning lifetime reporting and internet publicity, but have not presented any facts or evidence indicating why the Court should treat this case any different from *Litmon* or *Elk Shoulder*. Under binding Ninth Circuit precedents, the Court can only come to one conclusion. These arguments are unavailing.

Idaho Courts have also rejected so called "shunning" arguments, *State v. Gragg*, 137 P.3 461 (Idaho Ct. App. 2005), as well as arguments concerning adverse employment

impacts, *id.*, the lifetime requirement for aggravated offenses, *Groves v. State*, 328 P.3d 532 (Idaho Ct. App. 2014), and numerous other challenges. Each has failed. The Idaho Supreme Court has uniformly found that SORA is regulatory in nature and the requirements therein valid. *See e.g., Ray v. State,* 982 P.2d 931 (Idaho 1999); *State v. Johnson,* 266 P.3d 1146 (Idaho 2011); *Knox v. State*, 404 P.3d 1280 (Idaho 2017); *Bottum v. Idaho State Police, Bureau of Criminal Identification Cent. Sex Offender Registry*, 296 P.3d 388 (Idaho 2013).

*Smith*, its Ninth Circuit progeny, and relevant Idaho State cases have laid to rest all of Plaintiffs' Ex Post Facto Clause arguments. Each Court that has addressed the issue has found the challenged requirements to be nonpunitive, regulatory in nature, and has upheld them as constitutional.

Plaintiffs rely on *Does #1-5 v. Snyder*, a 2017 Sixth Circuit case, to illustrate that, as set forth in *Smith v. Doe*, even if a court concludes the intent of a law is civil, if its effects are punitive, it can still violate the Ex Post Facto Clause. 834 F.3d 696, 701 (6th Cir. 2016). The specific provision challenged in *Snyder* prohibited all registrants from "living, working, or loitering within 1,000 feet of a school." *Id.* at 698. Relying on experts who provided real property maps of parts of Michigan, the Court noted that particularly in densely populated areas, the 1,000 foot restriction cut out entire portions of town and essentially banished registrants. *Id.* at 703.

While instructive, the Court notes three things. First, the Sixth Circuit admitted that it was splitting a fine hair because it first found that intent of the challenged SORA

was *not* punitive, *id.* at 701, but that the effects of the specific provision nonetheless imposed a form of punishment and were unconstitutional, *id.* at 705-06. Second, the restrictions at issue in *Snyder* were larger than their Idaho counterparts[9] and, consequently, distinguishable. Third, the Ninth Circuit has yet to find any provision (that this Court is aware of) in any challenged SORA as punitive or an Ex Post Facto Clause violation. The Court does not make a contrary finding today. Absent applicable precedential case law, the *Snyder* case is simply informative.

In short, while all of these problems and challenges offenders face as a result of having to register may be real, and to some degree infringe upon certain rights, those concerns do not trump the community safety considerations that form the basis of the civil, regulatory requirements outlined in SORA. Plaintiffs have failed to explain how this case differs from any of the previous challenges. Facially, this argument fails.

2.  As-Applied Challenge

Because, as stated in *Smith*, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," 538 U.S. at 92, the Court is doubtful that any challenge, even as-applied, could overcome the high burden required to state a valid Ex Post Facto cause of action.

---

[9] For example, the Idaho statute mandates a smaller restricted zone (500 feet, rather than 1,000) and provides for more exceptions than are available in Michigan. *See* Idaho Code § 18-8329.

However, because Plaintiffs have failed to lay out any specifics, the Court will

grant leave to amend so Plaintiffs can identify explicitly how, as to any particular Doe,

SORA is an Ex Post Facto Clause violation in his or her circumstance.[10]

CLAIM 1 – DUE PROCESS (Vagueness)

Due process violations under the Fourteenth Amendment, because of
SORA's vagueness, and because it subjects sexual offenders "to new
restrictions and requirements, regardless of any actual risk to society and
without the possibility of any hearing and without any requirement by the
State of Idaho to provide offenders with any notice of their classification or
any new prohibitions or requirements" and because it "fails to further any
legitimate governmental purpose." Dkt. 4 ¶¶ 236, 237.

1. Facial Challenge

The Court notes that certain allegations raised in this claim would fall under the

analysis outlined in the previous section. For example, the Court has already addressed

arguments regarding "new restrictions," and requirements based upon "classification,"

which Plaintiffs repeat here. Both fail as a matter of law.

