**Greg J. Fuller**
**Daniel S. Brown**
**FULLER LAW OFFICES**
**Attorneys at Law**
**161 Main Avenue West**
**P. O. Box L**
**Twin Falls, ID 83303**
**Telephone: (208) 734-1602**
**Facsimile : (208) 734-1606**
**ISB #1442**
**ISB #7538**
fullerlaw@cableone.net

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

* * * * *

| | | |
|---|---|---|
| JOHN and JANE DOES 1-134, | ) | Case No.: 1:16-CV-429 |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | <u>AMENDED COMPLAINT</u> |
| vs. | ) | <u>FOR INJUNCTIVE AND</u> |
| | ) | <u>DECLARATORY RELIEF</u> |
| LAWRENCE WASDEN, Attorney | ) | |
| General of the State of Idaho; KEVIN | ) | <u>(PART II)</u> |
| KEMPF Director of the Idaho | ) | |
| Department of Correction; TERRY | ) | |
| KIRKHAM, Chief Department of | ) | |
| Correction Probation and Parole | ) | |
| Division, SEXUAL OFFENDER | ) | |
| MANAGEMENT BOARD and its | ) | |
| members, JON BURNHAM, MICHAEL | ) | |
| JOHNSTON, Ph.d., MOIRA LYNCH, | ) | |
| JEFFREY BETTS, ERWIN | ) | |
| SONNENBERG, JEAN FISHER, | ) | |
| PAULA GARAY, SHERIFF | ) | |
| MATTHEW THOMAS, KIMBERLY | ) | |
| SIMMONS, WILLIAM CRAWFORD | ) | |
| and CHRISTINA IVERSON, in their | ) | |

AMENDED COMPLAINT PART II - 1

official capacities; COLONEL RALPH )
POWELL, Director,   IDAHO STATE )
POLICE, STEVEN BARTLETT, ADA )
COUNTY SHERIFF; LORIN )
NIELSEN,  BANNOCK COUNTY )
SHERIFF; BRENT T. BUNN, BEAR )
LAKE COUNTY SHERIFF; CRAIG )
T. ROWLAND, BINGHAM COUNTY )
SHERIFF; JIM KACQMAREK, BOISE )
COUNTY SHERIFF PAUL J. WILDE, )
BONNEVILLE COUNTY SHERIFF; )
KIERAN DONAHUE, CANYON )
COUNTY SHERIFF; MICHAEL )
HADERLIE, CARIBOU COUNTY )
SHERIFF; JAY HEWARD, CASSIA )
COUNTY SHERIFF; CHRIS GOETZ, )
CLEARWATER COUNTY SHERIFF; )
RICK LAYHER, ELMORE COUNTY )
SHERIFF; DAVID FRYAR, FRANKLIN )
COUNTY SHERIFF; CHARLES )
ROLLAND, GEM COUNTY SHERIFF; )
SHAUN GOUGH, GOODING COUNTY )
SHERIFF; STEVE ANDERSON, )
JEFFERSON COUNTY SHERIFF; )
DOUG McFALL, JEROME COUNTY )
SHERIFF; BEN WOLFINGER, )
KOOTENAI COUNTY SHERIFF; )
RICHARD SKILES, LATAH COUNTY )
SHERIFF; LYNN D. BOWERMAN, )
LEMHI COUNTY SHERIFF; KEVIN )
ELLIS, LINCOLN COUNTY )
SHERIFF; ERIC SNARR, MINIDOKA )
COUNTY SHERIFF; JOE )
RODRIGUEZ, NEZ PERCE COUNTY )
SHERIFF; TONY LIFORD, TETON )
COUNTY SHERIFF; TOM CARTER, )
TWIN FALLS COUNTY SHERIFF, )
and; PATTI BOLEN, VALLEY )
COUNTY SHERIFF, )
                              )
          Defendants.         )

* * * * *

AMENDED COMPLAINT PART II - 2

COME NOW the Plaintiffs, by and through their attorneys of record, Fuller Law Offices, and hereby amends the Amended Complaint pursuant to this Honorable Court's Memorandum Decision and Order dated May 17, 2018.  The Plaintiffs hereby re-incorporate and reallege all allegations contained in the Amended Complaint as if fully set forth in this Amended Complaint Part II.  Pursuant the Memorandum Decision and Order, the Plaintiffs respectfully allege the following in support of their as-applied analysis:

1.  SORA only applies to those convicted of a sexual offense "[o]n or after July 1, 1993" or those who "[p]leads guilty to or has been found guilty of a crime covered in this chapter prior to July 1, 1993, and the person, as a result of the offense, is incarcerated in a county jail facility or a penal facility or is under probation or parole supervision, on or after July 1, 1993." (Idaho Code Section 18-8304(a), (d)).

2.  Plaintiffs jointly allege that the fact that the Idaho Legislature has not included all of those convicted of the same sexual offenses in the registration scheme, is powerful evidence of an intent to punish those who are recently convicted of a sexual offense, on or after January 1, 1993, or those who are incarcerated or under probation or parole on or after January 1, 1993 for a sexual offense.

3.  Plaintiffs jointly allege that anyone who was convicted of a sexual offense prior to January 1, 1993, and had concluded any incarceration, probation or parole prior to January 1, 1993 would not be required to register, *regardless of the severity of the sexual offense*.  Because Idaho classifies sexual offenders solely by the nature of the conviction, as opposed to the nature of the offense, there can be no justification for

AMENDED COMPLAINT PART II - 3

excluding those of the same conviction, except for punitive reasons.

4.  Plaintiffs jointly allege that Idaho's practice of applying potential criminal penalties for violations of SORA, is additional evidence of punitive intent.  If SORA is civil in nature, violations of same should trigger civil penalties as opposed to criminal penalties.

5.  Plaintiffs jointly allege that the findings of the Idaho Legislature as set forth in Idaho Code Section 18-8302 are not supported by factual evidence.

6.  **Plaintiff John Doe 82**, was convicted on May 12, 1986, in Sitka County, state of Alaska, of the crime of Sexual Abuse of a Minor in the 2nd Degree, to-wit: Sixteen (16) or Seventeen (17) Years, a felony.   The sentence imposed consisted of a two (2) year determinate term, followed by a six (6) year indeterminate term, for a total unified sentence of eight (8) years.  Plaintiff, John Doe 82, was released from custody in 1988 after serving the two (2) year determinate portion of his sentence.

At the time of imposition of sentence, the laws of the State of Alaska did not provide for sex offender registration.

In 1995, Plaintiff, John Doe 82, was released from parole unconditionally with no further duties or obligations to the state of Alaska as a result of the above-mentioned conviction. Thereafter, Plaintiff, John Doe 82, was notified by the state of Alaska that due to a change in state law, he would be brought back into the criminal justice system for the purpose of newly enacted sex offender registration requirements.  That this was done without prior notice to John Doe 82 without the opportunity to be heard in opposition to the newly enacted registration requirements.

AMENDED COMPLAINT PART II - 4

In the year 2000, Plaintiff, John Doe 82, moved to the state of Florida and began registering as a sex offender pursuant to that state's registration requirements.  That by letter dated November 19, 2008, John Doe 82 was advised by the Florida Department of Law Enforcement that he was being permanently released from the requirement that he register as a sex offender from that point forward.   Between the time of receiving the letter and 2013, Defendant, John Doe 82, continued to reside in the State of Florida without any registration requirements.  During this time period, said Plaintiff's owner operated business flourished as a direct result of his removal from Florida's sex offender registry.

Plaintiff, John Doe 82, additionally alleges as follows:

That in 2013, Plaintiff, John Doe 82, moved with his family to the State of Idaho. Shortly after his arrival, he applied for an Idaho's driver's license and was informed by the State of Idaho law enforcement authorities that he would, once again, be required to register as a sex offender in that state, for life.  Furthermore, due to the fact Idaho was now requiring him to register, he was notified by Idaho authorities that in the event of his return to the state of Florida, he would once again have to register as a sex offender in that state, despite his earlier unconditional release from reporting requirements there.

To the best of John Doe 82's recollection, early on he only had to report once annually to verify his personal information, i.e., address, phone number, vehicle license, etc.  As time has passed, the requirements have continued to increase to where now he has to reply via mail three (3) times annually, appear in person once annually, as well as having the police come to his door unannounced at least once annually to verify his address.  He has had travel restrictions placed on him that he asserts are anything but reasonable as well as having absolutely no housing or employment opportunities.

John Doe 82 feels as though he has been relentlessly persecuted for thirty-three (33) years for his offense.  He never willingly shares his last name with those whom he is just meeting (at church for example) for fear they will do a background search and discover that he is on the sex offender registry.  He has experienced it over and over - once he is found to be on the sex offender registry,

AMENDED COMPLAINT PART II - 5

he is shunned and alienated.  Even the persons that go to church want nothing to do with him once they realize he is on the sex offender registry.  John Doe 82 asserts that no one takes the time to find out how he came to be on the registry, they just assume the worst.

John Doe 82 has lost many acquaintances (they never had the opportunity to become friends!) over the years due to this.  In this day and age, everyone seems to check-up on everyone else and most often it is via the internet.

In addition, there is another factor that discourages traveling.  John Doe 82 was released from having to register by the State of Florida.  However, if he travels to Florida from Boise, the Boise sex offender registry office contacts the State of Florida and he has to register with Florida while he is there.

As with all sex offenders, John Doe 82 has been routinely denied living in an apartment,  home, or condo, simply because the owner/landlord already has considered "what would the neighbors, my family, my friends or my colleagues think if they knew I somehow associated with a sex offender or perhaps even helped them in some small way, such as letting them rent some run-down property from me?"  Plaintiff John Doe 82 asserts that if you are on the sex offender registry and you apply to rent a home or apartment, you almost will 100% certainly be turned down.

It is John Doe 82's personal experience that it is virtually impossible to find housing or employment opportunities as a registered sex offender.  The first thing any landlord or property management company does is run a background check.  If you are found to be on the sex offender registry you are automatically disqualified as being a viable candidate for anything you were trying to rent from them.  If you are a sex offender but are not on the registry due to the dates of your sentence being pre-1995 or so, then it is no problem to rent as his experience suggests that they only look for your name on the Sex Offender Registry.

Plaintiff John Doe 82 has considered taking his own life because at times he has felt it would be easier on everyone else, i.e., his loved ones, friends, and those that know who he truly is and so forth.

