LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
CHRIS KRONBERG, ISB #4151
Deputy Attorneys General
3311 West State Street
P.O. Box 7129
Boise, Idaho 83707-1129
Telephone: (208) 334-8813
Facsimile:  (208) 334-4498
steven.olsen@ag.idaho.gov
chris.kronberg@itd.idaho.gov

        Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN and JANE DOES 1-134, ) | Case No. 1:16-cv-429-DCN |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | **MEMORANDUM IN SUPPORT OF** |
| ) | **MOTION TO DISMISS AMENDED** |
| ) | **COMPLAINT FOR INJUNCTIVE AND** |
| ) | **DECLATORY RELIEF (PART II)** |
| vs. ) | **(ECF No. 36)** |
| ) | |
| LAWRENCE WASDEN, Attorney General ) | |
| of the State of Idaho, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I.     INTRODUCTION

        Pursuant to this Court's *Memorandum Decision and Order* lodged May 17, 2018,

Plaintiffs ("the Does") have filed a self-styled *Amended Complaint for Injunctive and*

*Declaratory Relief (Part II)* ("2nd Amended Complaint").  The reference to "Part II" is unclear,

as is the statement that the Does "reincorporate and reallege all allegations contained in the

Amended Complaint as if fully set forth in this Amended Complaint Part II."  2nd Amended

Complaint at 3.  The Federal Rules of Civil Procedure provide that an amended complaint supersedes and replaces the preceding complaint(s) so that they are treated as if they do not exist. *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997).   Regardless, this Court dismissed all facial challenges to Idaho's Sexual Offender Registration Notification and Community Right to Know Act ("SORA"), and permitted Plaintiffs to amend their *Amended Complaint* so as to provide factual allegations to support "as-applied" claims.  Thus, the Does cannot resurrect their facial challenges to SORA.

As the Court is well aware, SORA is set forth at I.C. § 18-8301, *et seq*.  The main provisions of SORA relevant to the case at bar include I.C. § 18-8303, which defines an "aggravated offense", I.C. § 18-8306, which requires sex offenders to register, and I.C. § 18-8329, which sets forth limitations on where a sex offender can live, when they can be on school premises, and the prohibition against loitering within 500 feet of school grounds.  In particular, the law punishes by misdemeanor sex offenders who lives within 500 feet of school property as measured from the nearest exterior wall, unless the person resided within 500 feet prior to July 1, 2006.  Plainly, SORA is meant to limit exposure of sex offenders to children of school age.  Exceptions to the five hundred foot proscription apply, to include dropping off or picking up the offender's children and living in an approved or licensed incarceration facility or homeless shelter.

SORA also provides for the release of certain sex offender registration data as set forth in I.C. § 18-8323.  Sex offender registration information is also provided to school and public housing agencies where the offender lives, the U.S. Attorney General for appropriate data bases, volunteer organizations that deal with vulnerable adults or children, and anyone who requests the information, among others.  I.C. § 18-8324.  Employment of adult sex offenders is prohibited by

a very small subset of employers: daycare or group care facilities and family daycare homes. I.C. § 18-8327.  Exceptions to those limited proscriptions are available.  I.C. § 18-8328.

The 2nd Amended Complaint identifies twelve Does and provides allegations relating to as-applied claims for each plaintiff.  In essence, these Does are claiming that SORA is unconstitutionally punitive in violation of the Ex Post Facto proscription of the U.S. and Idaho constitutions.  The Does also claim violations of the U.S. and Idaho constitutions based on cruel and unusual punishment, double jeopardy, contract impairment, separation of powers, substantive and procedural due process (freedom to travel), and impingement upon the free exercise of religion.[1]

The factual allegations supporting the Does' as-applied claims can be categorized as follows:

→ Difficulties finding employment or disruption of business opportunities.
→ Difficulties traveling.
→ Problems maintaining familial, social or personal relationships.
→ Difficulty finding a place to live.
→ Difficulties attending church.

