UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN AND JANE DOES 1-134,<br>      Plaintiffs,<br><br>          v.<br><br>LAWRENCE WASDEN, Attorney<br>General of the State of Idaho, et al.,<br><br>      Defendants. | Case No. 1:16-cv-00429-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## I. INTRODUCTION

This represents Plaintiffs, Does 1-134 (hereinafter "Plaintiffs" or "Does"), second

attempt to challenge the constitutionality of Idaho's Sexual Offender Registration

Notification Act ("SORA" or the "Act"). The Court dismissed Plaintiffs' complaint in

May, 2018. Dkt. 32. While the Court granted Plaintiffs leave to amend some of their as-

applied challenges to SORA, it dismissed all facial challenges without leave to amend.

The Court also held Plaintiffs could not amend certain causes of action because even as-

applied challenges to such claims would fail. The Court allowed Plaintiffs to amend the

rest of their constitutional claims to state appropriate as-applied challenges with specific

plaintiffs and specific facts.

In their new complaint, Plaintiffs add facts with respect to twelve defendants, but

fail to tie such facts to specific constitutional violations, and also fail to allege essential

details which would allow the Court to evaluate whether any of the as-applied challenges

are plausible. In their briefing, Plaintiffs do not cite a single Idaho, District Court within

the Ninth Circuit, Ninth Circuit, or Supreme Court case which would support an as-applied challenge to SORA, and also ignore most of the arguments raised in Defendants' Motion to Dismiss. Finally, at oral argument, Plaintiffs' attorney did not address any of Plaintiffs' as-applied challenges. Instead, Counsel exclusively argued an ex post facto challenge to SORA, despite the Court's previous holding that any facial ex post facto claim fails as a matter of law. The Second Amended Complaint does not plausibly allege any as-applied challenge to SORA and, therefore, must be dismissed.

## II. FACTS

On September 22, 2016, Plaintiffs filed the instant suit to challenge the constitutionality of the 2001, 2009, and 2011 amendments to SORA. Idaho Code § 18-8301 *et. seq.* Among other things, the 2001 amendments to SORA ended the right of offenders who had been convicted of an "aggravated offense" to petition for release from registration requirements. At the time, the definition of "aggravated offense" included various sexual offenses committed against a victim less than twelve years old. The 2001 amendments also empowered the Idaho State Police to make the sex offender registry available to the public via the internet. In 2009, the definition of "aggravated offense" was expanded to include certain offenses against any child under the age of sixteen years old, as well as to cover a number of additional sexual crimes.

In 2011, SORA was amended so that, *inter alia*, any offense under the laws of another jurisdiction that is substantially similar to an "aggravated offense" in Idaho is an "aggravated offense" for purposes of registration requirements. The 2011 amendments also increased the information required to be included for each sex offender in the digital

registry; required an offender to register within two days of entry of conviction or prior to release from incarceration; required offenders to report any changes to their address, name or employment status within two working days of such change; required offenders to notify the police department of any lodging that would last longer than a period of seven days, and also to notify the jurisdiction of the location where they would be lodging; and required offenders to give notice of any vehicle changes. Finally, the 2011 amendments stated registration under SORA is for life, but allowed any offender other than a recidivist, offender convicted of an aggravated offense, or an offender designated as a violent sexual predator, to petition for release from the registration requirement within ten years of release from prison or parole.

Plaintiffs are all individuals required to register under SORA. Due to the aforementioned amendments to SORA, it appears that all Does are required to register for life under the Act because of their classification as recidivist, or because their underlying crime has been classed as an "aggravated offense." Plaintiffs amended their initial complaint on April 26, 2017. Dkt. 4 (hereinafter "First Amended Complaint"). In their First Amended Complaint, Plaintiffs did not associate particular causes of action with specific individuals, but instead generally stated that all 134 Does suffered from a wide variety of constitutional deprivations as a result of SORA. Plaintiffs' claims under the United States Constitution included Procedural and Substantive Due Process violations under the Fourteenth Amendment, Free Exercise of Religion violations under the First Amendment, Equal Protection violations under the Fourteenth Amendment, Cruel and Unusual Punishment violations under the Eighth Amendment, Ex Post Facto Clause

violations, Double Jeopardy Clause violations under the Fifth Amendment, Contracts Clause violations, and Takings violations under the Fifth Amendment. Plaintiffs also included claims for Contracts Clause, Separation of Powers, and Police Power violations under the Idaho Constitution.

