Greg J. Fuller (Bar No. 1442)
Daniel S. Brown (Bar No. 7538)
FULLER LAW OFFICES
161 Main Avenue West
P.O. Box L
Twin Falls, ID 83303
T: (208) 734-1602
F: (208) 734-1606
fullerlaw@cableone.net

Matthew Strugar (*pro hac vice application forthcoming*)
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE #35, JANE DOE #36, JOHN DOE #64, JOHN DOE #115, JOHN DOE #117, and JOHN DOE #123 <br><br> Plaintiffs, <br><br> v. <br><br> LAWRENCE WASDEN, Attorney General of the State of Idaho; and COLONEL KEDRICK WILLS, Director of the Idaho State Police,[1] in their official capacities, <br><br> Defendants. | Case No. 1:16-cv-429-DCN <br><br> **THIRD AMENDED COMPLAINT** |

---

[1] Colonel Kedrick Wills is substituted for former Director of the Idaho State Police Kevin Kempf. Fed. R. Civ. P. 25(d).

1

## Nature of the Action

1.      Plaintiffs Jane Doe #35, Jane Doe #36, John Doe #64, John Doe #115, John Doe #117, and John Doe #123[2] are Idaho residents who have been retroactively made to comply with the Idaho's "Sexual Offenders Registration Notification and Community Right-to-Know Act," known as SORA. I.C. § 18-8301, *et seq*. They must each comply with SORA until they die.

2.      Plaintiffs were each charged or convicted before 2006, when the Idaho Legislature began amending SORA to impose ever harsher restrictions.

3.      Under the current version of SORA, Plaintiffs are under constant supervision; required to report frequently in person; banned from living or being in many areas; restricted as to when they can travel; hindered from maintaining normal family relationships; identified publicly as dangerous; and subjected to a vast array of state-imposed restrictions that encompass virtually every facet of their lives.

4.      Plaintiffs ask this Court to recognize what other courts across the country have increasingly found: that sex offender registration has transformed since 2003, when the U.S. Supreme Court upheld a registration scheme that imposed only "minor and indirect" restraints on registrants. *See Smith v. Doe*, 538 U.S. 84, 100 (2003).

5.      Numerous courts have now recognized that the retroactive application of sex offender registration schemes and their associated restrictions violate the constitutional prohibition on ex post facto laws. *See, e.g.*, *Doe v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert denied*, 138 S. Ct. 55 (2017); *United States v. Juvenile Male*, 590 F.3d 924 (9th Cir. 2009), *vacated as moot*, 131 S. Ct. 2860 (2011); *State v.*

---

[2] Plaintiffs' prior Complaint included 134 Doe Plaintiffs. Plaintiffs seek to proceed with these six Plaintiffs as representatives of the universe of registrants, including the other 128 Plaintiffs, who will benefit from success on Plaintiffs' facial ex post facto claim.

*Williams*, 952 N.E.2d 1103 (Ohio 2011); *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009); *State v. Letalien*, 985 A.2d 4 (Me. 2009); *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky. 2009); *Doe v. State*, 189 P.3d 999 (Alaska 2008).

6.     SORA imposes such extensive and punitive restrictions on Plaintiffs that it violates the constitutional prohibition on ex post facto laws and double jeopardy.

7.     SORA also imposes significant burdens on Plaintiffs free exercise of religion that are neither essential to furthering any compelling governmental interest nor the least restrictive means of furthering any compelling governmental interest, in violation of Idaho's Free Exercise of Religion Protected Act, I.C. § 73-402.

8.     Plaintiffs seek facial declaratory and injunctive relief barring retroactive application of SORA under the ex post facto clause under Article I, Section 10, Clause 1, and the double jeopardy prohibition in the Fifth Amendment to the United State Constitution.

9.     Plaintiffs also seek as-applied declaratory and injunctive relief against SORA burdening the free exercise of their religion.

### Jurisdiction and Venue

10.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress for the deprivation of rights secured by the U.S. Constitution. Plaintiffs bring their  federal claims under 42 U.S.C. § 1983.

11.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202, by Federal Rules of Civil Procedure 57 and 65, and by the legal and equitable powers of this Court.

12.     This Court may hear Plaintiffs' state law claims through the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

13.     Venue is proper in the District of Idaho under 28 U.S.C. § 1391. All parties work and reside in Idaho, and all actions giving rise to Plaintiffs' claims occurred in Idaho.

## Plaintiffs

**Jane Doe #35**

14.     Plaintiff Jane Doe #35 resides in the District of Idaho.

15.     Doe #35 is currently 60 years old.

16.     In 1995, Doe #35 pleaded guilty to the crime of Lewd Conduct with a Minor Child Under the Age of Sixteen Years, I.C. § 18-1508. Her victim was fourteen years old.

17.     Doe #35 was granted a suspended sentence and placed on supervised probation for fifteen years. During probation, she successfully completed a sex offender treatment program.

18.     Doe #35 successfully completed her probation in 2011.

19.     Doe #35 has no other registrable convictions.

20.     At the time of Doe #35's guilty plea, Idaho had only recently created its sex offender registry. She was informed she would have to register for ten years, but at the time, the registry was private. It was available only to law enforcement. There was also no requirement that registrants report at regular intervals.

21.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #35 would later be eligible for release from the requirement to register as a sex offender.

