Matthew Strugar (*pro hac vice*)
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

David B. Rankin (*pro hac vice*)
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
T: (212) 277-5825
drankin@blhny.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE #36, JOHN DOE #64, JOHN DOE #115, and JOHN DOE #117,<br><br>Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, Attorney General of the State of Idaho; and COLONEL BILL GARDINER, Director of the Idaho State Police, in their official capacities,<br><br>Defendants. | Case No. 1:16-cv-429-DCN<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 113)** |

**Table of Contents**

**Introduction** ........................................................................................................... **1**

**Argument** ............................................................................................................... **1**

**I.    The Court Should Deny Defendants Summary Judgment on the Ex Post Facto and Double Jeopardy Clause Claims.** ................................................................. **1**

A.    Law of the Case Requires This Court Analyze SORA's Punitive Effects In Toto, Not Provision-by-Provision. ...................................................................... 2

B.    Defendants Fail to Show SORA Is Not Punishment. ......................................... 4

1.    SORA Imposes Severe and Affirmative Disabilities and Restraints. ...................7

2.    SORA Imposes Sanctions Historically Regarded as Punishment. ........................8

3.    SORA Serves the Traditional Aims of Punishment. ............................................11

4.    SORA Is Irrationally Related to its Purported Non-Punitive Purpose. ...............11

5.    SORA Is Excessive in Relation to Non-Punitive Interests. ................................14

**II.   Disputes of Material Fact Preclude Summary Judgment on Doe #64 and Doe #117's FERPA Claims.** ............................................................................ **16**

A.    This Court Has Jurisdiction Over the FEPRA Claims. ................................... 16

1.    Sovereign Immunity Does Not Bar Plaintiffs' FERPA Claims and, Regardless, Defendants Waived Any Affirmative Defense of Sovereign Immunity. ............................................................................................................16

2.    Doe #64 and Doe #117 Have Injuries for Article III Purposes. ..........................17

3.    If This Court Lacks Supplemental Jurisdiction Over Plaintiffs' FERPA Claims, Remand, Not Summary Judgment, Is Appropriate. ...............................18

B.    Disputes of Material Fact Preclude Summary Judgment Over Doe #64 and Doe #117's FERPA Claims and, Regardless, Defendants Do Not Meet Their Burden. ...... 18

**Conclusion** .......................................................................................................... **20**

**Introduction**

Four plaintiffs bring three claims against Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act (SORA), Idaho Code § 18-8301, *et seq*. Two of those claims are facial challenges to SORA: one under the Ex Post Facto clause of Article I and another under the Double Jeopardy clause of the Fifth Amendment. The third is an as-applied challenge under Idaho's Free Exercise of Religion Protected Act (FERPA), Idaho Code § 73-401, *et seq*.

Plaintiffs seek partial summary judgment on their Ex Post Facto claim. Dkt. 112. Defendants cross-move for summary judgment on all claims. Dkt. 113 (Ds' Br.). Because the facts and background are laid out in Plaintiffs' opening brief, they omit a detail recitation here. Dkt. 112-1.

The Court should deny Defendants' motion for summary judgment on Plaintiffs' Ex Post Facto and Double Jeopardy claims because Defendants' piecemeal analysis of the statute contravenes the Ninth Circuit's instruction. Defendants rely almost exclusively on one outlier case, and the multi-factor test for determining if a statute is punitive favors Plaintiffs. At the very least, material disputes of fact exist as to the statute's punitiveness. Plaintiffs concede that summary judgment is appropriate for two Plaintiffs' FERPA claims but material disputes of fact exist to prevent summary judgment for the remaining two Plaintiffs.

**Argument**

**I.    The Court Should Deny Defendants Summary Judgment on the Ex Post Facto and Double Jeopardy Clause Claims.**

The cumulative effect of SORA's many disabilities and restraints constitute punishment under the factors used in the intent-effects test outlined in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). Because its cumulative effects are punitive, applying them retroactively to people who were not sentenced to be punished under them, and did not bargain for them in plea negotiations, violates the Ex Post Facto and Double Jeopardy clauses. Defendants claim they are

1

entitled to summary judgment on Plaintiffs' Ex Post Facto and Double Jeopardy claims because

certain provisions of SORA do not constitute punishment. Ds' Br. at 5–16.[1] Defendants' individ-

ual-provision approach is wrong and the factors do not favor Defendants. Thus, summary judg-

ment for Defendants is unwarranted.

### A. Law of the Case Requires This Court Analyze SORA's Punitive Effects In Toto, Not Provision-by-Provision.

Defendants' entire Ex Post Facto and Double Jeopardy argument and analysis about

SORA's punitive effects is based on a mistake or misrepresentation: that this Court is required to

do a provision-by-provision analysis of SORA and is prohibited from analyzing SORA's disabili-

ties and restraints as a whole. Ds' Br. at 6–15.

The Ninth Circuit, in reinstating Plaintiffs' Ex Post Facto and Double Jeopardy claims after

dismissal at the pleading stage, remanded with explicit instructions to consider SORA's disabilities

and restraints as a whole: "The court should consider the effects of SORA's regulatory scheme, as

amended and *in its entirety*, in determining whether it runs afoul of the Constitution." *Doe v.*

*Wasden*, 982 F.3d 784, 792 (9th Cir. 2020) (emphasis added).

