RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

KYLE D. GRIGSBY, ISB #10709
GADER WREN, ISB #12108
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
kyle.grigsby@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE #36; JOHN DOE #64; JOHN DOE #115; and JOHN DOE #117,<br><br>      *Plaintiffs*,<br><br>  v.<br><br>RAÚL LABRADOR, Attorney General of the State of Idaho, *et al.*,<br><br>      *Defendants*. | Case No. 1:16-cv-00429-DCN<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. 112]** |

## INTRODUCTION

Like Congress and all other state legislatures, the Idaho legislature found that children warrant special protection from sex crimes. To provide such protection, the Idaho legislature created the Idaho sex offender registry. Consistent with the compelling objective to protect children from sex crimes, those convicted of sex offenses are required to register as a sex offender.

Registered sex offenders are required to provide the Idaho State Police certain information and some of that information is made publicly available—specifically so that parents may take reasonable steps to ensure that their children avoid contact with sex offenders. Registered sex offenders are also prohibited from living, working, or loitering within 500 feet of certain places where children frequently congregate. This regulation is designed to further protect children from sex crimes by reducing their interactions with those most likely to commit sex crimes.

Plaintiffs, individuals who have committed sex crimes against children under the age of 16, now seek summary judgment on their *Ex Post Facto* claim. They argue that the aforementioned regulations requiring them to register as a sex offender for life and prohibiting them from living, working, or loitering within 500 feet of certain places were children frequently congregate, are not part of a civil scheme designed to protect children, but are instead punishments for their crimes. But they have not met their burden of showing by the "clearest proof" that the challenged regulations are so punitive as to override the legislature's intention to create a civil scheme designed to protect children.

To overcome binding caselaw, Plaintiffs assert that new technologies make prior decisions obsolete. But this modern twist on antiquated arguments has been rejected by an overwhelming majority of circuit courts.

With no new arguments, and no evidence to meet their high burden, this Court should deny Plaintiffs' Motion for Partial Summary Judgment.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [DKT. 112]—1

**LEGAL STANDARD**

Summary judgment requires a party to demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Arguments unsupported by evidence do not create a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

**ARGUMENT**

**I.  Only the "Clearest Proof" can Override the Legislature's Intent to Create a Civil Scheme.**

The Supreme Court has established a two-part test for determining whether a statute imposes "retroactive punishment forbidden by the *Ex Post Facto* Clause." *Smith v. Doe*, 538 U.S. 84, 92 (2003). First, a court must ask if the legislature intended to inflict punishment. *Id.* If a court finds punitive intent, the inquiry ends. *Id.* If not, courts must look to the effects of the law. *Id.* If the effects are punitive, they may override the legislature's intent, but because courts "ordinarily defer to the legislature's stated intent," *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997), "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100 (1997) (cleaned up).

The clearest proof standard is a "heavy burden" to meet. *McGuire v. Marshall*, 50 F.4th 986, 1005 (11th Cir. 2022) (quoting *Hendricks*, 521 U.S. at 361). To satisfy this burden, the plaintiff must show that the challenged law is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Smith*, 538 U.S. at 92. To make the determination as to "whether the punitive effect of the law is so overwhelming that it negates the State's nonpunitive intentions," *Doe v. Settle*, 24 F.4th 932, 946 (4th Cir. 2022), courts use five of the factors outlined in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963).

Under the clearest proof standard, where there is conflicting evidence as to the challenged law's effectiveness, courts will defer to the State. *McGuire*, 50 F.4th at 1014; *Settle*, 24 F.4th at 948. And conflicting evidence of this nature does not foreclose summary judgment in favor of the State. *Nelson v. Town of Paris*, 78 F.4th 389 (7th Cir. 2023).

## II. SORNA's Registration and Notification Regulations are Constitutional Under Binding Precedent and Meet Each of the *Mendoza Martinez* factors.

