RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

KYLE D. GRIGSBY, ISB #10709
GADER WREN, ISB #12108
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
kyle.grigsby@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE #36; JOHN DOE #64; JOHN DOE #115; and JOHN DOE #117,<br><br>*Plaintiffs*,<br><br>v.<br><br>RAÚL LABRADOR, Attorney General of the State of Idaho, *et al.*,<br><br>*Defendants*. | Case No. 1:16-cv-429-DCN<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACT NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**Defendants dispute the following facts provided in Plaintiffs' Statement of Material Fact not in Dispute in Support of Motion for Partial Summary Judgment:**

Defendants generally dispute that Plaintiffs' fact statement contains material facts for Plaintiffs' *Ex Post Facto* claim that they describe as a facial claim.

Paragraph 18: Defendants dispute in part. SORNA's stated purpose is as follows: "The legislature finds that sexual offenders present a danger and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those served by the organizations. Finally, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sex crimes. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter." Idaho Code § 18-8302.

Paragraphs 19-22: While there are some studies suggesting sex offender registries do not reduce recidivism rates, Defendants dispute that all studies reach the same conclusion—in fact various studies have found the opposite. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 20, 32 (noting that a study by Dr. James Prescott found that "sex offender registration and notification law produce a 13% reduction in crime" and other studies suggest that

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—1

sex offender registers may reduce recidivism rates by up to 82%). Defendants also contend that, apart from studies, registries help law enforcement generally. Dkt. 113-3 ¶¶ 7-9; Dkt. 113-4 ¶¶ 9-11.

Paragraph 23: Defendants dispute in part. While registered sex offenders may not obtain housing or employment within 500 feet of a school or daycare, difficulties registered sex offenders may experience in obtaining housing or employment is not due to their status as a registered sex offender but their status as a convicted felon. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 7 (explaining that difficulty in obtaining housing and employment is a collateral consequence based on felony conviction and this applies to those convicted of sex crimes).

Paragraph 24: Plaintiffs have provided no Idaho-specific research demonstrating that Idaho's sex offender registry increases "the total number of sex offenses each year in Idaho." Rather, Plaintiffs' expert, Dr. Prescott, assumes that Idaho is a "'typical; jurisdiction in terms of the per capita number of registrants" and offers projections, without providing detailed methods, that Idaho's sex offender registry will cause additional sex crimes. Decl. of Matthew Strugar, ¶ 4, Ex. C (Dr. Prescott report) p. 8. But these assumptions and estimates are undercut by studies, including a study conducted by Dr. Prescott, demonstrating that sex offender registries can significantly reduce recidivism rates and crime as explained above. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 20, 32.

Paragraph 25: Defendants disagree that SORNA's statutory text suggests that it is focused on "identifying strangers who might pose a danger." Rather SORNA is designed to protect the public from sex crimes. *See* Idaho Code § 18-8302.

Paragraph 26: Sex offender registries decrease crime and recidivism rates. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 20, 32. Law enforcement officers have

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—2

stated that Idaho's sex offender registry enables law enforcement to better protect the public and enables parents to better protect their children from sex offenders and sexual predators. Dkt. 113-3 ¶¶ 9-10; Dkt. 113-4 ¶¶ 11-12.

Paragraph 27: This paragraph contains no material facts. Further, while there are some studies suggesting that registered sex offenders have "difficulty finding and keeping stable housing, employment, and form positive relationships," this view is not universal. And inasmuch as Plaintiffs suggest that these alleged difficulties stem from their status as a registered sex offender, Defendants disagree. Decl. of Gader Wren (June 26, 2025) ¶ 2, Ex. B (Dr. DeLisi report) p. 18-19 (explaining that all felons have difficulty reentering society and obtaining employment because "[r]eleased prisoners as a general group have very low socioeconomic status, are disproportionately released to disadvantaged, high-crime neighborhoods, have extensive criminal histories, have extensive substance use histories.").

Paragraph 28: This paragraph contains no material facts.  Further, online registries have significant potential to decrease recidivism rates, as explained above. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 20, 32.

Paragraph 29: SORNA does not impose regulations so burdensome that registrants are forced to live isolated lives leading to them feeling "lonely" or "unstable." Instead, Defendants contend SORNA regulations are minimally invasive and designed to protect the public. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 13.

Paragraphs 30-31: These paragraphs contain no material facts. Defendants dispute that recidivism rates drop significantly over time and recidivism rates accurately and adequately capture risk. Dr. DeLisi's expert report cites studies showing re-offense is "12.5 times greater than the prevalence of self-reported arrest." Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi

report) p. 23 There are also high rates of recidivism among sexual offenders when viewed over time: "[f]or sexual offenders recidivism prevalence is . . . at 67%." *Id*. at p. 8. Also, because many crimes are not reported, the true figure of crime is underrepresented in official statistics—meaning true recidivism rates are higher than Plaintiffs suggest. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 9, 28.

