Matthew Strugar (*pro hac vice*)
LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
T: (323) 696-2299
matthew@matthewstrugar.com

David B. Rankin (*pro hac vice*)
BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
T: (212) 277-5825
drankin@blhny.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE #36, JOHN DOE #64, JOHN DOE #115, and JOHN DOE #117, <br><br> Plaintiffs, <br><br> v. <br><br> RAÚL LABRADOR, Attorney General of the State of Idaho; and COLONEL BILL GARDINER, Director of the Idaho State Police, in their official capacities, <br><br> Defendants. | Case No. 1:16-cv-429-DCN <br><br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 112)** |

**Table of Contents**

**Introduction**..........................................................................................................................**1**

**Argument**...............................................................................................................................**1**

**I.    Plaintiffs Challenge SORA in its Entirety and Cases Involving First-Generation Registration Laws Do Not Control Plaintiffs' Ex Post Facto Claim.**......................................**1**

**II.    The *Mendoza-Martinez* Factors Show SORA Is Punitive.**...................................................**3**

    A.    SORA Imposes Severe Obligations, Disabilities, and Restraints. .......................................4

    B.    SORA Imposes Sanctions Historically Regarded as Punishment....................................5

    C.    SORA Serves Traditional Aims of Punishment. ..............................................................6

    D.    SORA Is Not Rationally Related to Non-Punitive Interests. ............................................6

    E.    SORA Is Excessive. .........................................................................................................9

**Conclusion** ...........................................................................................................................**10**

**Introduction**

Defendants' opposition to Plaintiffs' motion for partial summary judgment, Dkt. 115 (Ds' Opp.) grounds itself in the same mistakes as their affirmative summary judgment motion: that the Court must analyze SORA provision-by-provision and that precedent upholding first generation sex offender registration laws controls the outcome here. They are wrong on both counts.

If one analyzes SORA in its entirety, the intent-effects test outlined in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) shows the law constitutes punishment, and therefore violates the Ex Post Facto Clause.

**Argument**

**I.      Plaintiffs Challenge SORA in its Entirety and Cases Involving First-Generation Registration Laws Do Not Control Plaintiffs' Ex Post Facto Claim.**

Defendants' opposition is based on the same flaw that is fatal to their motion for summary judgement: insisting on a provision-by-provision analysis of SORA instead of analyzing SORA as a whole. Plaintiffs' opposition to defendants' motion for summary judgment details why this approach is mistaken. Dkt. 114 at 4–6. In short, this is because the Ninth Circuit instructed this Court to "consider the effects of SORA's regulatory scheme, *as amended and in its entirety*, in determining whether it runs afoul of the Constitution." *Does v. Wasden*, 982 F.3d 784, 792 (9th Cir. 2020) (emphasis added); *id*. at 799 (VanDyke, J., dissenting in part and concurring in part) (concurring the Court should "consider whether the cumulative effect of a mix of regulations like Idaho's might be punitive in toto").

Similarly, the Ninth Circuit held that cases addressing first-generation registration laws do not foreclose Plaintiffs' Ex Post Facto claim. *Wasden*, 982 F.3d at 792. These first-generation laws essentially involved registration with local authorities and notification (*i.e.*, publication). And courts upheld their retroactive application. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 92 (2003); *ACLU*

1

*v. Masto*, 670 F.3d 1046 (9th Cir. 2012). Legislatures, including Idaho's, then used that judicial approval to ratchet the restraints that sex offender laws impose. Over three decades of amendments, Idaho's legislature transformed SORA from a list of convictions in a police database to a complex system of reporting and control. *See* Dkts. 112-9 (summary of legislative evolution of Idaho's registration law); 112-8 (summary of SORA's current obligations, disabilities, and restraints).

Defendants defend SORA by claiming no crank of the ratchet alone is punitive and no single aspect of any disability, restraint, or obligation alone has a punitive effect sufficient to overcome the legislature's regulatory intent. But the Ninth Circuit instructed this Court not to look at any individual turn of the ratchet, but to assess the totality of the pressure the law now inflicts. *Wasden*, 982 F.3d at 792.[1] Just as an individual component of probation may not alone be punitive, the "probation system" is still punishment. *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987).

