RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

KYLE D. GRIGSBY, ISB #10709
Deputy Attorney General
GADER WREN, ISB #12108
Assistant Solicitor General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
kyle.grigsby@ag.idaho.gov
gader.wren@ag.idaho.gov

*Attorneys for Defendants*


# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO


| | |
|---|---|
| JANE DOE #36; JOHN DOE #64; JOHN DOE #115; and JOHN DOE #117, | Case No. 1:16-cv-00429-DCN |
| *Plaintiffs*, | **REPLY IN SUPPORT OF DEFEND-ANTS' MOTION FOR SUMMARY JUDGMENT [DKT 113]** |
| v. | |
| RAÚL LABRADOR, Attorney General of the State of Idaho, *et al.*, | |
| *Defendants*. | |

**INTRODUCTION**

Against the vast majority of circuit courts, Plaintiffs suggest that SORNA's registration, notification, travel, housing, and employment regulations constitute a punishment. This Court should follow the well-reasoned views of the Fourth, Seventh, Tenth, and Eleventh Circuits, which have held that regulations more restrictive than Idaho's are not a punishment. Plaintiffs have not met their heavy burden to show by the "clearest proof" that SORNA is a punishment. Instead, Plaintiffs suggest the Idaho legislature should have taken a different approach. But, under the "clearest proof" standard, legislatures need not make the best choice or a choice that courts necessarily agree with, only a reasonable choice.

Plaintiffs' FERPA claims fare no better. While Plaintiffs argue that they have standing, they cannot demonstrate an injury or that their alleged injury is traceable to SORNA. Nor can they show a waiver of sovereign immunity. Further, SORNA withstands any level of scrutiny on the merits.

For these reasons, the Court should grant Defendants' Motion for Summary Judgment.

**ARGUMENT**

### I.   The *Ex Post Facto* and Double Jeopardy Claims Require Courts to Engage in a Provision-by-Provision Analysis.

In addressing *Ex Post Facto* challenges, the Ninth Circuit long ago adopted a provision-by-provision analysis when a plaintiff challenges more than one provision of a sex offender registry. In *Russell v. Gregoire*, 124 F.3d 1079, 1082 (9th Cir. 1997), a sex offender argued that retroactive application of Washington's registration and notification laws violated the *Ex Post Facto* Clause. Applying the clearest proof standard and the *Martinez-Mendoza* factors, the court separately analyzed the registration and notification regulations. *Id*. at 1087–93. The court first concluded that none of the *Mendoza-Martinez* factors "support a finding that registration has a punitive effect" and held that registration was not a punishment. *Id*. at 1089. The court then held that "as a matter of law, the possible effects of the notification provision are not so punitive in fact as

to prevent us from legitimately viewing the Act as regulatory in nature." *Id*. at 1093.

*Smith v. Doe*, 538 U.S. 84 (2003) does not instruct courts to do away with a provision-by-provision approach. The Court applied some of the *Mendoza–Martinez* factors separately to the registration and notification regulations and applied others jointly. *Id*. at 97–105. But at no point did the Court consider the cumulative effect of the regulations. Instead, the Court quickly concluded that the challenged law did not constitute a punishment. *Id.* at 105.

Plaintiffs argue this court must skip a provision-by-provision approach because *Wasden* instructs the Court to "consider the effects of SOR[N]A's regulatory scheme, as amended and in its entirety, in determining whether it runs afoul of the Constitution."[1] Dkt. 114 at 4. (citing *Doe v. Wasden*, 982 F.3d 784, 792 (9th Cir. 2020). But this does not mean that the Court must address all challenged provisions *collectively* under the *Martinez-Mendoza* factors. After all, the Ninth Circuit adopted a provision-by-provision approach in *Russell*, and there the court did not consider any cumulative effect. 124 F.3d at 1087–93. And despite Plaintiffs' arguments, *Wasden* must be interpreted consistently with *Russell* because subsequent judicial panels are bound by prior panel decisions. *Naruto v. Slater*, 888 F.3d 418, 421 (9th Cir. 2018). Thus, when Judge VanDyke observed in his concurrence that the Ninth Circuit had not previously considered "the cumulative effect of a mix of regulations," that may be in part because under *Russell* courts do not do so. *Wasden*, 982 F.3d at 799–800 (VanDyke, J., dissenting in part and concurring in part).

