UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JANE DOE #36; JOHN DOE #64; JOHN DOE #115; and JOHN DOE #117,

Plaintiffs,

v.

RAUL LABRADOR, Attorney General of the State of Idaho, *et al.*,

Defendants.

Case No. 1:16-cv-00429-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (Dkt. 112) and Defendants' Motion for Summary Judgment (Dkt. 113).

The Court held oral argument on April 16, 2026, and took the competing matters under advisement. Upon review, and for the reasons outlined below, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment and GRANTS Defendants' Motion for Summary Judgment.

## II. BACKGROUND

Prior to 1993, people in Idaho convicted of sexual offenses faced formal consequences like those faced by individuals convicted of similarly serious non-sexual crimes: the person would be convicted and serve punishment (usually in the form of incarceration), after which they might be paroled, or if not, released when they completed their term of incarceration.

That scheme changed when Idaho enacted its initial Sex Offender Regulation and Notification Act ("SORNA") in 1993. SORNA established a statutory duty for persons convicted of any one of ten felony sex crimes to register with their local sheriff. Idaho Code § 18-8304 (1993). The law went into effect on July 1, 1993, and applied retroactively to anyone who was currently incarcerated on a newly-registrable offense or "under probation or parole supervision" as of that date. Idaho Code § 18-8304(1)(c) (1993). Registrants were subject to the law for "ten (10) years after the date of discharge from probation, parole or release from incarceration, whichever is greater." Idaho Code § 18-8305 (1993).

In the ensuing years, the Idaho Legislature expanded the registration law to cover more people for longer periods of time. It also required more reporting from registrants, made registrants' information available to the public, and imposed stricter restrictions on where registrants could work, live, or frequent.

The 1998 version of SORNA applied retroactively to any person convicted of a newly eligible offense after July 1, 1993. It also applied retroactively to any person who entered the state of Idaho after July 1, 1993, who had been convicted of any crime that was "substantially equivalent" to SORNA's registrable offenses.

The Idaho Legislature amended SORNA again in 2001, 2002, 2004, 2005, 2006, 2008, 2009, 2011, 2012, 2013, 2016, 2018, 2019, and 2020. Each set of amendments was applied retroactively in the same manner as the 1998 version of SORNA. The amendments expanded SORNA's framework, adding to the list of eligible offenses and heightening the obligations of registrants.

On September 22, 2016, a group of over 100 Plaintiffs filed suit against the Idaho Attorney General, the Idaho State Police Colonel, and 31 other state officials, arguing that Idaho's SORNA was unconstitutional under a variety of legal theories. Dkt. 1. Plaintiffs then filed an Amended Complaint. Dkt. 4. Defendants filed a Motion to Dismiss (Dkt. 15) which the Court granted after holding a hearing (Dkt. 32). The Court, however, allowed Plaintiffs an opportunity to amend their complaint—which they did. Dkt. 36. Defendants filed another Motion to Dismiss (Dkt. 40) which the Court again granted after holding a hearing. Dkt. 47. Having already given Plaintiffs multiple opportunities to amend, the Court dismissed Plaintiffs' Second Amended Complaint with prejudice.

Plaintiffs appealed. Dkt. 49.

The Ninth Circuit affirmed most of the Court's decision, but reversed dismissal of Plaintiffs' *Ex Post Facto*, Double Jeopardy, and Idaho's Free Exercise of Religion Protected Act ("FERPA") claims. *Does v. Wasden*, 982 F.3d 784, 795 (9th Cir. 2020).

Following the Ninth Circuit's opinion, Plaintiffs filed a Third Amended Complaint and then a Fourth Amended Complaint, naming only the Attorney General and the Idaho State Police Colonel as Defendants. Dkts. 67, 73. Defendants moved to dismiss the Fourth Amended Complaint (Dkt. 76), which the Court denied (Dkt. 90) after a hearing. Recognizing the parties had taken "widely disparate interpretations of the Ninth Circuit's [decision]," the Court was obligated to outline how the case would proceed from that point forward. Dkt. 90, at 21.

Ultimately, while still expressing reservations about Plaintiffs' claims, the Court determined they had *plausibly* alleged sufficient facts to meet their burden, that discovery

was appropriate, and that Defendants remaining arguments were better left for summary judgment. *Id*. at 24, 37 n.29, 41.

At the current juncture, only four plaintiffs remain: Jane Doe #36; John Doe #64; John DOE #115; and John DOE #117. Each Plaintiff is an Idaho resident who pleaded guilty to sex offense crimes between 1988 and 2004. And, as noted, only Plaintiffs' *Ex Post Facto*, Double Jeopardy, and as-applied FERPA claims remain.

Plaintiffs have now moved for Summary Judgment on their *Ex Post Facto* claim (Dkt. 112), and Defendants have moved for Summary Judgment on all three of Plaintiffs' remaining claims (Dkt. 113).