---

[10] Some of Plaintiffs' examples of "punishment" would still be barred (even if raised
individually) as the Ninth Circuit has already directly addressed them. For example, Plaintiffs
complain about having to register in person every twelve months. The Ninth Circuit has already
held that a 90-day registration requirement does not implicate *any* fundamental rights, and did
not violate the Ex Post Facto or Double Jeopardy clauses. *Litman v. Harris.* It is somewhat
disingenuous, and a waste of the Court's time, for Plaintiffs to assert claims which Ninth Circuit
case law clearly bars. Plaintiffs need to identify specific Does and specific harms (not already
ruled upon) and present those for the Court's consideration. Like in *Snyder,* Plaintiffs need to be
identifiable and specific.

Two other SORA provisions that Plaintiffs challenge on vagueness grounds are the reporting requirements in Idaho Code section 18-8305 and the term "loiter" in section 18-8329(1)(b). Dkt. 4, ¶ 193-95.

a. Reporting requirements

First, Idaho Code section 18-8305(1)(g) requires the registrant to provide "[t]he name and address of any place where the offender is a student or will be a student unless the offender is only participating in courses remotely through the mail or the internet." Section 18-8305(1)(k) requires the registrant to provide:

> [t]he name and address of any place where the offender is employed or will be employed and the name and address of any place where the offender works as a volunteer or otherwise works without remuneration or if the offender does not have a fixed place of employment, a description of normal travel routes or the general areas in which the offender works.

Plaintiffs contend that the requirements are so vague they cannot understand what is actually required. A statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). The United States Supreme Court has found that when a statute "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Williams*, 553 U.S. at 304

(quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see also, Holder v. Humanitarian Law Project,* 561 U.S. 1, 18-19 (2010).

In the case of SORA, these reporting obligations are in fact quite specific on their face, and thus do not implicate Due Process vagueness concerns. While these requirements demand a lot of information from offenders, they are not discriminatory, nor do they restrict any activity simply as a result of their function.

    b.  Loiter

Next, Plaintiffs' argue that because SORA does not define "loiter"—but nonetheless holds Plaintiffs strictly liable under this section—it is impermissible. A statute is not vague if it "gives a person of ordinary intelligence fair notice that his contemplated activity is forbidden." *United States v. Spencer*, 839 F.2d 1341, 1344 (9th Cir. 1988). Additionally, when addressing terms in a statute, absent indications of a contrary purpose, a Court must give terms their ordinary meaning. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Ada Cty.,* 849 P.2d 83, 88 (Idaho 1993).

Here, it is clear that an offender cannot:

Knowingly loiter on a public way within five hundred (500) feet from the property line of school grounds in this state, including properties posted with a notice that they are used by a school, when children under the age of eighteen (18) years are present and are involved in a school activity or when children are present within thirty (30) minutes before or after a scheduled school activity.

Idaho Code § 18-8329(1)(b). Although only a single word is challenged, the Court must look to see if the prohibited *behavior* is well defined. "In an as-applied challenge, a

statute is void for vagueness (and thus unconstitutional under due process) if the statute "(1) does not define *the conduct* it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Wyatt*, 408 F.3d 1257, 1260 (9th Cir. 2005) (emphasis added).

SORA's loitering prohibition complies with both requirements. As outlined above, the statute sufficiently defines the prohibited behavior, albeit not the exact word. The word, "loiter" is given its ordinary meaning. The statute also outlines exceptions, as well as punishments for violating the rule. *See* Idaho Code § 18-8329(2)(a)-(f).

Plaintiffs have not met their burden of showing any vagueness on the face of SORA—with regard to the reporting requirements and the term "loiter."

c. Other challenges

Additionally, insofar as Plaintiffs allege that SORA, and/or any specific restriction, "fails to further any legitimate governmental purpose," as will be addressed in more detail regarding Claim 3, "to withstand Fourteenth Amendment scrutiny, a statute is required to bear only a rational relationship to a legitimate state interest, unless it makes a suspect classification or implicates a fundamental right." *Nat'l Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). As the Court explained in regards to Claim 6, SORA and its provisions serve a legitimate state interest: protection of society. As will be explained in detail in upcoming sections, sex offenders are not a suspect class and SORA does not implicate any fundamental rights. This claim is facially barred.