Virtually all employers perform a background check and if you are found to be on the registry, you are ruled out as a viable candidate for any position for which you have applied.  Plaintiff John Doe 82 went to over thirty (30) job interviews with the State of Alaska before he was hired.  And, even then, it was only due to the fact that they needed someone right away and he was hired on a "trial" basis.  Even after "proving" himself to be reliable, honest and professional, getting promoted was more of a pipe dream than a possibility.  More than once he was

AMENDED COMPLAINT PART II - 6

told that due to his being on the Sex Offender Registry, he would not be accepted as a candidate for the position for which he was applying.

Plaintiff John Doe 82 has his own business and when he was released from the sex offender registry, his business soared and he was almost living the good life. Upon moving to Boise and being required to again be on the sex offender registry, his business has suffered and he is in debt more than ever in his life.  He knows a number of people have decided not to use his service simply due to him being on the sex offender registry.

In about the mid-1990s, Plaintiff, John Doe 82,  had worked in the same department and the same division within that department for several years.  His role was to prepare, submit and monitor the annual multi-million dollar budget account for all personnel services for the entire division and he also filled in for any one of  three managers in the department when they were on vacation or away for any other reason.  Basically, he was monitoring the spending of several hundred million dollars.  The Senior Manager understood his abilities and encouraged him to apply for one of the manager positions that was coming open due to a manager retiring.  Unfortunately, another department (which had final say on all State hiring) felt that due to John Doe 82 being on the sex offender registry, he would not be considered for that position.  Part of it was him being on the registry, but a portion of their reasoning was that the restrictions placed on him such as the travel restrictions, reporting requirements and so forth "may" make it too difficult for him to perform his job well.

7. **John Doe 62**, was convicted in January, 1988 in Grand County, Colorado, for Sexual Assault of a Minor, to wit: the age of 9 years, a felony.  He was sentenced to a period of probation of four (4) years and was ordered that he was not to have any contact with children unless he received prior approval from the probation department.  Any time spent with children he was required to be on a supervised basis only.  In 1992, Plaintiff, John Doe 62, moved to Idaho while still on probation.  Plaintiff, John Doe 62, completed his probation without any violations, not even a traffic violation.  On January 5, 1994, said Plaintiff was released from probation by the Grand County, without any conditions whatsoever.

AMENDED COMPLAINT PART II - 7

Plaintiff, John Doe 62, additionally alleges as follows:

That John Doe 62's probation officer in Idaho informed him to either quit school and go back to Colorado, or be placed on the sex offender registry. John Doe 62 felt he had too much invested in is education to leave, so he was placed on the registry. As a term and condition of probation, John Doe 62 was to remain clean and sober, which he did. In fact, he conducted his own NA meetings for a period of three (3) years.

His life changed forever from that moment on to here, twenty-eight (28) years later. Being labeled a sex offender was used against him during his divorce in 1998. He fought for his rights as a father to have partial custody and it came to a point where he was continually in and out of court to fight for his rights as a parent. John Doe 62 was ostracized and persecuted by his family over this matter. In fact, he has not had contact with his family in a long, long time. Just recently, his sister found him, through his wife on Facebook, and informed him that his mother has Stage 4 COPD and that she fell and broke her hip. His mother is in South Dakota. John Doe 62 is 53 years old and would love to see his mother – if only things were different. Plaintiff, John Doe 62, cannot be alone with his grandchildren and has to be "supervised" for fear that he may be prosecuted over it. He adores his grandchildren and they him. He dreads the day that he has to tell them about their "Papa's" past and that they may see his photograph on the internet.

Plaintiff, John Doe 62, purchased a home in 2010. The next year, someone stated that he lived too close to the elementary school down the street. The U.S. Marshalls came to his home and informed him that they were going to measure the distance of his home to the school. Plaintiff, John Doe 62's residence was outside the 500 feet. However, in the excitement of purchasing his first home, he had forgotten that part of the minimum requirement law. The implications of what would, or what could, have happened if the measurement was within the 500 feet is too hard for Plaintiff, John Doe 62, to contemplate, as his home is his sanctuary.

Since the date Plaintiff, John Doe 62, was required to register as a sex offender, he has worked jobs where he could work alone. He did not tell anyone of his status for fear of being judged and persecuted. Being on the sex offender registry has precluded him from making lasting friendships. He is, and always will be, antisocial.

Plaintiff, John Doe 62, asserts that he has been unfairly and unlawfully treated by the SORA Board by all of the law changes from 2001-2011. By receiving letters in the mail informing him of the new law changes implemented after the fact,

AMENDED COMPLAINT PART II - 8

indicating that he must do this, or do that, for fear of being arrested and prosecuted, heavily fined and/or possibly jailed. He feels like he has been tried and re-convicted, multiple times, on the original charge after having completed his sentence/probation. He feels his rights have been violated, that he is worthless in trying to make anything of himself. He is unable to date due to fear that any woman in whom he was interested would abandon the relationship upon discovering his sex offender status. This, in fact, happened and has affected his self-esteem, leaving him afraid of trying again, only to be hurt. In 2002, he met a woman who gave him a chance and has been by his side for over fifteen (15) years. She has a daughter who, at that time lived with him and her mother. If John Doe 62 came home from work and she was there, he immediately went outside and sat in his truck until her mother got home from work.

Plaintiff, John Doe 62, attempted to obtain release from registry requirements in Idaho in 2011. The Court ordered him to obtain a Psychosexual Evaluation, which he did. However, the Court indicated that he did not read the evaluation stating that Plaintiff, John Doe 62, would have to register for life because the law changed to include the word "aggravated" to all convictions regardless of felony type. Type I felonies being the worst to Type IV felonies being least of offenses of which he was.

Plaintiff, John Doe 62, is a 53 year old man and a model citizen. It has been 28 years since his offense and he has been on the sex offender registry for 24 years. He is not a recidivist and would like the opportunity of being removed from the registry and not having to register for the rest of his life so that he can live free.

8. **Plaintiff, John Doe 106**, pled guilty pursuant to an *Alford Plea* to the crimes

of Rape of a Child and Child Molestation, for which conviction was entered on December

31, 1990, in King County, Washington. The sentence imposed consisted of forty-eight

(48) months in the King County Jail, after which he was released in September, 1994.

Said Plaintiff was then placed on probation for a period of one (1) year. That same year,

said Plaintiff was advised he was required to register as a sex offender in the State of

Washington, and he was released from probation in October, 1995.

In 2000, said Plaintiff moved to Idaho, where he began registering as a sex

offender. At this point in time, Idaho SORA's requirements provided that this Plaintiff

register for a period of ten (10) years from the date of release from his probation, i.e.,

October, 2005.  That subsequent to the amendment to Idaho SORA which became

effective July 1, 2009, said Plaintiff was notified he would thereafter be required to

register for life as a sex offender.  That this substantial and material change in the

registration reporting requirements, as to this Plaintiff, were made with no prior notice to

him, no opportunity to be heard in opposition, and with no regard for the subjective

circumstances of this Plaintiff.  By reason thereof, Plaintiff, John Doe 106's, due process

rights were violated all to his detriment.

Plaintiff, John Doe 106, additionally alleges as follows:

In 2007,  John Doe 106 and his wife were cast in leading roles at the Moscow
Community Theater (MCT) along with their oldest son. Afterwards, due to
concerns by other people whom had seen Plaintiff, John Doe 106, on the SORA
postings, the theater group banded together to prohibit him and his family from
participation in future shows. This restricted not only himself, but his entire
family from participation with MCT for quite some time.

In October 2009, Plaintiff, John Doe 106, was pulling into his driveway and was
stopped by a state patrol officer. The officer stated that Plaintiff was speeding,
although he did not receive a ticket. The officer's first question after running
Plaintiff John Doe 106's drivers license, was whehter he was allowed to have his
three (3) children in the vehicle. The officer detained him while verifying his legal
status to have his children on an unsupervised basis.  This detention occurred
when Plaintiff, John Doe 106's, conviction was nearly 20 years old.

In August 2010,  John Doe 106 went on vacation with his family. They traveled
for 2 weeks to Yellowstone for camping. During the trip, he received a phone call
from the Latah County Sheriff wanting to know why he did not re-register. He
stated he had not been notified. They threatened to have him arrested and put into
jail for not doing so, notwithstanding his explanation he had not been home to
receive his mailed notice. Plaintiff rushed home to get the notification so that he
could get fingerprinted and, yet again, obtain another fresh photo.

In February 2011, John Doe 106 received a  primary role in a play in Pullman,
WA. (R-Top Theater). He completed 3 weeks of practice then lost the role due to

AMENDED COMPLAINT PART II - 10

his inclusion on the sex offender registry posted on the internet.

In July 2011, Plaintiff, John Doe 106, lost a $1.3 million dollar contract for his construction company because when the company pulled his name up they discovered that he was listed on the internet as a registered sex offender.

In March of 2015, Plaintiff, John Doe 106, purchased a building in Moscow, Idaho, for a future home of his construction building and brewery. He was told that due to his past, he could not open such a business.

In September 2015, Plaintiff, John Doe 106, attempted to get a liquor license. He was told by Idaho Alcohol Beverage Control he could not due to the fact that he was on the sex offender registration list.

In January of 2016, Plaintiff, John Doe 106, opened up Rants & Raves Brewery. Due to his inclusion in the sex offender registry posted on the internet, he was harassed on social media and lost many customers to his brewery. In January of 2016, the business did $78,000.00 in sales. Once his status of a sex offender appeared on social media, revenues decreased. In February of 2016, the business generated $34,000.00 in sales, with a steady decline from there. It has taken nearly 3 years to slowly get business sales up to $40,000.00 monthly.

From 2016 to present, Plaintiff, John Doe 106, cannot get a beer distributor. The company has won countless awards for the quality of their beer, however, no distributor will touch their company because he is associated with it, based on the Internet's publication about him being on the sex offender registry.  Plaintiff has been slandered, harassed, and shunned from the community because he is on that list.  As a direct result, Plaintiff has lost approximately $500,000 in business revenue.

In June, 2017, a customer of Plaintiff, John Doe 106,  for approximately 14 years, implemented a background check system. Plaintiff, John Doe 106,  lost a contract that provided over $3.5 million a year of revenue due to the fact that his ICO score was less because he was on the sex offender registry.  Plaintiff was informed by the customer that if he was removed from sex offender registry, he could get his contract back.