In spite of adding factual allegations to their claims, the Does' 2nd Amended Complaint falls short of stating a claim upon which relief can be granted and should therefore be dismissed.

## II.     ARGUMENT

### A.  Standard of Review

Rule 12(b)(6), F.R.C.P., contains the well-known defense that a party has failed "to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] In their Prayer for Relief, the Does appear to be resurrecting equal protection, takings, and state police power claims that this Court expressly ruled they could not do.  Therefore, Defendants have not addressed those claims in this memorandum.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (PART II) (ECF No. 36) - 3

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corporation v. Twombly,* 550 U.S. at 556).  The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988, *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).   The Does have failed to provide factual allegations that provide the facial plausibility necessary to infer that Defendants are liable.  For that reason, the 2nd Amended Complaint should be dismissed.

> **B.  SORA does not implicate the Ex Post Facto provisions of the U.S. and Idaho Constitutions.**

> **1. Standard of review for Ex Post Facto challenges to SORA.**

The linchpin of the Does' case is whether SORA is punitive in effect, an analysis conducted in light of the prohibition against Ex Post Facto laws.  When assessing a claim that a law violates the Ex Post Facto Clause, a determination must be made as to whether it applies "'to events occurring before its enactment' and 'it must disadvantage the offender affected by it' by altering the definition of criminal conduct or increasing the punishment for the crime."  *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).  Most of the Does' convictions pre-date the current version of SORA as amended since 2001,[2] so the remaining question is whether SORA has increased punishment for their convictions.

---

[2] Four of the Does (# 34, 116, 117 and 126) appear to have been convicted during the period from 2001 to 2004, following the 2001 amendments to SORA.

To determine whether statutory scheme has been retroactively increased punishment for a crime, the first question asked is whether the statutory scheme is civil or criminal in nature. *Smith v. Doe*, 538 U.S. 84, 92 (2002) (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)).  If the statutory scheme is civil by intent, the next question is whether it is "'so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.'"  *Smith v. Doe*, 538 U.S. at 92 (citing *Kansas v. Hendricks*, 521 U.S. at 361).  The *Smith* court noted that "'**only the clearest proof** will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty'."  *Smith v. Doe*, 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997) (emphasis added)).

Relying on *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), *Smith* identified the most important factors, not exhaustive, to use when analyzing whether a law has an excessively punitive effect:

> → Has the regulatory scheme been historically and traditionally viewed as punishment?
> → Does it impose an affirmative disability or restraint?
> → Does it promote the traditional goals of punishment?
> → Does it have a rational connection to a non-punitive purpose?
> → Is the law excessive in relation to the non-punitive purpose?

*Smith v. Doe*, 538 U.S. at 97.  The most significant factor is whether the statutory scheme has a "rational connection to a nonpunitive purpose".  *Id.* at 102.  Idaho has adopted the same analysis. *Groves v. State*, 156 Idaho 552, 328 P.3d 532 (Ct. App. 2014); *State v. Gragg*, 146 Idaho 74, 137 P.3d 461 (Ct. App. 2005).

### 2. The Does' allegations do not provide the clearest proof that SORA amounts to a retroactive increase in punishment.

In passing SORA, the Idaho legislature intended to establish a civil regulatory system. *State v. Gragg*, 146 Idaho at 77, 137 P.3d at 464.  The same holds true for the 2009 amendments

to SORA, which expanded the definition of "aggravated offenses" requiring lifetime registration. *Groves v. State, supra.* The Does challenge the legislative intent by merely asserting that because SORA has misdemeanor criminal penalties and differentiates between those convicted of certain sexual offenses and those who committed certain offenses, the intent must have been punitive. Such conclusory statements are inadequate to survive a motion to dismiss.

Because the Idaho legislature intended to create a civil statutory scheme, the question is whether the effect of the SORA amendments is sufficiently punitive to overcome the legislative intent. Based on the factual allegations set forth in the 2nd Amended Complaint, the answer is clearly no.