Defendants[1] filed a Motion to Dismiss Plaintiffs' First Amended Complaint on November 17, 2017. The Court held oral argument on March 6, 2018, and subsequently issued its Memorandum Decision and Order granting Defendants' Motion to Dismiss. Dkt. 32. In its Order, the Court held Plaintiffs could not establish any facial challenges to SORA because there are numerous circumstances under which the Act is valid and constitutional. Dkt. 32, at 8-9 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) ("a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications.") (quoting *U.S. v. Salerno*, 481 U.S. 739, 745 (1987)). Because it could not find as a matter of law that SORA, either in whole or in part, was facially unconstitutional, the Court dismissed all facial challenges without leave to amend.

The Court could not determine whether Plaintiffs stated any valid as-applied challenges to SORA because Plaintiffs did not plead any as-applied challenges in their First Amended Complaint. The Court dismissed Plaintiffs' First Amended Complaint but

---

[1] There are a number of named Defendants in this case, including various state officials, members of the Sexual Offender Management Board, the Idaho State Police, and individual county sheriffs. The Court refers to this group, individually and collectively, as "Defendants."

permitted Plaintiffs to amend certain claims to allege facts—tying specific Plaintiffs to specific causes of action—to allow the Court to assess standing and determine whether Plaintiffs could state plausible causes of action. However, the Court dismissed some of Plaintiffs' claims without leave to amend because even any as-applied challenges would fail.

First, the Court denied leave to amend all but one aspect of Plaintiffs' Procedural Due Process claim. Specifically, Plaintiffs alleged SORA subjected sexual offenders to "new restrictions and requirements, regardless of any actual risk to society and without the possibility of any hearing[.]" Dkt. 4, at ¶¶ 236, 237. The Court explained the Supreme Court, in *Connecticut Dep't of Public Safety*, and the Ninth Circuit, in *Doe v. Tandeske*, already ruled upon this very issue. *See generally*, *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1 (2003); *Doe v. Tandeske*, 361 F.3d 594 (9th Cir. 2004). In both cases, the Courts held classification-based registration requirements were valid, that registrants were not entitled to an opportunity to be heard on an individual basis, and that this type of regulatory structure does not violate Procedural Due Process rights. Under such precedent, a state can enforce specific registration requirements based upon a group classification without making individualized assessments. The Court accordingly denied Plaintiffs' leave to amend their general Procedural Due Process claim.

Plaintiffs also alleged SORA's reporting requirements for students, and use of the term "loiter," were unconstitutionally vague and discriminatory. The Court reviewed SORA's student reporting requirements and use of the term loiter, determined neither provision was unconstitutionally vague, but allowed Plaintiffs to amend their Complaint

*only* to allege specific reporting provisions or other terms within SORA are unconstitutionally vague as applied to a particular Doe. Dkt. 32, at 39 n. 17.

The Court did not grant Plaintiffs leave to amend their Equal Protection claim because sex offenders are not a protected class, and because there is a valid reason for treating age groups differently,[2] so even as-applied Equal Protection challenges are barred. The Court also denied leave to amend any takings challenge under the Fifth Amendment unless a particular Doe could allege compliance with the exhaustion criteria of *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). Finally, the Court dismissed Plaintiffs' state police powers claim without leave to amend because a state can enact and enforce its own statutes and the Supreme Court has held that a state can apply sexual registration laws retroactively, so requiring Does already released from probation to re-register after SORA was amended does not violate Idaho's police powers.

Following the Court's dismissal, Plaintiffs filed a new complaint on August 30, 2018. In their new complaint, Plaintiffs provide allegations in support of as-applied claims of twelve Does. Such allegations illustrate the twelve Does have faced significant hardships related to the registration requirements under SORA. These challenges can be generally categorized as difficulties finding employment or disruption of business

---

[2] In their First Amended Complaint, Plaintiffs alleged SORA causes a disparity in treatment between youth and adult sex offenders in Idaho. The Court determined Equal Protection analysis does not apply to this claim because sex offenders are not a suspect class, age is not a suspect class, and the Supreme Court has already determined that juveniles and adults are not similarly situated, particularly in the context of sexual offenses, and can therefore be treated differently. Dkt. 32, at 29 (citing *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)).

opportunities, burdens upon travel, problems maintaining familial, social, or personal relationships, trouble finding a place to live, and difficulties attending church. Although the Court sympathizes with the Does and recognizes they have endured substantial obstacles, the challenges the Does allege are the same as those raised by sexual offenders in as-applied constitutional challenges to sexual offender registration laws across the country that have already been considered and rejected by the Ninth Circuit and Supreme Court. Without any allegations to distinguish Plaintiffs' harms from those foreclosed under binding precedent, the Court must dismiss the Second Amended Complaint.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations," however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but does require more than a sheer possibility that a defendant acted unlawfully. *Id*.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly*. First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept legal conclusions as true. *Id*. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In light of *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks and citation omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