22.     The 2009 amendments to SORNA made Doe #35 register for life and foreclosed any opportunity for her to be removed from the Idaho sex offender registry.

23.     Doe #35's conviction is 26 years old, she was granted a suspended sentence, and she successfully completed her term of probation and a sex offender

4

treatment program. There is no rational basis to continue to force Doe #35 to register as a sex offender.

**Jane Doe #36**

24.     Plaintiff Jane Doe #36 resides in the District of Idaho.

25.     Doe #36 is currently 58 years old.

26.     In 2004, Doe #35 pleaded guilty to the crime of Lewd Conduct with a Minor Child Under the Age of Sixteen Years, I.C. § 18-1508. Her victim was fourteen years old.

27.     She was sentenced to two to eight years in prison.

28.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #36 would later be eligible for release from the requirement to register as a sex offender.

29.     Doe #36 paroled in 2006. During parole, she successfully completed a sex offender treatment program.

30.     She successfully completed parole in August 2012.

31.     Doe #36 has no other registrable convictions.

32.     The 2009 amendments to SORNA made Doe #36 register for life and foreclosed any opportunity for her to be removed from the Idaho sex offender registry.

33.     Doe #36's conviction is 16 years old and she successfully completed her term of parole and a sex offender treatment program. There is no rational basis to continue to force Doe #35 to register as a sex offender.

**John Doe #64**

34.     Plaintiff John Doe #64 resides in the District of Idaho.

35.     Doe #64 is currently 75 years old.

36.     In 1988, Doe #64 pleaded guilty in Oklahoma to Lewd Acts to a Child, 21 Okl. St. § 1123. His victim was 14 years old.

37.     Doe #64 was sentenced to 10 years in prison with all but four months suspended.

38.     At the time of his conviction, Oklahoma did not have a sex offender registry. Because Oklahoma did not have a sex offender registry, Doe #64 did not receive, and could not have received, notice that his conviction would subject him to registration as a sex offender.

39.     When Oklahoma did pass a sex offender registration law in November 1989, it did not apply retroactively. That is still the situation today—convictions obtained in Oklahoma before November 1989 do not require registration in Oklahoma. 57 Okl. Stat. § 57-582.

40.     During his probation, Doe #64 successfully completed an impulse control treatment program.

41.     Doe #64 was released from supervision in Oklahoma in 1998.

42.     He then moved to Idaho in 2000.

43.     On the advice of registry personnel, Doe #64 began registering as a sex offender in Idaho upon establishing residence in Idaho.

44.     On information and belief, Defendants consider Doe #64's conviction to be a substantial equivalent of Lewd Conduct with a Minor Child Under the Age of Sixteen Years, I.C. § 18-1508.

45.     Doe #64 has no other registrable convictions.

46.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #64 would later be eligible for release from the requirement to register as a sex offender.

47.     The 2009 amendments to SORNA made Doe #64 register for life and foreclosed any opportunity for him to be removed from the Idaho sex offender registry.

48.     Doe #64's conviction is 42 years old and he successfully completed his term of probation and a sex offender treatment program. There is no rational basis to continue to force Doe #64 to register as a sex offender.

**John Doe #115**

49.     Plaintiff John Doe #115 resides in the District of Idaho.

50.     Doe #115 is currently 43 years old.

51.     In 1995, when Doe #115 was 19 years old, he was charged with Assault with Intent to Commit a Serious Felony. His victim was fifteen years old. Doe #115 was 18 when he committed his crime.

52.     That same year, Doe pleaded guilty to that charge.

53.     Doe #115 was sentenced to a five-year unified sentence consisting of one year determinate, followed by four years indeterminate.

54.     Doe #115 has no other registrable convictions.

55.     Doe #115 attended and successfully completed a sex offender treatment program at North Idaho Correctional Institution.

56.     At the time of Doe #115's guilty plea, Idaho had only recently created its sex offender registry. He was informed he would have to register for ten years, but at the time, the registry was private. It was available only to law enforcement. There was also no requirement that registrants report at regular intervals.

57.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #115 would later be eligible for release from the requirement to register as a sex offender.

58.     Doe #115 successfully completed his probation in 2014.

59.     The 2009 amendments to SORNA made Doe #115 register for life and foreclosed any opportunity for him to be removed from the Idaho sex offender registry.

60.     Doe #115's conviction is 25 years old and he successfully completed his term of probation and a sex offender treatment program. There is no rational basis to continue to force Doe #115 to register as a sex offender.

**John Doe #117**

61.     Plaintiff John Doe #117 resides in the District of Idaho.

62.     Doe #117 is currently 56 years old.

63.     In 2002, Doe #117 pleaded guilty to the crime of Lewd Conduct with a Minor Child Under the Age of Sixteen Years, I.C. § 18-1508. His victim was fifteen years old.

64.     Doe #117 was sentenced to one year in county jail and nine years of probation, with the last three years unsupervised.

65.     Doe #117 has no other registrable convictions.

66.     Doe #117 attended and successfully completed a sex offender treatment program.

67.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #175 would later be eligible for release from the requirement to register as a sex offender.

68.     Doe #117 successfully completed his probation in 2012.

69.     The 2009 amendments to SORNA made Doe #117 register for life and foreclosed any opportunity for him to be removed from the Idaho sex offender registry.