In advocating for a provision-by-provision approach, Defendants purport to reply on lan-

guage from Judge VanDyke's separate opinion he instructed this Court to "not consider the 'cu-

mulative effect of a mix of regulations.'" Ds' Br. at 7. But that opinion does exactly the opposite

of what Defendants claim—it, too, tells the Court to assess SORA's disabilities and restraints in

their entirety. The language Defendants rely on comes from the part of Judge VanDyke's opinion

where he concurs with the majority that prior Ninth Circuit decisions did not foreclose Plaintiffs'

Ex Post Facto challenge. *Wasden*, 982 F.3d at 799–800 (VanDyke, J., dissenting in part and

---

[1] All citations to page numbers of docket filings use the ECF header page numbers.

2

concurring in part). Judge VanDyke explained that prior Ninth Circuit opinions did not deal with the same types of restrictions that SORA imposes. *Id*. at 799 (citing *Litmon v. Harris*, 768 F.3d 1237, 1240, 1242-43 (9th Cir. 2014); *United States v. Elk Shoulder*, 738 F.3d 948, 952, 954 (9th Cir. 2013); *Maciel v. Cate*, 731 F.3d 928, 937 (9th Cir. 2013); *ACLU v. Masto*, 670 F.3d 1046, 1057 (9th Cir. 2012)). In concurring that Plaintiffs' challenge here was not foreclosed by those cases, Judge VanDyke distinguished those cases because they did not "consider whether the cumulative effect of a mix of regulations like Idaho's might be punitive in toto"—exactly what he concurred that this Court should do on remand.[2] *Id*. at 799. The panel was unanimous on the cumulative approach. But regardless, Judge VanDyke wrote only for himself, so even if his opinion did conflict with the majority, the majority would control.

The in-toto approach is consistent with how other courts, including the Supreme Court, analyze the punitive effects of registration schemes. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 92, 94, 96–97, 99, 104–05 (2003) (applying test to "regulatory scheme" or "the Act"); *Doe v. Snyder*, 834 F.3d 696, 701–06 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017) (analyzing cumulative impact);

---

[2] Defendants also rely on a Sixth Circuit case in advocating for their provision-by-provision approach. Ds' Br. at 7 (citing *Doe v. Lee*, 102 F.4th 330, 340 (6th Cir. 2024). Of course, a Sixth Circuit opinion cannot control when Ninth Circuit precedent is contrary, especially when the Ninth Circuit precedent came from this very case. Even so, Defendants misread the case. The Sixth Circuit in *Lee* recognized that Ex Post Facto analysis requires examination of "the entirety of the regulatory regime," not whether individual provisions, standing alone, are punitive. *Lee*, 102 F.4th at 338. *Lee*'s provision-by-provision approach was part of the court's remedy analysis and a result of Tennessee-specific rules of statutory interpretation. *Lee*, 102 F.4th at 340–41. Defendants don't argue that any similar Idaho cannon applies here. It may be true here, too, in fashioning a *remedy* for the Ex Post Facto violation, that a similar analysis might be appropriate. But, as Plaintiffs suggest in their motion for partial summary judgment, the nature and scope of the remedy should await further proceedings. Dkt. 112-1 at 22; *see also Does v. Whitmer*, 751 F.Supp.3d 761, 839 (E.D. Mich. 2024) (granting summary judgment to plaintiffs on an Ex Post Facto challenge and setting further proceedings for the nature and scope of the remedy); *Does v. Whitmer*, No. 22-CV-10209, 2025 WL 914129 (E.D. Mich. Mar. 26, 2025) (determining the nature and scope of the remedy).

*Lee*, 102 F.4th at 338 (recognizing punitive effects analysis requires examination of "the entirety of the regulatory regime").

Defendants' mistaken approach is fatal to their entire motion on the Ex Post Facto and Double Jeopardy claims, and Defendants' misshapen analysis tacitly acknowledges that viewed as a totality, SORA's scheme constitutes punishment. Because they only advance a provision-by-provision analysis, they completely fail to address SORA as a whole and thus fail their burden of showing that SORA as whole is non-punitive. Ds' Br. at 6–15. This alone is a sufficient basis to deny Defendants' motion as to Plaintiffs' Ex Post Facto and Double Jeopardy claims.

### B. Defendants Fail to Show SORA Is Not Punishment.

Defendants' Ex Post Facto and Double Jeopardy analysis is almost wholly dependent on the Eleventh Circuit's decision in *McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022). Defendants cite *McGuire* 27 times and mention it without providing a citation seven additional times. Ds' Br. at 5, 9–14, 21. But *McGuire* makes the same mistake of failing to analyze the law at issue in its entirety, instead applying the intent-effects test provision-by-provision. *McGuire*, 50 F.4th at 1008–24 (applying intent-effects factors independently to four provisions of Alabama registration law).[3] The Ninth Circuit in this case required the opposite approach. *See infra*, § I.A.