Plaintiffs argue that the "collective effects" of SORNA's regulations constitute punishment. Dkt. 112-1 at 12. But courts do not consider the "cumulative effect of a mix of regulations." *Does v. Wasden*, 982 F.3d 784, 799 (9th Cir. 2020) (VanDyke, J., dissenting in part and concurring in part); *see also McGuire*, 50 F.4th 1008–1024 (independently addressing each challenged provision). Instead, courts undertake a provision-by-provision analysis to the challenged law or laws. *Doe v. Lee*, 102 F.4th 330, 340 (6th Cir. 2024). And when doing so, courts give "considerable deference" to the state legislature. *Smith*, 538 U.S. at 93.

Although Plaintiffs do not clearly address the alleged punitive effects of lifetime registration and notification regulations separately from other SORNA regulations, any argument that lifetime registration and notification regulations are punishment is foreclosed by Supreme Court and Ninth Circuit caselaw. Accordingly, Plaintiffs' claim that lifetime registration and notification regulations violate the *Ex Post Facto* Clause necessarily fails.

### A. Under binding caselaw SORNA's lifetime registration and notification regulations are not punishment.

Lifetime registration is not a punishment. In *American Civil Liberties Union of Nevada v. Masto*, Nevada regulations required high-level sex offenders to register for life. 670 F.3d 1046, 1051–52 (9th Cir. 2012). Registrants were also required to update their registration information in-person and as frequently as every 90 days. *Id.* at 1056. The Ninth Circuit noted that the challenged regulations were "indistinguishable from those at issue in *Smith*," and held that in-person and

lifetime registration for the highest-level sex offenders does not violate the *Ex Post Facto* Clause. *Id.* at 1056.

Likewise, notification regulations are not punishment. In *Smith*, the Supreme Court held that Alaska's notification regulation which made certain information about sex offenders publicly available did not constitute a punishment. 538 U.S. at 105–06. This was in part because the primary purpose of the notification regulation was to promote public safety, and individuals seeking the information needed to take an affirmative step to access the information. *Id.* at 99, 105.

Here, Plaintiffs have brought what they characterize as a facial challenge and argue that lifetime registration violates the *Ex Post Facto* Clause. Dkt. 112-1 at 6, 12. But to succeed on such a challenge, Plaintiffs must show that there are "no set of circumstances" under which the Idaho's lifetime registration requirement is constitutional. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). As the Ninth Circuit has already held that lifetime registration for at least one class of sex offenders is not a punishment, Plaintiffs cannot meet their burden. Similarly, because the Supreme Court has already held that notification regulations are not punishment, Plaintiffs' claim fails.

**B.    Even if *Smith* and *Masto* were not dispositive, Plaintiffs cannot show by the "clearest proof" that lifetime registration and notification regulations are punishment.**

> *1.    Registration and notification regulations are not regarded in history and tradition as punishment.*

Providing information to state agencies through SORNA is not consistent with history and tradition's view of punishment. The information sharing requirement is for a public safety benefit, not unlike other information regarding criminal actions.

Plaintiffs assert the lifetime registration and notification regulations resemble three historical forms of punishment: parole, probation, and shaming. Dkt. 112-1 at 14–17. Not so. Sex offender registry statutes are of modern vintage, "so it cannot be said that they have historically

been viewed as a form of punishment." *Hatton v. Bonner*, 356 F.3d 955, 965 (9th Cir. 2004) (citing *Smith*, 538 U.S. at 97).

Plaintiffs argue that the registration and notification regulations resemble probation and parole. Dkt. 112-1 at 14–15. But they do not.