Paragraphs 35-37: These paragraphs contain no material facts. While the Static-99R assessment provides certain scores for individuals tested, Defendants dispute that the risk of recidivism for each classification (i.e. Level II) is definitively accurate. Defendants further dispute that recidivism risk always significantly decreases over time, or accurately captures true risk of crime. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 9, 28.

Paragraph 38: Lifetime registration serves important public protection functions. Defendants contend age does not suggest little-to-no risk of committing sex crime. After all, elderly individuals "account for nearly one in twenty rape arrests and nearly one in ten sexual offenses as shown by criminological research. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 24. Also, many crimes are not reported so statistics underrepresent the true figure of crime. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 9, 28. Because many crimes are not reported, they are not captured in recidivism rates. *Id.*

Paragraphs 39, 41, 43-51: These paragraphs contain no material facts. Defendants dispute in part. The Static-99R assessment provides certain scores and suggests that the risk level for sex offenders decreases overtime. Defendants dispute that the rate at which those levels decline is absolute or definitive. Further, Defendants contend the recidivism rate is higher than Plaintiffs suggest. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 9. Defendants dispute that recidivism rates drop significantly over time and recidivism rates accurately and

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—4

adequately capture risk. Dr. DeLisi's expert report cites studies showing re-offense is "12.5 times greater than the prevalence of self-reported arrest." Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 23 There are also high rates of recidivism among sexual offenders when viewed over time: "[f]or sexual offenders recidivism prevalence is…at 67%." *Id*. at p. 8.

Also, many crimes are not reported so statistics underrepresent the true figure of crime. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 9, 28. Because many crimes are not reported, they are not captured in recidivism rates. *Id.* Defendants also dispute that sex offenders with advanced age are very unlikely to commit sex crimes. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 23-24.

Paragraphs 52-56: These paragraphs contain no material facts. Notwithstanding this, Defendants dispute in part. Defendants dispute that the changing nature of the internet has "dramatically changed the form, function, and reach of registry information" and that the Idaho Sex Offender Registry provides information in a manner that is significantly different from what can be located online. Plaintiffs' expert admitted that news stories often describe sex offense convictions. Decl. of Gader Wren (June 26, 2025) ¶ 2, Ex. B (Dr. Lageson deposition transcript) p. 48:10-49:6. She also admits photos, addresses, and dates of birth of individuals are easy to find online. *Id*. at p. 55:11-17. Also, she also admits that booking photos are publicly available. *Id*. at p. 55:20-23. She stated that third parties can obtain a person's name, criminal history, address, photo, and date of birth from sources not including the registry because "I know we all know that our information is all over the internet...." *Id*. at p. 56:20-25. Dr. DeLisi also discussed criminal information being online broadly available online, and often is consistently updated. Decl. of Gader Wren (June 26, 2025) ¶ 1, Ex. A (Dr. DeLisi report) p. 35.

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—5

Paragraphs 58-60: These paragraphs contain no material facts. Notwithstanding this, Defendants dispute these paragraphs in part. Defendants dispute that Plaintiffs have provided evidence that the Idaho registry creates negative effects for Idaho registrants. Instead, Plaintiffs argue in a general fashion that registries affect registrants *See* Strugar Decl. Ex. E (Dr. Lageson report) ¶ 57-71, 17-18. Defendants dispute that Plaintiffs have provided evidence specific to Idaho's Sex Offender Registry's effects generally or on Idaho registrants specifically. *See* Plaintiffs Statement of Material Fact Not in Dispute in Support of Motion for Partial Summary Judgment. Dr. Lageson admitted she was not aware of any studies conducted or focused on the effects specifically of the Idaho sex offender registry. Decl. of Gader Wren (June 26, 2025) ¶ 2, Ex. B (Dr. Lageson deposition transcript) p. 36:25-37:3. Additionally, Defendants disagree that online information has "proliferat[ed]" for the reasons explained above in response to Paragraphs 52-54, 56.

DATED: June 26, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


*/s/ Gader Wren*
Gader Wren
Deputy Attorney General

*Attorney for Defendants*


DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT on June 26, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Greg J. Fuller
fullerlawtwinfalls@gmail.com

David B. Rankin
drankin@blhny.com

Daniel S. Brown
brown_law@hotmail.com

Regina Powers
rpowers@blhny.com

Matthew Strugar
matthew@matthewstrugar.com

*Attorneys for Plaintiffs*

*/s/ Gader Wren*
Gader Wren
Deputy Attorney General

DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT—7