Every case Defendants cite in their opposition brief either examines a first-generation registration law that imposed far fewer disabilities than SORA, examines a single provision or restriction of a registration law, or does a provision-by-provision approach instead of assessing a law in its totality. Defendants' reliance on cases involving first-generation laws is heavy: *Smith v. Doe* (twenty-four citations); *ACLU v. Masto* (fifteen citations); *U.S. v. Elk Shoulder,* 738 F.3d 948 (9th. Cir. 2013) (one citation); and *Litmon v. Harris*, 768 F.3d 1237 (9th Cir. 2014) (two citations). Defendants have claimed these same cases foreclose Plaintiffs' Ex Post Facto claim before, *see* Dkts. 15-1 at 15–19; 40-1 at 6–10, but the Ninth Circuit rebuffed them. It found *Smith* and the

---

[1] This is consistent with precedent. *Doe v. New Hampshire*, 111 A.3d 1077, 1100 (N.H. 2015) ("No one amendment or provision is determinative, but the aggregate … punitive effects clearly outweigh the regulatory intent of the act."); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011) ("No one change compels our conclusion that [the statute] is punitive. It is a matter of degree whether a statute is so punitive that its retroactive application is unconstitutional."); *Wallace v. State*, 905 N.E.2d 371, 374–77, 384 (Ind. 2019).

prior Ninth Circuit precedent "may provide guidance," but they do not control or "foreclose a finding that SORA is punitive." *Wasden*, 982 F.3d at 792. It is error to rely on cases upholding first-generation registry laws that involved only "registration and notification." *Id*. (disapproving dismissal of Plaintiffs' claims based on *Smith*, *Masto*,[2] *Elk Shoulder*, and *Litmon*). Rather, the Ninth Circuit found that cases involving modern super-registration statutes—laws that impose "retroactively applied residency, travel, or employment restrictions"—are distinguishable and should guide this case. *Id*. at 792 & n.2 (citing *Doe v. Snyder*, 834 F.3d 696, 705–06 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017); *New Hampshire*, 111 A.3d at 1094–95, 1100; *Riley v. N.J. State Parole Bd.*, 98 A.3d 544, 558–60 (N.J. 2014); *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1025–30 (Okla. 2013); *Commonwealth v. Baker*, 295 S.W.3d 437, 444 (Ky. 2009); and *State v. Letalien*, 985 A.2d 4, 22–23 (Me. 2009)).

As with their own motion for summary judgment on Plaintiffs' Ex Post Facto claim, Defendants' provision-by-provision approach and reliance on first-generation precedent is fatal to their entire approach. Because Defendants fail to address SORA as a whole, they fail to rebut Plaintiffs' showing that they are entitled to summary judgment on their Ex Post Facto claim.[3]

## II.     The *Mendoza-Martinez* Factors Show SORA Is Punitive.

Because much of Defendants' opposition to Plaintiffs' motion for partial summary judgment tracks their motion for summary judgment, Plaintiffs have already addressed many of

---

[2] *Masto* also involved residency and movement restrictions, but the defendants avoided review of those provisions by *unequivocally conceding that the state could not apply those provisions retroactively*, thus mooting the dispute on those provisions. 670 F.3d at 1050, 1064–65.

[3] Defendants also wrongly claim that Plaintiffs "must show that that there are 'no set of circumstances'" under which SORA is constitutional. Ds' Opp. at 5. In the order denying Defendants' third motion to dismiss, this Court rejected the 'no set of circumstances' test and recognized the test is whether the effects of SORA are punitive as they are "generally felt by those who [are] subject to them." Dkt. 90 at 13–16 (cleaned up).

Defendants' arguments in Plaintiffs' opposition to Defendants' motion for summary judgment, Dkt. 114, and incorporate those arguments by reference here. Plaintiffs address some of Defendants' specific arguments in their opposition as to each of the *Mendoza-Martinez* factors below.

### A. SORA Imposes Severe Obligations, Disabilities, and Restraints.

Defendants' single-provision approach dodges SORA's significant and numerous restrictions. The law requires registrants to report and disclose extensive personal information, including nicknames, online usernames, phone numbers, addresses, schools, employers, vehicles, licenses, and physical appearance. I.C. § 18-8305. Updates to most of this information must be reported in person within two working days or reported "immediately." I.C. § 18-8309(1), (3).