Read properly, when the Ninth Circuit instructed the Court to consider SORNA in its entirety, it required only that the Court analyze all of the provisions of SORNA rather than a subset. This makes sense not only in light of *Russell*, but also because a cumulative effects test is not

---

[1] Plaintiffs also argue that the Sixth Circuit does not follow a provision-by-provision approach but instead follows an *in-toto* approach. Dkt. 114 at 5. To the contrary, the Sixth Circuit has affirmatively held that *Ex Post Facto* challenges to sex offender registries require a provision-by- provision approach. *Doe v. Lee*, 102 F.4th 330, 340 (6th Cir. 2024).

conducive to the application of the *Martinez-Mendoza* factors.[2] *Infra* Section II.

## II. The Provision-by-Provision and Cumulative Effects Approaches Require the Same Analysis and Yield the Same Outcome.

Even under a cumulative effects approach, Defendants' arguments remain similar, and the result is no different: SORNA does not impose a punishment. Plaintiffs assert that Defendants, by advancing a provision-by-provision argument have "tacitly acknowledged that viewed as a totality, SOR[N]A's scheme constitutes punishment" and are therefore not entitled to summary judgment. Dkt. 114 at 6. Not so. And for the reasons below, this argument fails.

### A. *Snyder* and state supreme court decisions are of little value.

Regardless of which approach the Court takes, *McGuire v. Marshall*, 50 F.4th 986 (11th Cir. 2022) is instructive. Far from being an outlier, *McGuire* follows the majority of circuit courts, which have almost universally upheld sex offender registries against constitutional challenges. Dkt. 113-1 at 5 (collecting cases). Instead, Plaintiffs ask this Court to follow various state supreme courts holding that sex offender registry regulations violate *state constitutions*—including the Alaska Supreme Court which expressly disagreed with *Smith* and adopted "the compelling comments of dissenting justices in *Smith* . . . . " *Doe v. State*, 189 P.3d 999, 1018 (Alaska 2008).

It appears only one circuit court has held that housing and employment regulations violate the *Ex Post Facto* Clause, and this Court should not follow it because it relied on reasoning contrary to Ninth Circuit precedent. In *Does #1-5 v. Snyder*, the Sixth Circuit held that two provisions of the Michigan sex offender registry violated the *Ex Post Facto* Clause, including a regulation that prohibited sex offenders from living, working, and loitering within 1,000 feet of schools. 834 F.3d 696, 698, 705–06 (6th Cir. 2016). Critical to its holding, the court concluded that the

---

[2] Inasmuch as Plaintiffs suggest that the cumulative effects test would result in the entire invalidation or validation of SORNA, such a result is unreasonable. That is why circuits take a provision-by-provision approach. *Nelson v. Town of Paris,* 78 F.4th 389, 401 (7th Cir. 2023) (upholding one regulation but striking down another).

regulation had no rational connection to its non-punitive purpose because *some* studies showed that sex offender registries increase recidivism. *Id*. at 704. It also criticized the absence of individual assessments, which are not required by *Smith*. *Id*. at 705. But the Ninth Circuit has rejected this reasoning because "a recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community." *Am. Civ. Union of Nev. v. Masto*, 670 F.3d 1046, 1057 (9th Cir. 2012). Accordingly, this Court should not follow the Sixth Circuit.

### B. The cumulative effect of the challenged regulations does not amount to punishment.

Defendants have shown each of the challenged provisions does not constitute punishment. And under the *Martinez-Mendoza* factors, they do not collectively constitute a punishment.

*Affirmative disability and restraint*. Plaintiffs argue that the challenged regulations collectively impose an affirmative disability or restraint because they require registrants to frequently contact law enforcement and because they restrict where registrants may "live, work, [or] move."[3] Dkt. 114 at 9–10. But whether a regulation or a collective group of regulations imposes an affirmative disability or restraint is measured against whether the regulations resemble imprisonment— "the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100.

Here, the challenged regulations do not resemble imprisonment—even when viewed collectively. Though registrants must communicate certain information with law enforcement and are prohibited from working at schools and living or loitering within 500 feet of a school or daycare, this is very different than confining registrants to a 50 square-foot concrete cell in a building surrounded by razor wire and monitored by armed guards. Thus, this factor favors Defendants.