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation modified). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The standards applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV. ANALYSIS

Both parties seek summary judgment on Plaintiffs' first cause of action—that SORNA violates the Constitution's *Ex Post Facto* clause. Defendants also seek summary judgment on Plaintiffs' companion claim that SORNA violates the Double Jeopardy clause. Finally, Defendants seek summary judgment on Plaintiffs' claim that SORNA violates Idaho's FERPA.

The Court will first address Plaintiffs' *Ex Post Facto* and Double Jeopardy claims in tandem and then finish with a discussion about FERPA.

### A. Ex Post Facto and Double Jeopardy

Plaintiffs have brought a facial challenge to SORNA under the *Ex Post Facto* clause of the United State Constitution. Dkt. 112-1, at 6.

A facial challenge presents an extremely high bar because a plaintiff must show that

the statute is unconstitutional in all possible applications. *Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008). Facial challenges are "disfavored" because they: (1) "raise the risk of premature interpretation of statutes on factually barebones records"; (2) run contrary "to the fundamental principle of judicial restraint"; and (3) "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). As such, a "facial challenge must fail where the statute has a plainly legitimate sweep." *Id*. at 449. In *United States v. Salerno*, the Supreme Court explained a "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists* under which the Act would be valid." 481 U.S. 739, 745 (1987) ("*Salerno*") (emphasis added).

The *Ex Post Facto* Clause, Article I, Section 10 of the Constitution, bars the enactment of any law that "imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment to that then prescribed." *Russell v. Gregoire*, 124 F.3d 1079, 1083 (9th Cir. 1997) (citation modified). In other words, "The Ex Post Facto Clause of the Constitution prohibits our state and federal governments from retroactively imposing additional punishment for commission of a criminal offense." *Am. C.L. Union of Nevada v. Masto*, 670 F.3d 1046, 1052 (9th Cir. 2012). "The Double Jeopardy Clause similarly prohibits subjecting a person to jeopardy of multiple punishments for the same criminal act." *Id*. at 1052–53. Courts use the same two-step inquiry to determine whether a law violates the *Ex Post Fact*o Clause or Double

Jeopardy. *United States v. Ursery*, 518 U.S. 267, 277 (1996). *See also Litmon v. Harris*, 768 F.3d 1237, 1242 (9th Cir. 2014) ("[T]he inquiry into whether a law constitutes retroactive punishment in violation of the Double Jeopardy Clause is identical to that with respect to the Ex Post Facto Clause.").

The first step is to determine whether the legislature intended to impose a civil regulatory scheme or a punishment. *Smith v. Doe*, 538 U.S. 84, 92 (2003). If the law was intended to be punitive, it will be struck down as unconstitutional. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362, (1984). "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, [courts] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Smith*, 538 U.S. at 92 (citation modified). Because courts "ordinarily defer to the legislature's stated intent," *Kansas v. Hendricks*, 521 U.S. 346, 361, (1997), "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100 (1997) (citation modified).

The Court has already determined "there is no dispute that SORNA was enacted with the intent to establish a civil regulatory scheme." Dkt. 47 at 12 (citing Idaho Code § 18-8302). Plaintiffs do not dispute this holding. And it appears the Ninth Circuit agreed. *See Wasden*, 538 U.S. at 791–792.

Thus, Plaintiffs can only succeed on these two claims if they can show by "the clearest proof" that, despite the Idaho Legislature's intent, SORNA is, nevertheless, a criminal penalty. *Smith*, 538 U.S. at 92.

Courts generally use five factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963) to determine whether there is the "clearest proof" that a sex offender registry regulation is so punitive in effect that it violates the Ex Post Facto and Double Jeopardy Clauses. *Smith*, 538 U.S. at 92, 97; *see also United States v. Elk Shoulder,* 738 F.3d 948, 953 (9th Cir. 2013). The relevant factors are: (1) whether the challenged civil scheme has been regarded in our history and tradition as punishment, (2) whether it imposes an affirmative disability or restraint, (3) whether it promotes the traditional aims of punishment—retribution and deterrence, (4) whether it has a rational connection to a nonpunitive purpose, and (5) whether it is excessive with respect to its purpose. *Smith*, 538 U.S. at 97. Importantly, the "most significant factor" is whether there is a rational connection to a nonpunitive purpose. *Id*. at 102 (citation modified).

Plaintiffs allege there are multiple provisions of Idaho's SORNA that cannot withstand constitutional scrutiny under the *Mendoza-Martinez* test.

At the outset, the parties disagree on whether the Court should evaluate the challenged provisions cumulatively—"in-toto" as Plaintiffs' assert—or on a provision-by-provision basis—Defendants' suggestion. Both sides reference the Ninth Circuit's opinion in this case for support of their preferred method.

In reinstating Plaintiffs' *Ex Post Facto* and Double Jeopardy claims, the Ninth Circuit observed that, "[t]he court should consider the effects of SORA's regulatory scheme, as amended and *in its entirety*, in determining whether it runs afoul of the Constitution." *Wasden*, 982 F.3d at 792 (emphasis added). Plaintiffs believe the phrase "in its entirety" means the Ninth Circuit wanted the Court to view the challenged regulations

in-toto and weigh their cumulative effect on Plaintiffs. Defendants disagree, asserting this phrase simply means the Court is to be exhaustive and review each of Plaintiffs' challenges in a more complete fashion (as opposed to dismissing them outright as it had already done).