On a related note, in Plaintiffs' Amended Complaint (Dkt. 4), in between the factual allegation subheading and the causes of action section there is a section entitled: "IX. The Actions Of The Legislature In Amending The Sex Offender Registry In 2009 Represent A Violation Of All Registrants' Rights To Due Process." Although not officially listed as a claim, the assertions in these paragraphs are not, strictly speaking, covered in Plaintiffs' Due Process claims (Claim 1 and Claim 3). Insofar as this is a general Procedure Due Process challenge, the Court notes that the analysis of the other claims is sufficiently analogous to illustrate why this claim cannot withstand scrutiny.

Under Procedural Due Process standards, Plaintiffs' claim would fail,[11] but more on point, the United States Supreme Court in *Connecticut Department of Public Safety v. Doe*, and the Ninth Circuit in *Doe v. Tandeske,* have already ruled upon this very issue. In both cases, the courts found that classification based registration requirements were valid, that registrants were not entitled to an opportunity to be heard on an individual basis, and that this type of regulatory structure did not violate Procedural Due Process rights. *See generally, Connecticut Department of Public Safety v. Doe,* 538 U.S. 1 (2003); *Doe v. Tandeske*, 361 F.3d 594 (9th Cir. 2004).

---

[11] *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) and *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These cases outline a two-step process for Due Process challenges: whether there exists a liberty or property interest of which a person has been deprived, and if so, whether the procedures followed by the State were constitutionally sufficient. Under this analysis, as outlined in other sections in this decision, Plaintiffs' claim would be unsuccessful.

The State has met their burden to avoid a facial or as-applied Procedural Due Process challenge. The enactment of SORA was constitutionally sufficient. "When a state alters a state-conferred property right through the legislative process, 'the legislative determination provides *all the process that is due*.'" *Rea v. Matteucci,* 121 F.3d 483, 485 (9th Cir. 1997) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, (1982) (emphasis added). Furthermore, a legitimate interest is present and the State applied SORA in a non-discriminatory fashion. The State can also enforce specific requirements based upon certain group classifications without making any individualized assessments.

2.  As-Applied Challenge

Plaintiffs have not identified any specific Does who were injured as a result of the reporting requirement or the alleged vagueness of the term "loiter." Therefore, dismissal with leave to amend is appropriate as to those specific challenges.

Under settled precedent, however, even an as-applied challenge to Procedural Due Process (as a whole) would fail. Therefore, the Court will not grant leave to amend this "claim."[12]

---

[12] At the conclusion of this decision, the Court will outline which claims it is dismissing outright and which claims it will grant Plaintiffs leave to amend. Even then, because Plaintiffs' causes of action are so broad, a "claim" such as Due Process may appear multiple times. The Court expects Plaintiffs to use reasoned judgment and understand that even if the Court does not list every claim that has some elements of that particular cause of action, this does not mean that Plaintiffs can amend it. Case-in-point: Procedural Due Process. Plaintiffs have sprinkled this broad constitutional topic throughout two or three of their claims (and as noted, not in a claim at all). The Court here has determined that no Procedural Due Process claim may proceed— facially or

<u>CLAIM 2 – FREE EXERCISE OF RELIGION</u>

Free exercise of religion violations under the First Amendment, "[b]ecause churches and other places of worship fall within the places certain sex offenders may not 'knowingly be' within five hundred (500) feet of under [SORA], regardless of the actual known risk posed by these offenders[.]" Dkt. 4, ¶ 241.

1. Facial Challenge

This claim is tenuous at best. Broadly speaking, it operates under the assumption that a church or place of worship could be located within 500 feet of a school, park, or place children frequent (i.e. a place where a registered offended cannot be), and, as a result, the offender would have to choose between violating SORA and being able to exercise his or her First Amendment right to freedom of religion.

Facially, SORA is valid; the regulation to stay 500 feet from certain locations is regulatory and numerous churches and places of worship in Idaho do not fall within this restricted zone (i.e. there is a set of facts that exists under which the Act is valid). This appears to be one of the "hypothetical or imaginary cases" the Court should not endeavor to speculate on.

2. As-Applied Challenge

As-applied, Plaintiffs have not identified a single example of this happening (a person's religious building being located in a restricted zone and therefore unavailable to

_____

as-applied—therefore, regardless of where it appears, the Court will not allow any amendment on that topic.

them); however, even if a specific example was present, the Court would have to look outside SORA for a determination on this claim.