In September, 2017, one of Plaintiff, John Doe 106's sales staff members received a letter from Craig Stein Distribution. It stated "We very much enjoyed the beer, it is very marketable, but until the management of Rants & Raves Brewery is changed we cannot distribute for Rants & Raves". Plaintiff, John Doe 106, believes this is based directly upon him being on the sex offender registry.

AMENDED COMPLAINT PART II - 11

In October of 2017, Plaintiff, John Doe 106, lost beer tap handles at two establishments.  Managers of both establishments indicated to Plaintiff that due to the fact that he was on the sex offender registry, they switched.

In January of 2018, John Doe 106 received a call from his distributer for the Spokane Market. They indicated that they heard he was on the sex offender registry and due to that fact, they would no longer distribute his beer.  Due to this, Plaintiff's business suffered lost revenue of approximately $8-10,000.00 per month.

In January, 2018, Plaintiff, John Doe 106, opened a new location brewery in Riggins, Idaho. The neighbor whom owns a bar, has handed out flyers and posted notices on the exterior wall of their building of the sex offender registry list with John Doe 106's picture on it. The neighbor has actively participated in steering business away from Plaintiff's business and is slandering Plaintiff's business by utilizing that list.

John Doe 106 has received death threats, has been harassed, his family and employees have been harassed, and his brewer employee was punched as someone mistook him for John Doe 106. To be punished for a crime that happened over 30 years ago with absolutely no indication that this is a behavior that would repeat itself. He has been injured, discriminated against, embarrassed, punished many times over. To have moved from a state that did not consider him a threat, that did not post him on the internet, and move to a state where he has added to the economy, created jobs, showed he was a valuable community member and for the punishment to not end but only get worse, Plaintiff, John Doe 106, would assert that the SORA is punitive and that has been injured greatly therefrom.

John Doe 106 purchased a building to open a business in Riggins, Idaho. In April, 2018, he purchased the RV Park behind the building. The neighbor called the Sheriff when John Doe 106 parked his own RV , in his RV park, to stay for a weekend of work. He was notified by the Sheriff that the Prosecutor of Idaho County had determined that he would be allowed to stay in his own RV park for one night and that it would not be considered a residence.  However, if he stayed two days or longer it would be considered a residence and he could be charged with a crime.

9. **Plaintiff, John Doe 117**, is a resident of Canyon County, state of Idaho.  In 2002, John Doe 117 was convicted in Canyon County, state of Idaho, of the crime of Lewd Conduct With a Minor, to-wit: victim fifteen (15) years of age at the time of

AMENDED COMPLAINT PART II - 12

commission of the offense, a felony.  The ex post facto amendments to Idaho SORA effective from and after July 1, 2001, created the "aggravated offense" exception to his eligibility for release from the Idaho Sex Offender Registry.  Under this amendment, the crime of Lewd Conduct With a Minor where the victim was under twelve (12) years of age at the time of commission of the offense was classified as an "aggravated offense."  Furthermore, the ex post facto amendments to Idaho SORA effective from and after July 1, 2009, expanded the definition of "aggravated offense" to exclude any age demarcation to the crime of lewd and lascivious conduct, leaving the crime of "Lewd and Lascivious Conduct", with no reference to the age of the victim, an "aggravated offense."  Finally, John Doe 117 is not a recidivist, did not commit an aggravated offense, and has not been classified as a violent sexual predator.  Therefore, John Doe 117 should be eligible to petition the sentencing court to be removed from the Idaho Sex Offender Registry.  John Doe 117 was, and still is, foreclosed from ever being removed from the Idaho sex offender registry by reason of the July 1, 2001, and 2009 amendments, above-stated.

Plaintiff, John Doe 117, additionally alleges as follows:

In the summer of 2004, John Doe 117 transitioned from one probation officer to another.  In conversations with his prior probation officer, he was allowed to attend social functions and go to a movie while chaperoned. This complied with the sex offender registry and had been approved by his treatment counselor. The latter probation officer, revoked that privilege without provocation or explanation.

John Doe 117 had been an exemplary probationer and was completely compliant with all requirements. This move was unwarranted. By this time, Plaintiff had been on probation for nearly two (2) years and was doing well.  This unprovoked revocation of a previously approved family activity further alienated Plaintiff from his family and friends, causing harm to those relationships.  However, as probation is meant to be a form of punishment, Plaintiff accepted revocation of this privilege believing if he complied to his very best ability, he would be

AMENDED COMPLAINT PART II - 13

released and the punishment would cease.

Again in 2004 and similar to the example set forth above, John Doe 117 attempted to get permission to attend a gym where minors wouldn't be present, and he would be with a designated chaperone. In his previous experiences with a prior probation officer, John Doe 117's significant other was serving (and had been duly trained) as his chaperone. This was approved by his treatment counselor and was allowed by the Sex Offender Registry requirements. A later probation officer denied John Doe 117's approved chaperone, merely because he said he had a more "hard-lined" approach. This excluded Plaintiff from family, social, and religious activities, including the gym. The damage caused in this instance was more measurable. John Doe 117 felt his probation officer was exacting additional punishment and was attempting to simulate a prison environment by isolating him in his home, akin to "house arrest". John Doe 117 was not allowed to attend important family events, social functions, and religious activities.

Between approximately 2003 and 2005, John Doe 117 was struggling to get settled in a place to live. He worked to find places that met all the requirements of the sex offender registry and probation requirements. Early on, when he gave the proposed location to his probation officer (the location met the requirements of the sex offender registry), the probation officer visited the location and went to all the neighbors and let them know of his status asking them if they were ok John Doe 117 lived there. Of course, they weren't. This cycle happened several times before Plaintiff was forced to live in an extremely rundown studio apartment across the street from the courthouse. John Doe 117 affectionately called it "The Crack Shack" as it was clear many drug deals went down in the complex…or only convicted drug dealers could live there. While he made it work, this living arrangement was humiliating and debilitating. He felt defeated...a lower form of life and that this is what he deserved. It was humiliating to have his probation officer announce to his potential neighbors his status as a sex offener. In the fall of 2004, Plaintiff attempted to move in with his significant other (who had been trained as an approved chaperone). His home met all the criteria of the sex offender registry, and had been approved by his sex offender treatment counselor, however, his application was denied by his probation officer. Again, his performance on probation remained exemplary, his costs paid on time, and his treatment going well. However, he was told that he "could not set foot on the property." This almost destroyed the relationship with his significant other. It was frustrating and hurtful. Eventually however, he was allowed to move in with him, as he transitioned to another probation officer who said, without incident,  it was ok.  However, it was after much stress and trauma both to himself, his significant other, and their families.

Initially after his release from jail, John Doe #117 had attempted to get permission

AMENDED COMPLAINT PART II - 14

to attend church. He was told by his treatment counselor that he needed to complete further steps to be allowed to attend. He worked on those steps and was later approved to attend by his sex offender treatment counselor. However, he was not approved by his probation officer and the probation officer denied his request to attend church on the grounds of my status as a sex offender. The probation officer stated he believed that Idaho code did not permit John Doe 117 on the premises due to children being present. Plaintiff understood his reasoning and didn't question it any further. But, John Doe 117 grew up in the church and his faith was very important to him. This was traumatic and took him time to adapt to. When Plaintiff moved in with his significant other (and beyond), they decided not to attend church in order to avoid the possibility of noncompliance with the Idaho Code requirements regarding being on or near school grounds (often churches are home to schools as well and have children present in Sunday School).

Shortly after his sentencing (approximately fall/winter of 2002), Plaintiff was working as an Office Manager for a local newspaper.  His workplace was approved by his probation officer and he complied with the requirements of the sex offender registry. The business was run from Plaintiff's supervisor's residence (he worked in the separate office portion of the home). When his supervisor started dating a woman with a child (in the residence portion of the home), John Doe 117 was told by his probation officer to terminate his employment immediately. John Doe 117 complied, but was left without work which jeopardized his work release privileges. His probation officer didn't attempt to apply any work arounds (he could have worked in another location). He required that John Doe 117 terminate without notice to his employer.  He struggled to find work afterwards and was almost discharged out of the work release program. The jail allowed him to activate his business license and he worked for himself to stay in the program.

Since his conviction and in express connection to his status as a sex offender on the registry, his right to religious freedom has been directly hindered by the limitations placed by the registry. Idaho code §18-8329 outlines specific requirements for schools, daycares and other specific limitations when children are present. Many churches are also co-located with schools, daycares, or child care centers. While the elementary, middle, and high schools are not in session during typical days of worship, daycare/child care facilities and Sunday School activities are usually in session during all church activities. Early on, John Doe 117's  probation officer interpreted this as reason to prohibit him from attending church services. He believed the language, "when the person has reason to believe children under the age of eighteen (18) years are present and are involved in a school activity" to include school sessions held on non-governmental locations such as church grounds and the language "school activity" to include school held during atypical scheduling (i.e. Saturday or Sunday).  Plaintiff John Doe 117 has

AMENDED COMPLAINT PART II - 15

held to that interpretation and currently doesn't attend church services.  John Doe 117 grew up very connected to the church. In his teens, church was his life and he has nearly spent his entire life (prior to his conviction) deeply involved in worship and ministry. Life on the registry has removed him from that.  There are few options for church worship under these constraints.   John Doe 117 believes he has paid his debt to society (and lives in deep, persistent remorse) and has satisfied his sentence, but this ongoing hindrance feels to him like sustained punishment.

John Doe 117 enjoyed traveling a great deal and prior to his conviction had taken several extended vacations and/or camping trips.  He had been asked on several occasions to travel within the United States on trips to various locations with friends/family. While his close family/friends are aware of his registration requirements, many of his friends who want him to travel with them don't know of his status. The travel restriction is exceptionally harsh. If lodging away from his primary address (no matter the reason or location) for 7 days or more, he is required to notify the Sheriff's office. This often entails a day off from work to do so (as the lines at DMV are long) and then he is told by the local Sheriff's office to notify the Sheriff's office at the location he is visiting. This requirement is unpleasant, uncomfortable, and embarrassing.   John Doe 117 either has to make up a reason as to why he needs to disappear at his destinations for some time (to notify the destination Sheriff) or has to tell his less than close friends that he is on the registry and needs to check in.