The U.S. Supreme Court and the Ninth Circuit Court of Appeals have on a number of occasions upheld the constitutionality of SORA statutory schemes. See, *Smith v. Doe, supra; Connecticut Department of Public Safety v. Doe,* 538 U.S. 1 (2003); *Litmon v. Harris,* 768 F.3d 1237 (9th Cir. 2014); *U.S. v. Elk Shoulder,* 738 F.3d 948 (9th Cir. 2013); *American Civil Liberties Union of Nevada v. Masto,* 670 F.3d 1046 (2012) ("*Masto*"); *U.S. v. Elkins,* 683 F.3d 1039 (9th Cir. 2012); *U.S. v. Juvenile Male,* 670 F.3d 999 (9th Cir. 2012); *Doe v. Tandeske,* 361 F.3d 594 (9th Cir. 2004).

*Smith v. Doe, supra,* is the major precedent on the issue of whether a SORA statutory scheme violates the Ex Post Facto Clause. *Smith* involved a challenge to the Alaskan SORA, which had offender registration and notification requirements, to include registering for life every ninety days if convicted of an aggravated offense. Failure to comply with registration requirements was punishable by criminal prosecution. Sex offenders challenged the law as a violation of the Ex Post Facto clause of the U.S. Constitution, and were successful at the district

court level.  The Ninth Circuit Court of Appeals affirmed and the case went to the Supreme Court.

Because no dispute existed as to whether the Alaska legislature intended the SORA scheme to be nonpunitive, the analysis centered on whether the scheme was "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil'." *Smith,* 538 U.S. at 92 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997)).  To answer that question, *Smith* turned to the factors identified in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-169 (1963). [3]

The court rejected the notion that the regulatory scheme operated as a traditional form of punishment, finding that any public shame, humiliation or stigma did not result from the SORA registration and notification scheme, but from the already publicly available fact of the offender's conviction.  *Smith,* 538 U.S. at 98.  Moreover, the social ostracism that may arise from the scheme was not "an integral part of the objective of the regulatory scheme."  *Smith,* 538 U.S. at 99.  Further, the "purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender."  *Id.*

In relation to whether the SORA scheme creates an affirmative disability or restraint, the court observed that SORA imposed no physical restraint.  *Smith,* 538 U.S. at 100.  The court further noted that the record in the case "contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords."  *Id.*  Here again, the court noted that detrimental effects of SORA on an offender "flow not from the Act's

---

[3] "The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  *Smith,* 538 U.S. at 97.

registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Smith,* 538 U.S. at 101.

Regarding the traditional aims of punishment, the court noted that the scheme could act as a deterrent, but so could any number of statutory schemes that do not impose punishment. *Smith,* 538 U.S. at 102.  The fact that offenders may need to register for life did not meet the definition of retribution because the category of offenders "and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Id.*

The most important factor identified by *Smith* is the existence of a rational connection between the statutory scheme and a nonpunitive purpose.  The *Smith* plaintiffs argued that the scheme was not narrowly drawn to accomplish the nonpunitive purpose.  Rejecting that argument, the court observed that a "statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."  *Smith,* 538 U.S. at 103. Further, the "Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.*  "The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause."  *Id.* at 104.

In sum, the *Smith* court held that the plaintiffs failed to provide "the clearest proof, that effects of the law negate Alaska's intention to establish a civil regulatory scheme"—the required showing for a successful Ex Post Facto claim.  *Smith,* 538 U.S. at 105.  The claim was therefore dismissed.

Ninth Circuit case law is consistent with *Smith.*  In *Litmon v. Harris, supra,* an offender alleged that lifetime registration as a sex offender every ninety days violated due process, ex post facto and equal protection constitutional rights.  The *Litman* holding rejected the assertion that requiring registration every ninety days amounted to unconstitutional physical restraint.  *Litmon,* 768 F.3d at 1243.  The court further noted that problems finding and holding employment created by the registration requirement do not implicate a fundamental right, so the state need only show a rational relationship to public safety.[4]  *Id.* at 1242.