A dismissal without leave to amend is improper unless it is clear that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc*., 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a

claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## IV. ANALYSIS

### A. SURVIVING CLAIMS

Plaintiffs captioned their new complaint, "Amended Complaint for Injunctive and Declaratory Relief Part II." Dkt. 36. Plaintiffs also claim to "reincorporate and reallege all allegations contained in the Amended Complaint as if fully set forth in this Amended Complaint Part II." *Id.*, at 3. However, "an amended complaint supersedes the original complaint" and renders the latter "without legal effect." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). The Court accordingly rejects Plaintiffs' proposed "Amended Complaint Part II" title and will instead refer to Plaintiffs' new complaint as the "Second Amended Complaint."

Plaintiffs suggest they did not "incorporate the prior Complaint with the intent of having this Court re-litigate the legal claims that have already been decided." Dkt. 43, at 1. Yet, the Second Amended Complaint's prayer for relief seeks a declaration that the 2001, 2009, and 2011 amendments violate, both facially and as applied to Plaintiffs, each of the twelve causes of action alleged in the First Amended Complaint. Four of these claims, and all facial challenges, have already been dismissed without leave to amend. The Court adopts the analysis outlined in its Memorandum Decision and Order, Dkt. 32,

and notes it will not repeat or reconsider its rejection of any facial challenges, or as-applied Procedural Due Process, Equal Protection, takings, or police powers challenges.[3]

The Court has already explained that Plaintiffs must establish standing as to each as-applied challenge they seek to raise. Although the Second Amended Complaint provides a litany of specific harms suffered by twelve Does, it still fails to tie each Doe to a particular constitutional violation. The Second Amended Complaint instead generally asserts all Plaintiffs "jointly allege" violation of their constitutional rights. Dkt. 36, at 39-42. Even with the detail added for each of the twelve Does, it is clear not all twelve Does can state an as-applied challenge for each surviving cause of action.[4]

Like the Amended Complaint, the Second Amended Complaint still requires the Court to parse through pages upon pages of allegations to attempt to determine the relationship between any particular Doe and a specific cause of action. As the Court has already noted, this approach is not appropriate. Dkt. 32, at 10; *see also Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). However, to the extent the Court can infer an individual Doe has standing to allege an as-applied challenge to a

---

[3] Although the Court allowed Plaintiffs leave to amend an as applied Procedural Due Process claim to allege a specific reporting obligation or other provision of SORA is unconstitutionally vague, the Second Amended Complaint does not allege any specific provision of SORA is unconstitutionally vague as applied to a particular Doe, and thus fails to state a Procedural Due Process claim for the limited purpose permitted by the Court. The Court also allowed leave to amend a takings claim only if a particular Doe could allege compliance with the exhaustion requirements of *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). The Second Amended Complaint does not allege any Doe has a ripe takings claim because s/he had a final determination by the State and exhausted administrative remedies, and, consequently, fails to state an as-applied takings claim.

[4] For instance, some Does allege compliance with SORA violates aspects of their plea agreements in support of a Contracts Clause violation, while others do not. Of course, some claims in this suit, such as violation of the Ex Post Facto Clause, *would* apply to all Does. The Second Amended Complaint simply fails to distinguish between individual causes of action and those alleged by all Does.

specific provision of the Constitution, the Second Amended Complaint still fails to state a plausible claim upon which relief can be granted.

1. EX POST FACTO

Defendants in their Motion to Dismiss, and Plaintiffs in their Response to Defendants' Motion, focus on the Ex Post Facto Clause. The parties also debated the Ex Post Facto clause almost exclusively during oral argument. The Ex Post Facto Clause, Article I, Section 10 of the Constitution, bars the enactment of any law that "imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed." *Russell v. Gregoire*, 124 F.3d 1079, 1083 (9th Cir. 1997) (internal citation and quotation marks omitted).

In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court set forth the standard for evaluating whether a sex offender registration program violates the Ex Post Facto Clause. First, the Court must determine whether the law was enacted with the intent to impose a punishment or to establish a regulatory scheme that is civil and nonpunitive. If the intent of the law was punitive, the inquiry ends and retroactive enforcement would violate the Ex Post Facto Clause. If, however, the intent was to enact a civil regulatory scheme, the court must "examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the legislature's] intention to deem it civil." *Id*. at 92 (internal quotation marks and citation omitted). To answer that question, the Supreme Court focused on five factors, including: "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a

rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)).