70.     Doe #117's conviction is 18 years old and he successfully completed his term of probation and a sex offender treatment program. There is no rational basis to continue to force Doe #117 to register as a sex offender.

**John Doe #123**

71.     Plaintiff John Doe #123 resides in the District of Idaho.

72.     Doe #123 is currently 73 years old.

73.     In 1997, Doe #123 pleaded guilty to the crime of Lewd Conduct with a Minor Child Under the Age of Sixteen Years, I.C. § 18-1508. His victim was fifteen years old.

74.     Doe #123 was sentenced to incarceration for three year determinate followed by four years indeterminate. However, the court retained jurisdiction for 180 days and Doe #123 was placed on probation for a period of seven years beginning in 1997.

75.     At the time of Doe #123's guilty plea, Idaho had only recently created its sex offender registry. He was informed he would have to register for ten years, but at the time, the registry was private. It was available only to law enforcement. There was also no requirement that registrants report at regular intervals.

76.     Doe #123 has no other registrable convictions.

77.     Doe #123 attended and successfully completed a sex offender treatment program.

78.     Under the then-existing version of SORA and all versions of SORA that existed before the 2009 Amendments, Doe #123 would later be eligible for release from the requirement to register as a sex offender.

79.     Doe #123 successfully completed his probation in 2004.

80.     Later that same year, Doe #123 moved the court for an order reducing his felony charge to a misdemeanor. The court granted the motion.

81.     The 2009 amendments to SORNA made Doe #123 register for life and foreclosed any opportunity for him to be removed from the Idaho sex offender registry.

82.     Doe #123's conviction is 23 years old and he successfully completed his term of probation and a sex offender treatment program. There is no rational basis to continue to force Doe #123 to register as a sex offender.

### Defendants[3]

83.     Defendant Lawrence Wasden is the Attorney General of Idaho. As Attorney General, Wasden oversees the enforcement of Idaho's criminal statutes. He is sued in his official capacity and resides in Idaho.

84.     Defendant Kedrick Wills is the Director of the Idaho State Police. The Idaho State Police is vested with authority to enforce Idaho's Sexual Offender Registration Notification Act, I.C. § 18-8301 *et seq*. He is sued in his official capacity and resides in Idaho.

### Factual Allegations

## I.     The Evolution of Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act

*1993: Idaho's Initial Registration Law*

85.     Idaho's original sex offender registration law came into effect on July 1, 1993. It established a statutory duty for persons convicted of certain felony sex crimes to register with their local sheriff. The registry was inaccessible to the public.

*1998: Idaho Enacts SORA*

86.     In 1998, the Legislature repealed that law and enacted SORA. I.C. § 18-8301, *et seq*. SORA created a central registry of offender information and made the registry available to the public. It also expanded the category of offenders

---

[3] Plaintiffs initially sued 40 Defendants. Plaintiffs seek dismissal of the other 38 Defendants without prejudice and to proceed against only these two Defendants.

required to register and provided a catalog of eligible offenses in Idaho Code § 18-8304.

87.     The 1998 version of SORA made 17 offenses registrable.

88.     The 1998 version of SORA applied retroactively to any person convicted of a newly eligible offense after July 1, 1993. It also applied retroactively to anyone who entered the state of Idaho after July 1, 1993, who had been convicted of any crime that was "substantially equivalent" to the act's listed offenses.

89.     The 1998 version of SORA required all registrants to undergo a "psychosexual evaluation" upon conviction, as well as upon release from incarceration, and pay for that evaluation (unless indigent).

90.     Under the 1998 version of SORA, registrants convicted of a subcategory of offenses, listed in Idaho Code § 18-8312, and found to pose such a risk based on their evaluation, were deemed "violent sexual predators." An entity known as the "Sex Offender Classification Board" was tasked with evaluating offenders' risk and classifying "violent sexual predators."

91.     All registrants, except for violent sexual predators, were eligible to petition the district court for a show cause hearing to determine whether the person could be exempted from the registration requirements and its obligations after a ten-year period from the date the registrant was released from incarceration or placed on parole, supervised release or probation, whichever was greater.

92.     Violations of registry requirements are felony offenses punishable by up to five years of incarceration and a $5,000 fine.

93.     If a registrant was on some form of supervised release at the time of a registry violation, punishment for a registration violation could include revocation of release and reinstatement of the underlying sentence.

*The 2001 – 2005 Amendments*

94.     The Legislature amended SORA again in 2001, 2002, 2004, and 2005.

95.     The 2001 Amendments removed of the right of registrants who had been convicted of an "aggravated offense" to petition for release from registration requirements. It defined five "aggravated offenses": (1) lewd conduct, when the victim is less than 12 years of age (I.C. § 18-1508); (2) murder committed in the perpetration of rape (I.C. § 18-4003(d)); (3) rape (I.C. § 18- 6101), but excluding statutory rape (I.C. § 18-3101(1)) where the victim is at least 12 years of age or the defendant is 18 years of age or younger; (4) male rape (I.C. § 18-6108); and (5) forcible sexual penetration by use of a foreign object (I.C. § 18-6608). By removing the right to petition for removal, the 2001 Amendments created a lifetime registration requirement for people convicted of the five "aggravated offenses."

96.     The 2001 Amendments also empowered the Idaho State Police to make the sex offender registry available to the public through the internet.