Even if *McGuire's* analysis were not foreclosed by this circuit's analysis, it is an outlier among precedent analyzing the punitive effect of registration schemes that go beyond simply registration and notification. *See, e.g.*, *Whitmer*, 751 F.Supp.3d at 784–95 (finding amended registration law violated Ex Post Facto clause); *State v. Hinman*, 530 P.3d 1271, 1276, 1278 (Mont. 2023)

---

[3] The Eleventh Circuit conceded that, "[f]or ease of analysis," it analyzed two provisions "together because even in combination, [it] conclude[d] that they do not violate the Ex Post Facto Clause," but the court failed to explain why it refused to analyze the entirety of the law in the same manner—or assert that it would have reached the same conclusion if it had. *McGuire*, 50 F.4th at 1007 n.25.

(overturning prior decision finding earlier registration law was not punitive because "[a]ll the features of the Act that supported [the previous] decision … changed dramatically since the law's amendments in 2007, 2013, 2015, and 2017" and acknowledging a "growing body of research into the effectiveness of sex offender registries has cast significant doubt on their capacity to prevent recidivism"); *People v. Betts*, 968 N.W.2d 497, 504–15 (Mich. 2021) (finding retroactive imposition of amendments to registration law, which obligated in-person reporting and imposed restrictions on residency and employment, violated Ex Post Facto clause); *Snyder*, 834 F.3d at 699–706 (finding retroactive imposition of amendments to registration law violated Ex Post Facto clause); *Doe v. New Hampshire*, 111 A.3d 1077, 1100–02 (N.H. 2015) (holding that the sex offender statute "has changed dramatically … to the point where the punitive effects are no longer 'de minimis'"); *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1030 (Okla. 2013) (holding retroactive application of sex offender restrictions was punishment); *Doe v. Dep't of Pub. Safety and Corr. Servs.*, 62 A.3d 123, 143 (Md. Ct. App. 2013) ("The application of the statute … [is] tantamount to imposing an additional sanction for Petitioner's crime."); *State v. Williams*, 952 N.E.2d 1108, 1112–13 (Ohio 2011) ("The statutory scheme has changed dramatically…[W]e conclude that imposing the current registration requirements on a sex offender whose crime was committed prior to the enactment of S.B. 10 is punitive."); *Wallace v. State*, 905 N.E.2d 371, 384 (Ind. 2009) ("Thus, the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so broad and sweeping."); *State v. Letalien*, 985 A.2d 4, 26 (Me. 2009) (holding that "the retroactive application of the lifetime registration requirement and quarterly in-person verification procedures of SORN … is punitive"); *State v. Pollard*, 908 N.E.2d 1145, 1150–54 (Ind. 2009) (retroactive application of residency restriction was punishment); *Com. v. Baker*, 295 S.W.3d 437, 447 (Ky. 2009) (holding that Kentucky's "residency

5

restrictions are so punitive in effect as to negate any intention to deem them civil"); *Doe v. Alaska*, 189 P.3d 999, 1017 (Alaska 2008) (holding, despite *Smith*, that an expanded Alaska registration system was punishment).

Defendants' provision-by-provision approach also explains why their arguments that public registration, notification, and lifetime registration are each individually foreclosed by Ninth Circuit and Supreme Court precedent. Ds' Br. at 7–8, 12–16. First generation registration laws typically involved registration and notification, and some required lifetime registration for certain offenders. *See Smith*, 538 U.S. at 90. The Supreme Court and Ninth Circuit upheld such first-generation registration laws against Ex Post Facto challenges, finding those laws led to only "minor and indirect" consequences that were reasonably related to the state's objectives. *Id*. at 100. In *Smith*, a fractured Court found Alaska's first-generation registration law was not punitive. Because *in-person reporting* was not required; registrants were "free to move where they wish and to live and work as other citizens, with no supervision" and were "free to change jobs or residences"; there was "no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred"; the "Act does not restrain activities sex offenders may pursue"; and that the consequences of the Act "flow[ed] not from the Act's registration and dissemination provision, but from the fact of conviction[;]" the majority found no Ex Post Facto violation. *Smith*, 538 U.S. at 100–01. Since the Act imposed only the "minor condition of registration," individualized assessments were not required, unlike other situations, where the "magnitude of the restraint" mandated case-by-case determinations of dangerousness. *Id*. at 104. In *Smith*'s wake, the Ninth Circuit upheld other similar first-generation registration and notification statutes as non-punitive. *See, e.g.*, *Masto*, 670 F.3d 1046; *Litmon*, 768 F.3d 1237.

These cases were the basis of the State's motions to dismiss both Plaintiffs' original Complaint and the Second Amended Complaint, *see* Dkt. 15-1 at 15–19; Dkt. 40-1 at 6–10, and this Court's orders granting those motions, *see* Dkt. 32 at 13–15; Dkt. 47 at 11–20. But the Ninth Circuit reversed, finding it was error to rely on cases upholding first-generation registry laws. *Wasden*, 982 F.3d at 791–92 (disapproving dismissal of Plaintiffs claims based on *Smith*, 538 U.S. 84; *Litmon*, 768 F.3d 1237, *Elk Shoulder*, 738 F.3d 948, and *Masto*, 670 F.3d 1046). Those cases do not "foreclose a finding that SORA is punitive." *Id*. at 791. On this point, the panel was unanimous. *Id*. at 799–800 (VanDyke, J., dissenting in part and concurring in part).