"Probation and parole are closely related punishments." *McGuire*, 50 F.4th at 1017. They "entail a series of mandatory conditions" and violation permits the revocation of probation or parole. *Smith*, 538 U.S. at 101. And "[i]ndividuals on probation and parole 'do not enjoy the absolute liberty to which every citizen is entitled, but only conditional liberty properly dependent on observance of special probation [or parole] restrictions.'" *McGuire*, 50 F.4th at 1017 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Such conditional liberties might include obtaining employment, consent before changing jobs, or abstaining from alcohol. *Id.* By contrast, Idaho's registration and notification regulations only require certain information to be shared with the Idaho State Police without any conditional liberty. In other words, Idaho's registration requirement "does not entail the type of supervision that is a hallmark of probation [or] parole." *Id.*

Plaintiffs appear to suggest that because failure to register is a felony, the registration requirement is somehow converted into a punishment. Dkt. 112-1 at 15. But *Smith* rejected this argument, noting "any [such] prosecution is a proceeding separate from the individual's original offense." 538 U.S. at 101–02.

Next, Plaintiffs suggest Idaho's registration and notification regulations are analogues to shaming because some of registrants' information is publicly accessible and new technology makes that information more available to the public. Dkt. 112-1 at 16–17. But public shaming is "meant to inflict public disgrace" like standing in public with signs cataloging offenses, and involved "more than the dissemination of information." *Smith*, 538 U.S. at 97–98. And Idaho's registration

requirement is intended to promote public safety. Idaho Code § 18-8302. Indeed, the "dissemination of truthful information in furtherance of a legitimate governmental objective" is not punishment. *Smith*, 538 U.S. at 98.

The Ninth Circuit has rejected the argument that public dissemination of information in the twenty-first century is a punishment. Nearly a decade after *Smith*, and well into the modern technology age, the Ninth Circuit stated that "stigma . . . results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." *Masto*, 670 F.3d at 1056 (quoting *Smith*, 538 U.S. at 98). The court also recognized that there may be some measure of humiliation "in proportion to the extent of the publicity," but the "purpose and the principal effect of notification are to inform the public for its own safety." *Id.* Indeed *Smith* "contemplated that information from the . . . sex registration statute would be available on the internet, but determined that such internet notification was nonpunitive" because it was principally to inform the public. *U.S. v. Elk Shoulder*, 738 F.3d 948, 954 (9th. Cir. 2013).

Idaho's registration and notification regulations do not resemble parole, probation, shaming, or any other form of punishment. Accordingly, this factor weighs against Plaintiffs.

### 2. *Registration and notification regulations do not impose an affirmative disability or restraint.*

A regulation that is akin to imprisonment imposes an affirmative disability or restraint. The registration and notification regulations are not akin to imprisonment.

Plaintiffs make the conclusory statement that registration and reporting is a "substantial" disability and restraint. Dkt. 112-1 at 13. However, Plaintiffs do not explain why SORNA's registration and notification regulations constitute an affirmative disability or restraint.

Binding caselaw makes clear that Idaho's registration and notification regulations do not constitute an affirmative disability or restraint. In *Doe v. Garland*, the Ninth Circuit, relying on *Smith*, rejected the argument that public dissemination of information—including a person's criminal history—constitutes a punishment. 17 F.4th 941, 949–50 (9th Cir. 2021). The court concluded that "because [the dissemination of information] imposes no physical restraint, . . . [it] does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Id*. at 950 Applying the same standard, the Ninth Circuit in *Masto* considered whether in-person registration was an affirmative disability or restraint. The court stated: "[t]he requirement that sex offenders present themselves for fingerprinting is not akin to imprisonment . . . ." 670 F.3d at 1056–57.

Plaintiffs have generally argued that the challenged provisions lead to lost employment and housing opportunities. Dkt. 112-1 at 13. But Plaintiffs provide no material evidence to support their claim.

Any argument that registration hampers registrants' ability to obtain housing or employment has already been addressed and resolved by the Supreme Court. *Smith* recognized that requiring sex offenders to register could make it more difficult for them to obtain housing or employment, but the Court rejected the idea that those difficulties were due primarily to registration. "Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." 538 U.S. at 101. And "[l]andlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in force" and the plaintiff did not provide evidence that "substantial occupational or housing disadvantages for former sex

offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords." *Id.* at 100. Plaintiffs have only spoken generally about disadvantages to sex offender registrants, who were also convicted of felonies. *See* Dkt. 112-1. Accordingly, Plaintiffs are wholly unable to disentangle impacts to sex offenders based on their conviction, and public information regarding the existence of their conviction, from their inclusion on a registry.