Even the most minor events—like mowing a neighbor's lawn weekly or using a new IP address or public Wi-Fi—triggers mandatory reporting. I.C. §§ 18-8303(3), (6); 18-8309(3); *see also* Dkt. 112-14, Nos. 38–40 (admitting use of a new IP address requires immediate reporting).

SORA also prohibits registrants from living within 500 feet of schools, daycares, or properties posted with a notice that they are used by a school or daycare, and from loitering near such properties whenever children are present. I.C. § 18-8329(b), (d). There is no requirement a property must be used by a school or daycare, meaning a private property owner could post such a notice, making it a crime for any registrant within 500 feet to "loiter" in the area, including in a registrants' own backyard. I.C. § 18-8329(b), (d).

Registrants are barred from school and daycare premises if minors are or will soon be present, restricting their ability to parent or participate in school activities. I.C. § 18-8329(a), (c). They are also prohibited from working at any daycare facility. I.C. § 18-8327(1).

Traveling for more than seven days requires advance notice, and the Idaho State Police notify the destination jurisdiction, even if that jurisdiction doesn't require registration or even

4

notification. I.C. § 18-8309(2). SORA requires registrants who move out of Idaho to register in their new jurisdiction within two days and remain on the Idaho registry until they do so—even if the new state doesn't require registration. I.C. § 18-8307(4)(a).

Violations of SORA are felonies punishable by up to ten years and may lead to revocation of supervised release. I.C. § 18-8311. Registrants must also pay an annual $80 fee. I.C. § 18-8307(2). These obligations last a lifetime. I.C. § 18-8307(7).

Defendants assert that a law must be "akin to imprisonment" to impose an affirmative disability or restraint. Ds' Opp. at 7, 17 (citing *Masto*, 670 F.3d at 1056–57). They're wrong, and the assertion is based on cherry-picked language that doesn't support their claim. *Masto* recognized that *Smith* noted that the disabilities at issue in that case were not akin to imprisonment. *Masto*, 670 F.3d at 1056–57 (citing *Smith*, 538 U.S. at 100). But neither case purported to set that as the standard. *Smith* simply noted that imprisonment is "the paradigmatic affirmative disability or restraint" before continuing to analyze analogies to other punishments. *Smith*, 538 U.S. at 100.

**B. SORA Imposes Sanctions Historically Regarded as Punishment.**

Plaintiffs' opening brief and opposition to Defendants' motion detail how SORA, as a whole, imposes sanctions historically regarded as punishment—specifically supervised release (probation and parole), banishment, and shaming. Dkts. 112-1 at 15–17; 114 at 10–12.

Defendants insist that for a regulatory scheme to impose sanctions historically regarded as punishment, it must match the historic punishment exactly. Ds' Opp. at 6, 16. Defendants go so far as to assert that because sex offender registration laws are a product of the late twentieth century, they can *never* be considered akin to a historic punishment. *Id*. at 15–16. Again, Defendants set an artificial standard. A law need not impose burdens identical to a traditionally recognized form of punishment, so long as the burden sufficiently resembles those typically associated with that

5

punishment. *See* Dkt. 114 at 11–12 (compiling authority); *see also Snyder*, 834 F.3d at 703 (registration law not "identical to any traditional punishments" but met "the general definition of punishment" and had "much in common" with supervised release, banishment, and public shaming).

Defendants' claim that SORA cannot be considered analogous to supervised release because violations of SORA are prosecuted "'separate from the individual's original offense,'" Ds' Opp. at 6 (quoting *Smith*, 538 U.S. at 101–02), misreads SORA. As with supervised release, violating SORA can result in revocation of release and reinstatement of a registrant's underlying sentence. I.C. § 18-8311; *see also Nelson v. Town of Paris*, 78 F.4th 389, 396 (7th Cir. 2023) ("key characteristic of supervised release is the supervisor's ability to seek revocation of the release based on the original offense").

### C. SORA Serves Traditional Aims of Punishment.

Plaintiffs' opening brief and opposition to Defendants' motion detail how SORA advances the traditional aims of punishment: incapacitation, retribution, and deterrence. Dkt. 112-1 at 17–18; 114 at 13. Many courts have recognized the seemingly obvious point that next-generation sex offender registries advance the traditional aims of punishment, Dkt. 114 at 13 (compiling authority), and Defendants concede that SORA seeks both deterrence and incapacitation (by "limiting the interactions between registrants and children"). Ds' Opp. at 9–10, 18.