*Traditional punishment*. Plaintiffs suggest SORNA's restrictions, taken collectively, are

---

[3] The challenged regulations do not prohibit registrants from moving or traveling near schools, nor does it prohibit restraints from shopping or going to church near schools. It only prohibits registrants from working at schools and daycares and living or loitering near schools and daycares.

akin to banishment, probation, and parole. Dkt. 114 at 11. Not so. Banishment results in a person being "absolutely dead in law." *McGuire*, 50 F.4th at 1008–09; *see also Shaw v. Patton*, 823 F.3d 567 (10th Cir. 2016) (banishment is complete expulsion from the community). Plaintiffs suggest such a definition is "a nearly impossible bar," and this factor is satisfied if regulations resemble a traditional punishment in just "some respects." Dkt. 114 at 11 (quoting *Snyder*, 834 F.3d at 701–02). But this improperly asks the Court to water-down the "clearest proof" standard.

*Smith* requires courts to assess whether SORNA resembles banishment, not just some elements of banishment. *Smith*, 538 U.S. at 101. Thus, requiring registrants to communicate information with law enforcement and a prohibition on working at schools or daycares and living or loitering within 500 feet of schools or daycares, is nothing like being "absolutely dead in the law."

The cumulative effect of the challenged regulations does not resemble probation or parole. "Individuals on probation and parole 'do not enjoy the absolute liberty to which every citizen is entitled.'" *McGuire*, 50 F.4th at 1017 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Instead, they are subject to random drug tests, home visits, required community service, and a host of other requirements. *Shaw*, 823 F.3d 556, 565 n.14. *Smith* held that registration and notification regulations do not resemble probation or parole. *Smith*, 538 U.S. at 101. And most circuits have held the same about housing and employment regulations.[4] *McGuire*, 50 F.4th at 1008; *Shaw*, 823 F.3d at 562. And even when considered collectively, it cannot be said that requiring registrants to communicate information with police, and prohibiting registrants from living, working, or loitering near places where children gather is comparable to probation or parole. After all, registrants largely remain free to move about as they wish. And nothing in SORNA enables law enforcement

---

[4] While the Sixth Circuit has held that housing and employment regulations resemble probation and parole, it did so despite acknowledging that these regulations involved a lesser "level of individual supervision . . . than is typical of parole or probation." *Snyder*, 834 F.3d at 703. But again, this is unconvincing and unduly reduces Plaintiffs' burden.

to subject registrants to random house checks, drug tests, or impose community service require-

ments. Thus, This factor favors Defendants.

*Traditional aims of punishment*. Plaintiffs assert that because the challenged regulations

have some deterrent effect, this factor tips in their favor. Dkt. 114 at 13. They are wrong. "Any

number of governmental programs might deter crime without imposing punishment," so long as

the primary purpose of those regulations is nonpunitive. *Smith*, 538 U.S. at 102. As the challenged

regulations' primary purpose is to improve public safety, they do not sufficiently advance the aims

of punishment. Idaho Code § 18-8302; *Masto*, 670 F.3d at 1056 (registration and notification reg-

ulations); *McGuire*, 50 F.4th at 1012, 1021 (travel, housing, and employment regulations).[5]

*Rationally related to a nonpunitive purpose*. Plaintiffs argue that the challenged regulations

are irrationally related to a nonpunitive purpose because, they argue, there is nearly unanimous

scientific consensus that notification laws do not reduce recidivism and the challenged regulations

"increase recidivism of registrants." Dkt. 114 at 13–14. They also argue that lifetime registration

is irrational because older individuals and those on the registry for long periods of time have lower

recidivism risk. Dkt. 114 at 15–16. But these arguments cannot withstand scrutiny.

There is no scientific consensus that sex offender registries, and their accompanying regu-

lations, do not reduce recidivism and there is certainly no consensus that the challenged regulations

increase recidivism of registrants. Studies have found that sex offender registry requirements can

be effective in reducing recidivism rates at various levels, even up to 82%.[6] Dkt. 113-2 ¶ 21. There

---

[5] Plaintiffs argue, without evidence, that the challenged regulations advance incapacitation and retribution. Dkt. 114 at 13. But with no evidence, this factor favors Defendants.