Defendants also rely on a phase from the dissent where Judge VanDyke reviewed a variety of cases to illustrate this Court's error in holding circuit precedent outright foreclosed Plaintiffs' argument that SORNA is punitive and then observed: "Nor does any circuit precedent consider whether the cumulative effect of a mix of regulations like Idaho's might be punitive in toto." *Wasden*, 982 F.3d at 799 (VanDkye, J. dissenting). Defendants assert this means the Court is *not* to view Plaintiffs' challenges in-toto as there is not any "circuit precedent" for this approach. Never flinching, Plaintiffs respond that this phrase underscores *their* position and that Judge VanDyke was saying there is no circuit precedence as to whether the cumulative effect of Idaho's SORNA was punitive and that is exactly the type of review that must happen in this case.

The Court tends to agree with Plaintiffs.

First, it does appear the Ninth Circuit—including the dissent—wanted the Court to review each of Plaintiffs' challenges to SORNA and consider their cumulative impact.

Second, taking the "in-toto" approach would not, as Defendants suggest, undermine the Court's ability to fairly judge the respective challenges. Defendants highlight that other courts have, in similar cases, upheld one regulation but struck down another, suggesting a provision-by-provision approach is the only way to proceed. But the Court can review the challenged areas in this case individually and also determine whether their cumulative effect is punitive. Simply put, there could be a variety of outcomes—as to individual

challenges and/or in total.

Plaintiffs specifically allege four[1] of SORNA's amendments cannot withstand constitutional muster. These include regulations related to: (1) lifetime registration, (2) housing and employment, (3) notification, and (4) the creation of a public registry. The Court will analyze each below.

*1. Lifetime Registration*

SORNA requires every individual convicted of a sex crime to register as a sex offender. Idaho Code § 18-8307. While the registration period is initially set for life, offenders may petition for removal after they have been released from incarceration. Idaho Code §§ 18-8307(7), 18-8310(1). Even then, those who have been placed on the registry for *aggravated offenses*—such as rape and offenses where the victim is under the age of 16—or those who have been designated as a sexual predator, are *not* eligible to petition for removal. Idaho Code §§ 18-8303, 18-8307(7), 18-8310(1). Thus, only sex offenders who pose the greatest risk are truly required to register for life. Each of the four Plaintiffs in this case fall into the aggravated category, must register for life, and cannot petition for removal. They allege this scheme is unconstitutional. Unfortunately for Plaintiffs, there

[1] In their Complaint, Plaintiffs allege the current version of SORNA imposes so many "obligations, disabilities, and restraints . . . they cannot be set out in full." Dkt. 73, at 19. Plaintiffs go on to list thirteen specific restrictions or exclusions as examples. Defendants have grouped these thirteen items into four categories: (1) lifetime registration, (2) housing and employment, (3) notification, and (4) the creation of a public registry. Plaintiffs address those four topics in response, but continually reiterate their challenge is broader than those areas they specifically have called out. The Court appreciates the broadness of the challenge. And, as outlined, the Court will take a comprehensive approach to Plaintiffs' claims. But the Court cannot evaluate provisions (or sub-sets of provisions) if the Parties did not brief them or do discovery on them. Thus, the Court will address the four categories because doing so remains consistent with the Parties' briefing, but also because these are the areas the Parties analyzed with their clients in discovery.

arguments are foreclosed by Ninth Circuit caselaw.[2]

In *Masto*, Nevada's regulations required high-level sex offenders to register for life. 670 F.3d at 1051. The Ninth Circuit noted the challenged regulations were "indistinguishable from those at issue in *Smith*," and ultimately held that an in-person, 90–day, lifetime registration requirement for the highest-level sex offenders did not violate the *Ex Post Facto* clause. *Id*. at 1056; *see also Litmon*, 768 F.3d at 1243 (confirming *Masto*'s holding and finding that California's in-person 90-day lifetime registration for a sexually violent predators does not violate the *Ex Post Facto* Clause).

Here, as Plaintiffs recognize, Dkt. 73 at ¶ 95, only registrants convicted of aggravated sex crimes (or those designated as sexual predators), are truly required to register for life because all others may petition for removal after 10 years. Thus, the requirement is not facially unconstitutional because many registrants can (and do) petition for removal—meaning there is a set of facts under which the challenged provision is plainly constitutional. *Salerno,* 481 U.S. at 745.

And for those in the aggravated category such as Plaintiffs, while the requirement treats them somewhat differently, the rational for the difference is grounded in a non-punitive purpose (discussed below) and is still constitutional. The Court appreciates

[2] On appeal in this case, the Ninth Circuit held this Court should not have summarily concluded Plaintiffs' claims about the punitive effects of SORNA were foreclosed by Ninth Circuit caselaw. *Wasden,* 982 F.3d at 791. Importantly, that was in the context of the posture of the case—a motion to dismiss as opposed to a motion for summary judgment. Furthermore, when citing the cases this Court had relied on, the Ninth Circuit noted those dealt with "registration and notification provisions" but not other things (e.g. travel, residency etc). In short, even the Ninth Circuit in this appeal recognized that certain of its own cases likely foreclosed Plaintiffs *Ex Post Facto* claims as it related to registration and notification—it just wanted this Court to consider those arguments in the proper posture and by separating out specific challenges.