In 2000, Idaho enacted the Free Exercise of Religion Protected Act ("FERPA"), largely mirroring the 1993 federal Religious Freedom Restoration Act ("RFRA"). Idaho Code § 73-401 *et sec*. FERPA protects the free exercise of religion in Idaho and mandates that the government cannot substantially burden a person's exercise of religion. Idaho Code § 73-402(1)-(2).

Under FERPA, any state law that is "enacted or adopted on or after the effective date of this chapter [is] subject to this chapter unless the law explicitly excludes application by reference to this chapter." *Id.* at § 73-403(2). SORA was enacted (at least the 2001, 2009, and 2011 amendments at issue here) after FERPA, and SORA does not enumerate FERPA as an exclusion. Plaintiffs are essentially claiming that the provisions of SORA run contrary to FERPA.

FERPA outlines that the government may only burden a person's free exercise of religion if the burden is essential to furthering a compelling government interest and the burden is the least restrictive means of furthering that interest. Idaho Code § 73-402(3)(a)-(b).

The Court has already determined the SORA's provisions serve a compelling government interest: the protection of society. Second, this 500 foot restriction appears to be the least restrictive means to accomplish that goal.

Lastly, when challenges to enacted laws arise, the Court must give deference to the government and presume that they acted in accordance with all relevant statutes (FERPA) and constitutional provisions (the First Amendment). *See e.g.*, *Angov v. Lynch,* 788 F.3d 893, 905 (9th Cir. 2015).

The Court will allow Plaintiffs to amend this claim. Plaintiffs must provide specific facts for an as-applied challenge, but must also address FERPA, specifically what, if anything, rebuts the presumption that the State enacted SORA in accordance with FERPA's requirements and thus SORA cannot violate the Free Exercise Clause as a matter of state law.

### CLAIM 3 – DUE PROCESS (Free association/ travel)

Substantive due process violations under the Fourteenth Amendment, because SORA "impinges on their fundamental rights to free association, [to] travel, and to raise their children without undue governmental interference." Dkt. 4, ¶ 245.

1. Facial Challenge

Continuing the discussion from Claim 1, Plaintiffs must identify which fundamental rights SORA has burdened in order to bring a valid Fourteenth Amendment claim. Because strict scrutiny analysis applies to statutes that infringe upon a fundamental right, Courts have outlined which rights are truly fundamental: "the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (citing *Washington v. Glucksberg,* 521 U.S. 702, 727 (1997)).

In this case, Plaintiffs' contend that:

> Idaho SORNA 2001, 2009, 2011, impacts the plaintiffs' ability to travel throughout Idaho, attend church or other religious services, go to Court or attorney offices, parent their children, and live with their families. Idaho SORNA 2001, 2009, 2011 impinges on their fundamental rights to free association, travel, and to raise their children without undue governmental interference.

Dkt. 4, ¶ 245. In *Doe v. Tandeske,* the Ninth Circuit found that individuals convicted of serious sex offenses did not have a fundamental right to be free from sex offender registration requirements or regulations, and that such requirements serve "a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community." 361 F.3d 594, 597 (9th Cir. 2004).

Here, Plaintiffs cannot mount a successful facial challenge as they have not alleged, nor could they, that all registrants have suffered all of the purported harms. Furthermore, under *United States v. Juvenile Male* and *Doe v. Tandeske,* none of the "rights" Plaintiffs' allege are fundamental rights demanding strict scrutiny analysis. Plaintiffs simply state that SORA "impacts" them in negative ways.

As has already been discussed, while the outcome of certain regulations may negatively affect a person socially, economically, or even legally, the Court must weigh any competing interests. Time and time again, Courts have found that the protection of society outweighs any inconvenience or diminution in rights suffered by registrants. Common arguments in this area are that the registration requirements are embarrassing, invasive, and burdensome. These challenges, however, have been unavailing as none are based on recognized fundamental rights. Facially, this challenge fails.

2. As-Applied Challenge

Plaintiffs' broad assertions have a questionable connection at best to protected fundamental rights,[13] but without details related to specific Does, Plaintiffs cannot establish a valid claim. The Court will dismiss with leave to amend.