In 2006, John Doe 117 traveled to Palm Springs, CA to visit friends and was going to be gone for a period of 10 days. He took time off from work to notify the county sheriff's office and was told that he needed to check in to every county he would spend a night in. Fortunately, he planned on staying at one hotel the entire time. He went to notify the sheriff's office in California and they brushed him off and said he didn't need to let them know. He had to take time from his trip, interrupt his time with friends in Palm Springs to visit the sheriff's office, only to be told, that he didn't need to let them know. It was unpleasant and embarrassing. This lack of freedom to travel directly affects his freedom to associate. He is unable to visit with friends in other states due to the restrictions placed on him by the sex offender registry.

In addition, John Doe 117 has turned down work travel due to the travel restrictions. There have been several occasions where his employer has offered to pay for him to attend a conference or seminar in another state which he has had to turn down due to the travel restrictions. It has negatively affected his job performance. As required by the sex offender registry, his employer's HR department is aware of his status, but nearly all of his coworkers don't appear to know. This makes doing his job uncomfortable when he has to turn down training

AMENDED COMPLAINT PART II - 16

opportunities due to the restrictions established by the sex offender registry. Plaintiff makes up excuses to defend them as best he can. People are aware of his desire to travel and are often flummoxed when he turns them down.

In the Fall of 2008, as part of his business, Plaintiff provided offsite accounting services (he would get client records and, in turn, would provide accounting reports, file returns, and provide general accounting services). He had been doing the books for one client (a partnership) for several years and had been doing their taxes. Prior to this time, this customer and his partner were very happy with John Doe 117's work. When they discovered John Doe 117's status as a sex offender by chance, they terminated his work and refused to pay him. He had gone to their house to pick up documents when they told him they had found out he was on the sex offender registry. In a verbal tirade, they fired him. When John Doe 117 attempted to explain, one of the partners attempted to hit him. John Doe 117's partner was with him and witnessed the altercation. A shouting match between the client and his partner ensued with the exchange of swear words. They immediately left. Later, as Plaintiff was attempting to collect what he was owed for his services already rendered, the aggressive partner who had tried to hit him wrote several harassing letters to Plaintiff, harassing and threatening him. John Doe 117 later attempted to collect the monies through legal action, but decided to stop due to the threatening letters and phone messages he received.

In the Summer of 2011, John Doe 117 applied for a job as an accountant for a local ag parts and repair corporation. The interview went well, and he had been acquainted and casual friends with the owners of the business for several years. They didn't know of his status prior to the interview. As required by the sex offender registry, he notified them of his status during the interview. It severed those friendships which he had had for over a decade and he did not get the job. To add insult, he was told by the hiring manager prior to the interview the job was as good as his. He had the necessary experience, qualifications, and fit. He had known the hiring manager for quite some time and she has remained good friends after. The owner, however, couldn't see past John Doe 117's status as a sex offender and he wasn't hired. Those relationships remain lost to this day.

In the Summer of 2015, John Doe 117 applied for a job with the Idaho Department of Finance. Plaintiff was forced to withdraw his application upon learning he was ineligible for employment due to his status as a sex offender.

In the Fall of 2016, Plaintiff applied for a job with the Idaho Department of Labor and was forced to withdraw when a friend working there said he would be disqualified due to his status as a sex offender.

In June 2018, Plaintiff applied for a job with the Idaho Department of Insurance

AMENDED COMPLAINT PART II - 17

and withdrew due to learning from the first interview that his status on the SOR would likely disqualify him.

In June 2018, John Doe 117 applied with PERSI and continually worries that when they learned of his status it would disqualify him.

Plaintiff, John Doe 117's current job offers no promotion capability.  He is looking for other work in hopes of finding a better paying job to increase his behind-schedule retirement planning. He lives in constant fear while he is looking for work, the biggest discomfort is hoping they don't look to the internet when considering hiring him. Googling his name will bring up the arrest records,  or at least a glimpse that they exist, which in turn drives potential employers to the sex offender registry. Regardless of a background check, the fact Plaintiff is on the sex offender registry often disqualifies him as a potential employee. The background check reveals the crime but because so much time has passed, John Doe 117 believes the prospective employer can make allowances. But his current status on the sex offender registry is active and ongoing. Plaintiff's status on the sex offender registry makes finding work nearly impossible and the notification requirement nearly sinks every job opportunity.

In approximately the Fall of 2017, a coworker approached Plaintiff John Doe 117 with a favor. It was a work-related favor and one that was a bit controversial. It wasn't illegal or unethical but stepped out of the bounds of his comfort. He politely declined. She promptly went on to say that she thought he would be a bit more willing to bend the rules given his "situation." He knew she knew and it was apparent she had learned from the internet (she had made comments in the past as to how she likes to google people's names just to see what's out there). He is in compliance with the sex offender registry notification requirement. Human Resources knows of his status. However, he has made no additional efforts beyond that and have worked hard to keep his status out of workplace conversations. Her comment shocked him. She attempted again to ask for the favor having seen the look of horror on his face. He ignored the request and worked to shake off the humiliation with humor.  He laughed as if he didn't hear her comment. Working with her was tense for the next several months, with aggressive behaviors by her and an overall condescending attitude exhibiting by her toward him. Her use of his status on the sex offender registry shocked him, humiliated him, damaged his working status, and hurt his relationship with her for quite some time.

Each year, John Doe 117 fears Idaho Legislators will "knee jerk" react to a crime they've heard about in the news and propose legislation to further limit where he can go, who he can associate with, or announcements he must make to neighbors, colleagues, friends, and even total strangers, further punishing him based, not on

his actions, but the actions of some random person in Idaho who committed a crime similar to his. He has worked long and with fastidious dedication to learn, grow, rehabilitate, and remain unfailingly compliant to become a valued and contributing member of Idaho's society. Yet, each year, there is a chance he'll be sentenced again by the ever-changing law surrounding the sex offender registry. When stricter legislation surrounding the sex offender registry is introduced, there is very little resistance to that law. Most lawmakers do not want to be seen as soft on this issue.

10. **Plaintiff, John Doe 128**, is a resident of Kootenai County, state of Idaho. In 1993, John Doe 128 was convicted in that county of the crime of Lewd Conduct With a Child Under the Age of Sixteen (16) Years, to-wit: victim thirteen (13) years of age at the time of commission of the offense, a felony. On the 23rd day of February, 2011, The Kootenai County District Court dismissed the charges in this matter by setting aside the plea of guilty and dismissing the case pursuant to Idaho Code Section 19-2604. The ex post facto amendments to Idaho SORA effective from and after July 1, 2001, created the "aggravated offense" exception to eligibility for release from the Idaho Sex Offender Registry. Under this designation, the crime of Lewd Conduct With a Minor where the victim was under twelve (12) years of age at the time of commission of the offense was classified as an "aggravated offense." Furthermore, the ex post facto amendments to Idaho SORA effective from and after July 1, 2009, expanded the definition of "aggravated offense" to exclude any age demarcation to the crime of lewd and lascivious conduct, leaving that crime, with no reference to the age of the victim, as an "aggravated offense." John Doe 128 is not a recidivist, did not commit an aggravated offense, and has not been classified as a violent sexual predator. Therefore, John Doe 128 should be eligible to petition the sentencing court to be removed from the Idaho Sex Offender

Registry.  John Doe 128 was, and still is, foreclosed from ever being removed from the

Idaho sex offender registry by reason of the July 1, 2001, and 2009 amendments, above-

stated.

Plaintiff, John Doe 128, additionally alleges as follows:

In order to avoid breaking the rules of SORA, since the date of SORA
implementation, Plaintiff, John Doe 128, has avoided attending church services
during school hours and have been unable to participate in church functions due to
the proximity of a school near the church.  This has restricted his religious
freedom since 1993.

From 1993 to present, he has been restricted from attending education, religious
and social events of his children, nieces, nephews and friends causing harm to all
of these relationships.  He has been restricted from family vacations, boat cruises
with his partner, camping trips and other travels due to sex offender registry
requirements that vary throughout the United States.  He also has been unable to
travel abroad due to the registration requirements.  All of these restrictions have
caused unrest in his relationships.

From 2010 to the present, he has been unable to reside with his partner in her
home in Coeur d Alene due to its proximity to a daycare and school which would
not be allowed by the sex offender registry.  Due to this situation, selling the home
is the only realistic option available at this point as he cannot live there with his
partner as a couple.

In 2011, John Doe 128 lost a job at Knife River due to a company housing policy
relative to sex offenders.  That loss of employment has caused him to lose over
$750,000.00 in medical and dental benefits they offered, along with raises and
promotions over the course of the last 7.5 years.

In 2011, he was hired by Stock Building Supply and worked for approximately
three (3) weeks until being fired due to a background check which showed his
name on the sex offender registry.  He was informed when he interviewed for the
company that they allowed hiring of felons, but when the background report came
back showing that he was a registered sex offender, he was fired from that job
even though he had initially disclosed that fact at the interview.  Over the past 7.5
years, John Doe 128 lost approximately $500,000.00 in benefits, raises and
promotions.

The stigma of being a registered sex offender, having his photograph in the

AMENDED COMPLAINT PART II - 20

newspaper, and having his name appear in a newspaper article because he filed to be removed from the sex offender registry, has caused Plaintiff, John Doe 128, relationship problems with friends and family since 1993.  He has also had to take time off of work in order to go to the Sheriff's office to renew his registration and pay fees to do so each time, which not only caused a financial burden on him, but also a burden to his employer and co-workers for time away from work.

11.  **Plaintiff, John Doe 126**, is a resident of Clearwater County, state of Idaho.