The plaintiff in *U.S. v. Elk Shoulder, supra,* claimed among other things that the federal Sex Offender Registration and Notification Act ("SORNA") found within the Adam Walsh Child Protection and Safety Act, 42 U.S.C. § 16901 *et seq*., violated the Ex Post Facto Clause because it is punitive in nature.  The court rejected the argument, noting that its decision in *U.S. v. Elkins*, *supra,* that SORNA is not punitive was on point.  *Elk Shoulder*, 738 F.3d at 953.  Further, the holding in *Elkins* foreclosed the plaintiff's argument that public ridicule and problems finding employment and housing caused SORNA to be punitive in effect.  *Id.* at 954.

In *Masto, supra,* the Ninth Circuit reviewed amendments to a Nevada SORA scheme that added additional offenders to the registration and notification requirements, as well as residency and movement restrictions on offenders.  Based on facial and as-applied constitutional challenges, the district court had found that the amendments violated the Ex Post Facto, contract impairment, double jeopardy and due process clauses of the U.S. Constitution.  The Ninth Circuit reversed all of those holdings except the ones rendered moot by the state's agreement to not retroactively enforce residency and movement restrictions.

---

[4] Idaho's SORA only prohibits sex offenders from working at a daycare center, group daycare facility or a family daycare home.  The Does have not alleged that they have been denied employment because of this prohibition.

Noting that the Ex Post Facto analysis is the same for a double jeopardy challenge, the court found, using the *Smith v. Doe* factors, that humiliation and stigmatization arise from the underlying conviction, not from registration and notification requirements. *Masto,* 670 F.3d at 1056. Similarly, frequent in-person registration requirements did not create a disability to the extent that it became punitive. *Id.* Nor did Nevada's SORA scheme meet the traditional aim of punishment – deterrence and retribution. *Id.* at 1057. Moreover, the court determined that the registration and notification requirements, along with the residency restrictions, were rationally related to the nonpunitive purpose of public safety. *Id.* Additionally, the lack of particularized determinations as to the threat posed by each offender did not render unconstitutional the statutory classification of those who fell under its rubric. *Id.*

In *U.S. v. Juvenile Male, supra,* the court also addressed the constitutionality of SORNA, which contains registration and notification requirements similar to Idaho's SORA. Among other constitutional claims, the plaintiffs alleged that SORNA violated proscriptions against cruel and unusual punishment. Noting that the plaintiffs, as well as their families, would face shame and humiliation as a result of SORNA, the court held that such shame and humiliation did not meet the "high standard of cruel and unusual punishment." *Juvenile Male,* 670 F.3d at 1010. The court observed that the plaintiffs were not exposed to any additional risk of incarceration of physical harm as a result of SORNA requirements, so the requirements were not punitive in character. *Id.*

Other courts have reached conclusions similar to the Ninth Circuit cases. *Shaw v. Patton,* 823 F.3d 556 (10th Cir. 2016); *Weems v. Little Rock Police Dep't,* 453 F.3d 1010 (8th Cir. 2006); *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005); *People v. Tucker*, 879 N.W.2d 906 (Mich. App. 2015).