Here, as in *Smith*, there is no dispute that SORA was enacted with the intent to establish a civil regulatory scheme. Idaho Code § 18-8302[5]; *see also State v. Gragg*, 137 P.3d 461, 464 (Idaho Ct. App. 2005); *Groves v. State*, 328 P.3d 532, 557 (Idaho Ct. App. 2014). The same holds true for the amendments to SORA Plaintiffs challenge, such as the expansion of the definition of "aggravated offenses" requiring life time registration, the application of SORA to anyone "who has a foreign conviction that is substantially equivalent the offenses listed in [Idaho Code § 18-8304(4)]," and the requirement that certain information regarding registered sex offenders is disseminated to the public via internet. *State v. Kinney*, 417 P.3d 989, 994 (Idaho Ct. App. 2018) ("The Idaho Supreme Court has determined that, even in light of the amendments to Idaho's SORA, the Act is not punitive.").

---

[5] The Idaho legislature expressed the civil intent of SORA in the statutory text itself. Idaho Code section 18-8302 provides:

> The legislature finds that sexual offenders present a danger and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those served by the organizations. Finally, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sexual crimes. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

Idaho Code § 18-8302 (2011).

Although SORA explicitly articulates a nonpunitive purpose and the Idaho courts have held the purpose of the Act is not punitive, Plaintiffs suggest the effects of Idaho's SORA are nevertheless punitive as applied to the Does. Defendants respond that the effects of SORA cannot be considered punitive under the five *Smith* factors. First, with respect to whether SORA resembles a historical form of punishment, *Smith* rejected analogies between sex offender registration requirements and "shaming punishments of the colonial period." 538 U.S. at 97. "Historical shaming punishments were intended to expose and publicly disgrace individuals, while sex offender registration laws disseminate accurate information about offenders for public safety purposes." *American Civil Liberties Union v. Masto*, 670 F.3d 1046, 1057 (9th Cir. 2012) (citing *Smith*, 538 U.S. at 97-99). While internet publicity may humiliate offenders, *Smith* held such shame is "but a collateral consequence of a valid regulation." 538 U.S. at 99.

Plaintiffs attempt to distinguish *Smith* because "readily available information through internet services has exponentially compounded the grossly disproportionate affect that lifetime registration has on convicted sex offenders as compared to the punitive level which the registration imposed upon offenders in 2004" when *Smith* was decided. Dkt. 43, at 5-6. Despite an exponential increase in information availability through internet use, the Ninth Circuit and Idaho courts have continued to find internet publication requirements are not punitive in the years since *Smith* was decided. *See, e.g., U.S. v. Elk Shoulder*, 738 F.3d 948, 954 (9th Cir. 2013) (rejecting Plaintiff's claim that, in part because of availability of internet, the *Smith* analysis "no longer hold[s] true in today's society"); *Maciel v. Cate*, 731 F.3d 928, 937 (9th Cir. 2013) (publication of

information about sexual offender on website was not materially different from

registration requirements the Ninth and other circuits have found to be regulatory);

*Kinney*, 417 P.3d at 996 (the fact that certain information about sexual offenders is now

required to be disseminated to the public does not "tip the scales and change [SORA]

from nonpunitive to punitive").

Further, *Smith* contemplated that sexual offender information would be available

on the internet, but determined such dissemination of information differed from historical

punishments:

> Any initial resemblance to early punishments is . . . misleading. Punishments such as whipping, pillory, and branding inflicted physical pain and staged a direct confrontation between the offender and the public. Even punishments that lacked the corporal component, such as public shaming, humiliation, and banishment, involved more than the dissemination of information. They either held the person up before his fellow citizens for face-to-face shaming or expelled him from the community. By contrast, the stigma of [Alaska's sexual offender registration law] results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. . . . [P]ublicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. In contrast to the colonial shaming punishments, however, the State does not make the publicity and the resulting stigma an internal part of the objective of the regulatory scheme.

*Smith*, 538 U.S. at 98-99 (citations omitted). Despite increased publicity via the internet,

SORA is not akin to historical forms of punishment.

The second *Smith* factor considers whether a law imposes an affirmative disability

or restraint on Plaintiffs. *Smith* held Alaska's sexual registration scheme imposed no

physical restraint, and thus did not resemble the punishment of imprisonment, "which is

the paradigmatic affirmative disability or restraint." *Id*. at 100. Although it does not

inflict imprisonment, Plaintiffs imply SORA imposes an affirmative disability because it

severely limits their ability to obtain employment and housing. *Smith* addressed such limitations, noting such effects do not constitute an affirmative disability or restraint because landlords and employers can conduct background checks on the criminal records of prospective employees or tenants even without sexual offender registration requirements. *Id*. Plaintiffs also highlight burdensome in-person registration requirements every three months or upon travel. However, the Ninth Circuit has expressly rejected the contention that such requirements constitute an affirmative disability. *Masto*, 670 F.3d at 1056.