97.     The 2001 Amendments also applied retroactively to July 1, 1993.

98.     In 2002, the Legislature amended SORA to exclude offenders 18 years of age or younger from the designation "violent sexual predator presenting a high risk of reoffense."

99.     The Legislature amended SORA again in 2004.

100.    The 2004 Amendments created a new felony crime for any registrant to accept employment "in any day care center, group day care facility or family day care home," or to even "be upon or to remain on the premises of a day care center, group day care facility or family day care home while children are present, other than to drop off or pick up the offender's child or children." I.C. § 18-832.

101.    The 2004 Amendments added video voyeurism (I.C. § 18-6609) as a registrable offense.

102.    The 2004 Amendments added a provision allowing registrants to petition to be excluded from SORA's employment prohibitions if he or she could

show clear and convincing evidence that he or she does not pose a threat and at least 10 years have passed since the registrant's last conviction. I.C. § 18-8328.

103.   The 2004 Amendments added a provision providing that the Sex Offender Classification Board was to review offenders who were convicted out of state to determine whether they were violent sexual predators.

104.   The 2004 Amendments also applied retroactively to July 1, 1993.

105.   The Legislature amended SORA again in 2005.

106.   The 2005 Amendments added sexual contact with a prisoner (I.C. § 18-6110) as a registrable offense.

107.   The 2005 Amendments also expanded those out-of-state convictions which would require registration. Under the 2005 Amendments, SORA mandated registration for any person who was convicted of any crime, an attempt, a solicitation, or a conspiracy to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States that was substantially equivalent to an enumerated registrable offenses and to any person who was required to register as a sex offender in any other state or jurisdiction when he established permanent or temporary residency in Idaho, no matter if the offense was substantially equivalent to an offense enumerated in SORA.

108.   The 2005 Amendments also applied retroactively to July 1, 1993.

*The 2006 Amendments*

109.   The Legislature amended SORA again in 2006.

110.   The 2006 Amendments added a provision that made it a misdemeanor offense for any registrant to be on or within 500 feet of school buildings and grounds when children under the age of eighteen are present. The prohibition included some exceptions, such as for when registrants are students at the school or transporting their own child to and from school.

13

111.    This rule also restricts where registrants may reside, unless the registrant's established his or her residence before July 1, 2006.

112.    The 2006 Amendments added another provision requiring registrants to verify their address every four months, and for all registrants designated sexually violent predators to verify their address every 30 days.

113.    The 2006 Amendments created a felony offense for a registrant to fail to verify his or her address, punishable by to 10 years' imprisonment and a $5,000 fine.

114.    It also increased the punishment for providing misleading or false information or evading service from five years' imprisonment to 10 years' imprisonment.

115.    The 2006 Amendments also applied retroactively to July 1, 1993.

*The 2008 – 2010 Amendments to SORA*

116.    The Legislature amended SORA again in 2008.

117.    The 2008 Amendments added a provision that prohibited a registrant from living with more than one other person who had to register.

118.    The 2008 Amendments also applied retroactively to July 1, 1993.

119.    The Legislature amended SORA again in 2009.

120.    The 2009 Amendments expanded the list of offenses considered "aggravated offenses." While a lewd conduct with a minor child under sixteen (I.C. § 18-1508) conviction was previously only considered an "aggravated offense" if the victim was less than 12 years old, the 2009 amendments made all lewd conduct with a minor child under sixteen convictions an "aggravated offense."

121.    The 2009 Amendments made several additional crimes subject to registration, including ritualized abuse of a child (I.C. § 18-1506A); first-degree kidnaping committed for the purpose of rape, committing an infamous crime against nature, committing any lewd and lascivious act upon a child under the age

of sixteen years or for purposes of sexual gratification or arousal (I.C. § 18-4502); second degree kidnaping where the victim is an unrelated minor child and the kidnaping is committed for the purpose of rape, committing an infamous crime against nature, committing any lewd and lascivious act upon any child under the age of sixteen years or for the purposes of sexual gratification or arousal (I.C. § 18-4503); sex trafficking (I.C. § 18-8602(1)); and any other offense set forth in Idaho Code § 18-8304, if at the time of the commission of the offense the victim was below the age of thirteen years.

122.   The 2009 Amendments also applied retroactively to July 1, 1993.

### The 2011 Amendments to SORA

123.   The Legislature amended SORA again in 2011.

124.   The 2011 Amendments made several additional crimes subject to registration, including detention for prostitution (I.C. § 18-5605); inducing a person under eighteen years of age to patronize a prostitute (I.C. § 18-5611); video voyeurism where the victim is a minor or upon a second or subsequent conviction (I.C. § 18-6609); and racketeering that involves kidnapping a minor (I.C. § 18-7804).

125.   The 2011 Amendments also expanded the amount of information required at registration. The 2011 Amendments required the registry to include, but did not limit information to, the following information: name and all aliases, a complete physical description of the person including any identifying marks, such as scars or tattoos, the offender's date of birth, the offender's social security number, the criminal history of the offender, the name under which the offender was convicted of each offense, the status of parole, probation or supervised release, registration status, the existence of any outstanding arrest warrants for the offender, the criminal offense for which the sexual offender is registered, the name and location of each hospital, jail, or penal institution to which the offender was committed for each covered offense, the address or physical description of each

residence at which the offender resides, the name and address of any place where the offender is a student or will be a student, the license plate number and a description of any vehicle owned or regularly operated by the sexual offender regardless of to whom the vehicle is registered, any email or instant messaging address used by the offender, the offender's telephone numbers, the name and address of any place where the offender is employed or will be employed and the name and address of any place where the offender works as a volunteer or otherwise works, a description of normal travel routes or the general areas in which the offender works, information about any professional license maintained by the offender that authorizes the offender to engage in an occupation or carry out a trade or business, information about the offender's passport, and if the offender is an alien, information about documents establishing the offender's immigration status including document type and number information for such documents and a digitized copy of the documents, a set of fingerprints and palm prints of the offender, a current photograph of the offender, and a photocopy of a valid driver's license or identification card issued to the offender.