Taking SORA's regime as a whole, the intent-effects test shows that Defendants are not entitled to summary judgment on Plaintiffs' Ex Post Facto and Double Jeopardy claims.

### 1.   SORA Imposes Severe and Affirmative Disabilities and Restraints.

As Plaintiffs established in their motion for partial summary judgment, SORA imposes direct restrictions on where registrants are allowed to live, work, and move, as well as significant and burdensome responsibilities that include frequent contact with law enforcement. It requires them report all types of information to law enforcement on tight timeframes, including when they travel or even create an account on the internet. Dkt. 112-1 at 12. Compiling those affirmative disabilities and restraints stretches ten pages. Dkt. 112-8.

Defendants' motion hardly contests that SORA imposes affirmative disabilities and restraints. Relying on *McGuire*, they concede that SORA "impose[s] some burdens," but claim that does "'not inexorably lead to the conclusion that the government has imposed punishment.'" Ds' Br. at 9 (quoting *McGuire*, 50 F.4th at 1011). Perhaps not, because this is just one factor in the test of whether the law imposes punishment and one factor alone does not inexorably lead to the

ultimate conclusion. But even *McGuire*, which Defendants rely on, appears to concede the law at issue in that case imposed affirmative disabilities and restraints. *McGuire*, 50 F.4th at 1011–12, 1018.

SORA's requirements of regularly reporting comprehensive details of one's life to law enforcement and being restricted from where one can work, live, volunteer, or loiter are neither minor nor indirect—they are substantial disabilities and restraints on individual liberty. *See* Dkt. 112-8 (Summary of Obligations); *Betts*, 968 N.W.2d at 511–12 (threat of imprisonment, restrictions on "living, working, and loitering;" and in-person reporting, all under threat of imprisonment, impose "significant affirmative obligations"); *Snyder*, 834 F.3d at 703 (same); *Pollard*, 908 N.E.2d at 1150 (registration statute's burdens "neither minor nor indirect," but create "a substantial housing disadvantage" that limits "one's freedom to live on one's own property"); *Baker*, 295 S.W.3d at 445 (finding it "difficult to imagine that being prohibited from residing within certain areas does not qualify as an affirmative disability"); *Wallace*, 905 N.E.2d at 380 (registration is affirmative disability because it leads to loss of employment opportunities and housing discrimination); *United States v. Juvenile Male*, 590 F.3d 924, 935 (9th Cir. 2010), *vacated as moot*, 564 U.S. 932 (2011) (per curiam) (invalidating registration statute that "seriously jeopardizes the ability … to obtain employment, housing, and education"); *Letalien*, 985 A.2d at 18. As in these cases, SORA's requirements are unquestionably disabilities and restraints on registrants and Defendants have not met their burden on this factor because this factor favors Plaintiffs.

### 2. SORA Imposes Sanctions Historically Regarded as Punishment.

As Plaintiffs also established in their motion for partial summary judgment, SORA as a whole imposes sanctions historically regarded as punishment—specifically probation, parole, banishment, and shaming. Dkt. 112-1 at 15–17. Defendants address only certain aspects of these

historic punishments, each time addressing only a specific provision based entirely on *McGuire*. Ds' Br. at 9, 11 (banishment), 13 (probation and parole).

Admittedly, *McGuire* does reject analogies to the historic punishments of probation, parole and banishment, 50 F.4th at 1008–10, 1017–18, but again, it is an outlier case. *See, e.g.*, *Whitmer*, 751 F.Supp.3d at 789–91; *Hinman*, 530 P.3d at 1276 n.11; Betts, 968 N.W.2d at 508–10; *Snyder*, 834 F.3d at 702–03; *New Hampshire*, 111 A.3d at 1097; *Starkey*, 305 P.3d at 1025–26; *Dep't of Pub. Safety*, 62 A.3d at 143; *Williams*, 952 N.E. 2d at 1111–12; *Wallace*, 905 N.E.2d at 380–81; *Baker*, 295 S.W.3d at 444; *Alaska*, 189 P.3d at 1012.

As to banishment, *McGuire* distinguishes the Alabama law at issue in that case from the Michigan law at issue in *Snyder* because the Michigan law "prohibited registrants not only from living or working in exclusion zones but also from 'loitering' in these areas." *McGuire*, 50 F.4th at 1010 n.27 (citing *Snyder*, 834 F.3d at 698). But like Michigan, and unlike Alabama, Idaho's SORA imposes a loitering exclusion zone. I.C. § 18-8329(1)(b).

Defendants also attempt to set a nearly impossible bar by arguing that a prohibition must "'entirely cut off [registrants] from society'" to even resemble banishment. Ds' Br. at. 11 (quoting *McGuire*, 50 F.4th at 1009). Here, again, *McGuire* is an outlier. *Snyder*, 834 F.3d at 701–02 (finding residential, employment, and loitering exclusion zones "resemble, in some respects at least, the ancient punishment of banishment"); *Betts*, 968 N.W.2d at 508–09 (same); *Starkey*, 305 P.3d at 1025–26 (residential exclusion zone resembled banishment); *Baker*, 295 S.W.3d at 444 (500-foot residential exclusion zone that "expels registrants from their own homes … strike[s] this Court as decidedly similar to banishment"). As the weight of authority confirms, *McGuire*'s hair-splitting about an exact analog to a historical punishment is, again, not the appropriate framework; "this

9

factor inquires only whether the act is *analogous* to a historical punishment, not whether it is an exact replica." *New Hampshire*, 111 A.3d at 1097 (emphasis in original).