Plaintiffs' attempt to distinguish *Smith* by arguing that *Smith* did not address in-person registration, but the Ninth Circuit has already upheld a sex offender registration statute requiring an in-person and lifetime registration. *Masto*, 670 F.3d at 1056; *see also Litmon v. Harris*, 768 F.3d 1237, 1243 (9th Cir. 2014). Accordingly, Plaintiffs cannot demonstrate SORNA's registration and notification regulations constitute an affirmative disability or restraint.[1]

### 3. *Registration and notification regulations do not promote the traditional aims of punishment.*

A civil statute may have a deterrent effect without being converted into a punishment. *Smith*, 538 U.S. at 102. After all, "[a]ny number of governmental programs might deter crime without imposing punishment." *Id.* And "[t]o hold that the mere presence of a deterrent purpose renders such sanctions criminal would severely undermine the Government's ability to engage in effective regulation." *Id.* (citation omitted) (cleaned up).

Plaintiffs assert that SORNA promotes traditional aims of punishment, namely incapacitation, retribution, and deterrence. Dkt. 112-1 at 17–18. Specifically, Plaintiffs appear to argue that the registration and notification regulations provide a deterrence effect. *Id.* But this argument is without legal footing.

---

[1] Plaintiffs make a passing reference to 24 C.F.R. 982.553(a)(2) which prohibits registrants from accessing public housing. But denial of public housing is not an affirmative disability or restraint. *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) (explain that denial of a noncontractual government benefit is not an affirmative disability or restraint).

A civil statute with a deterrent effect is not a *de facto* punishment. The Ninth Circuit observed that *Smith* "acknowledged that registration laws might have a deterrent effect, but held that preventing recidivism is also a legitimate objective of civil regulation." *Masto*, 670 F.3d at 1057. Nothing is different in Idaho where SORNA clearly has a legitimate objective of protecting the public. Dkt. 47 at 24. The Eleventh Circuit similarly concluded that "it cannot be true that the presence of some general deterrent effect establishes that the registration requirement is punitive" and "sex offender restrictions and [registrations] generally are intended to protect the public . . . ." *McGuire*, 50 F.4th at 1019.

Plaintiffs further assert that without some individualized determination, sex offender registration requirements are a punishment. Dkt. 112-1 at 17. But again, the Ninth Circuit has rejected this argument, concluding that "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *Ex Post Facto* Clause." *Masto*, 670 F.3d at 1057 (quoting *Smith*, 538 U.S. at 104).

Plaintiffs cannot demonstrate that SORNA's registration and notification regulations sufficiently serve traditional aims of punishment to overcome the legislature's intent to create a civil scheme. Accordingly, this factor does not favor Plaintiffs' argument.

### 4. Registration and notification regulations have a rational connection to a nonpunitive purpose.

Whether a law is rationally connected to a nonpunitive purpose "is a most—if not *the* most—significant factor." *McGuire*, 50 F.4th at 1013 (citing *Smith*, 538 U.S. at 102). To be rationally connected, the relationship between the challenged law need not have a "close or perfect fit with the nonpunitive aim." *Smith*, 538 U.S. at 103. Instead, the court will find a rational

connection so long as the asserted nonpunitive purpose is not a "sham or mere pretext." *Id.*; *Doe v. Miller*, 405 F.3d 700, 721 (8th Cir. 2005) (suggesting that this factor "is not demanding").

Without delineating between the challenged SORNA regulations, Plaintiffs argue that all challenged SORNA regulations are irrationally related to a nonpunitive purpose. Dkt. 112-1 at 19–21. Specifically, Plaintiffs argue that the challenged SORNA regulations are irrationally related to a nonpunitive purpose for three reasons: (1) there is a "nearly unanimous" consensus that registration requirements coupled with notification laws do not reduce recidivism, (2) scientific evidence suggests that the challenged SORNA regulations do not promote public safety but instead increase recidivism of registrants, and (3) SORNA regulations apply to all registrants equally. Dkt. 112-1 at 19–21. But these arguments fail.