Defendants claim SORA doesn't "sufficiently serve the traditional aims of punishment to overcome the legislature's intent to create a civil scheme." Ds' Opp. at 10. This erroneously suggests that this factor alone must overcome the legislature's civil intent. Rather, it is a multi-factor test, and although this factor favors Plaintiffs, it need not alone prove Plaintiff's case.

### D. SORA Is Not Rationally Related to Non-Punitive Interests.

As Plaintiffs established in their motion for partial summary judgment and opposition to Defendants' motion for summary judgment, SORA is irrationally related to its nonpunitive purpose

for a variety of reasons. Most notably, the scientific evidence is nearly unanimous that laws like SORA do not decrease recidivism. The law also fails to distinguish between the large percentage of people whose risk of reoffending is equal to or lower than the general male population, and those who do present a higher risk. Dkts. 112-1 at 19–21; 114 at 13–17.

The *only* evidence that Defendants cite in their opposition is a mischaracterization of a single study on the effect of a sex offender law on recidivism. Ds' Opp. at 11 ("Defendants' expert Dr. Matthew DeLisi, relying on academic research, opined that sex offender registries can reduce recidivism rates by up to 82%."). As Plaintiffs' opposition to Defendants' summary judgment motion explains, this number comes from a study involving a *private* (i.e., available only to law enforcement) registry, and studied general criminal recidivism, not sexual offense recidivism. Dkt. 114 at 14. When looking at public registries and sexual offense recidivism, the authors of the very study Defendants' expert relies on found a lack of efficacy. *Id*. (quoting study's authors, "SORN policies demonstrate no effect on recidivism"). Unlike Defendants' mischaracterization of a single study, Plaintiffs' evidence is grounded in decades of empirical research from the leaders in this field. Dkts. 112-2 at Nos. 19–51; 112-10 (expert report of Dr. James J. Prescott); 112-11 (expert report of Dr. Karl Hanson).[4] And Courts have increasingly recognized that registries don't work. *See, e.g.*, *Ortiz v. Breslin*, 142 S. Ct. 914, 916 (2022) (Sotomayor, J., re. denial of certiorari); *People v. Betts*, 968 N.W.2d 497, 514 (Mich. 2021); *Cornelio v. Connecticut*, 32 F.4th 160, 173 & n.7 (2d Cir. 2022); *State v. Hinman*, 530 P.3d 1271, 1278 (Mont. 2023); *In re T.B.*, 489 P.3d 752, 768 (Colo. 2021).

---

[4] Defendants appear to assert that Plaintiffs must show a scientific consensus that registries *increase* sex offense recidivism. Ds' Opp. at 11–12. That's wrong; to show a lack of rational relationship to a non-punitive purpose, Plaintiffs need only show that registration laws do not decrease sex offense recidivism. The fact that they likely *increase* sex offense recidivism just further emphasizes how detached registries are from their asserted purposes.

Defendants do not meaningfully contest Plaintiffs' factual showing that (1) recidivism rates vary considerably across all people with a history of sexual crime and are based on well-known factors; (2) the longer people remain in the community without a new sex offense conviction, and the older people get, the less likely they are to recidivate; and (3) the recidivism risk of many registrants has declined to baseline levels comparable to the general male population.

Defendants' do claim that recidivism rates do not decline as Plaintiffs' experts assert they do, relying on page 28 of the report of Defendant's expert Dr. DeLisi. Dkt. 115-1 at 5–6. But on that page, DeLisi analyzes *cumulative* recidivism rates. Dkt. 115-3 at 28. Cumulative rates by definition increase; they cannot go down. What does go down is the hazard rate, that is, the likelihood of committing a new offense when someone has remained offense-free in the community. Dkt. 112-11 at ¶¶ 67–84. Defendants' expert produces no evidence to contest this finding. In fact, he makes no comment at all on the studies documenting the predictable time-free effects on the hazard rate of sexual recidivism.

Unable to rebut the science, Defendants try to muddy the waters by repeatedly asserting that sexual offenses are underreported. Dkt. 115-1 at 5–6. This is not contested, but it is irrelevant. The science compares non-registrants and registrants because unreported offending occurs in both groups. For the same reason, underreporting has no bearing on the research establishing that registries don't work. *See Commonwealth v. Torsilieri*, 232 A.3d 567, 594, n.22 (Pa. 2020) ("the relevant question should not be whether convicted sexual offenders are committing unreported sexual crimes, but rather whether sexual offenders commit more sexual crimes than other groups not subject to similar registration laws"). Without the comparison between registrants and non-registrants, Defendants' argument supports subjecting all Idaho residents to SORA (or none at all).