[6] Without providing meaningful context, Plaintiffs attack Dr. DeLisi based on his years-old statement that he was "not a sex offender researcher per se." Dkt. 114 at 13 n.4. In the case Plaintiffs cite, the court qualified Dr. DeLisi as an expert in criminology and he was specifically "qualified to discuss risk factors for crime and the attributes that go into analyzing crime at a high level of generality." *Henry v. Abernathy*, 647 F. Supp. 3d 1235, 1247 (M.D. Ala. 2022). This included the risk of reoffending (i.e. recidivism). *Id*. The court only limited Dr. DeLisi regarding "assess[ing] or perform[ing] psychological evaluations of individuals." *Id*. Here, Dr. DeLisi has not proffered

are also limitations to research regarding a specific law's effect, given evolving criminal trends and societal changes. *See* Dkt. 112-11 at 161 ("Another concern for long-term recidivism studies is the effects of broad societal changes.") This is especially true for sex crimes, as Plaintiffs' expert Dr. Hansen acknowledged, "[g]iven the secretive nature of sexual offending, researchers must always be cognizant of the gap between officially recorded crime and actual behavior." *Id*. These limitations are also undercut by the lack of Idaho-specific studies regarding the effect of sex offender registries. *See generally* Dkt. 114. And while Plaintiffs have provided some evidence to the contrary, Dkt. 113-2, where there is evidence on both sides, Plaintiffs cannot meet the heavy burden imposed by the clearest proof standard. *McGuire*, 50 F.4th at 1015. Perhaps most importantly, the Ninth Circuit has rejected Plaintiffs' recidivism rate argument. *Masto*, 670 F.3d at 1057 ("a [post-*Smith*] recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community.").

Even if there is some dispute as to the effectiveness of the registry on recidivism, Plaintiffs do not address the clear usefulness of the registry as a law enforcement tool. Dkt. 113-3 ¶¶ 7–9; Dkt. 113-4 ¶¶ 9–11. Perhaps this is because Plaintiffs do not dispute the effectiveness of a private registry, only a public registry. *See* Dkt. 114 at 14. But any argument that private registries are not punishment while public registries are, has been foreclosed by the Supreme Court and the Ninth Circuit. *Smith* held that the dissemination of truthful information does not constitute a punishment and so public registries do not run afoul of the *Ex Post Facto* Clause. *Smith*, 538 U.S. at 98. Plaintiffs' argument that new technologies render this holding outdated was recently rejected by the Ninth Circuit. *Doe v. Garland*, 17 F.4th 941, 949–50 (9th Cir. 2021).

Plaintiffs' suggest that lifetime registration serves no nonpunitive purpose because registrants of advanced age have a low recidivism rate, but scientific studies disagree. For example,

---

an opinion on psychological evaluation. Dr. DeLisi has served as an expert on sex offender registries in numerous cases without issue. Accordingly, any attack on Dr. DeLisi fails.

rather than elderly individuals accounting for few sex crimes, as Plaintiffs would have this Court believe, elderly individuals "account for nearly one in twenty rape arrests and nearly one in ten sexual offenses as shown by criminological research." Dkt. 115-1 at 5. Thus, lifetime registration is a rational regulation. *See Masto*, 670 F.3d at 1057.

*Excessive*. Plaintiffs argue that Defendants conflated the excessive factor with the rational connection factor and urge the Court to follow *Snyder*.[7] Dkt. 114 at 16. But *Snyder* conflated the excessive and rational connection factors and concluded that the challenged provisions were excessive because the government failed to show that the challenged regulations provided "any positive effects." 834 F.3d at 705. *Smith* similarly conflated the factors, quickly concluding that challenged regulations were "reasonable in light of [their] nonpunitive objective." 538 U.S. at 105.

As noted, the challenged provisions are rationally connected to a nonpunitive purpose, and those regulations are not so excessive in relation to Idaho's goal of keeping the public and children safe from sex crimes. Accordingly, the excessiveness factor supports Defendants.

For these reasons, the Court should grant Defendants' Motion on the *Ex Post Facto* and Double Jeopardy claims.

### C.   Plaintiffs' other arguments are irrelevant and should be disregarded.

Plaintiffs assert that summary judgment is unavailable due to conflicting evidence as to the effectiveness of the challenged regulations. Dkt. 114 at 15. But under the clearest proof standard, where there is conflicting evidence, the state wins. Despite conflicting evidence on the effectiveness of registries, *Doe v. Settle* affirmed dismissal of claims similar to Plaintiffs'. 24 F.4th 932, 948 (4th Cir. 2022), and *Nelson v. Town of Paris* affirmed the grant of summary judgment upholding a regulation prohibiting sex offenders from living within 6,500 feet of places where children gather. 78 F.4th 389, 401 (7th Cir. 2023). This Court should do the same.

---

[7] Plaintiffs confusingly assert that Defendants did not address the excessiveness factor. Dkt. 114 at 16. But this is clearly not the case. Dkt. 113-1 at 10–12.