Plaintiffs' arguments about recidivism and the passage of time and how a lifetime ban does not take into account those factors. Again, however, many courts have dealt with these same arguments and found them wanting. The bottom line is any argument that Idaho's lifetime registration requirement violates the *Ex Post Facto* or Double Jeopardy Clauses is foreclosed by *Masto* and *Litmon*.[3]

Finally, even assuming arguendo that *Smith, Masto,* and *Litmon* were not dispositive of this issue at the outset and that the Court needed to look at *these* Plaintiffs and *this* requirement in complete isolation, the decision would be the same because Plaintiffs cannot show by the "clearest proof" that Idaho's lifetime registration constitutes punishment. Again, these exact same arguments have been rejected before. *See, e.g.*, *Hatton v. Bonner*, 356 F.3d 955, 965 (9th Cir. 2004) (explaining sex offender registry statutes are modern and were not historically viewed as a form of punishment); *Smith*, 538 U.S. at 101 (rejecting the notion that registration is akin to probation and parole); *id.* at 98 (rejecting argument that shaming, humiliation, and banishment stem from the registry because the registry is used simply for the "dissemination of accurate information about a criminal record, most of which is already public").

Whether a law is rationally connected to a nonpunitive purpose "is a most—if not the most—significant factor" in determining whether a regulation or requirement is punitive. *McGuire*, 50 F.4th at 1013 (citing *Smith*, 538 U.S. at 102).

The Court has already determined "there is no dispute that SORNA was enacted

---

[3] The Ninth Circuit has more recently confirmed these holdings, albeit in an unpublished opinion. *Warenback v. Ford*, 2023 WL 7121405, at *1 (9th Cir. Oct. 30, 2023).

with the intent to establish a civil regulatory scheme," Dkt. 47 at 12, and the Ninth Circuit agreed, *see Wasden*, 538 U.S. at 791–92. Defendants reiterate they had a legitimate, nonpunitive purpose in carving out lifetime registration for certain classes of registrants and Plaintiffs have not pointed to any evidence suggesting an otherwise punitive purpose underlies that scheme.

In *Smith*, the Supreme Court held that the interest in "alerting the public to the risk of sex offenders in their community" constitutes a "legitimate non-punitive purpose." 538 U.S at 102–03. That is what Idaho has done here—created a requirement that serves important public safety concerns. And in *Masto*, the Ninth Circuit rejected the idea that a Court needs to make individualized assessments as to specific plaintiffs or weigh competing evidence as to recidivism. *Masto*, 670 F.3d at 1057 (explaining that "a recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community").

In short, having considered the *Mendoza-Martinez* factors, the Court finds the lifetime registration requirement for aggravated offenses is not punishment, has a rational connection to the nonpunitive purpose of public safety, and does not violate the *Ex Post Facto* or Double Jeopardy Clauses.

*2. Housing and Employment*

In connection with its purpose to protect children, certain SORNA regulations prohibit registrants from residing, working, or loitering in places where children often congregate. Idaho Code §§ 18-8327, 18-8329, 18-8331. Specifically, registrants are generally not permitted to reside, work, or knowingly loiter within 500 feet of a school or

daycare, and registrants are likewise not permitted to work at a school or daycare. *Id*.

Federal courts have almost universally held these types of regulations may be applied retroactively without violating the *Ex Post Facto* or Double Jeopardy Clauses. *E.g.*, *Hope v. Comm'r of Indiana Dep't of Correction*, 9 F.4th 513, 530 (7th Cir. 2021); *Shaw v. Patton*, 823 F.3d 556, 559 (10th Cir. 2016). In *McGuire v. Marshall*, Alabama sex offender registry regulations prohibited registrants from residing, volunteering, or working within 2,000 feet of a school or childcare center. 50 F.4th 986, 997–8 (11th Cir. 2022). To determine whether the regulations violated the *Ex Post Facto* clause, the court utilized the *Mendoza-Martinez* factors. *Id*. at 1008–16.

Applying the *Mendoza-Martinez* factors in this case, the Court finds Defendants have carried their burden. To begin, SORNA's housing and employment regulations do not resemble traditional punishment or banishment. These regulations, like those in *McGuire*, do not "entirely cut off [registrants] from society;" they merely limit what registrants may do within 500 feet of schools and daycares. 50 F.4th at 1009.

Most importantly, these regulations are rationally related to a nonpunitive purpose and are not excessive. To be sure, these regulations, like those in *McGuire*, place a burden on registrants. But none are so restrictive or burdensome as to impose an affirmative disability or restraint and each has a valid, nonpunitive purpose and is not excessive.