CLAIM 4 – EQUAL PROTECTION (Disparity in treatment)

Equal protection violations under the Fourteenth Amendment, because "the Idaho legislature has created two (2) separate but similarly situated groups, one (1) between fourteen (14) and eighteen (18) years of age [subject to the Juvenile Sex Offender Registration Notification and Community Right-to-Know Act (JSORA), Idaho Code §§ 18-8401 to -8414], and one (1) eighteen (18) years of age and older, members of each group having committed and been found guilty of one (1) or more of a group of included criminal offenses." Dkt. 4, ¶ 252.

1. Facial Challenge

The Equal Protection Clause of the Fourteenth Amendment requires the application of strict scrutiny to any law if the aggrieved party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439–40 (1985). Here, Plaintiffs are not members of a suspect or protected class, and as was just addressed, no fundamental rights are at issue.

Plaintiffs claim that in Idaho there exists a disparity in treatment between juvenile sex offenders and adult sex offenders. This argument fails, however, because 1) sex

---

[13] The only claims of Plaintiffs that touch upon fundamental rights are the assertions regarding parenting their children and raising their children without undue governmental interference.

offenders are not a suspect class, 2) age is not a suspect class, and 3) these two groups are not similarly situated. Equal Protection analysis simply does not apply.

The Ninth Circuit has previously rejected the argument that sex offenders are a suspect or protected class. *United States v. LeMay,* 260 F.3d 1018, 1030–31 (9th Cir.2001). Further, the United States Supreme Court has determined that "age is not a suspect classification under the Equal Protection Clause." *Gregory v. Ashcroft,* 501 U.S. 452, 470 (1991) (citing *City of Cleburne,* 473 U.S. at 441) ("We have declined, however, to extend heightened review to differential treatment based on age."). Finally, the Supreme Court held in *Roper v. Simmons* that juveniles and adults are not similarly situated, particularly in the context of sexual offenses, and can therefore be treated differently. 543 U.S. 551, 569-70 (2005).

Because Plaintiffs in this case have failed to establish membership in a recognized protected class, and because a statute, like SORA, can treat juveniles and adults differently,[14] the Court must dismiss Plaintiffs' facial Equal Protection claim.

2.  As-Applied Challenge

The above analysis applies to as-applied challenges as well. Because Plaintiffs are not a protected class, and because there is a valid reason for treating age groups

---

[14] The Court notes that in reality minors are subject to JSORA (the Juvenile version of SORA) because the Court sentences them under a different code section than adults who are subsequently subject to SORA. This too is an indication that adults and juveniles are not similarly situated under Idaho statutes and can be treated differently.

differently, even an individual as-applied challenge on this basis is legally barred. The

Court will not grant leave to amend Claim 4.

CLAIM 5 – CRUEL AND UNUSUAL PUNISHMENT

Cruel and unusual punishment violations under the Eighth Amendment, because "anyone convicted of a crime with any 'sexual element' or any crime that is considered an 'aggravated' offense, no matter when they were convicted, is considered a sex offender under [SORA] and is subject to community notification and registration requirements." Dkt. 4, ¶ 259.

1. Facial Challenge

Here again, the Court incorporates the Ex Post Facto Clause analysis. The

regulations do not constitute punishment nor are the specific requirements alleged here—

community notification and lifetime registration for aggravated offenses—criminal. They

are statutory creations which other petitioners have tried to challenge in other courts and

been unsuccessful. There is no reason to treat this challenge any differently. Numerous

courts have held that SORA statutes "do[] not meet the high standard of cruel and

unusual punishment." *United States v. Juvenile Male*, 670 F.3d 999, 1010 (9th Cir. 2012).

As has been discussed, registration requirements are not punitive, let alone do they

constitute cruel and unusual punishment.

Moreover, the Ninth Circuit has held that "the broad categories of offenses

differentiated in the Act and the corresponding length of the reporting requirement, are

reasonably related to the danger of recidivism,[15] and this is consistent with the regulatory objective." *Tandeske,* 361 F.3d at 597 (citing *Smith v. Doe*, 538 U.S. at 87 (internal quotation marks omitted).