On November 27, 2001, John Doe 126 was convicted in Pontiac County, state of

Michigan, of the crime of Child Sexually Abusive Activity, and on March 1, 2002, he

was convicted of Criminal Sexual Conduct 1st Degree Person of the Age of Thirteen (13)

to Fifteen (15) Years, each a felony.  No Judgment of Conviction was entered. On

January 28, 2004, Plaintiff's status of the Youthful Trainee was terminated under the

Holmes Youthful Trainee Act (MCL 762.14) and the case was dismissed.  The record of

arrest and discharge or dismissal in this case was retained as a nonpublic record according

to the law. After completion of his sentence, John Doe 126 was placed on probation for a

period of two (2) years, and began registering as a sex offender in October of 2001.  John

Doe 126 was released from probation in 2004, moved to the state of Idaho and began

registering as a sex offender.  The ex post facto amendments to Idaho SORA effective

from and after July 1, 2005, expanded the offenses for which sex offender registration

was required to include all substantially similar offenses for which convictions have been

entered in another jurisdiction.  In the event the Michigan conviction is determined to be

a substantially similar offense to Idaho criminal statutes requiring sex offender

registration, the Idaho sex offender registration requirements should apply to John Doe

126.  John Doe 126 is not a recidivist, did not commit an aggravated offense, and has not

AMENDED COMPLAINT PART II - 21

been classified as a violent sexual predator.  Therefore, John Doe 126 should either not

have been required to register as a sex offender in Idaho, or in the alternative, should be

eligible to petition the sentencing court to be removed from the Idaho Sex Offender

Registry.

Plaintiff, John Doe 126, additionally alleges as follows:

In the years of 2013 through 2017, John Doe 126 was tracked by pastors who are
part of the denomination know as the Christian and Missionary Alliance, between
the Orofino, ID church and the Lewiston, ID church. One pastor called another
pastor, to let each other know of his whereabouts. The Orofino pastor let the
Lewiston pastor know that he is on the Sex Offender Registry, and that John Doe
126 may be attending the Lewiston church so they would be able to track his
location. John Doe 126 felt moderately violated, knowing that he has to be
watched by other individuals or teams of individuals just so he can go to church
and practice his religion.

Prior to getting married in 2014, John Doe 126 would use dating websites to seek
out someone for dating or a relationship. Through those, dating a person who is on
the registry is tracked by either facial recognition or via email, because both of
those items are required on dating websites. Therefore, any time John Doe 126
would attempt to join a dating website, he would be denied within 24 hours,
because that information was open to the public. It was tracked through the
networks, and his face and email would be tagged by those websites.

In late 2006, John Doe 126 was coming back from a visit in Canada. On his way
back into the United States, the gates were placed on lock down, he was
handcuffed, and taken into a holding cell. He was later released. John Doe 126
was told by U.S. Customs that when traveling and using a passport, a person who
is on the sex offender registry is red flagged,  meaning "dangerous", so Customs
goes into lock down mode until everything is straightened out. He was told the
next time he is coming back into the United States, he is to tell the Customs agent
that he is on the registry.

In 2007, John Doe 126 was banned from attempting to travel to Ontario, Canada.
He was detained, placed into a holding cell, and told that if he ever attempted to
access any part of Canada again, he would be imprisoned for up to 1 year. John
Doe 126 was forced to either sign the documentation they gave him, certifying
that he agreed to this, or he would face up to 1 year in prison, as well. He signed
the paperwork, but was refused a copy of it. This was all because he was on the

AMENDED COMPLAINT PART II - 22

sex offender registry.

In 2005, John Doe 126 applied to live in an apartment complex in Livonia, MI. He was denied on the application, because they did an authorized background check. He asked them, what particularly were they looking for, and they mentioned anyone on the sex offender registry was not allowed to live in their complex.

In 2008, John Doe 126 applied to live in another apartment complex. He was initially granted access to live in one of their apartments. They later advised him that his application had been denied due to an unauthorized background check revealing his status as a sex offender.

In 2010, John Doe 126 was hired at a restaurant to work as a line cook. Fully knowing that he was on the registry, they still hired him. He was later relieved from his job because either a customer or employee found out he was on the registry.

In 2013, John Doe 126 applied for a job and was denied the position because it was too close to a school.

In October of 2015, John Doe 126 applied for a job with the Sodexo Company in Moscow, Idaho. He was denied the job, which he was over qualified for in the first place, because he was on the sex offender registry.

In September of 2017, John Doe 126 was denied a job at a Senior Citizen's Home in Lewiston, Idaho, and also at the Veteran's Home in Lewiston, Idaho. Sex offenders are not allowed to work in those types of facilities, just because they are on the registry. It has nothing to do with the fact of a criminal conviction, but because they are on the registry, it is unlawful for a person to work there.

In December of 2017, John Doe 126 was denied a job at the Red Lion in Lewiston, Idaho, because he was on the sex offender registry. Yet, 2 years later prior, he had been offered a job at the same location, and they knew he was on the registry then as well.

In 2002, John Doe 126 was convicted of a crime in Oakland County, MI. The plea agreement provided for disposition under the Holmes Youthful Training Act, which provides that upon completion of sentence, the defendant's conviction is hidden from their record. Plaintiff was given this opportunity, and he completed his sentence without any issues. His record was supposed to be hidden and sealed, but because he is on the sex offender registry, it appears on the registry websites in violation of the terms of the plea agreement.

AMENDED COMPLAINT PART II - 23

In September of 2014, John Doe 126 and his wife were taken to court over child custody issues. He was forced to testify about his 2002 conviction that was sealed. If he did not reveal the information in the sealed case, he could be found in contempt of court. This was all because the father of the child, the ex-husband, found out that John Doe 126 was on the registry, and threatened to take away her child because he could not find information regarding the 2002 conviction.

In June 2017, an officer from the Orofino Police Department in Idaho took it upon himself to get information illegally, that was sealed from the 2002 conviction, because John Doe 126 is on the Sex Offender Registry.

In July of 2017, John Doe 126 was discriminated against by his local mechanic, someone whom he had come to know very well, because the mechanic had found out that John Doe 126 was on the sex offender registry.

In August of 2017, John Doe 126 closed down a business he had started to build and established in Orofino. He closed it down because, in a public police report, the officer stated that John Doe 126 worked too close to a day care facility. This affected the business and he was forced to close his doors.

In August 2017, John Doe 126's family home and property was vandalized because he was on the registry, and the Orofino Police Department refused to do anything about the situation.

In November 2017, John Doe 126 was convicted of Failing to Register because he did not notify the local Sheriff's Office that he had changed jobs.

In May of 2018, John Doe 126 was offered a position in New Meadows, Idaho, which is 2.5 hours away from where he lived. He took the position. In the same month, or possibly in June, his employer let him know that two separate times, two separate couples traveled down to the location where he currently works, attempted to harass his employer with the attempt to get Plaintiff fired. They obtained this information by using the Idaho Sex Offender Registry website.

There have been countless times in the past 17 years that John Doe 126 has been on the registry, where he had to pass up very good jobs and places to live, because of being on the registry.

12. **Plaintiff, John Doe 116**, is a resident of Nez Perce County, state of Idaho.  In

March of 2004, John Doe 116 was convicted in Nez Perce County, state of Idaho, of the

crime of Sexual Abuse of a Child Under the Age of Sixteen (16) Years, to-wit: the age of

fifteen (15) years at the time of the commission of the offense, a felony.  The Order

Suspending Sentence and Order of Probation stated that Defendant shall not associate

with any person under the age of 18 years without another competent adult present who

has been previously approved by his supervising officer.  John Doe 116 was placed on

probation in 2004 for a period of ten (10) years after successfully completing the retained

jurisdiction program.  John Doe 116 began registering in the state of Idaho as a sex

offender in December of 2004, and has continued to do so.  He completed a sex offender

treatment program with Dave Neistrom, Valley Treatment Specialties, Clarkston, WA, in

2009, and was released from felony probation in December of 2013.  John Doe 116 is not

a recidivist, did not commit an aggravated offense, and has not been classified as a violent

sexual predator.  Therefore, John Doe 116 should be eligible to petition the sentencing

court to be removed from the Idaho Sex Offender Registry.

Plaintiff, John Doe 116, additionally alleges as follows:

John Doe 116 has attended two different churches since his conviction. The first
was 8 years ago and the second 3 years ago. Both churches welcomed him with
open arms. He was honest with the pastors about his crime. For the first several
weeks, people were very friendly and welcoming. After a few weeks though,
people started to not be so friendly. After talking to a member of each church, they
said word had gotten around that he was a registered sex offender and people felt
uncomfortable around him and did not feel he should be around their children.

John Doe 116 has seven (7) grandchildren from the ages of 2 to 12. They are very
active in dance, school functions, and sports. When they have events at the school,
Boys and Girls Club, or recitals, he is excluded due to the registered sex offender
laws. This puts a lot of strain on him, his daughters, and his grandchildren, trying
to explain why Papa can't watch their events. When they come to his home, they
want to go to the park or school playground, where he is not allowed to go. His
daughter has a step-son who resides with her and her husband part time. For the
last eight (8) years, the stepson's biological mother has not allowed John Doe 116
to be around him at all, due to him being a registered sex offender. He has not

AMENDED COMPLAINT PART II - 25

been allowed to go to his daughter's home to visit or for holidays if the stepson is present. Much of John Doe 116's family lives in Eugene, Oregon, where he was born and raised. For many years, Probation and Parole would not allow him to travel to Oregon to see his family. When he has done so, he must register there as a sex offender the day he arrives. This has severely affected his family life.

John Doe 116 is not allowed to reside within a certain distance from a school, park, or daycare. Fortunately, he lived in a home before convicted that he was allowed to stay in once released on probation. However, he as been harassed due to his conviction in his own neighborhood. Probation and Parole went to each home on his street and told them of his conviction and that he was a registered sex offender. They provided a photo of him to each home. The gas station at the end of the street was also provided this information as a warning. He has a newer neighbor next door, who has looked on the internet and found that he is a sex offender. The neighbor yells profanities at him from across the fence and has had a computer camera in her window, pointing right at his deck. John Doe 116 has notified police and she was forced to removed the camera. He is not invited to neighborhood activities and gatherings, even though he is friends with most of them, because of his sex offender status. He received a letter in the mail a month ago, for a neighborhood watch program, indicating that he could go online to see neighborhood problems and complaints. His girlfriend tried to register him and herself into the program, but was declined due to the fact that she resided in the home of a registered sex offender. He is obviously posted as a threat on the neighborhood watch program.

John Doe 116 has been denied many decent, good paying jobs due to the criminal background check. He has told each interviewer of his crime, and they said it didn't matter at first, but once they received the background check, it had big bold letters across the top that said "CAUTION-REGISTERED SEX OFFENDER".

Examples include:

Lewiston RV 2011/2012:  John Doe 116 was very qualified for the position of troubleshooting and repairing RV's. The owner was excited and impressed with his resume. After the background check, he was informed they were unable to hire him.