Idaho has similarly rejected claims that adverse social and employment impacts are sufficiently punitive to negate the intent of the legislature that SORA is a civil scheme. *State v. Gragg*, 143 Idaho at 78, 137 P.3d at 465. The *Gragg* plaintiff alleged that the registration requirements violated the prohibition against retroactive punishment because of the humiliation and shunning associated with registering as a sex offender, as well as difficulties in finding work. Relying on *Smith v. Doe, supra,* the court found that such problems did not rise to the level of punishment sufficient to overcome the nonpunitive nature of the SORA regulatory scheme. *Id.*

Petitioning to be exempted from the SORA registration requirements, the plaintiff in *Groves v. State, supra,* asserted that the retroactive application of the 2001 and 2009 amendments violated the Ex Post Facto clauses of the U.S. and Idaho constitutions by redefining the plaintiff's offense as aggravated, thereby requiring him to register for life. At the trial court level, the plaintiff was not permitted to adduce evidence of the impact lifetime registration would have, and the court denied the petition. On appeal, the court relied on *State v. Johnson*, 152 Idaho 41, 266 P.3d 1146 (2011), to hold that conforming to SORA registration requirements did not morph its regulatory nature into a punitive scheme. *Groves,* 156 Idaho at 557, 328 P.3d at 537.

In *Johnson*, the sex offender argued that the 2009 SORA amendments violated constitutional Ex Post Facto proscriptions, impairment of contract rights, due process and other rights under the Idaho constitution. In regard to the Ex Post Facto claim, the *Johnson* court relied on the *Smith v. Doe, supra,* factors to determine if the SORA amendments are punitive. The court observed that it had already determined that the legislative intent of SORA was regulatory rather than punitive, citing *Ray v. State*, 133 Idaho 96, 982 P.2d 931 (1999).

The *Johnson* court, referencing *State v. Gragg*, *supra*, noted that the effects of registering under SORA were not "so clearly punitive as to override the Legislature's stated purpose." *Johnson*, 152 Idaho at 45, 266 P.3d at 1150 (citing *Gragg,* 143 Idaho at 78, 137 P.3d at 465). The court also noted that in *Smith v. Doe, supra,* the U.S. Supreme Court rejected the employment and social shunning arguments, asserting that the problems arise from the conviction itself rather than from SORA.  *State v. Johnson*, 152 Idaho at 45, 266 P.3d at 1150.

*Johnson* further observed that the only change to SORA since decisions upholding it against constitutional challenges was the addition of certain offenses to the "aggravated" category, requiring lifetime registration.  Noting that the legislature characterized the 2009 amendments as "technical amendments and updates", the court determined that no basis existed upon which to conclude that the legislature intended them to be punitive.  *Johnson*, 152 Idaho at 45, 266 P.3d at 1150.  Applying the "clearest proof" standard from *Smith v. Doe*, *supra*, the court held that the lack of individualized assessment of offenders under the amendments did not create a punishment that overrode the regulatory purpose.  *Id.* at 46, 266 P.3d at 1151.

The Idaho Court of Appeals recently upheld the constitutionality of Idaho's SORA against a challenge alleging cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution, as well as the Idaho constitution.  *State v. Kinney*, 163 Idaho 663, 417 P.3d 989 (Ct. App. 2018).  The *Kinney* decision rested on the finding in *State v. Johnson*, *supra* that SORA is not punitive.

As a matter of law, the Does' factual allegations simply do not provide an adequate basis upon which to circumvent the clear holdings of the U.S. Supreme Court, the Ninth Circuit Court of Appeals and Idaho appellate courts.  Their alleged difficulties in finding employment and housing, shunning by others, all derive from the fact of the convictions for sex offenses, not from

punishment imposed by SORA.  The Does' convictions are information that is publicly available

to anyone who would do a normal background check as part of the employment or housing

application process.  The public safety concerns of the Idaho legislature – to protect minor

children from recidivist sex offenders – provide the necessary rational for the SORA statutory

scheme.  The allegations in the 2nd Amended Complaint fall well short of the "clearest proof"

standard that must be met in order to convert SORA from its nonpunitive regulatory scheme into

an unconstitutional retroactive increase in punishment.