The third *Smith* factor requires evaluating whether the law promotes the traditional aims of punishment: deterrence and retribution. The *Smith* Court recognized registration laws might have a deterrent effect but stated "hold[ing] that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." *Smith*, 538 U.S. at 102 (quoting *Hudson v. U.S.*, 522 U.S. 93, 105 (1997)). The *Smith* Court rejected the argument that reporting requirements "measured by the extent of the wrongdoing, not by the extent of the risk posed" demonstrated retributive intent. *Id*. In so holding, the Court explained, "[t]he Act, it is true, differentiates between individuals convicted of aggravated or multiple offenses and those convicted of a single nonaggravated offense. The broad categories, however, and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." *Id*. SORA is indistinguishable from *Smith* on this basis, and the third factor

does not weigh in favor of finding a punitive effect despite the harms alleged by Plaintiffs.

The *Smith* Court implied that whether a challenged regulation is rationally connected to a nonpunitive purpose is the most important factor in the effects analysis. *Id*. The Court held Alaska's sexual offender registration law was rationally connected to the legitimate, nonpunitive purpose of preventing recidivism. *Id*. at 103. In this case, Plaintiffs argue the "research and data upon which the [*Smith* Court] made its decision. . . was prompted by a study. . . conducted by a person substantially unqualified in that field of study and [whose] conclusions have later been debunked by researchers in the field of sex offender recidivism far more qualified than the original author." Dkt. 43, at 5. Plaintiffs' seek to undermine the evidence relied upon by the *Smith* Court with expert declarations attached to their Amended Complaint.[6] Counsel for Plaintiffs also expounded upon this argument during the hearing on Defendants' Motion to Dismiss. However, the Ninth Circuit rejected such an approach in *Masto*.

Plaintiffs in *Masto* similarly presented an expert declaration critiquing the methodology of the recidivism studies utilized in *Smith* to argue *Smith* overstated the risk of sex-offender recidivism. *Masto,* 670 F.3d at 1057. The Ninth Circuit noted the district court did not make any factual finding regarding the risk of sex offender recidivism.

---

[6] Plaintiffs did not attach such declarations to their Second Amended Complaint. Even if they had, "[a]ffidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The declarations mentioned on page 5 of Plaintiffs' Response to Defendants' Motion to Dismiss do not form the basis for the Second Amended Complaint, and, in fact, are not referenced at all in the Second Amended Complaint. As such, it would be improper for the court to consider Plaintiffs' expert declarations without converting the motion to dismiss into a motion for summary judgment. *Id.* at 909.

However, the Ninth Circuit held that even had the district court adopted plaintiffs' declaration's conclusions "as its own, a recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community." *Id*. Similarly, assuming this Court could consider Plaintiffs' declarations at this stage of the proceedings, such declarations cannot overcome the legitimate nonpunitive purpose of SORA. *See, e.g.,* Idaho Code § 18-8302; *State v. Joslin*, 175 P.3d 764, 775 (Idaho 2007) (SORA is not punitive but rather "provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities").

Further, although Plaintiffs criticize *Smith* and the research upon which it relied, the Supreme Court has not reconsidered or questioned its holding in *Smith*. Consequently, the opinion stands as the Supreme Court's most recent pronouncement on the constitutionality of sexual offender registration requirements. The *Smith* Court expressly rejected the notion that the harms Plaintiffs allege, such as social ostracization and difficulties finding housing or employment, are so punitive as to negate the civil intent of sexual offender registration statutes.[7] *Smith*, 538 U.S. at 99-102. The *Smith* Court also explicitly authorized categorical classifications—such as the "aggravated offense" classification provided under SORA—as non-punitive. *Id*. at 104 ("The State's determination to legislate with respect to convicted sex offenders as a class, rather than

---

[7] The Ninth Circuit has subsequently applied *Smith* to determine additional harms Plaintiffs allege in the Second Amended Complaint, such as burdensome in-person registration requirements and restrictions on freedom of movement, do not render SORA retroactive punishment in violation of the Ex Post Facto Clause. *Litmon v. Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014).

require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause."). This Court, like any other state or federal court, is bound by the Supreme Court's interpretation of federal law and would commit reversible error in concluding otherwise.[8] *James v. City of Boise, Idaho*, 136 S.Ct. 685, 686 (2016).