126.   The 2011 Amendments also slashed the amount of time a registrant has to comply with SORA. Under the 2011 Amendments, a registrant had only two working days from entry of judgment of conviction to register if the registrant was not sentenced to incarceration. If the registrant was sentenced to incarceration, he or she had to register prior to release. Registrants also had to report any changes to their address, name, or employment status within two working days.

127.   The 2011 Amendments also required registrants to provide advance notice of any travel lasting longer than seven days, and to provide in-person notice of their presence to law enforcement in the jurisdictions they travel to.

128.   Further, the 2011 amendments altered the role of individualized review within SORA's framework. The entity previously known as the Sex Offender

Classification Board—responsible for evaluating the risk of offenders and classifying "violent sexual predators"—was renamed as the Sex Offender Management Board. The provisions charging the Board with evaluating the risk posed by registrants were struck, and the Board's authority was instead defined as "the advancement and oversight of sexual offender management policies and practices statewide." The provision requiring a "psychosexual evaluation" was made discretionary, and the term "violent sexual predator" was redefined to mean only those previously designated as such by the former Classification Board.

129.   The 2011 Amendments restated SORA's registration period, making the default term for all registrants "for life." Eligibility to petition for removal after ten years was previously the default, with lifetime registration listed as the exception. After the 2011 amendments, the petition right is instead listed as the exception from the lifetime default, and is available only for those registrants who are not recidivists, not convicted of an aggravated offense, and not previously deemed violent sexual predators.

130.   The 2011 Amendments required the Idaho State Police to provide, within three days, registration information to the U.S. Attorney General, criminal justice agencies, through the public safety and security information system, social service entities, volunteer organizations, schools, and public housing agencies near the registrant's residence, and "any organization, company, or individual who requests notification of changes in registry information."

131.   The 2011 Amendments also applied retroactively to July 1, 1993.

*2012 Amendments to SORA*

132.   In 2012, the Legislature amended SORA again.

133.   The 2012 Amendments repealed the discretion provided to courts to exempt 19- and 20-year-olds convicted of rape who were not more than three years older than the victim from registration.

*The 2013 Amendments to SORA*

134.    In 2013, the Legislature amended SORA again.

135.    The 2013 Amendments added utilizing a person under eighteen years of age for prostitution (I.C. § 18-5610) as a registrable offense.

136.    The 2013 Amendments also doubled the registration fee registrants are forced to pay for their registration to eighty dollars a year.

137.    The 2013 Amendments also applied retroactively to July 1, 1993.

*The 2016 – 2020 Amendments to SORA*

138.    The Legislature amended SORA again in 2016, 2018, 2019, and 2020.

139.    The 2016, 2018, and 2019 Amendments mostly tracked changes the Legislature made to underlying offenses.

140.    The 2018 Amendments added the new crime of aggravated sexual battery, I.C. § 18-925, as a registrable offense.

141.    The 2020 Amendments included a significant expansion of SORA's restrictions.

142.    While before 2020 SORA's exclusion zones were measured only around schools and school grounds, the 2020 Amendment added daycares to the exclusion zone, thereby vastly expanding SORA's exclusion zones.

143.    Each of these Amendments also applied retroactively to July 1, 1993.

144.    In sum, SORA originally required an individualized risk evaluation of each registrant, with only those classified as violent sexual predators ineligible to petition for removal. Seventeen crimes were registrable.

145.    Through the near-annual amendments to the statute, twenty-six crimes are now registrable. SORA now categorizes registrants based on the offense of conviction, either aggravated or non-aggravated, and not on any individualize assessment. While five crimes were initially considered aggravated, today nine are. The modern version of SORA banishes registrants from large parts of the populated

areas of the state. And the default registration term is "for life," while only those convicted of non-aggravated offenses eligible to petition for removal after ten years.

146.    SORA's scope has grown to encompass more crimes and more people for longer terms while ratcheting up the restrictions on registrants' lives and liberty through near-annual amendments.

## II.    The Effect of SORA

147.    The current version of SORA imposes obligations, disabilities, and restraints so extensive that they cannot be set out in full here.

148.    Plaintiffs are subject to continual reporting, surveillance, and supervision. In addition, the current version of SORA strictly limits Plaintiffs' ability to direct the upbringing of their children, find housing and employment, travel, and be free from harassment and stigma.

149.    Registration under the current version of SORA triggers a vast array of additional obligations, disabilities, and restraints under other federal, state, and local laws, as well as private policies barring or limiting registrants from access to goods or services available to the public.

*Lifetime Registration*

150.    Under the current version of SORA, all people convicted of an offense defined in I.C. § 18-8303(1) as an aggravated offense are required to register for life.