Defendants' argument about a lack of historical analogies to probation and parole also fails. Ds' Br. at 13. Defendants *only* argue that SORA's travel notification do not resemble probation or parole. *Id*. Plaintiffs' claim, though, is that the entirety of SORA's restrictions resemble those punishments. Dkt. 112-1 at 14–15. SORA requires the same onerous reporting requirements, involving time-consuming and cumbersome reporting akin to probation and parole, with often more cumbersome reporting of even minor changes in personal information. *See* Dkt. 112-8 (Summary of Obligations) § XI. And again, the weight of authority analyzing registration disabilities as a whole finds they resemble probation and parole. *Whitmer*, 751 F.Supp.3d at 790–91; *Hinman*, 530 P.3d 1271, 1276 n.11; *Betts*, 968 N.W.2d at 509–10; *Snyder*, 834 F.3d at 703; *Dep't of Pub. Safety*, 62 A.3d at 143; *Wallace*, 905 N.E.2d at 380; *Alaska*, 189 P.3d at 1012.

Further, as this Court noted previously, SORA resembles parole and probation because, like those forms of supervised release, violations can result in revocation of supervised release and lead to reinstatement of a registrant's underlying sentence. Dkt. 90 at 3 (citing I.C. § 18-8311). *McGuire* distinguished parole and probation from the law at issue in there because "a violator of a term or condition of supervision may be imprisoned for the original crime," while registrants may only "be subjected to a criminal prosecution for violation of [the registration law], separate and apart from his original offense." That's not the case with SORA. I.C. § 18-8311.

Defendants have not met their burden on this factor and this factor favors Plaintiffs.

### 3.    SORA Serves the Traditional Aims of Punishment.

As Plaintiffs established in their motion for partial summary judgment, SORA advances the traditional aims of punishment: incapacitation, retribution, and deterrence. Dkt. 112-1 at 17–18. This seems incontrovertible; the statute's express purpose is deterrence. I.C. § 18-8302.

Even *McGuire* conceded that the Alabama statute sought deterrence. *McGuire*, 50 F.4th at 1012. It just found that this serving that traditional aim of punishment alone did not result in a conclusion that the statute was punitive. *Id*. at 1013. And Defendants' only argument on this point is to cite to this conclusion from *McGuire*. Ds' Br. at 10 (citing *McGuire*, 50 F.4th at 1013).

While this factor alone is not dispositive, it still favors Plaintiffs. *See, e.g.*, *Whitmer*, 751 F.Supp.3d at 791–92; *Betts*, 968 N.W.2d at 512; *Snyder*, 834 F.3d at 704; *New Hampshire*, 111 A.3d at 1098; *Starkey*, 305 P.3d 1027–28; *Wallace*, 905 N.E.2d at 381–82; *Pollard*, 908 N.E.2d at 1152; *Baker*, 295 S.W.3d at 444–45; *Alaska*, 189 P.3d at 1013–14; *Letalien*, 985 A.2d at 22.

### 4.    SORA Is Irrationally Related to its Purported Non-Punitive Purpose.

As Plaintiffs established in their motion for partial summary judgment, SORA is irrationally related to its nonpunitive purpose for a variety of reasons, including that the scientific evidence is nearly unanimous that laws like SORA do not decrease recidivism and because the law fails to distinguish between the large percentage of people whose risk of reoffending are equal to or lower than the general male population and those who do present a higher risk. Dkt. 112-1 at 19–21.

Defendants contest the near unanimity in the field finding SORA laws do not decrease recidivism by relying on their expert's novel reading of a single meta-analysis.[4] Dkt. 113-2, Ds'

---

[4] Despite proffering him as an expert in sex offender recidivism, Defendant's expert, Dr. Matthew DeLisi, testified in one case that "he would probably not be a desirable expert regarding sex offenders because he is 'not a sex offender researcher per se'" and a different court found he was not qualified as an expert on recidivism of sex offenders. *Henry v. Abernathy*, 647 F.Supp.3d 1235, 1246–47 (M.D. Ala. 2022).

SOF 21. But the authors of that meta-analysis conclude "SORN policies demonstrate no effect on recidivism." Response to Ds' SOF 21. And the authors of the studies *within* the meta-analysis also come to an opposite conclusion than Defendants' expert. *Id*. In fact, the authors of the publication Defendants and their expert claim shows "that sex offender registration requirements can reduce recidivism rates by up to 82%," Ds' Br. at 11, interpret their own findings very differently:

> In fact, our results generally reveal a lack of relationship between SORN laws and rates of all sexual offenses, or with specific measures of sexual assaults against adults, or sexual offenses against children. Likewise, we found no relationship between SORN requirements or the two modifications that expanded them [including the addition of community notification] and the number of sexual offenses committed by repeat offenders (i.e., those who would conceivably have been subject to the specific deterrent effects created by these requirements), or first-time offenders who would be subject to general deterrent effects.