Public notification provisions are constitutional and promote public safety. Public notification provisions, like Idaho's, have been upheld by *Smith* and its progeny. Both *Smith* and *Masto* concluded that "alerting the public to the risk of sex offenders in their community" constitutes a "legitimate non-punitive purpose." 538 U.S. at 102–03; 670 F.3d at 1057.

Law enforcement officers agree. Two law enforcement officers have stated by declaration that SORNA is a useful information-sharing tool, Dkt. 113-3 ¶ 8; 113-04 ¶ 10, and enables them to more quickly clear cases. Dkt. 113-3 ¶ 7; 113-04 ¶ 9; *see also* Dkt. 113-2 ¶ 23 (Defendants' expert, Dr. Matthew DeLisi, opining that registries allow law enforcement officers to clear cases more quickly).

There is no scientific consensus that regulations, like those challenged by Plaintiffs, increase recidivism rates. Instead, there is sharply conflicting evidence. Defendants' expert Dr. Matthew DeLisi, relying on academic research, opined that sex offender registries can reduce recidivism rates by up to 82%. *Id.* ¶ 21. And while one of Plaintiffs' experts, Dr. James Prescott,

testified that SORNA requirements may increase recidivism rates, *id.* ¶ 31, he also recognized that those same requirements may assist law enforcement in clearing cases, *id*. ¶ 24. Meaning, Idaho's sex offender registry, and its accompanying requirements, achieve the nonpunitive goal of promoting public safety.

States are free to make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Smith*, 538 U.S. at 103. In *Masto*, Plaintiffs argued *Smith* overstated the risk of sex offender recidivism and provided an expert witness who criticized methodology from the studies relied upon in *Smith*. *Masto*, 670 F.3d at 1057. Rejecting this, the court stated, "a recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community." *Id*. Notwithstanding this reality, Plaintiffs argue that because "the risk of sexual recidivism is highly correlated to age," and because the risk of recidivism declines the longer a sex offender has not reoffended, SORNA's requirements are punitive because they are not individualized. Dkt. 112-1 at 19–20. Given that both the Supreme Court and the Ninth Circuit have held that sex offender registry requirements need not be individualized, the Court need not address this argument further. *Smith*, 538 U.S. at 103; *Masto*, 670 F.3d at 1057.

With conflicting evidence as to the effectiveness of sex offender registries and the challenged requirements, it cannot be said that the challenged provisions are irrationally related to a nonpunitive purpose. *Settle*, 24 F.4th at 948 (affirming dismissal notwithstanding conflicting evidence with respect to the effectiveness of sex offender registers). Accordingly, this factor does not aid Plaintiffs.

**5.** ***Registration and notification regulations are not excessive with respect to their purpose.***

SORNA's registration and notification regulations are not excessive, but a reasonable information sharing tool that enable law enforcement to better protect the public. Plaintiffs argue that SORNA's requirements are excessive because they are more restrictive than Alaska's and are not guided by individualized determination. But again, these arguments cannot withstand even the most minimal examination.

Plaintiffs' arguments are clearly foreclosed by binding caselaw. Alaska's registry law in *Smith* may not have required lifetime and in-person registration, but the Ninth Circuit has upheld such requirements on multiple occasions. *Masto*, 670 F.3d, 1052–53; *Litmon*, 768 F.3d at 1243. And both the Supreme Court and Ninth Circuit have held that no individualized determination is required under the constitution. *Smith*, 538 U.S. at 104; *Masto*, 670 F.3d at 1057.

For these reasons, SORNA's requirements are not excessive. And this factor weighs against Plaintiffs.