Defendants' argument about a registry being a useful tool for law enforcement defends the wrong statute; if SORA were merely a private registry for law enforcement, Plaintiffs would have never brought this case. The question is not whether *a* registry is rational, but whether *this* registry is rational. Whether registration assists law enforcement has no bearing on the myriad disabilities, obligations, and restraints the modern version of SORA imposes.

Defendants are also wrong that any scintilla of evidence is enough to meet their burden not only on this prong but on the entire test. Numerous courts have found that scant evidence supporting a registry tips this factor in favor of the challenger or that registration laws can still fail the overall intent-effects test even when a state shows a rational relationship to a non-punitive interest. *Snyder*, 834 F.3d at 704–05; *Does v. Whitmer*, 751 F.Supp.761, 792–95 (E.D. Mich. 2024); *Betts*, 968 N.W.2d at 512–13; *New Hampshire*, 111 A.3d at 1099–1100; *Starkey*, 305 P.3d at 1028–30; *Wallace*, 905 N.E.2d at 382–83; *Letalien*, 985 A.2d at 22; *Doe v. Alaska*, 189 P.3d 999, 1016 (Alaska 2008).

As the record establishes, SORA imposes pointless restrictions on thousands of people, many of whom have lived successfully in the community for decades. Without any evidence of its effectiveness, it is not rationally related to a non-punitive interest.

### E.  SORA Is Excessive.

As with the rest of their opposition, Defendants do not address SORA's excessiveness as a whole—the byzantine code of endless requirements, the life term, the stigmatization, and the lack of any individualized assessment—but instead argue certain provisions are not excessive for the same reasons Defendants claim they are (individually) rational. Ds' Opp. at 13, 19–20.

SORA is excessive for three core reasons. First, SORA fails to distinguish between the large percentage of people who present a lower risk of re-offending (especially over time) and the

9

much smaller percentage of people who present a higher risk of re-offending (although that risk also decreases over time).

Second, it applies its full panoply of disabilities for life, despite the fact that risk drops dramatically over time in the community and with age. After ten years recidivism-free, 74.3% of people with a sexual conviction will present no more risk of recidivism than people with a non-sexual conviction; after 15 years, that increases to 96%. Dkt 112-2, No. 47. But SORA includes hundreds of people who have lived offense free in the community for decades. *Id*., No. 16–17. And recidivism rates drop precipitously with age such that very few people over the age of 60 present any significant risk for sexual recidivism. *Id*., No. 49. Still, SORA includes more than 1,600 people who are 60 years old or older. *Id*., No. 14.

Third, SORA imposes burdens that serve no purpose. For instance, registrants must report setting up an online account on a newspaper's website, mowing a neighbor's lawn more than 30 times in a year, or even connecting to a wireless network at a cafe. It requires people who did not commit crimes against children to be subject to a dramatic set of regulations to distance them from children. And it even seeks to follow registrants outside of Idaho's borders.

As the Sixth Circuit found in *Snyder*, "while the statute's efficacy is at best unclear, its negative effects are plain on the law's face. … [The law's] punitive effects ... far exceed even a generous assessment of [its] salutary effects." 834 F.3d at 705.

### Conclusion

The Court should grant Plaintiffs' motion for partial summary judgment and order further briefing on the remedy.

Date:   July 10, 2025              /s/ Matthew Strugar_____
                                  Matthew Strugar (*pro hac vice*)

**Certificate of Service**

I hereby certify that on July 10, 2025, I filed electronically the foregoing document with the Clerk of the Court using the CM/ECF filing system.

Filing this document through the Court's CM/ECF system caused true and correct copy be served on the participants listed below, as more fully reflected on the Notice of Electronic Filing:

James E. M. Craig
Kyle Grigsby
Gaden Wren
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
james.craig@ag.idaho.gov
kyle.grigsby@ag.idaho.gov
gaden.wren@ag.iaho.gov

Attorneys for Defendants


Date:   July 10, 2025                    /s/ Matthew Strugar_____
                                         Matthew Strugar (*pro hac vice*)