Plaintiffs' argue that SORNA is punitive because it contains no individualized assessment. Dkt. 114 at 17. But *Smith* made clear that states are free to make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." 538 U.S. at 103. So a lack of individualized assessments does not render SORNA punitive.

## III. Plaintiffs have not Shown that any State Action Infringes on their FERPA Rights.

SORNA does not infringe on Plaintiffs' FERPA rights and as Plaintiffs have not shown otherwise, summary judgment is warranted. But the Court may dispose of these claims on jurisdictional grounds.

### A. Defendants are Immune from Suit in Federal Court under the Eleventh Amendment.

Contrary to Plaintiffs' argument, sovereign immunity is not automatically waived if the State does not include it as an affirmative defense. Dkt. 114 at 18–19. Instead, "absent prejudice to the plaintiff an affirmative defense may be plead for the first time in a motion for summary judgment." *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997).

Here, Plaintiffs have not alleged any prejudice, nor could they. Defendants' answer to Plaintiffs' Fourth Amended Complaint denies Plaintiffs' allegations that the Court "may hear Plaintiffs' state law claims through the Court's supplemental jurisdiction under 28 U.S.C. § 1367." Answer at ¶ 12. Thus, their argument that the State has waived its Eleventh Amendment immunity is meritless.

### B. The Court should dismiss Doe #64 and Doe #117's FERPA claims for lack of standing.

Plaintiffs argue that Does #64 and #117 have an injury and therefore have standing. Dkt. 114 at 19. But Plaintiffs lack standing not only because they lack an injury, but also because their alleged injury is not traceable to SORNA.

Doe #64's alleged injury is not traceable to the challenged provisions. Doe #64 alleges that he is injured by SORNA because he cannot participate in certain church activities *Id.* at 21–22.

But Plaintiffs have wholly failed to show SORNA prevents this. Rather, it is Doe #64's church. His alleged injury "flows not from the registry" (i.e. government action) but from his conviction and his church's policy. Dkt. 113-1 at 18. He also does no more than baldly speculate regarding why he was not offered certain service opportunities years ago. Dkt. 114 at 20–21. Accordingly, his injuries are not traceable to Defendants, and he lacks standing.

Doe #117 is not injured by SORNA. Plaintiffs argue SORNA prohibits him from "being 'on the premises of any school building or school grounds in this state, upon the premises or grounds of any daycare.'" *Id.* at 21. And because of SORNA, he cannot attend his preferred church. *Id.* But SORNA does not prevent him from attending that church because it is distinctly separate and apart from a nearby daycare. Law enforcement officers agree, Dkt. 113-3, ¶ 11; Dkt. 113-4, ¶¶ 13–14, and so there is no credible threat of enforcement. So, Doe #117 lacks standing. *Idaho Fed'n of Tchs. v. Labrador,* No. 1:23-CV-00353-DCN, 2024 WL 3276835, at *1 (D. Idaho July 2, 2024).

Given that Doe #64's injury does not flow from Defendants' conduct, and given that Doe #117 has no injury, the Court should dismiss with prejudice Plaintiffs' FERPA claims.

## C.  Even under strict scrutiny, the challenged provisions survive.

SORNA would survive strict scrutiny. Plaintiffs only argue SORNA is not narrowly tailored where Defendants do not show that an exception for houses of worship would be a less restrictive means of achieving the statute's purpose. Dkt. 114 at 20. However, SORNA does not prohibit sex offenders from attending their houses of worship. As described, SORNA does not prevent Plaintiff # 117 from attending services and there is no credible threat of enforcement. Dkt. 113-3, ¶ 11; Dkt. 113-4, ¶¶ 13–14. Therefore, an exception regarding houses of worship is neither necessary, nor would it narrow SORNA's reach.

Accordingly, Plaintiffs' FERPA claims fail, and the Court should grant Defendants' Motion.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

DATED: July 10, 2025

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Gader Wren*
Gader Wren
Assistant Solicitor General

*Attorney for Defendants*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on July 10, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Greg J. Fuller
fullerlawtwinfalls@gmail.com

David B. Rankin
drankin@blhny.com

Daniel S. Brown
brown_law@hotmail.com

Regina Powers
rpowers@blhny.com

Matthew Strugar
matthew@matthewstrugar.com

*Attorneys for Plaintiffs*

/s/ *Gader Wren*
Gader Wren