Given the substantial similarity to the *McGuire* regulations, and the fact that Plaintiffs cannot demonstrate the employment and housing regulations are clearly punishments, the Court finds the regulations are not punishments and do not violate the *Ex Post Facto* or Double Jeopardy Clauses.

*3. Notification*

SORNA requires registrants to provide notification of specific changes to personal information. This includes changes in a registrant's name, residence, employment, student status, or vehicle registration. Idaho Code §§ 18-8309(1), 18-8309(3). Registrants are also required to provide notification when they travel for a period of seven days or more. Idaho Code § 18-8309(2).

Relying on Supreme Court precedent, circuit courts across the country have held general notification requirements such as these are not punitive. In *Smith*, the Supreme Court held that requiring registrants to provide personal information and to verify that information quarterly was not a punishment and did not violate the *Ex Post Facto Clause*. 538 U.S. at 90. There is no reason to deviate from that principle (and precedent) here.

Like the regulations in *Smith*, Idaho's SORNA requires notification of changes to a registrants' general information. And while Plaintiffs' experts have asserted that sex offender registries may increase recidivism, this is not a disputed material fact precluding summary judgment because the Idaho "legislature is free to disagree with that empirical prediction or pursue other goals like investigatory efficiency." *See Doe v. Settle*, 24 F.4th 932, 948 (4th Cir. 2022). This is precisely what Idaho has chosen to do.

Idaho enacted SORNA to assist law enforcement and protect children. The registry is an information-sharing tool that benefits law enforcement generally. Defendants' expert Dr. Matthew DeLisi opined that one benefit of sex offender registries is allowing law enforcement to clear sexual assault cases between 23% and 40% faster. Idaho law enforcement officers have made the same observations. Even one of Plaintiffs' experts, Dr.

James Prescott, acknowledged that sex offender registries potentially assist law enforcement in clearing cases.

Plaintiffs also specifically challenge SORNA's notification provision regarding travel asserting it places an onerous burden on them. In *McGuire*, the regulations required registrants to notify law enforcement of travel lasting three days or more—and that regulation was upheld. *McGuire*, 50 F.4th at 1020.

Here, SORNA requires notification when registrants travel for seven days or more. This regulation promotes public safety as it has the potential of enabling law enforcement officers to more quickly resolve missing persons cases. Notification for travel purposes has no meaningful distinction compared to notifications regarding personal information that courts have permitted since *Smith*.

Plaintiffs cannot demonstrate by the clearest proof that SORNA's notification requirements impose a punishment. Nor can Plaintiffs demonstrate how the travel notification requirement burdens Idaho registered sex offenders generally. *Wasden*, 982 F.3d at 791. And to the degree either imposes a burden, the purpose of the underlying requirement is non-punitive.

Accordingly, the Court finds the notification requirements are constitutional and do not violation the *Ex Post Facto* or Double Jeopardy Clauses.

*4. Public Registry*

SORNA requires certain information on registered sex offenders to be made publicly available. Idaho Code § 18-8323. This includes the registrant's name, aliases, date of birth, address, physical description, convicted offense, current photo, temporary lodging

information, and the address of any place where the registrant is or will be a student. *Id*. Plaintiffs assert because the registry is publicly available, registrants face stigmatization and social ostracism. Dkt. 73, ¶ 196. Again, these arguments have been rejected by *Smith* and by the Ninth Circuit.

Plaintiffs' expert, Dr. Sarah Lageson, asserts that, post-*Smith*, the reach of the internet has expanded which has led to what she calls "digital punishment." Dkt. 113-13, at 4. This term describes "how online information, spread to innumerable websites and digital sources, harms registrants" beyond what the Supreme Court considered when it decided *Smith*. *Id*. But Dr. Lageson's theory of digital punishment has already been rejected by the Ninth Circuit. In *Doe v. Garland*, Dr. Lageson argued that the public dissemination of information led to digital punishment—and that digital punishment amounted to an "affirmative disability or restraint." 17 F.4th 941, 949 (9th Cir. 2021)

The Ninth Circuit held the argument was foreclosed by *Smith* as the government's dissemination of information "imposes no physical restraint, . . . [it] does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Id*. at 950 (quoting *Smith*, 538 U.S. at 100). Accordingly, the alleged digital punishment was not punishment under the constitution. *Id*.

In accordance with Ninth Circuit caselaw, the Court finds the public dissemination of registrants' information, as prescribed by SORNA, does not constitute a punishment. Thus, it does not violate the *Ex Post Facto* or Double Jeopardy Clauses.

*5. Cumulative Effect*

The Court has determined that no individual regulation is so sever as to be classified

as criminal punishment. Do the regulations impose certain conditions that are inconvenient? Yes. But are the individual regulations so punitive in effect or so detached from their stated purpose as to require any be struck down as unconstitutional? No.

But the question remains whether the regulations *collectively* constitute punishment despite any individual validity. That is what the Court turns to next.