### 2.  As-Applied Challenge

Plaintiffs have a tough road to plow to mount a successful as-applied challenge on their punishment based claims (Claims 5, 6, 7, 10, 11). The Court has cited cases that foreclose comparable challenges as those brought by Plaintiffs. Some of those cases dealt with facial challenges, some with as-applied challenges, and some with both. By allowing amendment for these as-applied punishment challenges, the Court is not prescreening or opining that any will be availing; the Court is allowing amendment primarily because Plaintiffs pleaded no as-applied challenges so the Court does not know if any exist in Idaho.[16]

---

[15] Plaintiffs have a continuing challenge throughout their briefing concerning the idea that recidivism is an appropriate metric for evaluating and classifying offenders. Plaintiffs provide extensive research and commentary supporting the proposition that assumptions about recidivism are incorrect, that statistical analysis in this area is flawed, and that regulations based upon such a premise miss the mark. The Court finds this data interesting, but under the facial challenge analysis, only looks at whether a set of circumstances exists in which the law is constitutional. Even assuming that a better method is out there for classifying people, this would not change the fact that the regulatory scheme as currently written is nonetheless still constitutional.

[16] Specifically, in regards to Plaintiffs' cruel and unusual punishment claim, the Court recognizes that the Idaho Court of Appeals recently addressed this exact constitutional challenge in *State v. Kinney,* No. 44752, 2018 WL 1598914 (Idaho Ct. App. Apr. 3, 2018). That case most likely forecloses the challenge here. As noted, however, because Plaintiffs have not plead any specific facts and the Court is granting leave to amend this claim, the Court will discuss the implications of *State v. Kinney* once Plaintiffs have amended their Complaint.

Additionally, even if the Court grants leave to amend particular claims, Plaintiffs are not required to do so. If Plaintiffs brought a challenge primarily on a facial basis, they can simply let that claim go; Plaintiffs do not need to conjure up an as-applied claim where none exists.

Similar to Claim 6, the Court will grant leave to amend on this claim so that Plaintiffs can identify any particular Does and specifically how SORA has resulted in cruel and unusual punishment in his or her circumstance.

CLAIM 7 – DOUBLE JEOPARDY

Double Jeopardy Clause violations under the Fifth Amendment, because SORA "impose[s] new punishments on persons previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism." Dkt. 4, ¶ 267.

1. Facial Challenge

The Court reincorporates the Ex Post Facto Clause analysis here as well. Specifically, the Ninth Circuit has held that "the inquiry into whether a law constitutes retroactive punishment in violation of the Double Jeopardy Clause is identical to that with respect to the Ex Post Facto Clause." *Litmon,* 768 F.3d at 1242. Plaintiffs have not meet their burden to mount a successful facial challenge based upon the Ex Post Facto Clause therefore their Double Jeopardy facial challenge fails as well.

2.  As-Applied Challenge

Similar to Claims 5 and 6, the Court will grant leave to amend in order for

Plaintiffs to identify a specific Doe whose Fifth Amendment rights were violated by

Idaho SORA. If none exists, Plaintiffs need not revise this claim.

CLAIM 8 – CONTRACTS CLAIMS

Contracts Clause violations under Article I, Section 10, Clause 1 of the
United States Constitution and Article I, Section 16 of the Idaho Constitution,
because SORA "operates as a substantial impairment to the preexisting
contractual relationship between the State and Plaintiffs Guilty Plea
Agreements by imposing new terms not negotiated which drastically
increase, and, or require lifetime supervision, registration and community
notification." Dkt. 4, ¶ 271.

1.  Facial Challenge

The Court incorporates the prior sections addressing the Ex Post Facto Clause and

Due Process challenges in relation to the "retroactive punishment" aspect of this claim,

and the forthcoming discussion in Claim 10 regarding "new terms." The Court simply

adds that a petitioner has tried to assert a similar type of contract argument before and

failed. *See Maciel v. Cate*, 731 F.3d 928 (9th Cir. 2013). Plaintiffs have not presented

anything that would distinguish this case from what the Ninth Circuit has already

decided, which is binding on this Court.

Additionally, as a general rule, requiring compliance with changes in a law made

retroactive to an individual does not violate the terms of a defendant's plea agreement.

*See Doe v. Harris*, 302 P.3d 598, 605 (Cal. 2013). Similarly, the fact that a plea

agreement does not specifically reference something (usually unforeseeable) does not negate its efficacy. *Id.*

In summary, even if SORA's requirements are "new terms" or new requirements not contemplated for in a Defendant's plea agreement (contract), the State can apply SORA retroactively without "breaking" or altering the individual's agreement. Additionally, these alleged contracts violations would not apply to an offender whose conviction was not the product of a plea deal. Facially, the Court must dismiss this challenge.