Home Depot 2015/2016: John Doe 116 applied for a position managing the lumber department. He met with the manager of the store, who was impressed with his resume and wanted to hire him on the spot. John Doe 116 told the store manager about his crime, and the store manager acted like he did not care, and said he would highly recommend him to the corporate office. He passed the UA and they just needed the background

AMENDED COMPLAINT PART II - 26

check done. A few weeks later, he was informed that corporate would not allow him to work at the store due to his sex offender registration status.

North 40 Sporting Goods 2015/2016: It was the same thing with Home Depot for John Doe 116. They were excited to hire him until the background check came back, at which time he was told they could not hire him due to his sex offender registration status.

Howell C&C 2013/2014: John Doe 116 interviewed for his dream job. This job had excellent pay and provided health insurance, retirement, and a great chance for advancement in the company. He was hired after the interview, pending a background check. He received a letter shortly thereafter with a copy of his background check saying they could not hire him. At the top of the first page in red bold letters was "CAUTION-REGISTERED SEX OFFENDER!".

After John Doe 116's original conviction and 10 years of probation, he had no issues with what he was required to do, in fact, he felt he deserved it. But during those 10 years, the laws were amended 8 or 9 times. His crime was increased to a "violent crime" even though it was not "violent". He has been punished for 16 years and now will be punished for the rest of his life, even though he has never re-offended in a sexual nature.  He is 57 years old. The only jobs he can obtain pay $10-$12 per hour, with no health insurance or benefits. He can hardly maintain his home and pay his bills. He sees no end in sight. He has another 10 years where he can obtain a career job and have benefits and be able to lead a normal life, but this will never happen as long as the laws remain the same.

13.  **Plaintiff, John Doe 134**, is a resident of Canyon County, state of Idaho.  On

February 24, 1998, John Doe 134 was convicted in Washoe County, state of Nevada, of

the crime of Statutory Sexual Seduction and Open or Gross Lewdness, to-wit: both

victims were age 15 years at the time of the commission of the offense.  John Doe 134

was sentenced to five (5) years probation on July 10, 1998, whereupon he obtained a

transfer of his probation to the state of Idaho, attended a sex offender treatment program,

and began registering on the Idaho Sexual Offender Registry.  Under the then existing

language of the Idaho Sex Offender Registration requirements, John Doe 134 would later

be eligible for release from the requirement to register as a sex offender.  The ex post

facto amendments to Idaho SORA effective from and after July 1, 2005, expanded the

offenses for which convictions have been entered in another jurisdiction.  The Nevada

conviction in this case has never been determined to be a substantially similar offense to

Idaho criminal statutes requiring sex offender registration.  Therefore, John Doe 134

should either not have been required to register as a sex offender in Idaho, or in the

alternative, should be eligible to petition the sentencing court to be removed from the

Idaho Sex Offender Registry.  Additionally, in the event the Nevada crime for which

conviction was entered is determined to be substantially similar to the Idaho offense of

lewd and lascivious conduct, the ex post facto amendments to Idaho SORA effective

from and after July 1, 2009, expanded the definition of "aggravated offense" to exclude

any age demarcation to the crime of lewd and lascivious conduct, leaving the crime of

"Lewd and Lascivious Conduct" with no reference to the age of the victim as an

"aggravated offense."  John Doe 134 is not a recidivist, did not commit an aggravated

offense, and is not a violent sexual predator.   Therefore, John Doe 134 should be eligible

to petition the sentencing court to be removed from the Idaho Sex Offender Registry.

John Doe 134 was, and still is, foreclosed from ever being removed from the Idaho Sex

Offender Registry by reason of the July 1, 2009 amendment above stated.

Plaintiff, John Doe 134, additionally alleges as follows:

On July 7, 1998,  as part of John Doe 134's probationary release, he was rated a
low-risk offender in his pre-sentencing reports.   On July 10, 1998, he was granted
probation under interstate compact to move back to the state of Idaho.  His
location was approved to live in Idaho with his parents by the Nevada authorities.
On July 14, 1998, Nevada reclassified him as a "violent" offender.  However, on

July 24, 1998, he receive a copy of Nevada's registry form, on which he scored 38 out of a possible 168, which qualified him as a low risk offender.  On August 25, 1998, he was subjected to a second assessment, in which he scored 37 out of a possible 168.  The Assessor refused to accept this classification, crossed out his scores, and wrote that he is a higher-level threat in an attempt to move him into a "violent" category with more restrictions and requirements.  This moved him from law enforcement notification only to law enforcement notification, only, to law enforcement notification plus public notification, in addition to other burdens.

On August 14, 1998, John Doe 134's attorney sent notice that the State of Nevada Community Notification Sex Offender Assessors Office added another law he did not plead to in order to raise his level of offense as outlined above.  This was an attempt to classify his crime as a sexual assault, which it was not. This was the first of many attempts to reclassify him as a violent predator and increase his registration requirements.

On February 12, 1999, he was informed by his attorney that felony charges can be sealed.  However, on November 8, 1999, he was informed by his attorney that the felony charge he pled guilty to could no longer be sealed.  This was not what Plaintiff agreed to when entering into his plea agreement.

On July 1, 2002, in addition to notifying registration officials where he lived, where he worked, and all other requirements, the State of Idaho on this date required notification of whether he had enrolled in higher learning or worked in education – which, in effect, prohibited him from going back to school.  In addition, his employment at the time involved chemical analysis and food testing, and this created multiple embarrassing employment situations and difficulty in his ability to accept training assignments on behalf of his employer.  This held him down in his job and prohibited promotions, and ultimately led to him having to leave the company.   Specifically, he had applied for four different supervisory positions, but was unable to meet all of the corporate requirements due to the registry requirements, and ultimately had to leave the company.

On the same date as above, he was required to notify the State of Idaho whenever his employment situation changed.  So, the rules in effect cost him his employment, and he then had to report that loss of employment.

John Doe 134 was mailed a notice on  July 1, 2006, stating that he could not be found on or near schools or school grounds, or daycare facilities.  He was further informed via letter that whereas he had ten (10) days to register in the past, he now had seven (7) days within which to register. He was also notified that if he were to change address or move to a different county, he now had only two (2) days to register.  In addition, any name change now had to be reported within two

AMENDED COMPLAINT PART II - 29

(2) days.  Any move to another state, and he would be forced to notify the State of
Idaho within two (2) days. He was also notified that he (and every other offender,
of any level) would have to verify their address every four (4) months with the
State of Idaho registry.  Previously, that requirement was limited to violent
offenders.

On October 1, 2006, he was mailed the "Halloween Notification," under which he
was required to be at home by 6 p.m., with the light off, and to not answer the
door for trick-or-treaters.   On October 1, 2007, he was mailed the same
"Halloween Notification."  He has never been mailed this notice since.

On June 28, 2009, John Doe 134 was notified that in order to ever be released
from the registration, he was required to notify both the county prosecuting
attorney and the central sex offender registry.

On July 1, 2010, he was notified that he had to register his mailing address with
the state registry system.

On July 1, 2011, he was informed that all names and addresses he uses, or had
ever used, had to be recorded with the state registry system.  Also, all license plate
numbers and descriptions of all vehicles he owned and used,  including boats and
airplanes, for personal and business use, were required to be registered with the
state registry system.

Any and all telephone numbers, email or IM addresses used, all names and
addresses of where John Doe 134 was employed; any professional licenses that he
maintained; and any passports had to be provided to the state registry system.
Notification of any temporary lodging, i.e., anything over seven (7) days, was
required be provided to the state registry system.  Palm prints, instead of
fingerprints, would be taken and provided, as well as a copy of driver's license,
would thereafter have to be provided at the time of each registration.

On July 1, 2013, he received notice that the registration fee was now $80
annually.  It used to be $10.

On July 1, 2016, he received notification that instead of seven (7) days to register,
he now had to register in five (5) days.  It started at 10 days.

On July 1, 2017, he was notified that he is now required to provide a DNA sample
to the state registry system.

All of the above requirements have added an almost immeasurable burden to his
life.   Instead of going on with his life, working at his business, and, enjoying the

company of his family in the area, he is often left to suffer with these burdensome regulations alone.  This system robs him of his family life and support system, as it is onerous, capricious and arbitrary.

He has five nieces and nephews.  They attend religious private schools, and, due to the onerous requirements above, he is unable to attend any of their school functions, including Christmas and Easter plays or performances, athletic events, or even graduations.

Any passports he has and all numbers must be provided to the state registry system.

On February 8, 2016, International Megan's Law, stating anyone required to register as a sex offender in any jurisdiction is required to inform their jurisdiction of any travel within twenty-one (21) days, including itinerary, destination, dates, places of departure, arrival, return, carrier and flight numbers for the entire trip, destination country, address, contact information, and purpose of travel.  This includes copy of passport, and consultation with country of destination.

Plaintiff has missed over five (5) family reunions, each July of the last several years, due to these onerous requirements.  He has missed multiple funerals of family members in neighboring states because of the near impossibility of obtaining travel permission.  In addition, those who ask for permission are given further unwanted scrutiny, inviting even more trouble with the registration administrators.

When he has traveled in the past, the State of Idaho's onerous and burdensome regulations have forced him to humiliate himself by going to the county he was visiting, to obtain their verification of his travel.  Often they wouldn't know what he was talking about or needed, which led to further embarrassment due to his explanation.  This has had a chilling effect on his employment and vacation abilities, as well as his right to move about the country freely – a right which, in short, doesn't exist.

This registry makes it almost impossible to date members of the opposite sex.  An offender is marked for life, and even if Plaintiff did find someone to spend the rest of his life with, this system makes it impossible to marry that person, or to even consider having children of your own.

In or about September of 1998, John Doe 134 applied with an investment firm in Boise, Idaho, for which he was highly qualified.  The interview went extremely well, and they were progressing to their making of an offer.  As he was required to inform them of his status on the registry, they immediately withdrew their

consideration of his employment.

Immediately after John Doe 134 was charged with the two offenses outlined above, and before he accepted the plea agreement, State Farm Insurance contacted him, terminating not only his insurance, but that of all of his family members.