### C.  The Does' contract impairment claim fails as a matter of law.

At least a couple of the Does claim, without providing specifics, that SORA somehow

violated the terms of court orders[5] or plea agreements.  A plea agreement is interpreted pursuant

to state law.  *Davis v. Woodford,* 446 F.3d 957 (9th Cir. 2006).  Idaho evaluates contract

impairment challenges the same under its constitution as under the federal constitution.  *CDA*

*Dairy Queen, Inc. v. State Ins. Fund,* 154 Idaho 379, 299 P.3d 186 (2013).  An impairment of

contract claim requires a showing of a "contractual relationship between the parties regarding the

specific terms at issue, the challenged act impairs an obligation under that contract, and

that impairment is substantial."  *Id.* at 387, 299 P.3d at 194.

In *State v. Johnson*, *supra*, the court rejected an impairment of contract claim based on an

alleged violation of the plaintiff's plea agreement arising out of the 2009 amendments to SORA.

The court noted that the agreement stated that the plaintiff agreed to comply with "any legal

requirements concerning registering as a sex offender under the laws of the [S]tate of Idaho or

any other states where the Defendant resides".  *Johnson*, 152 Idaho at 46, 266 P.3d at 1151.  As

---

[5] A court order would not be a contract unless it was part of a plea agreement.

the court observed, such language is "obviously forward looking", so the 2009 amendments did not impair the provisions of the plea agreement.  *Id.*

The Does have not identified the specific term of any plea agreement that was allegedly impaired by SORA.  At least one other state has concluded that plea agreements are "'deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and pursuance of public policy.'"  *Doe v. Harris*, 57 Cal. 4th 64, 73, 302 P.3d 598, 605 (2013) (quoting *People v. Gipson,* 117 Cal.App.4th 1065, 1070, 12 Cal.Rptr.3d 478 (2004)).  Thus, even without knowing the precise provision of any plea agreement allegedly impaired, the impairment claim could fail because of the implied incorporation of future laws adopted for the future good – in this case, the public safety issue surrounding sex offender recidivism and minor children.

Even assuming in this case that SORA does substantially impair a court order or plea agreement, the issue then becomes "whether the act serves' an important public purpose' and whether the act is 'reasonable and necessary' to advance that purpose."  *CDA Dairy Queen, Inc. v. State Ins. Fund,* 154 Idaho at 387-88, 299 P.3d at 194-95 (quoting *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 25 (1977)).  As noted in *CDA Dairy Queen*:

> [S]ubstantial impairment may be permissible where there is "a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569, 581 (1983) (citations omitted). However, even if a legitimate public purpose exists, the Court must still determine whether the act is based "upon reasonable conditions and [is] of a character appropriate to the public purpose justifying its adoption." *U.S. Trust Co.,* 431 U.S. at 22, 97 S.Ct. 1505, 52 L.Ed.2d at 109–10 (citing *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 445–47, 54 S.Ct. 231, 242–43, 78 L.Ed. 413, 432–34 (1934)). Thus, even substantial impairment may be permissible, but only where it is reasonable and necessary to advance a legitimate public purpose.

*CDA Dairy Queen, Inc.*, *Id.* at 388, 299 P.3d at 195.

The public purpose behind SORA is set forth in I.C. § 18-8302, and clearly identifies a significant and legitimate public purpose.  SORA reflects a reasonable and necessary use of police power to address the public safety posed by the potential abuse of minor children.  The contract impairment claims should be dismissed because even assuming there has been some impairment of a plea bargain, because SORA serves to reasonably and necessarily advance an important public purpose.

### D.  SORA has not placed the Does in double jeopardy.

The Fifth Amendment to the U.S. Constitution provides, in relevant part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb".  In other words, "no person may be tried more than once 'for the same offence'."  *Currier v. Virginia,* 138 S.Ct. 2144, 2149, 201 L.Ed.2d 650 (2018).  The Fifth Amendment also "prohibits subjecting a person to jeopardy of multiple punishments for the same criminal act."  *Masto, supra.*   A two-step analysis is applied to determine if additional punishment is imposed:  First, did the legislature intend to impose a criminal punishment or was the intent to promulgate a nonpunitive regulatory scheme; second, is the law so punitive that its effect negates the legislative intent.  *Masto,* 670 F.3d at 1053.   In other words, the analysis is essentially the same as under the Ex Post Facto prohibitions.