The final *Smith* factor—whether a law is excessive in scope—is "not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy." *Smith*, 538 U.S. at 105. Instead, the "question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Id*. Plaintiffs argue SORA is overbroad because:

> The evolution and development of SORA laws in recent years . . . have converted regulatory and administrative procedures for safeguarding the public from those sexual offenders who have been clinically determined to be true dangers to the public, to statutory schemes that arbitrarily and without any subjective basis pigeonhole virtually all sexual offenders into a classification of a lifetime of probation.

Dkt. 43, at 5.

This argument is not only foreclosed under *Smith*, 538 U.S. at 103, but has also been rejected by the Ninth Circuit and Idaho courts post-*Smith*. *See, e.g., Masto*, 670 F.3d at 1057 (holding in-person, lifetime registration requirement and expansion of the size of the class subject to regulation did not violate the Ex Post Facto Clause); *Litmon v. Harris*,

---

[8] Idaho courts rely on federal law for purposes of the ex post facto analysis. *State v. Johnson*, 266 P.3d 1146, 1152 (Idaho Ct. App. 2011) ("In the SORA context, however, there is no apparent reason for us to depart from the federal understanding of the rights at issue.").

768 F.3d 1237, 1243 (9th Cir. 2014) (affirming dismissal of ex post facto challenge to a California statute requiring lifetime in-person reporting every 90 days by a particular class of offenders); *State v. Johnson*, 266 P.3d 1146, 1151 (Idaho 2011) ("The fact that a sexual offender, convicted of a certain class of crime, may be required to register for life is not so punitive that it overrides SORA's regulatory purpose.").

After considering the harms the Does allege, and evaluating the five *Smith* factors, the Court concludes SORA is not so punitive in effect or purpose that it negates the Idaho legislature's intent to enact a civil regulatory scheme. SORA does not materially differ from the law at issue in *Smith* in any way that would alter application of that precedent. However, Plaintiffs suggest, over the past several years, "more and more Courts have courageously moved away from the precedential impact of *Smith*, rethinking the ex post facto punitive affect of lifetime sex offender registration requirements." Dkt. 43, at 6. In support of this contention, Plaintiffs offer a string cite of sixty cases, but fail to provide any explanation or analysis of a single case. Moreover, as Defendants note, many of the cases cited are irrelevant, have been vacated or reversed on appeal, or pre-date *Smith*, and therefore carry no weight. Dkt. 44, at 5-8. The Court declines Plaintiffs' invitation to cull through dozens of cases in an attempt to locate an argument that supports their position.

Although the Court allowed Plaintiffs the opportunity to amend in order to "identify explicitly how, as to any particular Doe, SORA is an Ex Post Facto Clause violation in his or her circumstance," Plaintiffs do not allege that the current version of SORA constitutes an exception to the federal and state case law which establishes SORA is not punitive. Dkt. 32, at 18. Because "only the clearest proof will suffice to override

legislative intent and transform what has been denominated a civil remedy into a criminal penalty," Plaintiffs' inability to distinguish the harms they have suffered from previous ex post facto challenges considered and rejected by federal and state courts is fatal to their claim. *Smith*, 538 U.S. at 92.

In sum, the Second Amended Complaint fails to state an Ex Post Facto Clause violation as applied to the individual Does. Plaintiffs' cruel and unusual punishment and Double Jeopardy Clause arguments necessarily fail as well. *Litmon*, 768 F.3d at 1242 ("the inquiry into whether a law constitutes retroactive punishment in violation of the Double Jeopardy Clause is identical to that with respect to the Ex Post Facto Clause."); *Kinney*, 417 P.3d at 996-997 (applying *Smith* ex post facto analysis to determine SORA's registration requirements do not constitute cruel and unusual punishment).

## 2. CONTRACTS CLAIMS

The United States Constitution prohibits states from passing "law[s] impairing the Obligation of Contracts." U.S. Const. art. 1, § 10. To determine whether there has been a violation of the Contracts Clause, courts look to: (1) whether the state law has the effect of impairing a contractual obligation; (2) if so, whether that impairment is permitted under the Constitution." *Masto*, 670 F.3d at 1060.