151.    Under the current version of SORA, the length of a registrant's registration period and the registrant's ability to petition for removal from the registry are not based on, and do not correspond to, a registrant's actual risk of re-offending or the danger any registrant poses to the public.

152.    The 2011 SORA Amendments converted most Idaho registrants' registration period from ten years to life. There was no individualized determination about the risk or whether lifetime registration was warranted.

153.   Even though Plaintiffs completed sex offender treatment programs and are a low risk to reoffending, they have been retroactively classified as "aggravated offenders" who must register until they die.

154.   Even upon the clearest proof that Plaintiffs are not dangerous, there is no mechanism under SORA that would allow Plaintiffs to have their registration obligations eliminated or reduced.

*Reporting, Surveillance, and Supervision*

155.   Under the current version of SORA, Plaintiffs must report in person annually and must provide a wide-ranging amount of personal information.

156.   The current version of SORA also requires Plaintiffs to provide a photograph, fingerprints, and palm prints. If a Plaintiff's appearance changes, he or she must update the photograph.

157.   On top of the mandatory reporting, Plaintiffs must report in person within two working days whenever certain information changes, including any:

- change in their name
- change in their residence;
- change in their employment;
- change in their student status.

158.   In additional, *immediate* reporting is required for any changes in vehicle information or internet usernames.

159.   Immediate reporting is also required for any lodging or travel that is seven days or longer.

160.   There are no good-cause exceptions to the reporting requirements or to these notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Plaintiffs must report within two days or face criminal charges.

161.   The current version of SORA's reporting, surveillance, and supervision requirements are much like, but more restrictive and onerous than, the reporting, surveillance, and supervision that Plaintiffs experienced while serving their sentences on probation or parole.

162.   The lifetime surveillance imposed by these reporting requirements is not only intrusive, but burdensome. The time required to register or update information varies depending on where and when Plaintiffs report. Each registration can take up to an hour-and-a-half, not including travel time.

*Family and Parenting*

163.   The current version of SORA has impaired Plaintiffs' family relationships in large part because the statute bars Plaintiffs from being on the premises of any school building, school grounds, daycare, or conveyance owned or leased by a school or daycare if any minors are present or have been or will be present within a half hour.

164.   SORA's travel restrictions also burden Plaintiffs' familial relationships.

165.   For example, Doe #35 refrains from visiting her mother in another Idaho county on account the current version of SORA's travel restrictions and the risk of unintentionally violating SORA. Her and her husband wanted to adopt a child but were prevented from adopting because of her registration under SORA.

166.   Doe #115 wishes he could attend his children's sporting events and youth dance recitals but refrains out of fear of violating SORA.

*Housing and Exclusion*

167.   The current version of SORA also strictly limits Plaintiffs' access to housing.

168.   The current version of SORA bars Plaintiffs from residing within five hundred feet of a school or daycare, measured from the nearest point of the exterior

wall of the offender's dwelling unit to the school's or daycare's property line. I.C. § 18-8329(d). Plaintiffs are exempted from the exclusion zone within five hundred feet of a school if he or she established residency within the exclusion zone before July 1, 2006. *Id*. And Plaintiffs are exempted from the exclusion zone within five hundred feet of a daycare if he or she established residency within the exclusion zone before July 1, 2020. *Id*.

169.   The current version of SORA also bar Plaintiffs from "loitering" within five hundred feet from the property line of school or daycare grounds, including properties posted with a notice that they are used by a school or daycare, any time there are children present at the school or daycare for regular activities or within 30 minutes before or after such activities. I.C. § 18-8329(b).

170.   Plaintiffs often cannot know if they are within 500 feet of school grounds, a daycare, or properties posted with a notice that they are used by a school or daycare, because the property boundaries are unknown, Plaintiffs do not know what properties may have such a notice posted, and the distances are impossible to measure without sophisticated equipment.

171.   Because sex offender registry address information is public, many landlords outside these geographic exclusion zones refuse to rent to registrants, since their properties can then be easily identified on the registry.

172.   For instance, Doe #36 was unable to find housing for years because she was registered. She was forced to move in with her parents to avoid homelessness.

173.   Doe #115 was required by state officials to move his family to Boise, Idaho, despite not having housing or job prospects in Boise. Doe #115 was unable to find housing that his family could afford in Boise, even while working three jobs. During periods of self-employment, Doe #115 had to limit his job opportunities to locations that were not near schools or daycares, costing him thousands of dollars in contractable jobs.

*Employment*

174.    Under the current version of SORA, Plaintiffs are barred from applying for or accepting employment at any day care center, group day care facility, or family day care home. I.C. § 18-8327(1).

175.    Moreover, under the current version of SORA, information about employers who hire Plaintiffs is posted on the public sex offender registry. I.C. § 18-8305(1)(k). This provision also applies to organizations where Plaintiffs volunteer. *Id*. The public posting of employer information creates a significant disincentive for employers to hire Plaintiffs.

176.    Many registered sex offenders, including some of Plaintiffs, must find self-employment to make a living.

177.    For instance, Doe #36 has repeatedly lost employment opportunities because of her status as a registered sex offender, causing intense embarrassment and hopelessness. She was also fired from a job that she held for eight months after her employer learned of her status as a registered sex offender. While Doe #36 finally obtained employment, she lives in constant fear of losing her job if her employer learns of her status as a registered sex offender.