Response to Ds' SOF 21. The disconnect between Defendants' expert's reading of this study and the author's own reading is likely explained by the fact that this study involved a private (i.e., available only to law enforcement) registry and studied general criminal recidivism, not sexual offense recidivism. *Id*. When looking at public registries and sexual offense recidivism, the authors of the study found a lack of efficacy, which is in line with the scientific consensus. *Id*.

Defendants fail to contest Plaintiffs' showing that SORA is irrationally related to its non-punitive interests by failing to distinguish between the large percentage of people who present a lower risk of re-offending and the much smaller percentage of people who present a higher risk of re-offending. *See* Dkt. 112-1 at 19–21. On this point, Defendants simply assert that at the time of release, sex offender recidivism rates generally are higher than the baseline risk of males. Dkt. 113-2, Ds' SOR 22, Ds' Br. at 11. That might show a rational relationship between a registration scheme that exists for a limited duration upon release, like the initial 10-year period Idaho imposed. I.C. § 18-8305 (1993). But SORA is now for life. I.C. § 18-8307(7). And the evidence shows, and

Defendants have not contested, that recidivism rates for sex offenders drop precipitously with the amount of time they spend offense-free in the community. After five years recidivism-free, 40% of people with a sexual conviction will present no more risk of recidivism than people with a non-sexual conviction; after ten years, that number rises to 74.3%; after 15 years, it rises to 96%; and at 20 years, it is 100%. Dkt. 112-2, Ps' SSMF 47. But SORA imposes disabilities and restraints for life and snags hundreds of people with convictions more than 30 years old. Dkt. 112-2, Ps' SSMF 16.

Defendants also say nothing about the irrationality of lifetime registration when the uncontested science shows that sexual recidivism is highly correlated with age such that virtually no one over the age of 60 present any significant risk for sexual recidivism. Dkt. 112-2, Ps' SSMF 49. But SORA includes more than 1,600 people who are 60 or older. Dkt. 112-2, Ps' SSMF 14.

Defendants claim SORA is rationally related to a non-punitive purpose because it assists law enforcement. But here, too, Defendants seem to be defending an earlier version of the law. Idaho's initial sex offender registration scheme was a non-public database of convictions used by law enforcement. I.C. § 18-8305 (1995). Plaintiffs are not challenging such a scheme; they are challenging what SORA has ballooned into, with the laundry list of disabilities and obligations it imposes. *See* Dkt. 112-8 (Summary of Obligations).

Even given the most charitable assessment, the bare bones evidence Defendants rely on at best shows a dispute of material fact on this prong, making summary judgment unavailable. *See e.g.*, *Schroeder v. Owens-Corning Fiberglas Corp.*, 514 F.2d 901, 903–04 (9th Cir. 1975) (conflicting expert testimony is a dispute of material fact). Defendants waive away that concern by asserting that legislature are free to ignore empirical evidence. Ds' Br. at 12, n.3 (citing *Doe v. Settle*, 24 F.4th 932, 948 (4th Cir. 2022)). If legislatures could simply ignore the evidence, the bar

13

would be so low that this factor would be meaningless and there would have been no basis to allow this case to proceed past a motion to dismiss. *See* Dkt. 90 at 39–42. And here again, Defendants' authority is an outlier. *See Snyder*, 834 F.3d at 704–05 ("scant support" that registration law reduces recidivism or otherwise accomplishes it means show lack of rational relation to non-punitive purpose); *Hinman*, 530 P.3d at 1278 ("a growing body of research into the effectiveness of sex offender registries has cast significant doubt on their capacity to prevent recidivism"); *People ex rel. T.B.*, 489 P.3d 752, 768 (Colo. 2021) (recognizing "a number of studies indicate that registration requirements have no statistically significant effect on reducing recidivism rates among offenders" in finding lifetime registration for juveniles is punitive and lacks a rational relation to a non-punitive purpose); *Baker*, 295 S.W.3d at 445–46 (finding residential exclusion zones irrational because "is difficult to see how public safety is enhanced by a registrant not being allowed to sleep near a school at night, when children are not present, but being allowed to stay there during the day, when children are present").[5]

### 5.    SORA Is Excessive in Relation to Non-Punitive Interests.

Defendants fail to address the fifth *Mendoza-Martinez* factor: whether SORA is excessive in relation to its non-punitive purpose. Instead, they argue only that "the State has chosen a reasonable means to achieve its nonpunitive interest." Ds' Br. at 10. But that just conflates the fourth factor—whether the restrictions are rational connected to a non-punitive purpose—with the fifth. The fifth asks, assuming a rational connection, whether the restrictions are excessive. *Mendoza-Martinez*, 372 U.S. at 169 (1963).

---

[5] Other courts have found punishment even when a state shows a rational relationship to a non-punitive interest because the other factors favor a finding of punitiveness. *Whitmer*, 751 F.Supp.3d at 792–95; *Betts*, 968 N.W.2d at 512–13; *New Hampshire*, 111 A.3d at 1099–1100; *Starkey*, 305 P.3d at 1036; *Dep't of Pub. Safety*, 62 A.3d at 158; *Wallace*, 905 N.E.2d at 382–83; *Letalien*, 985 A.2d at 22; *Alaska*, 189 P.3d at 1016.