Accordingly, as the *Mendoza-Martinez* factors do not support Plaintiffs demonstrating by the "clearest proof" that SORNA is punitive in effect, the SORNA's registration and notification regulations do not violate the *Ex Post Facto* Clause. Accordingly, Plaintiffs' motion should be denied related these regulations.

**C. SORNA's travel notification is not unique and falls within precedent that permits registration and other notification regulations.**

A requirement to notify the Idaho State Police if a registrant travels for seven or more days bears no meaningful difference to SORNA's other registration and notification requirements, like providing a current address. Plaintiffs apparently suggest travel is some new category of registration that merits special protection for sex offenders. *See generally* Dkt. 112-1 at 12. But this does not follow.

Plaintiffs face a heavy burden to demonstrate by the *clearest proof* that a requirement transforms a regulation into a criminal penalty. Plaintiffs have not met this burden with respect to SORNA's travel notification regulation. Like other minimally invasive registration regulations, registered sex offenders are required to provide the Idaho State Police notice of travels outside their county lasting seven of more days. *See* Idaho Code § 18-8309 (2). But this regulation leaves registrants free to travel as they wish. *Id.*

Plaintiffs' arguments regarding SORNA's travel regulations are largely the same as the failed arguments they raise with respect to SORNA's registration and notification regulations. And the Court should reject those same arguments with respect to SORNA's travel regulation.

Though Plaintiffs do not provide caselaw supporting the argument that SORNA's travel regulation is a punishment, more stringent travel regulations have been upheld by another circuit. The Eleventh Circuit examined a travel notification regulation that required notification of travel outside a registrant's county of residence for three or more days. *McGuire* 50 F.4th at 1020. The court found that none of the *Mendoza-Martinez* factors supported the argument that the regulation was a punishment. *Id*. at 1020–21. Perhaps most notably, the court recognized that the travel requirement gave law enforcement "no discretion or authority to forbid a registrant" from travel. *Id.* at 1021. Accordingly, the court held that the travel regulation did not violate the *Ex Post Facto* Clause.

Here, SORNA only requires notification of travels lasting seven or more days—a less stringent requirement than the one upheld in *McGuire*. For travels lasting fewer than seven days, no notification is necessary. Plaintiffs provide no evidence that registrants are unable to travel as a result of SORNA, rather, they merely complain about the existence of the travel notification requirement. *See* Dkt. 112-1. This does not carry the day.

SORNA's travel regulation promotes public safety. Because registrants are required to provide the Idaho State Police information related to their travels, law enforcement has access to critical information that potentially enables them to more quickly resolve missing persons cases. Dkt. 113-3 ¶ 12; Dkt. 113-4 ¶ 15. Put differently, SORNA is an effective law enforcement tool that is used to increase public safety.

Notification regarding travel is no different than other SORNA notification regulations and Plaintiff cannot demonstrate that the travel notification is a punishment. Thus, the Court should deny Plaintiffs' motion with respect to the travel regulation.

### III. Plaintiffs have not Demonstrated by the Clearest Proof that SORNA's Housing and Employment Regulations Constitute a Punishment.

To protect children, SORNA provides minimally invasive regulations prohibiting registrants from residing, working, or loitering in places where children often congregate. Idaho Code §§ 18-8327, 18-8329, 18-8331. Specifically, registrants are generally not permitted to reside, work, or knowingly loiter within 500 feet of a school or daycare, and registrants are generally not permitted to work at a school or daycare. *Id*. But these regulations are not punishments and Plaintiffs have not shown otherwise.

#### A. SORNA's housing and employment regulations are not regarded in history and tradition as punishment.

SORNA's housing and employment regulations do not resemble any form of historical punishment, including banishment. Rather, the regulations are designed to protect children from sex crimes.

To determine if history and tradition regarded something as punishment, courts regularly look at whether the current law is consistent with historical punishment. *Smith*, 538 U.S. at 98. Sex offender registries, including prohibitions related to schools and daycares are new in origin, "so it

cannot be said that they have historically been viewed as a form of punishment." *Hatton,* 356 F.3d at 965 (citing *Smith*, 538 U.S. at 97).