The Court is not unsympathetic to Plaintiffs' general arguments here. The collective nature of SORNA's requirements are, candidly, burdensome. But burden is different than punishment. Just because something is time-consuming, burdensome, or inconvenient does not make it punishment. And even if there are some negative implications, assumptions, or stigmatizations from the regulations, that is still not enough.[4]

Again, the question is: regardless of the Idaho legislature's intent, are the regulations, collectively, so punitive that they effectively result in a criminal penalty?

A final review of all regulations—in toto—against the backdrop of the *Martinez-Mendoza* factors provides a good summary.

a. Affirmative Disability and Restraint

Plaintiffs argue the challenged regulations collectively impose an affirmative disability or restraint because they require registrants to frequently contact law enforcement and because they restrict where registrants may "live, work, [or] move." Dkt. 114, at 9–10. But whether a regulation or a collective group of regulations imposes an affirmative

[4] As Defendants point out, there is something of an esoteric question regarding whether any negativity, stigmatization, or ostracization comes from the registry itself or the underlying conduct. In other words, the general public's aversion to sex crimes is what (likely) promotes much of the stigmatization, not the registry itself. But, of course, people may not know a person was convicted of a sex crime *but for* the registry.

disability or restraint is measured against whether the regulations resemble imprisonment—"the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100. Here, the challenged regulations do not resemble imprisonment—even when viewed collectively. Though registrants must register, communicate certain information with law enforcement, and are prohibited from working at schools and living or loitering within 500 feet of a school or daycare, this is very different than confining registrants to a prison cell in a building surrounded by razor wire and monitored by armed guards. Thus, this factor favors Defendants.

b. Traditional Punishment

Plaintiffs next suggest SORNA's restrictions, taken collectively, are akin to banishment, probation, and parole. Dkt. 114, at 11. Not so. Banishment results in a person being "absolutely dead in law." *McGuire*, 50 F.4th at 1008–09; *see also Shaw*, 823 F.3d at 567 (banishment is complete expulsion from the community). Plaintiffs counter such a definition is "a nearly impossible bar," and this factor is satisfied if regulations resemble a traditional punishment even in just "some respects." Dkt. 114, at 11 (quoting *Snyder*, 834 F.3d at 701–02). But this improperly asks the Court to water-down the "clearest proof" standard Plaintiffs must meet.

*Smith* requires courts to assess whether SORNA resembles banishment, not just some elements of banishment. 538 U.S. at 101. Thus, requiring registrants to communicate information with law enforcement and a prohibition on working at schools or daycares and living or loitering within 500 feet of schools or daycares, is nothing like being "absolutely dead in the law."

The cumulative effect of the challenged regulations do not resemble probation or parole either. "Individuals on probation and parole 'do not enjoy the absolute liberty to which every citizen is entitled.'" *McGuire*, 50 F.4th at 1017 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Instead, they are subject to random drug tests, home visits, required community service, and a host of other requirements. *Shaw*, 823 F.3d at 565 n.14. *Smith* held that registration and notification regulations do not resemble probation or parole. 538 U.S. at 101. And most circuits have held the same about housing and employment regulations. *See, e.g.*, *McGuire*, 50 F.4th at 1008; *Shaw*, 823 F.3d at 562.

Even when considered collectively, it cannot be said that requiring registrants to communicate information with police, and prohibiting registrants from living, working, or loitering near places where children gather is comparable to probation or parole. After all, registrants largely remain free to move about as they wish. And nothing in SORNA enables law enforcement to subject registrants to random house checks, drug tests, or impose community service requirements. Thus, this factor favors Defendants.

c. <u>Traditional Aims of Punishment</u>

Plaintiffs argue that, because the challenged regulations have some deterrent effect, this factor tips in their favor. Dkt. 114, at 13. They are wrong. "Any number of governmental programs might deter crime without imposing punishment," so long as the primary purpose of those regulations is nonpunitive. *Smith*, 538 U.S. at 102. As the challenged regulations' primary purpose in this case is to improve public safety, they do not sufficiently advance the aims of punishment. Idaho Code § 18-8302; *see also Masto*, 670 F.3d at 1057 (registration and notification regulations do not promote traditional aims

of punishment); *McGuire*, 50 F.4th at 1012, 1021 (discussing travel, housing, and employment regulations and holding the "mere presence of a deterrent effect does not make a statute punitive" (citation modified)).

d. Rationally Related to a Nonpunitive Purpose

Plaintiffs contend the challenged regulations are not rationally related to a nonpunitive purpose because there is (in their opinion) nearly unanimous scientific consensus that notification laws do not reduce recidivism. To the contrary, Plaintiffs contend these types of regulations actually "increase recidivism of registrants." Dkt. 114, at 13–14. They also argue that lifetime registration is irrational because older individuals and those on the registry for long periods of time have lower recidivism risk. Dkt. 114, at 15–16. But these arguments cannot withstand scrutiny.

There is not a scientific consensus regarding whether sex offender registries, and their accompanying regulations, reduce recidivism. What's more, there is certainly no consensus that the challenged regulations *increase* recidivism of registrants. Both sides in this case have produced studies to support their respective positions. This disagreement, however, need not go to a jury for resolution because the mere fact that there is a disagreement illustrates Plaintiffs cannot met the "clearest proof" standard.