2. As-Applied Challenge

The Court will dismiss this claim with leave to amend so Plaintiffs can identify a specific Doe who has suffered the alleged contractual harm.

CLAIM 9 – TAKINGS

Takings Clause violations under the Fifth Amendment, because SORA places "residential and movement restrictions on Plaintiffs, [and] unconstitutionally restricts Plaintiffs' property rights to the point that constitutes a regulatory taking requiring just compensation." Dkt. 4, ¶ 279.

1. Facial Challenge

At this point, the Court can only surmise how SORA, or any of its requirements, would constitute a taking that would require government compensation. There is no facial challenge Plaintiffs could make as the residential restrictions cannot negatively affect all offenders in the way suggested, once again indicating that the law is not unconstitutional in all situations. The Court will dismiss this facial challenge.

2. As-Applied Challenge

The only as-applied theory Plaintiffs could raise (which Defendants point out) is that someone may have somehow "lost" the value of their home because of certain SORA restrictions—an inverse condemnation theory. The Court cannot contemplate a scenario in which a person would lose the entire value of their home—especially considering the numerous exceptions in the statute—but assuming arguendo that an as-applied situation like this does exist, Supreme Court precedence most likely forecloses the claim.

Under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), in order to obtain just compensation for a taking, the claim must be ripe. In order for a takings claim to be ripe, a plaintiff must demonstrate that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. . . . Second, the plaintiff must have sought, and been denied, compensation through the procedures the State has provided for doing so." *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 958 (9th Cir. 2011) (citations omitted). Here, Plaintiffs have not alleged that anyone has met these two requirements sufficient to establish a ripe takings claim. The Court will not grant Plaintiffs leave to amend this claim.

In the unlikely event that some Doe is in this position: has had a final determination by the State, has exhausted his administrative remedies, and has a ripe takings claim, the Court would reconsider this part of its decision.

CLAIM 10 – STATE SEPARATION OF POWERS

Separation-of-powers violations under Article XI, Section 1 of the Idaho Constitution, because SORA "limits the judicial power of sentence finality as the law vacates existing court judgments regarding sex offenders' classifications, and community notification and reverses final court judgments setting the length of time that sex offenders must register." Dkt. 4, ¶ 283.

1. Facial Challenge

The Court reincorporates the same discussion here that it has reiterated with all other punishment-based causes of action. The assertion that final sentences imposed before the enactment of SORA act as a bar to future civil requirements, such as registration, is baseless. Courts have held that "the registration requirement [is] a non-punitive regulatory measure . . . not part of [defendants] sentence and thus need not be included in the court's judgment." *Maciel,* 731 F.3d at 935. SORA did not change Plaintiffs' sentences, nor have any "final court orders," as Plaintiff calls them, been reversed. SORA imposes a duty to register on individuals. The duties and requirements of SORA are separate from Plaintiffs' convictions, and as the Court has noted, are regulatory penalties, i.e. civil, not criminal. The Court will dismiss this facial challenge.

2. As-Applied Challenge

Plaintiffs have not raised any as-applied challenge, so the Court will grant Plaintiffs leave to amend to provide further details if such a claim exists.

CLAIM 11 – STATE POLICE POWERS

Police power violations under Article XI, Section 8 of the Idaho Constitution, because John Does 4, 7, 18, 53, 62, 80, 85, 100, 105 and 132 "had been unconditionally released from custody, probation/parole and any sex

offender registration requirements prior to the enactment of Idaho SORNA 2001, 2009, 2011" and "were, therefore, not in any special relationship with the government of the State of Idaho at the time of the enactment of SORNA 2001, 2009, 2011." Dkt. 4, ¶ 287.

1.  Facial Challenge

This final punishment-based challenge fails facially for the same reasons the Ex Post Facto Clause challenge failed. SORA's requirements are not punitive or retaliatory.