On April 1, 2018, three employees at my business googled his name, found him in the registry, and quit on the same day due to his status under this system.  This has created even more hardship in his life as he continues to comply with these requirements, work hard, pay his taxes and seek to be a good citizen.  It is almost as if the system would prefer him to fail.

For approximately ten (10) of the twenty (20) years he has registered, the State of Idaho would shout out Plaintiff's name, then shout out the words "Sex Offender" in a room of over 100 people at the DMV, and then shout out "has registered." This equates to nothing more than public humiliation.

Plaintiff has been threatened in public.  He cannot go to a public place such as a store without the fear of someone accosting and trying to engage him in either a verbal or physical altercation.  This has happened before, so he lives in constant fear of it happening again.  People have recognized his photo from the internet database, and made a show of supposedly protecting their kids and getting in his face and invading his personal space.

14. **Plaintiff, John Doe 122**, is a resident of Nez Perce County, state of Idaho.  In 1998, John Doe 122 was convicted in Nez Perce County, state of Idaho, of the crime of Lewd Conduct With a Child Under the Age of Sixteen (16) Years, to-wit: victim fifteen (15) years of age at the time of commission of the offense, a felony.  The ex post facto amendments to Idaho SORA effective from and after July 1, 2001, created the "aggravated offense" exception to eligibility for release from the Idaho Sex Offender Registry.  Under this designation, the crime of Lewd Conduct With a Minor where the victim was under twelve (12) years of age at the time of commission of the offense was classified as an "aggravated offense."  Furthermore, the ex post facto amendments to Idaho SORA effective from and after July 1, 2009, expanded the definition of

AMENDED COMPLAINT PART II - 32

"aggravated offense" to exclude any age demarcation to the crime of lewd and lascivious

conduct, leaving the crime of "Lewd and Lascivious Conduct" with no reference to the

age of the victim as an "aggravated offense."  John Doe 122 petitioned the court to be

released from the Idaho Sex Offender Registry requirements in 2011; however, that

petition was denied.  John Doe 122 is not a recidivist, did not commit an aggravated

offense, and has not been classified as a violent sexual predator.  Therefore, John Doe

122 should be eligible to petition the sentencing court to be removed from the Idaho Sex

Offender Registry.  John Doe 122 was, and still is, foreclosed from ever being removed

from the Idaho sex offender registry by reason of the July 1, 2001, and 2009 amendments,

above-stated.

Plaintiff, John Doe 122, additionally alleges as follows:

After John Doe 122's divorce, it made it hard to be with his children because they were under the age of 18. He missed baseball games and graduation and being with them at birthday events. There are many things that people take for granted with their children that he will never be able to get back with his children because of the sex offender registry. It is inhumane that the government punishes his children for what he did, through the sex offender registry requirements.

In 2000, John Doe 122's wife was harassed by an employee at her work. This employee put fliers on everyone's car in the parking lot, saying what he had done. This employee also sent a letter to his house telling his wife that she did not deserve to have children and that she would "rot in Hell". His wife divorced him shortly after that. His oldest daughter and her husband let John Doe 122 move in with them for awhile, but later told him that he had to move because the neighbor thought her husband was the offender. He had asked other family members and gotten the same response. After awhile, he was able to buy a house and still lives there today. The registry just doesn't harm him, but it also harms his children. They suffer the same as he does. He lives with anxiety, depression, hopelessness, shame, embarrassment, and the fear of living alone for the rest of his life.

In 2012, a woman that lives near John Doe 122, told his daughter that she was going to the sheriff, and school board to complain that he lived too close to a

school, wanting him to be forced to move. Nothing ever came of it, but the damage was done. Incidents like those have caused him to rarely leave his house. It is the only safe place he has left.

15. **Plaintiff, John Doe 111**, is a resident of Bannock County, state of Idaho.  In 1997, John Doe 111 was convicted in Caribou County, state of Idaho, of two (2) counts of the crime of Battery with the Intent to Commit Lewd Conduct and the crime of Battery with the Intent to Commit Rape with a Minor Child, to-wit: the ages of Fourteen (14) Years and Sixteen (16) Years, each a felony.  John Doe 111 was sentenced to a period of incarceration of two (2) years and was thereafter placed on parole for a period of four (4) years.  John Doe 111 began registering as a sex offender in the state of Idaho in 2001. John Doe 111 is not a recidivist, did not commit an aggravated offense, and has not been classified as a violent sexual predator.  Therefore, John Doe 111 should be eligible to petition the sentencing court to be removed from the Idaho Sex Offender Registry.

Plaintiff, John Doe 111, additionally alleges as follows:

After completing the six month "rider" program, John Doe 111 was told that he must register as a sex offender. He told his probation officer that he had a plea-agreement that said he would not have to register. His probation officer told him to register that day or go to jail. After registering, he was kicked out of his apartment, and once the word got around, he was fired from his employment. After the loss of his apartment and job, he was sent back to prison for probation violations that included no place to live and no employment.

After registering, Plaintiff John Doe 111 was told that he was not allowed to go to any church or gatherings where teen-girls might be present. It was not until he was release from probation that he was allowed to be in a public church meeting.

It is a constant struggle being on the Sex Offender Registry, and has caused John Doe 111 a lifetime of loss. He has struggled to find and sustain full time employment. He has had a very difficult time finding housing due to the fact few places will rent to someone on the Sex Offender Registry. Due to his being on the registry, he lost custody and visitation rights with his children. The judge, based

AMENDED COMPLAINT PART II - 34

solely on the fact that he was a registered sex offender, took his family away.

John Doe 111 has had to stay with family and friends since he was told to register. Every apartment he has lived in was leased by someone other than him because they all required a background check. Being a registered sex offender makes it nearly impossible to find housing. He has been let go from jobs that provide housing because he is not allowed to live there.

John Doe 111 is limited in his employment opportunities. He has applied and interviewed with countless companies in and outside of Idaho, and been denied due to the Registry. When he has gotten lucky enough to get a job, he is constantly pushed aside and never given an opportunity to advance within the company because he is on the Sex Offender Registry.

When moving to a new town or neighborhood, within a short period of time, those living nearby start making threats and trying to push John Doe 111 out of the area.

16. **Plaintiff, John Doe 34**, is a resident of Franklin County, State of Idaho.  In May of 2003, John Doe 34 was convicted in Franklin County, State of Idaho, of the crime of Sexual Abuse of a Child Under the Age of Sixteen (16) Years, to wit: the age of five (5) years, a felony.  John Doe 34 was released from probation on April 23, 2013.  At the time of his conviction, the Idaho Sex Offender Registry requirements had been enacted and John Doe 34 was then required to register as a sex offender. Under the language of the Idaho sex offender registration requirements as they existed at the time of his release from custody/probation, John Doe 34 would later be eligible for release from the requirement to register as a sex offender.  The ex post facto amendments to Idaho SORA effective from and after July 1, 2009, expanded the definition of "aggravated offense" to include, "any other offense set forth in Section 18-8304, Idaho Code, if at the time of the commission of the offense the victim was below the age of thirteen (13) years."  John Doe 34 is not a recidivist, did not commit an aggravated offense, and has not been

AMENDED COMPLAINT PART II - 35

classified as a violent sexual predator. Therefore, John Doe 34 should be eligible to petition the sentencing court to be removed from the Idaho Sex Offender Registry. John Doe 34 was, and still is, foreclosed from ever being removed from the Idaho sex offender registry by reason of the July 1, 2009, amendment above stated.

Plaintiff, John Doe 34, additionally alleges as follows:

From the time of John Doe 34's arrest, he was told he could not live in the same house as his children, even though the crime happened 15 years prior to his arrest. There hadn't been any issues, subsequent to commission of the crime, with his other kids or the victim. It was an extreme financial burden to his family, as his source of income was a home based business.

John Doe 34 had an opportunity to buy a house and property while he was on parole, but his parole officer would not allow him to do so, because there was a public beach on a lake that was approximately 1 mile away from the home.

As of yet, John Doe 34 has not been denied employment only because he runs his own Auto Body and Salvage business. He is harassed because he has had a lot of inventory and was told he has to register each vehicle, including the ones that don't run. The requirements seem to change each time he goes in to register. The most recent registration took 2 trips to the Sheriff's Office and over 5 hours between the 2 times. He was also told by one of the deputies that he couldn't have this type of business because they wouldn't know what he was driving.

While on parole and living away from his family, John Doe 34's mailbox was constantly opened and his mail was thrown all over the street. This was not happening to anyone else living on his street, only to him.

John Doe 34 was told by his lawyer that 10 years after completion of his parole and if there were no other offenses, he would be released from having to register. That has not been the case as he is still having to register, and the annual cost to register keeps increasing.

17. **Plaintiff, John Doe 132**, is a resident of Bannock County, state of Idaho. On May 11, 1988, John Doe 132 was convicted in Santa Barbara County, state of California, of the crime of Lewd and Lascivious Act w/Child Under Fourteen (14) Years, to-wit:

AMENDED COMPLAINT PART II - 36

victim eight (8) years of age at the time of commission of the offense, a felony.  John Doe 132 was sentenced to a term of incarceration of six (6) years in the custody of a California state prison facility, but was released from custody in February of 1991.  John Doe 132 was released from parole in March of 1992.  John Doe 132 was not required to register as a sex offender in the state of California.  John Doe 132 moved to the state of Idaho in 2000, and was informed of his obligation to register as a sex offender at that time.  In 2011, John Doe 132 petitioned the Idaho court to be released from sex offender registration requirements; however, that petition was denied. The ex post facto amendments to Idaho SORA effective from and after July 1, 2001, created the "aggravated offense" exception to eligibility for release from the Idaho Sex Offender Registry.  Under this designation, the crime of Lewd Conduct With a Minor where the victim was under twelve (12) years of age at the time of commission of the offense was classified as an "aggravated offense".  Finally, the ex post facto amendments to Idaho SORA effective July 1, 2011, provided that an offense for which a conviction was entered in another jurisdiction which is substantially similar to any Idaho offense considered to be an "aggravated offense", will also be considered an "aggravated offense" in Idaho for purposes of sex offender registration requirements.   John Doe 132 is not a recidivist, did not commit an aggravated offense, and has not been classified as a violent sexual predator.  Therefore, John Doe 132 should be eligible to petition the sentencing court to be removed from the Idaho Sex Offender Registry.  John Doe 132 was, and still is, foreclosed from ever being removed from the Idaho sex offender registry by reason of the July 1, 2001 and 2011 amendments, above-stated.