The Does allege "that evaluation of a double jeopardy challenge depends on an initial determination of whether enforcement of the statute constitutes punishment."  2nd Amended Complaint at 40, Para. 20.  As discussed in the section above in relation to the Does' Ex Post Facto claims, because SORA is not punitive by intent and the Does have not alleged sufficient facts to establish that as applied to them SORA is punitive, the double jeopardy claim should be dismissed.

### E.  SORA does not create cruel and unusual punishment.

The Does reference the three part test for cruel and unusual punishment set forth in *Solem v. Helm,* 463 U.S. 277 (1983) as a basis for their claim that SORA creates cruel and unusual punishment.  2nd Amended Complaint at 40, ¶ 19.  It should be noted that *Solem* was significantly narrowed in scope to a "gross disproportionate" standard in *Ewing v. California,* 538 U.S. 11 (2003).  Further, the Does misstate the proportionality test by indicating that the benefit of community notification under SORA must be proportional to the benefit such notification provides to society.  Such a comparison is not within the rubric of appropriate analysis for cruel and unusual punishment.

Regardless, in order to get to this analysis, a finding must be made that SORA is punitive.  As is the case with the Does' Ex Post Facto and double jeopardy claims, because SORA is not punitive, their cruel and unusual punishment claims fail as a matter of law and should be dismissed.

### F.  Violation of separation of powers

The Does base their separation of powers claim on the same basis as their impairment of contract claim, an interference with the plea agreements some Does may have entered into.  2nd Amended Complaint at 41, ¶ 22.  Article 2, section 1 of the Idaho Constitution prohibits one branch of government from exercising the power ascribed to another branch.  The U.S. Constitution lacks a similar provision.  In Idaho, "the separation of powers doctrine is triggered when (1) a 'textually demonstrable constitutional commitment' assigns the matter to a particular branch of government; or (2) the matter implicates another branch's discretionary authority."  *Tucker v. State*, 162 Idaho 11, 29, 394 P.3d 54, 72 (2017) (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 639–40, 778 P.2d 757, 761–62 (1989)).  The Does allege that "the

Idaho Legislature has usurped the authority of the Idaho Courts to enter into and enforce plea agreements, to grant withheld judgments, and/or reduce and/or dismiss charges." 2nd Amended Complaint at 42, Para. 22.

However, the Does have not provided any factual allegations relating to the existence of plea agreements or withheld judgments, or how the SORA amendments may have affected those documents. Regardless, because the SORA statutory scheme is a civil regulatory scheme and not punitive, the legislature has not usurped the courts' authority whatsoever. Dismissal of these claims is therefore appropriate.

### G.   SORA does not impinge upon the Does' freedom of religion.

The Does claim that through SORA, the state of Idaho has substantially burdened their exercise of religion without "demonstrating that application of the burden to the person is both (a) essential to further a compelling governmental interest; and is (b) the least restrictive means of furthering that compelling governmental interest." 2nd Amended Complaint at 42, Para. 24. [6]

The Does misperceive the freedom of religion associated with the First Amendment to the U.S. Constitution. "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest scrutiny laws that target the religious for 'special disabilities' based on their 'religious status.' *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 137 S. Ct. 2012, 2019, 198 L. Ed. 2d 551 (2017) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520, 533, 542 (1993)). The Does have not alleged, and have provided no factual basis for, a claim that they have been somehow the subject of discrimination because of their religious beliefs. Without any evidence that the Does have been discriminated against on

---

[6] SORA does not prohibit sex offenders from attending church unless the church itself is used as a school *and* posted pursuant to I.C. § 18-8329(1)(a). The Does have not alleged that any church they attend has been so posted.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (PART II) (ECF No. 36) - 17

the basis of religion, their freedom to exercise their religious beliefs has not been impinged upon and their claims must be dismissed.