Plaintiffs contend that those Does who "pled guilty pursuant to a plea agreement, received a Withheld Judgment, and/or had their charge reduced and/or dismissed, allege that the Contract Clause of the U.S. Constitution prohibits states from enacting any law that will impair 'the Obligation of Contracts.'" Dkt. 36, at ¶ 21. The sole allegations to support Plaintiffs' contracts claim appear in paragraphs 11, 13, and 15 of the Second

Amended Complaint. Specifically, John Doe 126 alleges his record was supposed to be sealed under the terms of his plea agreement, but, because he is required to register, his record appears on the registry websites in violation of his plea agreement. Dkt. 36, at ¶ 11. John Doe 134 states he was informed by his attorney "that felony charges can be sealed. [But]. . . he was [later] informed by his attorney that the felony charge he pled guilty to could no longer be sealed. This was not what Plaintiff agreed to when entering his plea agreement." *Id*., at ¶ 13. Finally, John Doe 111 alleges "he had a plea agreement that said he would not have to register." *Id*., at ¶ 15. However, Does 126, 134, and 111 do not provide the specific terms of their plea agreements, nor offer any further information whatsoever. Absent more than a bare accusation that SORA violates their plea agreements, the Court cannot determine whether SORA has the effect of impairing such contractual obligations.

Even if the Does had included the specific terms of the plea agreements they claim SORA violates, the Ninth Circuit has held impairment with plea agreements caused by sexual offender registration laws is permitted under the Constitution. *Masto*, 670 F.3d at 1060-61. In so holding, the *Masto* Court explained, "it is not every modification of a contractual promise that impairs the obligation of contract under federal law" as a "State has the sovereign right to protect the general welfare of the people and we must respect the wide discretion on the part of the legislature in determining what is and what is not necessary." *Id*. at 1060. (internal quotation marks and citations omitted). Further, "'States must possess broad power to adopt general regulatory measures without being concerned

that private contracts will be impaired, or even destroyed, as a result.'" *Id*. at 1061

(quoting *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977)).

In holding Nevada's sexual offender registration law did not impair the plea

bargain contracts of those who fell within its scope, the *Masto* Court noted:

> As we have already held in our disposition of the Plaintiffs' ex post facto, double
> jeopardy, and due process challenges, (1) the law is not punitive in intent, (2) it has
> no overriding punitive effect, (3) it is not the equivalent of historical punishment,
> (4) and it does not impose upon a registrant any significant affirmative disability or
> restraint. Moreover, [it] has a rational connection to a nonpunitive regulatory
> purpose and is not excessive in scope.

*Id*.

Thus, even if the Ninth Circuit had determined Nevada's registration law impaired

specific plea agreements, the court "would nevertheless conclude that the impairment is

permitted under the Constitution for the same reasons previously articulated and because

of the importance of this law to the protection of the general welfare of people in Nevada

against sexually motivated crimes." *Id*. Under *Masto*, even if Plaintiffs had provided this

Court with the specific terms of the plea agreements they claim SORA violates, a

Contracts Clause violation would fail as a matter of law under the analysis previously

articulated with respect to Plaintiffs' ex post facto challenge.[9]

### 3. STATE SEPARATION OF POWERS

Plaintiffs' separation of powers claim is based on the same grounds as their

---

[9] The *Masto* Court did note that in "individual cases where the state has made an explicit promise to a defendant that the defendant would be exempt from registration as a condition of his guilty plea, that promise—whether memorialized in the terms of the written plea agreement or otherwise proven—is entitled to be enforced against the State." *Id*. (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). The only Doe to claim his plea agreement exempted him from the registration requirement does not offer the terms of his agreement or any other evidence to support his claim. In the absence of such, the Court has no way to review this allegation.

impairment of contracts claim—an interference with the plea agreements some Does may have entered into. Dkt. 36, ¶ 22. Article II, Section 1 of the Idaho Constitution prohibits one branch of government from exercising the power ascribed to another branch. The U.S. Constitution lacks a similar provision.

In Idaho, "the separation of powers doctrine is triggered when (1) a 'textually demonstrable constitutional commitment' assigns the matter to a particular branch of government; or (2) the matter implicates another branch's discretionary authority." *Tucker v. State*, 394 P.3d 54, 71 (Idaho 2017) (quoting *Miles v. Idaho Power Co.*, 778 P.2d 757, 761-62 (Idaho 1989)). Although Plaintiffs allege the Idaho Legislature has usurped the authority of the Idaho Courts to enter into and enforce plea agreements, to grant withheld judgments, and/or to reduce or dismiss charges, Plaintiffs do not provide specific factual allegations relating to the existence of plea agreements, withheld judgments, or dismissal of charges, and do not explain how the SORA amendments may have affected those documents. Regardless, the Court has already determined SORA is regulatory and nonpunitive as applied to the Does under the five-factor *Smith* analysis. As such, the legislature has not usurped judicial authority and Plaintiffs separation of powers claim fails as a matter of law.