178.    Doe #117 has also lost several employment opportunities because of his status as a registered sex offender. In 2008, he lost a client in his self-employment offsite accounting business who, after learning of Doe #117's status as a registered sex offender, terminated his work, refused to pay Doe #117 for services already rendered, and verbally and physically assaulted him. Doe #117 has also lost out on several job opportunities, include with the Idaho Department of Finance and Department of Labor, because of his status as a registered sex offender. Doe #117 lives in constant fear of losing employment over his status as a registered sex offender.

*Faith and Religion*

23

179.    Under the current version of SORA, Plaintiffs are restricted from attending religious services on the grounds of any faith-based institution that is also operated as a school or daycare. I.C. § 18-8329(1)(a).

180.    Because the current version of SORA applies this prohibition to both public and private schools, Plaintiffs are restricted from attending religious services at facilities that use the same building for both religious services and as a private school or as a daycare. I.C. § 18-8329(e).

181.    Moreover, the current version of SORA even restricts registrants from being within 500 feet of the property line of school or daycare grounds. Idaho Code § 18-8329(1)(b). As a result, Plaintiffs are excluded from attending religious services within these exclusion zones even when the religious services are not on the grounds of any faith-based institution that is also operated as a school or daycare.

182.    As a result, the current version of SORA prevents Plaintiffs from attending their houses of worship.

183.    For instance, Doe #1 cannot teach classes at his church and cannot help out at his church's camp because he is registered.

184.    Doe #115 would like to be more involved with his church and his children's role in the church, but he cannot be as active as he would like be, including being a youth coach, because he is a registered sex offender.

185.    Doe #117 is restricted from attending religious services under SORA to avoid the possibility of noncompliance with SORA over being on or near school grounds, because churches are often home to schools or day cares, as well and have children present in Sunday School, and because a house of worship may be within 500 feet of a school or day care.

*Travel*

186.    The current version of SORA restricts Plaintiff's ability to travel, both interstate and intrastate.

24

187.   Plaintiffs must provide advance notice to state authorities when they intend to travel anywhere for more than seven days. I.C. § 18-8309(2).

188.   Plaintiffs must provide in-person notice of their presence to law enforcement in the jurisdictions they travel to, even if those jurisdictions have no such requirement.

189.   The current version of SORA requires Plaintiffs to comply with any applicable sex offender registration laws in other jurisdictions they travel to and register there if they intend to stay over a prescribed period. Because sex offender laws are complex and vary from state to state, it is hard to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

190.   Doe #35 refrains from visiting her mother in another Idaho county on account the current version of SORA's travel restrictions and the risk of unintentionally violating SORA.

191.   Doe #117 has found that travel away from his residence for more than seven days often requires taking another day off work to notify authorities that he is planning such travel. The State officials have told him that he also has to notify the local law enforcement where he is traveling. Doe #117 either has to make up a reason as to why he needs to disappear at his destinations for some time or has to tell the people he is traveling with of his status as a registered sex offender.

192.   In 2006, Doe #117 traveled to Palm Springs, California to visit friends and planned to be gone for ten days. He took time off from work to notify the county sheriff's office and was told that he needed to check in to every county he would spend a night in. When he went in person to notify the sheriff's office in California, they brushed him off and said he didn't need to let them know. He was forced to take time from his trip and burden local law enforcement to comply with SORA,

25

while the local law enforcement told Doe #117 he did not need to inform them. He refrains from much out-of-state travel to avoid this kind of bureaucracy and humiliation.

193.    Plaintiffs regularly avoid travel for longer than six days at a time because they otherwise would have to notify law enforcement about their travel plans.

*Stigma*

194.    The current version of SORA's public registry website stigmatizes Plaintiffs.

195.    The public registry website posts extensive personal information about each registrant, including Plaintiffs, including residential address, date of birth, physical description (weight, height, etc.), and a photograph.

196.    Because they are stigmatized as sex offenders on the public registry website, Plaintiffs and their families face harassment, social ostracism, and even threats of violence.

*Impossibility of Total Compliance*

197.    Because some of the current version of SORA's restrictions and obligations are so vague and confusing, Plaintiffs face constant worry that they will inadvertently violate its requirements.

198.    The current version of SORA imposes penalties of up to ten years imprisonment for violating the law. Idaho Code § 18-8311.

199.    The current version of SORA imposes such penalties even if illness, injury, or practical difficulties make compliance impossible.

200.    For example, Plaintiffs often cannot know if they are within 500 feet of school grounds, a daycare, or properties posted with a notice that they are used by a school or daycare. Plaintiffs do not know what properties may have such a notice

26

posted. Plaintiffs are also unaware of property boundaries and the distances are impossible to measure without sophisticated equipment.

201.   The current version of SORA's burdensome requirements for travel, both before and during, that Plaintiffs regularly avoid travel to avoid inadvertently violating SORA.

## Causes of Action

### First Cause of Action: Violation of the Ex Post Fact Clause

### Each Plaintiff Against Each Defendant

### 42 U.S.C. § 1983; U.S. Constitution, Art I, § 10, cl. 1

202.   Plaintiffs reallege and incorporate by reference each allegation in the preceding paragraphs.

203.   Plaintiffs bring this claim against all Defendants in their official capacities.

204.   The effect and intent of the current version of SORA is punitive and imposes new punishments.

205.   The retroactive application of the current version of SORA violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed before enactment of each amendment to SORA, and each amendment applies SORA retroactively.