Even when a "statute's efficacy is at best unclear, its negative effects [can be] plain on the law's face." *Snyder*, 834 F.3d at 705. In *Snyder*, for instance, the law put "significant restrictions on where registrants can live, work, and 'loiter,'" but the state failed to show "the difficulties the statute imposes on registrants [were] counterbalanced by any positive effects," in part because the state "never analyzed recidivism rates despite having the data to do so." *Id*. And in-person reporting "appear[ed] to have no relationship to public safety at all." *Id*. Thus, "[t]he punitive effects of these blanket restrictions … far exceed[ed] even a generous assessment of their salutary effects." *Id*.; *see also Betts*, 968 N.W.2d at 513–15 (excessiveness demonstrated by lack of individual assessments, duration of registration being unmoored from dangerousness, exclusion zones around schools applying to offenders whose offenses did not involve children, and in-person reporting required even when no information had changed); *Baker*, 295 S.W.3d at 446 (excessiveness is shown by a lack of individual determination and "fluidity"—i.e., frequent amendment—of law); *New Hampshire*, 111 A.3d at 1100 (imposing entirety of restrictions for life, without regard to whether [individual registrants] pose a current risk to the public," is excessive); *Starkey*, 305 P.3d at 1029 (application of disabilities and restraints to all offenders without individualized determination combined with retroactive extension of registration term to life is excessive).

Like the statutes at issue in the cases above, SORA imposes a long litany of obligation and restraints—including restrictions on movement, residency, and work, imposition of fees, and extensive and often in-person reporting requirements—all without any an individualized assessment of risk or dangerousness. The State fails to defend any of these excesses. Why, for instance, require in-person reporting of a change in employment or student status, I.C. § 18-8309(1), instead of reporting by phone or internet? Defendants' motion offers no answers on this or SORA's other

excesses. And as in *Snyder*, 834 F.3d at 705, Defendants impose these restrictions without having studied their effectiveness in preventing sexual recidivism. Dkt. 112-18, RFA No. 32.

Defendants have not met their burden on this factor and this factor favors Plaintiffs.

**II.    Disputes of Material Fact Preclude Summary Judgment on Doe #64 and Doe #117's FERPA Claims.**

Plaintiffs do not dispute that summary judgment is appropriate for Doe #36 and Doe #115's FERPA claims. However, disputes of material fact preclude summary judgment on Doe #64 and Doe #117's FERPA claims. First, despite Defendants' claims of sovereign immunity and lack of Article III standing, this Court has jurisdiction over Doe #64 and Doe #117's FERPA claims. Regardless, a lack of jurisdiction should result in remand, not summary judgment. Because this Court has jurisdiction, because disputes of material fact exist, and because Defendants do not satisfy FERPA's strict scrutiny requirement, summary judgment on Doe #36 and Doe #115's FERPA claims is inappropriate.

**A.  This Court Has Jurisdiction Over the FERPA Claims.**

**1.    Sovereign Immunity Does Not Bar Plaintiffs' FERPA Claims and, Regardless, Defendants Waived Any Affirmative Defense of Sovereign Immunity.**

Defendants claim they have sovereign immunity because "Idaho has not consented to being sued under FERPA in federal court," Ds' Br. at 17, but Idaho is not a defendant in this action. Defendants are state officials, not the state itself, and plaintiffs seek only injunctive and declaratory relief. Dkt. 73 at 30. Long ago, the Supreme Court held that the Eleventh Amendment does not bar suits against state officials from plaintiffs seeking prospective injunctive and declaratory relief. *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *L.A. Cty Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Defendant quotes *Witzke v. Idaho State Bar* for the proposition that "the Eleventh Amendment confers sovereign immunity, shielding states, state agencies, and state officials acting in their official capacity from suits in federal court." 643 F.Supp.3d 1093, 1107 (D. Idaho 2022); Ds' Br.

16

at 15. But the sentences immediately following the one Defendants quote state, "[h]owever, there are exceptions to sovereign immunity, … [including] the *Ex Parte Young* exception [which] allows suits against government officials for prospective injunctive relief." *Id*.

Even if that wasn't the case, Defendants waived any affirmative defense based on sovereign immunity by not raising it in their Answer. In the Ninth Circuit, "Eleventh Amendment immunity" is "'treated as an affirmative defense.'" *Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153–54 (9th Cir. 2004) (quoting *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993)). A defendant's failure to raise an affirmative defense in its answer waives the defense. *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008); FED. R. CIV. P. 8(b), (c). Defendants did not assert sovereign immunity as a defense in their Answer and thus waived it. Dkt. 96 at 21.

### 2.    Doe #64 and Doe #117 Have Injuries for Article III Purposes.

Defendants' contention that Plaintiffs lack an injury under FERPA and thus lack Article III standing confuses injury with the merits. They argue that Plaintiffs' deposition testimony shows that SORA does not interfere with their religious practice. Ds' Br. at 17–18. That argument put the "merits cart before the standing horse." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc). "Standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *McConnell v. FEC*, 540 U.S. 93, 227 (2003). If it did, federal courts would lack jurisdiction for every losing claim. *Walker*, 450 F.3d at 1092.

Because Defendants' standing argument is a merits argument, and Defendants' briefing on both arguments overlap, *compare* Ds' Br. at 17–18, *with id*. at 19–20, Plaintiffs address both as merits arguments. *See infra*, § II.B.