Plaintiffs argue that the housing and employment regulations resemble banishment. But this argument fails.

Banishment is a punishment of the "severest sort" resulting in offenders being "absolutely dead in law" and "entirely cut off from society"—one where the offender cannot "return to [his] original community nor . . . be admitted easily into a new one." *McGuire*, 50 F.4th at 1008–09. Indeed "[t]he common feature of banishment, throughout the ages, has been the *complete expulsion* of an offender from a community." *Shaw v. Patton*, 823 F.3d 556, 567 (10th Cir. 2016) (emphasis added).

SORNA's housing and employment regulations are a far cry from banishment. Rather than expelling sex offenders from the community or cutting sex offenders off from society, the housing and employment regulations merely prohibit sex offenders from engaging in certain activities in a limited 500-foot zone. Specifically, registrants (1) are not allowed to reside, work, or knowingly loiter within 500 feet of a school or daycare, (2) are generally not permitted to work at a school or daycare, and (3) are generally not permitted to visit schools or daycares. This means that registrants are still permitted to be within 500 feet of a school or daycare so long as they are engaged in a nonprohibited activity including leisure and travelling through the areas.[2] *See McGuire*, 50 F.4th at 1010.

---

[2] Plaintiffs mention in a footnote that SORNA does not define "loiter," and suggest the law is unconstitutionally vague. But the Ninth Circuit affirmed dismissal of Plaintiffs' vagueness claim. *Wasden*, 982 F.3d at 795. Further, loiter is sufficiently described in SORNA to be generally comprehensible where loitering is prohibited under certain specific circumstances—within 500 feet of a school, on a public way, and when children are present or within thirty minutes of a school or daycare activity.

Given that the housing and employment regulations do not expel registrants from the community—or even from swaths of the community—it cannot be said that the regulations resemble banishment. Therefore, this factor weighs against Plaintiffs.

### B. SORNA's housing and employment regulations do not impose an affirmative disability or restraint.

SORNA's housing and employment regulations do not impose such a restriction that they impermissibly disable or restrain registrants. These regulations are not like imprisonment.

As explained above, in examining this factor, courts consider whether a law is an affirmative disability or restraint "akin to imprisonment." *Masto*, 670 F.3d at 1056–57. As the Eleventh Circuit noted "imposition of an affirmative disability or restraint 'does not inexorably lead to the conclusion that the government has imposed punishment.'" *McGuire*, 50 F.4th at 1011 (quoting *Hendricks*, 521 U.S. at 363).

SORNA's housing and employment regulations impose certain restrictions on sex offenders, but those regulations are not so severe that a non-punitive purpose is shown by the "clearest proof." This is because notwithstanding the housing and employment regulations, registrants are largely free to work and live as they wish. Plaintiffs provide no meaningful evidence demonstrating that the housing and employment regulations impose an affirmative disability or restraint on sex offenders. This is not sufficient—they must provide by the "clearest proof" that the regulations are an affirmative disability or restraint. Dkt. 112-1. "After weighing the degree of disability imposed and the legislature's nonpunitive purpose," this Court should find that "the affirmative disability or restraint imposed by the residency and employment restrictions is not sufficiently punitive to override the legislature's expressed intent to create a civil, nonpunitive scheme." *McGuire*, 50 F.4th at 1012. Accordingly, this factor does not weigh in favor of Plaintiffs.

**C.    SORNA's housing and employment regulations do not promote the traditional aims of punishment.**

SORNA's housing and employment regulations are designed to promote public safety. Any deterrent effect that those regulations have is collateral.

Plaintiffs appear to argue that the housing and employment regulations provide a deterrence effect. Dkt. 112-1 at 17–18. But as noted above, many laws have some deterrent effect, but this does not compel finding that those laws promote traditional aims of punishment. *Masto*, 670 F.3d at 1057.