Perhaps most importantly, as noted *supra,* the Ninth Circuit has rejected Plaintiffs' recidivism rate argument. *Masto*, 670 F.3d at 1057 ("[A] [post-*Smith*] recalibrated assessment of recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community."). And *Smith* held the dissemination of truthful information does not constitute a punishment. 538 U.S. at 98. Finally, Plaintiffs'

argument that newer technologies render these holdings outdated was recently rejected by the Ninth Circuit. *Garland*, 17 F.4th at 949–50.

e. Excessive

Lastly, Plaintiffs assert Defendants conflate the excessive factor with the rational connection factor and urge the Court to follow *Snyder* which went in their favor. Dkt. 114, at 16. But *Snyder* itself combined the excessive and rational connection factors concluding the challenged provisions were excessive because the government failed to show the regulations provided "any positive effects." 834 F.3d at 705. *Smith* similarly discussed these factors in tandem and found that challenged regulations were "reasonable in light of [their] nonpunitive objective." 538 U.S. at 105.

The challenged provisions in Idaho SORNA are rationally connected to a nonpunitive purpose, and those regulations are not so excessive in relation to Idaho's goal of keeping the public and children safe from sex crimes. Accordingly, the excessiveness factor supports Defendants.

In summary, the Court finds the *cumulative* effect of SORNA is not punitive. SORNA's provisions do not have the hallmarks of punishment and there is a rational connection between the requirements of the statute and a nonpunitive purpose—which is the "most significant factor." *Smith*, 538 U.S. at 102 (citation modified).

Summary Judgment is granted in Defendants favor on Plaintiffs *Ex Post Facto* and Double Jeopardy claims. The Court moves next to Plaintiffs state law claim under FERPA.

**B. FERPA**

FERPA provides that "[f]ree exercise of religion is a fundamental right" and

"government action" that "substantially burden[s]" that right is subject to strict scrutiny. Idaho Code § 73-402. To "substantially burden" a person's exercise of religion "means to inhibit or curtail religiously motivated practices." Idaho Code § 73-401(5). Under FERPA, a substantial burden is something more than a "trivial, technical or de minimis infraction[]." Idaho Code § 73-402(5).

Plaintiffs assert the employment and housing regulations of SORNA place burdens on their rights under FERPA. Specifically, Doe #64 claims those regulations prevent him from holding certain church positions, and Doe #117 claims the regulations prohibit him from attending his preferred church.

Defendants are entitled to summary judgment on this claim for two inter-related jurisdictional reasons—sovereign immunity and standing.

Before addressing those arguments, a threshold matter must be discussed.

Plaintiffs object to three statements made by two individuals in declarations filed by Defendants in support of their Motion for Summary Judgment. The three statements are very similar (two are identical) and relate to a registrants' ability to attend church (specifically Doe #117). Each affiant represents that, "[b]ased on my experience and training, it is my opinion that a registered sex offender may attend church services and activities at Boone Memorial Presbyterian Church without violating any SORNA regulation." Dkt. 113-3, at 2; Dkt. 113-4, at 3.[5] Plaintiffs object to the Court considering

[5] The third statement reads: "Based on my experience and training, it is my opinion that no provision of [SORNA] prohibits registered sex offenders from attending churches or houses of worship—even if a church has a nursery or Sunday school where children are present." Dkt. 113-4, at 3.

any of these statements suggesting each is an "improper legal conclusion / lay opinion testimony" and "lacks foundation." Dkt. 114-2, at 2.

Defendants counter Plaintiffs objections are meritless because the Court already asked for "evidence that [SORNA] is not interpreted—by police or others—to preclude attendance at religious services." Dkt. 90, at 24. Additionally, Defendants contend there is sufficient foundation for each statement because each affiant has significant law enforcement experience and sufficient personal knowledge to offer their opinions—especially at summary judgment when the evidentiary standards are somewhat relaxed.[6] Upon review, the Court finds the material could be presented in an admissible form at trial—based upon the affiants experience and training—and can be considered at this stage. Thus, the Court overrules Plaintiffs' objections and will give these statements the weight it deems appropriate. The Court returns to the merits of Plaintiffs' FERPA claim.

*1. Sovereign Immunity*

Unless a state has consented to being sued in federal court—or Congress has appropriately abrogated a state's sovereign immunity, *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984)—"the Eleventh Amendment confers sovereign immunity, shielding states, state agencies, and state officials acting in their official capacity from suits in federal court." *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093, 1107 (D. Idaho 2022).

---

[6] Under Federal Rule of Civil Procedure 56(c)(2), the Court considers the contents of the evidence rather than its form. *See also Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment. *Id.*

Here, Idaho has not consented to being sued in federal court. While FERPA provides that "[f]ree exercise of religion is a fundamental right" in the state of Idaho, nothing in the statute provides an express waiver of sovereign immunity. Idaho Code § 73-402.