The claim here seems to be that once SORA was enacted, certain individuals, all of whom had previously been required to register—but were no longer under any reporting requirements—were "brought back" and required to re-register. Because the State had previously released them, Plaintiffs contend the State did not have any legal authority to require them to re-register. This argument is a stretch. To imply that a state cannot police its citizens generally is a fallacy. But to say—in essence—that a state cannot enact and then enforce its own statutes or laws is wholly inaccurate. Even though the State of Idaho had previously released these individuals from probation or other reporting requirements, as has been noted numerous times, the Supreme Court has already determined that a state can apply SORAs retroactively. In summary, even though Idaho "brought back" these Plaintiffs after releasing them, this requirement to re-register does not constitute a violation of the statute or any other constitutional provision.

Additionally, Plaintiffs seem to be quoting an inapplicable statute. Article XI of the Idaho Constitution applies to private and public corporations. Section 8 does have to do with the police power, but only as applied to corporations. It states "the police powers of the state shall never be abridged or so construed as to permit *corporations to conduct*

*their business in such manner as to infringe the equal rights of individuals*, or the general well-being of the state." *Id.* (emphasis added).

Even construing this claim broadly, taking into account the Court's analysis on all other claims that outline the State's valid and constitutional reasons for enacting SORA, there has been no violation of the police power. The Court will dismiss this facial challenge.

## 2. As-Applied Challenge

The same analysis would apply to an as-applied challenge. Reference to a corporate section of the Idaho Constitution is insufficient to support a facial or as-applied challenge based upon a police power argument. The Court will not allow amendment on this claim.

## V. CONCLUSION

Upon review, the Court has no choice but to dismiss each claim when viewed as a facial challenge. In every situation, Plaintiffs have failed to demonstrate that "no set of circumstances exists under which the Act would be valid." The Act itself is valid and each challenged provision or requirement is valid and applicable in numerous circumstances. The Court cannot find as a matter of law that Idaho SORA, in whole or in part, is facially unconstitutional.

The Court must next analyze whether SORA is unconstitutional as to any particular person. This requires specific facts. Plaintiffs must plead as-applied challenges so that the Court can properly establish standing and evaluate the alleged harms of

specific plaintiffs. For legal and statutory reasons, however, even some as-applied challenges would not withstand scrutiny and the Court will dismiss those claims outright without leave to amend.

Plaintiffs must amend the surviving claims to comply with the Court's analysis.

In summary, the Court **will allow** Plaintiffs to amend Claim 1 (Due Process – Reporting and Vagueness)[17]; Claim 2 (Free Exercise); Claim 3 (Due Process – Free Association and Travel); Claim 5 (Cruel and Unusual Punishment); Claim 6 (Ex Post Facto); Claim 7 (Double Jeopardy); Claim 8 (Contracts)[18]; and Claim 10 (Separation of Powers) to state an appropriate as-applied challenge with a specific plaintiff/s and specific facts.[19] If none exists, amendment is not necessary.

---

[17] The Court will only allow amendment regarding reporting or vagueness or other specific provisions within SORA. The Court will not allow amendment for a general Procedural Due Process claim as even an as-applied challenge in this area would fail.

[18] As noted, the Court combined the U.S. Constitution and Idaho Constitution contract based claims. Plaintiffs can elect whether to plead this as one or two claims.

[19] Finally, the Court notes that technically speaking, some claims in this lawsuit do include arguments that *would* apply to all Does. For example, all Does are required to report in person and all Does have been criminally prosecuted in State Court. These 134 Does do not represent the entire population required to report, however, so the facial challenges still fail. But by saying Plaintiffs need to raise as-applied challenges, the Court is not implying Plaintiffs must take the time to list each Doe and how the regulation affects him or her. Plaintiffs simply need to find someone who fits the required fact pattern, outline in detail how SORA is unconstitutional to them, and submit that claim for review. Only in this way will Plaintiffs be able to mount an appropriate as-applied challenge.

The Court **will not allow** Plaintiffs to amend Claim 4 (Equal Protection); Claim 9 (Takings)[20]; and Claim 11 (State Police Powers) because even an as-applied challenge would fail.

## VI. ORDER

1. Defendants Motion to Dismiss (Dkt. 15) is **GRANTED**.

2. Plaintiffs are **GRANTED LEAVE** to file a second amended complaint to cure deficiencies identified in this decision. Plaintiffs have 60 days to file their second amended complaint.

DATED: May 17, 2018

David C. Nye
U.S. District Court Judge

---

[20] Except if, as this decision outlines, a Doe has exhausted all administrative state remedies and has a ripe claim.