AMENDED COMPLAINT PART II - 37

Plaintiff, John Doe 132, additionally alleges as follows:

John Doe 132 became part of the Melchizedic Priesthood in 1997, and even then he was not limited in various callings when offered a position in any ward. After he registered as a sex offender, it became a matter of public knowledge. Positions for him to participate within the church became very restrictive after that. Members would go to the bishop and express concern that he was given positions that may involve children. He was allowed to take positions such as being in charge of maintenance and securing the church at night. While in his current ward, he was released from his position as a Sunday school teacher due to complaints that as a registered sex offender, he should not be teaching Sunday school even though they were all adults.

When he moved to where he is currently living, the bishop for the ward John Doe 132 was supposed to attend refused to even meet with him or give him his phone number.

The greatest harm resulting from having to register as a sex offender has been to John Doe 132's children. Parents of most of his children's friends would not allow their children to come to their home and interact with his children. During church, his children were subjected to name calling and bullying, saying their dad was a pervert or sex offender. Even during school, his children would sometime come from school in tears and would refuse to discuss what happened during school.

In this small community, it is difficult, if not impossible to locate suitable workers for John Doe 132's business. After an employee got hired, they would approach me after a short while saying they were quitting due to him being on the sex offender registry. Plaintiff was unable to locate and hire apprentices, laborers, or journeymen to work for him. Due to surgeries and constantly being in pain, it became extremely difficult for Plaintiff to continue working as a plumbing contractor. As of late, his knee and prior surgeries have placed him in a disabled status and without proper help in his business as a plumbing and construction contractor, he is out of business.

Approximately 2013, John Doe 132 and his family were offered section 8 housing after being on the waiting list for a couple of years. They were contacted by section 8 housing personnel stating they were next in line for housing. Plaintiff and his family were having a very difficult time financially. They were interviewed and were given the housing package with all the requirements and rules for section 8 housing.  They were further instructed to go ahead with their search for suitable housing in the range of their qualifications. After locating several potential residences, they went back to the housing office to complete the final paperwork. John Doe 132 and his family were then told that they could not

receive section 8 approval due to him being on the sex offender registry. The housing clerk, who was sympathetic to his family's hurt, said that no other felons would be denied section 8 housing and it was unfair. Even murderers, burglars, and other felons would be eligible for section 8 despite their crime.

Finally after his last knee surgery, it was determined that John Doe 132 needed to be admitted to a long term care facility for rehabilitation. There were two facilities where he qualified for insurance coverage. However, due to his status as a sex offender, he was refused admission to both facilities. This occurred in April and May of 2018. Even the hospital administrator intervening on his behalf could not get either facility to admit John Doe 132. Plaintiff's medical treatment required him to receive antibiotics through a pik line that went from his arm to a chamber over his heart. While at home recovering from his surgery, he fell causing a huge gash in his arm. His son rushed him to the hospital where they stopped the bleeding and stitched the gaping wound.

## EX POST FACTO

18.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth herein and allege that for the purposes of this Amended Complaint Part II, this Honorable Court in its Memorandum Decision and Order has utilized the Ex Post Facto legal analysis as a barrier to reaching a particular analysis of Cruel and Unusual Punishment, Double Jeopardy, Contracts, and Separation of Powers. As such, the Plaintiffs focus primarily upon said analysis, however, the Plaintiffs jointly allege violations of their constitutional rights as to Cruel and Unusual Punishment, Double Jeopardy, Contracts, and Separation of Powers.

Plaintiffs allege that [t]he touchstone of the Supreme Court's inquiry into whether a sentencing law violates the Ex Post Facto Clause is whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes; the question when a change in law creates such a risk is a matter of degree, and the test cannot be reduced to a single formula. U.S.C.A. Const. Art. 1, § 9, cl. 3. *Peugh v.*

*U.S.*, 133 S. Ct. 2072 (2013).  See also, *United States v. Elk Shoulder*, 738 F.3d 948 (9th

Cir. 2013).

## CRUEL AND UNUSUAL PUNISHMENT

19.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth

herein and allege that in determining whether a statute is otherwise cruel and unusual, the

U.S. Supreme Court relies on the proportionality test which requires a weighing of the

punishment inflicted upon the offender against the protection and safety the community

enjoys as a result of the punishment. A 3-part objective test has been adopted to

determine proportionality.  1. The nature of the offense; 2. The sentence imposed for

commission of the same crime in other jurisdictions; and, 3.  The sentence imposed upon

other criminals in the same jurisdiction. See *Solem v. Helm*, 463 U.S. 277 (1983).

According to the proportionality test, the effects of community notification on offenders

must be proportional to the benefit the notification provides to society.  The most recent

studies conducted have failed to empirically show any additional benefit to the public

through community notification.   See, *Peter Finn, Sex Offender Community Notification,*

*National Institute of Justice: Research in Action* (Feb. 1997); and, *Abril R. Bedarf,*

*Comment, Examining Sex Offender Community Notification Laws*, 83, Cal.L.Rev. 885m

893 (1995).

## DOUBLE JEOPARDY

20.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth

herein and allege that evaluation of a double jeopardy challenge depends on an initial

determination of whether enforcement of the statute constitutes punishment.  The Double

AMENDED COMPLAINT PART II - 40

Jeopardy Clause prohibits the government from punishing an individual twice for the same crime.  In cases where sex offender registration and notification laws are challenged on all three grounds – ex post facto, cruel and unusual punishment, and double jeopardy – courts often decide the issue under the Ex Post Facto Clause rather than evaluate the law under the Double Jeopardy Clause.  The primary inquiry, then, is whether the challenged provision has a punitive effect.  *Keeping Children Out Of Double Jeopardy: An Assessment Of Punishment And Megan's Law In Doe v. Poritz.*  81 Minn.L.Rev. 501.

<u>CONTRACTS CLAUSE</u>

21.  Plaintiffs that pled guilty pursuant a plea agreement, received a Withheld Judgment, and/or had their charge reduced and/or dismissed, allege that the Contract Clause of the U.S. Constitution prohibits states from enacting any law that will impair "the Obligation of Contracts."  This prohibition, in general, prevents the states from passing any legislation that would alleviate the commitments of one party to a contract or make enforcement of the contract unreasonably difficult.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth herein in support of this claim.

<u>SEPARATION OF POWERS</u>

22.  Plaintiffs that pled guilty pursuant to a plea agreement, received a Withheld Judgment, and/or had their charge reduced and/or dismissed, allege that the Idaho Legislature has usurped the authority of Idaho Courts to enter into and enforce plea agreements, to grant withheld judgments, and/or reduce and/or dismiss charges.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth herein in support of this claim.

AMENDED COMPLAINT PART II - 41

DUE PROCESS AND SUBSTANTIVE DUE PROCESS

23.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth herein and allege that their Due Process and Substantive Due Process rights have been violated.  In particular, Plaintiffs assert that their "right to travel" has been violated as they have not been treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.  Plaintiffs allege that SORA  penalizes migration or creates fixed, permanent distinctions among citizens.   Plaintiffs allege that any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.

RELIGION

24.  Plaintiffs reallege and reincorporated paragraphs 6-17 as if fully set forth herein and allege that Idaho has substantially burdened their exercise of religion without demonstrating that application of the burden to the person is both (a) essential to further a compelling governmental interest; and is (b) the least restrictive means of furthering that compelling governmental interest.

ATTORNEY'S FEES

25.  That pursuant to 42 U.S.C.A. §§1983 and 1988, and further pursuant to Rule 54 of the Federal Rules of Civil Procedure (F.R.C.P.), plaintiffs, and each of them as the prevailing party(ies) herein, are entitled to an award of costs of suit, including attorney fees determined in the Court's discretion to be reasonable in the premises, incurred by

plaintiffs in their prosecution of this action, against defendants, jointly and severally

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Honorable Court for the following:

1.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the due process clause of the United States Constitution (U.S. CONST., Amend. XIV);

2.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the due process clause of the Idaho Constitution (ID CONST., Article I, § 13 );

3.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the First Amendment to the United States Constitution (U.S. CONST., Amend. I);

4.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the right to practice religion without governmental interference protected by the Idaho Constitution (ID CONST., Article I, § 4 );

5.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the equal protection clause of the United States Constitution (U.S. CONST., Amend. IV);

6.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the right to equal protection guaranteed by the Idaho Constitution (ID CONST., Article I, § 1 );

7.    A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained

AMENDED COMPLAINT PART II - 43

in the United States Constitution (U.S. CONST., Amend. VIII).

8.      A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained in the Idaho Constitution (ID. CONST., Article I, § 6 );

9.      A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the ex post facto clause of the United States Constitution (U.S. CONST., Art. 1, §9, cl. 10);

10.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the ex post facto clause of the Idaho Constitution (ID CONST., Article I, § 16);

11.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the double jeopardy clause of the United States Constitution (U.S. CONST., Am. V, AM. XIV);

12.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the double jeopardy clause of the Idaho Constitution (ID CONST., Article I, §13);

13.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the contracts clause of the United States Constitution (U.S. CONST., Art. 1, § 10);

14.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the contracts clause of the Idaho Constitution (ID CONST., Article I, §16);

15.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and

as applied by the Defendants, the takings clause of the United States Constitution (U.S. CONST., Amend. V);

16.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the takings clause of the Idaho Constitution (ID CONST., Article I, § 14);

17.     A declaration that Idaho SORA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the separation of powers doctrine of the Idaho Constitution (ID CONST., Article I, § 3);

18.     A declaration that Idaho SORNA 2001, 2009, 2011 violate, both facially and as applied by the Defendants, the residual and specific grants of police powers to the State of Idaho contained in Article 1, Section 10 of the U.S. Constitution;

19.     A permanent injunction prohibiting each Defendant from enforcing Idaho SORA 2001, 2009, 2011;

20.     Reasonable costs and attorney's fees, and

21.     Any further relief the Court deems appropriate.

DATED This 30th day of August, 2018.

FULLER LAW OFFICES


By____/s/ Greg J. Fuller_____
        GREG J. FULLER
        161 Main Avenue West
        P.O. Box L
        Twin Falls, ID 83303
        fullerlaw@cableone.net
        (208) 734-1602

AMENDED COMPLAINT PART II - 45