Further, as the U.S. Supreme Court has noted, "the Free Exercise Clause [does] not entitle the church members to a special dispensation from the general criminal laws on account of their religion." *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 137 S. Ct. at 2021 (citing *Employment Division v. Smith,* 494 U.S. 873 (1990)); *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439 (1988)).  The same logic holds true in relation to the civil regulatory scheme of SORA – the free exercise of religion does not entitle church members to special dispensation from conformance with SORA.

### H.  The Does have not alleged a valid due process claim.

The Does base their procedural and substantive due process claims on the allegation that their right to travel has been unconstitutionally burdened.  2nd Amended Complaint at 42, ¶ 23. They awkwardly assert that "they have not been treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Id.*

Under the U.S. Constitution, the right to travel protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.  *Saenz v. Roe*, 526 U.S. 489, 500 (1999).  "[A] citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz v. Roe*, 526 U.S. at 501 (quoting *Corfield v. Coryell,* 6 F.Cas. 546 (No. 3,230) (C.C.E.D. Pa. 1823)).  A state law that deters citizens from

travel impinges on the right to travel.  *Bartosz v. Jones*, 146 Idaho 449, 461, 197 P.3d 310, 322 (2008) (citing *Att'y Gen. of New York v. Soto–Lopez,* 476 U.S. 898, 903 (1986)).  The right to travel may be burdened if justified by a compelling state interest.  *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972).

The Does have failed to allege any facts indicating that any of the indicia of free travel have been implicated.  None of them has been prohibited from travel to another state or prohibited from entering a state because of SORA.  *See Doe v. Miller,* 405 F.3d 700 (8th Cir. 2005).  Nor have the Does provided any factual basis supporting an allegation that any of them have been treated differently from one state to another by the requirements of SORA.  The Does have failed to explain how the "privileges and immunities" provided to citizens of the various states have any application to SORA requirements.  The due process claims should be dismissed.

### I.  The statute of limitations precludes the Does from making claims based on conduct more than two years prior to the filing of their initial complaint.

The state of Idaho statute of limitations for a personal injury applies to a claim made pursuant to 42 U.S.C. § 1983.  *Wallace v. Kato,* 549 U.S. 384, 387 (2007); *TwoRivers v. Lewis,* 174 F.3d 987 (9th Cir. 1999).  In Idaho, the statute of limitations for a personal injury is two years from the date the action accrues.  I.C. § 5-219.

Many, if not most, of the allegations set forth in the Does' 2nd Amended Complaint relate to events that reach back years prior to the filing of their initial *Complaint* on September 22, 2016.  Even assuming for sake of argument that all of the claims set forth in the 2nd Amended Complaint relate back to the initial *Complaint,* the two year statute of limitations has run on any claim based on occurrences prior to September 22, 2014.  For that reason, no allegations set forth in support of any claim should be considered if they predate the two years prior to the filing of the *Complaint*.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (PART II) (ECF No. 36) - 19

### III.    CONCLUSION

For the reasons set forth herein, as well as any that may arise at a hearing on this matter, the

State respectfully requests that its motion to dismiss be granted.

DATED this 18th day of October, 2018.

State of Idaho
Office of the Attorney General


_/s/ Chris Kronberg_____
Chris Kronberg
Deputy Attorney General


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of October, 2018, I filed the foregoing

electronically through the CM/ECF system, which caused the following parties or counsel to be

served by electronic means, as more fully reflected on the Notice of Electronic Filing:


Greg J. Fuller
Daniel S. Brown
fullerlaw@cableone.net
*Attorney for Plaintiffs*


_/s/ Chris Kronberg_____
CHRIS KRONBERG
Deputy Attorney General


MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR
INJUNCTIVE AND DECLARATORY RELIEF (PART II) (ECF No. 36) - 20