### 4. SUBSTANTIVE DUE PROCESS

In a Substantive Due Process analysis, the Court must first consider whether a statute in question abridges a fundamental right. *U.S. v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (citing *Reno v. Flores*, 507 U.S. 292, 302 (1993)). "If it does, the statute will be subject to strict scrutiny and is invalidated unless it is 'narrowly tailored to

serve a compelling state interest.'" *Id*. (quoting *Flores*). If the statute does not infringe a fundamental right, it "need only bear a 'reasonable relationship to a legitimate state interest to justify the action.'" *Id*. (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)).

Rights which are "truly fundamental" include "the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Id*. at 1012 (citing *Glucksberg*, 521 U.S. at 727). The only Substantive Due Process violation Plaintiffs appear to allege in the Second Amended Complaint is that their "right to travel" has been violated as a result of SORA. Dkt. 36, at ¶ 23. Under the U.S. Constitution, the right to travel protects the right of a citizen of one State "to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when. . . present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Because the right to travel is not fundamental, it may be burdened if justified by a compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972).

The Court has already determined SORA is justified by a compelling state interest: protecting society. Further, although Plaintiffs claim their right to travel has been limited by registration requirements, none of them allege they have actually been prohibited from travel to another state or prohibited from entering a state because of SORA. In the absence of such allegations, and because SORA's registration requirements are justified

by a compelling state interest, Plaintiffs' Substantive Due Process/freedom of travel claim fails.

     5.   FREE EXERCISE OF RELIGION

Plaintiffs allege that "Idaho has substantially burdened their exercise of religion without demonstrating that application of the burden to the person is both (a) essential to further a compelling governmental interest; and is (b) the least restrictive means of furthering that compelling government interest." Dkt. 36, at ¶ 24. As noted, the Court has already determined SORA's provisions serve a compelling government interest. Several of the Does identified in the Second Amended Complaint allege they have had to choose between attending church or risking noncompliance with Idaho Code requirements regarding not being present in places where children are present. *Id*., at ¶¶ 9-11, 17. However, SORA does not prohibit sex offenders from attending church unless the church itself is used as a school *and* posted pursuant to Idaho Code section 18-8329(1)(a). None of the Does allege that a church they attend is used as a school, has been so posted, and is therefore unavailable to them. As such, the Does do not establish SORA's requirements are overly restrictive as applied to their individual circumstances.

Moreover, as the Court explained in its Memorandum Decision and Order, Idaho enacted the Free Exercise of Religion Protected Act ("FERPA") in 2000. Idaho Code § 73-401, *et. seq*. FERPA protects the free exercise of religion in Idaho and mandates that the government cannot substantially burden a person's exercise of religion. Idaho Code § 73-402(1)-(2). Any state law enacted subsequent to FERPA is subject to FERPA's requirements unless the law explicitly excludes FERPA by reference. *Id*. at § 73-403(2).

Because the 2001, 2009, and 2011 amendments to SORA were enacted after FERPA, and SORA does not enumerate FERPA as an exclusion, Plaintiffs essentially claim that the provisions of SORA run contrary to FERPA.

When permitting Plaintiffs leave to amend their free exercise claim, the Court directed Plaintiffs to address FERPA, and specifically what, if anything, rebuts the presumption that the State enacted SORA in accordance with FERPA's requirements and thus that SORA cannot violate the Free Exercise Clause as a matter of law. Plaintiffs did not address FERPA in the Second Amended Complaint, in their Response to Defendant's Motion to Dismiss, or during oral argument. As such, the Second Amended Complaint fails to state an as-applied claim for violation of Plaintiffs' First Amendment free exercise of religion rights.

## V. CONCLUSION

For the reasons set forth herein, the Court dismisses the Second Amended Complaint in its entirety.[10]

## VI. ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. Defendants Motion to Dismiss is **GRANTED**.

2. Plaintiffs' Second Amended Complaint is **DISMISSED WITH PREJUDICE.**[11]

---

[10] The Court does not address Defendants' statute of limitations argument in light of this dismissal.

[11] The Court has already given Plaintiffs an opportunity to amend their Complaint to allege any viable as-applied challenges. The Second Amended Complaint fails to state plausible as-applied

3. The Court will enter a separate judgement in accordance with Fed. R. Civ. P. 58.

DATED: April 5, 2019

_____
David C. Nye
Chief U.S. District Court Judge

---

challenges, and Plaintiffs' inability to distinguish their claims from binding precedent is fatal to any further amendment. The Court accordingly dismisses with prejudice.