206.   The cumulative effect of the amendments to SORA create a regulatory scheme that has been historically and traditionally viewed as punishment.

207.   The current version of SORA imposes affirmative disabilities and restraints.

208.   The current version of SORA promotes the traditional goals of punishment.

209.   The current version of SORA lacks a rational connection to a non-punitive purpose.

210.   The current version of SORA is excessive in relation to its non-punitive purpose.

211.   Defendants' actions are under color of law and enabled by their authority as state officers.

212.   Plaintiffs bring a facial challenge to the retroactive application of SORA's amendments.

213.   Plaintiffs have no adequate remedy at law or other effective means of enforcing their right to protection against an ex post facto law other than by seeking declaratory and injunctive relief from this Court.

**Second Cause of Action: Double Jeopardy**

**Each Plaintiff Against Each Defendant**

**42 U.S.C. § 1983; U.S. Constitution, Fifth Amendment**

214.   Plaintiffs reallege and incorporate by reference each allegation in the preceding paragraphs.

215.   Plaintiffs bring this claim against all Defendants in their official capacities.

216.   The cumulative effect of the amendments to SORA is to impose new punishments on people previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism, in violation of the Fifth Amendment to the U.S. Constitution's Double Jeopardy Clause.

217.   The Idaho legislature intended to impose a criminal punishment on Plaintiffs and other registrants when enact the amendments to SORA.

218.   Even if the Idaho legislature intended to promulgate a non-punitive regulatory scheme, the punitive effects of the current version of SORA negate that legislative intent.

219.   Defendants' actions are under color of law and enabled by their authority as state officers.

220.   Plaintiffs bring a facial challenge to SORA's amendments that subject them in double jeopardy.

221.   Plaintiffs have no adequate remedy at law or other effective means of enforcing their right to protection against double jeopardy other than by seeking declaratory and injunctive relief from this Court.

### Third Cause of Action: Free Exercise

### Each Plaintiff Against Each Defendant

### Idaho's Free Exercise of Religion Protected Act, I.C. § 73-402

222.   Plaintiffs reallege and incorporate by reference each allegation in the preceding paragraphs.

223.   Plaintiffs bring this claim against all Defendants in their official capacities.

224.   The cumulative effect of the amendments to SORA substantially burdens Plaintiffs' free exercise of their religion.

225.   SORA's amendments prevent Plaintiffs from engaging in conduct both important to them and motivated by sincere religious belief.

226.   SORA's burdens on Plaintiffs' free exercise of their religion is neither essential to furthering any compelling governmental interest nor the least restrictive means of furthering any compelling governmental interest.

227.   Defendants' actions are under color of law and enabled by their authority as state officers.

228.   Plaintiffs bring as-applied challenge to SORA's amendments that impair their free exercise of religion.

229.    Plaintiffs have no adequate remedy at law or other effective means of enforcing their right to protection of their free exercise of religion other than by seeking declaratory and injunctive relief from this Court.

### Request for Relief

Plaintiffs respectfully request that this Court:

1.  Issue a judgment, under 28 U.S.C. §§ 2201–2202, declaring that retroactive application of the amendments to SORA facially violates the prohibition in the United States Constitution against ex post facto laws, and issue a preliminary and permanent injunction restraining the defendants from retroactively enforcing those prohibitions to people, including Plaintiffs, with convictions that predate the amendments;

2.  Issue a judgment, under 28 U.S.C. §§ 2201–2202, declaring that retroactive application of the amendments to SORA facially violates the prohibition in the United States Constitution against double jeopardy, and issue a preliminary and permanent injunction restraining the defendants from retroactively enforcing those prohibitions to people, including Plaintiffs, with convictions that predate the amendments;

3.  Issue a judgment, under 28 U.S.C. §§ 2201–2202, declaring that the current version of SORA substantially burdens Plaintiffs' free exercise of religion, and issue a preliminary and permanent injunction restraining Defendants from enforcing SORA in any way that interferes with Plaintiffs' free exercise of religion;

4.  Award Plaintiffs' counsel reasonable attorneys' fees and litigation costs; and

5. Grant such other and further relief as the Court deems just and proper.

Date: May 4, 2021                    Respectfully submitted,

                                    /s/ Greg J. Fuller
                                    Greg J. Fuller (Bar No. 1442)
                                    FULLER LAW OFFICES
                                    161 Main Avenue West
                                    P.O. Box L
                                    Twin Falls, ID 83303

                                    Matthew Strugar
                                    (*pro hac vice application forthcoming*)
                                    Law Office of Matthew Strugar
                                    3435 Wilshire Blvd., Suite 2910
                                    Los Angeles, CA 90010

                                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2021, electronically filed the foregoing with the Clerk of the Court using the CMF/ECF filing system that served a true and correct copy of the foregoing to the CMF/ECF participants listed below:

Leslie Hayes
State of Idaho, Office of the Attorney General
Leslie.hayes@ag.idaho.gov

Chris Kronberg
State of Idaho, Office of the Attorney General
chris.kronberg@ag.idaho.gov

Steven Lamar Olsen
State of Idaho, Office of the Attorney General
steven.olsen@ag.idaho.gov

*Attorneys for Defendants*

                                    */s/ Greg J. Fuller*
                                    GREG J. FULLER