17

### 3. If This Court Lacks Supplemental Jurisdiction Over Plaintiffs' FERPA Claims, Remand, Not Summary Judgment, Is Appropriate.

If this Court decides it lacks supplemental jurisdiction over Plaintiffs' FERPA claim, the appropriate action is remand, not granting Defendants summary judgment on the claim. When a district court lacks subject matter jurisdiction over a state law claim, "the district court generally *must* remand the case to state court, rather than dismiss it." *Polo v. Innoventions Int'l, Ltd. Liab. Co.*, 833 F.3d 1193, 1196 (9th Cir. 2016). "Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Id.* (emphasis in original).

### B. Disputes of Material Fact Preclude Summary Judgment Over Doe #64 and Doe #117's FERPA Claims and, Regardless, Defendants Do Not Meet Their Burden.

"FERPA … provides that any law that substantially burdens the free exercise of religion must be in furtherance of a compelling government interest and must be the least restrictive means of furthering that interest." *Wasden*, 982 F.3d at 794 (citing I.C. § 73-402 (2020); *State v. White*, 271 P.3d 1217, 1220 (Idaho Ct. App. 2011)). FERPA requires plaintiffs show a burdened activity is an exercise of religion and that the burden is substantial. *White*, 271 P.3d at 1220–21 (cleaned up). This "prong is governed by the religious motivation test, the broadest of three possible tests, requiring only that the government prevented the claimant from engaging in conduct both important to them and motivated by sincere religious belief." *Wasden*, 982 F.3d at 794 (cleaned up). If the plaintiff shows such a burden, the burden shifts to the defendant "to prove that the challenged government action is in furtherance of a compelling governmental interest and is implemented by the least restrictive means." *White*, 271 P.3d at 1220 (cleaned up).

Defendants do not argue that Doe #64 and Doe #117's desire to attend and participate in church activities is not an exercise of their religion. Instead, they contest that SORA substantially burdens those activities or that SORA fails FERPA's strict scrutiny. Ds' Br. at 19–21. But material

18

disputes of fact exist as to the burdens Doe #64 and Doe #117 face and Defendants do not meet their burden of showing SORA is the least restrictive means of meeting the state's interest.

Doe #117 would like to attend services and be involved with a church in his neighborhood but does not because the church shares property with a school and daycare. Dkt. 113–9 (Dep. Doe #117) at 5–6. SORA prohibits him from being "on the premises of any school building or school grounds in this state, upon the premises or grounds of any daycare." I.C. § 18-8329(1)(a). Defendants provide two law enforcement declarations stating that it is their opinion that registrants can attend churches under such circumstances. Dkt. 113-3, ¶ 11; Dkt. 113-4, ¶¶ 13–14. But these declarations provide no foundation for that conclusion and are improper opinion testimony. *See* Plaintiffs' Evidentiary Objections. Even if that testimony is admissible, rights that protect against government overreach do "not leave us at the mercy of *noblesse oblige*" and the government cannot obtain judgment because it "promise[s to act] responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). And the declarations do not amount to a full government disavowal of prosecution in these circumstances. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2020). In other words, that these declarants are of the opinion that SORA does not prevent Doe #117 from attending a church that shares a premises with a school or daycare does not mean every law enforcement officer shares that reading, especially when the statute's plain language prohibits it. I.C. § 18-8329(1)(a).

Doe #64 testified that he is prohibited from participating in several activities in his LDS church as a direct result of being subject to SORA. He cannot work in the temple, he cannot participate in its young men/young women program, and he cannot participate in certain senior

19

missions.[6] Response to Ds' SOF 17s. Defendants wave away these impairments by arguing that Doe #64 has been actively involved in his church and held prestigious leadership positions. Ds' Br. at 17–18. But simply because he participates in *some* church activities doesn't mean the activities he is barred from aren't "important to him and motivated by sincere religious belief." *Wasden*, 982 F.3d at 794 (cleaned up).

Defendants also fail to establish that SORA is the least restrictive means of meeting its interest. Instead, they claim other laws are more restrictive. Ds' Br. at 21. Other states using more restrictive means does not mean Idaho uses the least restrictive means. As the Ninth Circuit noted, "[t]he least-restrictive-means standard is exceptionally demanding, and the government bears the burden of showing that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Wasden*, 982 F.3d at 795. And despite the Ninth Circuit signaling what would be required of Defendants, they failed to show that "an exception for houses of worship would be a less restrictive means of achieving the governmental purpose." *Id*.

The Court should deny Defendants' motion for summary judgment on Doe #64 and Doe #117's FERPA claims.

### Conclusion

Plaintiffs concede that summary judgment is appropriate for Doe #36 and Doe #115's FERPA claims. For the reasons given above, the Court should Defendants' motion as to all other claims for all other Plaintiffs.

Date:   June 26, 2025               /s/ Matthew Strugar_____
                                    Matthew Strugar (*pro hac vice*)

---

[6] Defendants' complaint that Doe #64 did not provide "meaningful supporting detail" in his deposition on how SORA interferes with his religious practice is bizarre. Ds' Br. at 18. Defendants took the deposition. If they wanted more detail, they just needed to ask for it.