SORNA's housing and employment regulations undoubtably have some deterrence effect by limiting the interaction between registrants and children, but those regulations are not so punitive that they override the Idaho legislature's intent of public safety. This is precisely what sister circuits have held: "[e]ven though the residency and employment restrictions have some deterrent effect, [it] cannot [be] sa[id] that they are so punitive that they override the legislature's intent to enact a civil scheme." *McGuire*, 50 F.4th at 1012; *see also Shaw*, 823 F.3d at 571 ("Deterrence is not unique to punishment, for any civil regulation likely has some deterrent effect."). Like the majority of circuits, this Court should find that housing and employment regulations do not have a sufficient deterrence effect to convert them into punishments.

**D.    SORNA's housing and employment regulations have a rational connection to a nonpunitive purpose.**

As noted above, *supra* Section II(B)(4), Plaintiffs do not delineate why or how each challenged provision is irrationally related to a nonpunitive purpose. However, Plaintiffs suggest that the challenged provisions are irrationally related to nonpunitive purposes because (1) there is a "nearly unanimous" consensus that registration requirements coupled with notification laws do not reduce recidivism, (2) scientific evidence suggests that the challenged SORNA requirements do not promote public safety but instead increase recidivism of registrants, and (3) SORNA

requirements apply to all registrants equally. Dkt. 112-1 at 19–21. But these arguments fail for the same reason as articulated above, including that they have failed to demonstrate uncontroverted evidence that the regulations do not serve a nonpunitive purpose. *Supra* Section II(B)(4).

Circuit courts have nearly unanimously rejected the argument that housing and employment restrictions are punishment and violate the *Ex Post Facto* Clause when applied retroactively. And many of those regulations are far more restrictive than Idaho's. *McGuire*, 50 F.4th at 998, 1024 (upholding 2,000-foot housing and employment zone); *Town of Paris*, 78 F.4th at 393, 401 (6,500-foot housing zone); *Miller*, 405 F.3d at 723 (2,000-foot housing zone); *Shaw*, 823 F.3d at 570, 577 (2,000-foot housing zone); *Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, 112 F.4th 196, 200 (4th Cir. 2024) (1,000-foot housing zone). The only circuit to hold different is the Sixth Circuit. *Does #1-5 v. Snyder*, 834 F.3d 696, 705–06 (6th Cir. 2016). But sister circuits have not adopted *Snyder*'s reasoning, *Settle*, 24 F.4th at 951, and the Sixth Circuit itself has declined to extend *Snyder*. *Lee*, 102 F.4th at 341.

For the same reasons as articulated above, this Court should follow the majority of circuit courts and find that Idaho's housing and employment regulations are rationally connected to a nonpunitive purpose.

### E.  SORNA's housing and employment regulations are not excessive with respect to its purpose.

SORNA's housing and employment are not excessive but are reasonably designed to protect children from sexual crimes. Plaintiffs argue that these regulations are excessive because they are more restrictive than Alaska's and are not guided by individualized determination. These arguments fail as the regulations cannot be characterized as excessive.

As explained above, Idaho's housing and employment regulations are far less restrictive than similar-type regulations that have been upheld by sister circuit. And binding caselaw does not

require states to make individualized determinations to withstand constitutional scrutiny. *Smith*, 538 U.S. at 103; *Masto*, 670 F.3d at 1057.

Accordingly, this Court should find that Idaho's housing and employment regulations are not punishments and should deny Plaintiffs' motion.

CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment.

DATED: June 26, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Gader Wren*
Gader Wren
Deputy Attorney General

*Attorney for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on June 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Greg J. Fuller
fullerlawtwinfalls@gmail.com

David B. Rankin
drankin@blhny.com

Daniel S. Brown
brown_law@hotmail.com

Regina Powers
rpowers@blhny.com

Matthew Strugar
matthew@matthewstrugar.com

*Attorneys for Plaintiffs*

/s/ *Gader Wren*
Gader Wren
Deputy Attorney General