Plaintiffs disagree, asserting Defendants waived sovereign immunity by not asserting it as a defense in their Answer. Second, Plaintiffs argue there are exceptions to sovereign immunity.

Plaintiffs' first point is sticky. Defendants contend they did not waive immunity because they "denied" Plaintiffs' statement about jurisdiction and venue in their Answer. Dkt. 96, at 3. The Court affords this argument little weight. Answers are largely formulaic. A generic denial does not, in itself, indicate Defendants were ever going to invoke immunity. That said, Defendants have also argued they can raise the affirmative defense or sovereign immunity now—which Plaintiffs' have not rebutted. *See Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997) ("absent prejudice to the plaintiff[,] an affirmative defense may be plead for the first time in a motion for summary judgment."). The Court finds this argument more persuasive and will allow Defendants to raise the defense at this juncture as there is no prejudice.[7]

Second, the Court agrees there are exceptions to sovereign immunity. But Plaintiffs never indicate which exception might apply in this case. The Defendants are state actors acting in their official capacities. Thus, it does not appear any exceptions apply.

In sum, Defendants have not waived sovereign immunity and cannot be sued for a

[7] At oral argument, Plaintiffs' counsel conceded there was no prejudice.

violation of FERPA in federal court. This bars Plaintiffs' FERPA claim at the outset.

*2. Standing*

Even were the Court to set aside immunity, Plaintiffs lack standing because they have not shown any injury traceable to Defendants' enactment of SORNA.

Standing is "an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, a party "must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Here, Plaintiffs have not demonstrated they have suffered or are likely to suffer a FERPA injury and, therefore, lack standing to pursue that claim. Further, they are unable to show SORNA has caused their injury, as opposed to the fact that their convictions are for a sex offense. The Court will address each Plaintiffs, in turn. Two can be dispensed with in summary fashion.

In their depositions, both Doe #36 and Doe #115 testified SORNA does not interfere with their abilities to express their religious or spiritual beliefs. In other words, Does #36's and #115's FERPA rights have not been infringed upon, and neither have sustained—or

are likely to sustain—an injury. Does #36 and #115 concede both lack standing and that summary judgment is appropriate as to them. Dkt. 114, at 22.

In his deposition, Doe #64 testified that, since being placed on the registry, he has been actively involved in his church and has held leadership positions in his church. At the same time, he speculates that his church has not allowed him to hold certain positions—specifically with the youth and at the church's temple—*because of* his status on the registry. However, Doe #64 can only guess as to the reasons he did not have certain callings.[8] A church's decision to allow or not allow one of its members to hold a given position does not implicate FERPA. The question is whether SORNA prohibits Plaintiff Doe #64 from serving in a church position. And the answer is SORNA makes no such prohibition. Further, Doe must offer more than speculation, especially given that many consequences flow not from the registry, but from one's sex offense conviction. *See McGuire*, 50 F.4th at 1023 (quoting *Smith*, 538 U.S. at 100-01). As such, Doe #64 is unable to provide evidence that he has sustained or is likely to sustain a concrete injury and, therefore, lacks standing.

In his deposition, Doe #117 testified he is not tied to any particular church and has only attended sporadically. Doe #117 testified, however, that he would like to attend a certain church but is unable to do so because a daycare is on the same property. SORNA provides that registrants may not be "upon the premises or grounds of any daycare."

[8] Doe #64 alleges leaders in his church told him his opportunities were limited because of his status on the registry. However, even assuming Doe #64's representations are true, those restrictions came from Doe's church, not the registry itself. This is a subtle, but important, distinction. He fully admitted in his deposition that he has been allowed to participate in all aspects of his faith—including at the temple—he just has not been able to hold certain positions. *See* Dkt. 114-4.

SORNA does not prohibit registrants from attending church, participating in religious worship, or participating in church activities. Doe #117 does not seek to enter the daycare building; he seeks to enter the church grounds. But SORNA does not prevent him from attending that church because it is distinctly separate and apart from a nearby daycare. Law enforcement officers agree, Dkt. 113-3, ¶ 11; Dkt. 113-4, ¶¶ 13–14, and so there is no credible threat of enforcement. Accordingly, Doe #117's FERPA rights have not been infringed and he lacks standing.

In light of Defendants' immunity—and Plaintiffs lack of standing—the Court finds summary judgment is appropriate on Plaintiffs' FERPA claim.

## V. CONCLUSION

Upon review, the Court finds SORNA's requirements are rationally related to nonpunitive purposes and are constitutional. This is a civil regulatory scheme. And while some of SORNA's provisions may impose a burden on registrants, none of those provisions—individually or collectively—are akin to criminal punishment. Summary judgment is, therefore, appropriate on Plaintiffs' *Ex Post Facto* and Double Jeopardy claims.

Defendants are likewise entitled to summary judgment on Plaintiffs' FERPA claim because they have sovereign immunity and Plaintiffs lack standing.

## VI. ORDER

1. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 112) is DENIED.
2. Defendants' Motion for Summary Judgment (Dkt. 113) is GRANTED.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: September 29, 2026

David C. Nye
U.S. District Court Judge